1  Tom Myers (SBN 176008)
   E-Mail: tom.myers@aidshealth.org
2  Samantha R. Azulay (SBN 283424)
3  E-Mail: Samantha.azulay@aidshealth.org
   AIDS Healthcare Foundation
4  6255 W. Sunset Blvd., 21st FL
5  Los Angeles, CA 90028
   Phone: 323-860-5200
6  Fax: 323-467-8450
7

8  *Attorneys for Proposed Intervenors Michael Weinstein, Marijane Jackson, Arlette*
9  *De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes*
   *on B, Major Funding by the AIDS Healthcare Foundation*
10

11              UNITED STATES DISTRICT COURT
12       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13  VIVID ENTERTAINMENT, LLC;          )  Case No.:  13-CV-00190-DDP-AGR
14  CALIFA PRODUCTIONS, INC.;          )
    JANE DOE a/k/a Kayden Kross; and   )  PROPOSED INTERVENORS'
15  JOHN DOE a/k/a Logan Pierce,       )  NOTICE OF MOTION, MOTION TO
                                       )  INTERVENE, AND MEMORANDUM
16                                     )  OF POINTS AND AUTHORITIES
                                       )  SUPPORTING MOTION TO
17         Plaintiffs,                 )  INTERVENE
18      vs.                            )
                                       )
19  JONATHAN FIELDING, Director of     )  Date:     April 1, 2013
20  Los Angeles County Department of   )  Time:     10:00 a.m.
    Public Health, JACKIE LACEY, Los   )  Judge:    Dean D. Pregerson
21  Angeles County District Attorney, and )  Location: Courtroom 3
22  COUNTY OF LOS ANGELES,             )
                                       )
23         Defendants.                 )
24                                     )
25                                     )
26
27
28

         PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
     MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on **April 1, 2013, at 10:00 a.m.,** or as soon thereafter as the matter may be heard, before the Honorable Dean D. Pregerson in Courtroom 3, United States District Court for the Central District of California, 312 N. Spring Street, Los Angeles, California 90012, Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Proposed Intervenors"), will move this Court for an order allowing them to intervene in this case. Proposed Intervenors respectfully request an order allowing them to intervene in this case to guard their significant protectable interest in the subject matter of this lawsuit.

Respectfully Submitted,

DATED:  March 1, 2013                     AIDS HEALTHCARE FOUNDATION


By: _Samantha Azulay_
TOM MYERS
SAMANTHA R. AZULAY
*Attorneys for Proposed Intervenors*

---

1

1
2
## TABLE OF CONTENTS

3  TABLE OF AUTHORITIES ............................................................... ii

4  INTRODUCTION ............................................................................ 1

5  PROCEDURAL HISTORY ................................................................ 1

6
7  FACTUAL HISTORY ...................................................................... 1

8     A.  Chronology of Measure B. ...................................................... 1

9     B.  During The Process Of Enacting Measure B, Proponents Gained Unique

10    Legal Rights And Responsibilities. ............................................... 4

11    C.  Defendants Generally Are Not In Favor Of Measure B, And Will Not

12    Adequately Represent The Interests Of Proponents In Defending And Upholding

13    Measure B. ............................................................................ 6

14 ARGUMENT ................................................................................ 9

15    A.  Proposed Intervenors Are Entitled To Intervene As A Matter Of Right. ........ 9

16
17       1.  Proposed Intervenors Have Timely Filed This Motion. ............................ 10

18       2.  Proposed Intervenors Have A Significantly Protectable Interest In The

19       Subject Matter Of This Lawsuit. ................................................. 10

20       3.  This Court's Ruling Might Impair Proposed Intervenors' Significantly

21       Protectable Interests. ........................................................... 14

22       4.  The Existing Parties Will Not Adequately Represent Proposed Intervenors'

23       Interests. ....................................................................... 15

24
25    B.  Proposed Intervenors Have Satisfied The Requirements For Permissive

26    Intervention. ........................................................................ 18

27 CONCLUSION ............................................................................... 19

28

---

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bates v. Jones,*
   904 F. Supp 1080 (N.D. Cal. 1995) ............................................. 12, 13, 14, 15, 16

*Blake v. Pallan,*
   554 F.2d 947 (9th Cir. 1977)........................................................................17

*Forest Conservation Council v U.S. Forest,*
   66 F.3d 825 (9th Cir. 1995)...........................................................................9

*Idaho v. Freeman,*
   625 F.2d 886 (9th Cir. 1980)................................................................ 12, 14

*League of United Latin Am. Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997).......................................................................19

*Nw. Forest Res. Council v. Glickman,*
   82 F.3d 825 (9th Cir. 1996)............................................................... 9, 10

*Perry v. Brown,*
   671 F.3d 1052 (9th Cir. 2012)............................................................ 10, 13

*Perry v. Schwarzenegger,*
   628 F.3d 1191 (9th Cir. 2011)......................................................................11

*Prete v. Bradbury,*
   438 F.3d 949 (9th Cir. 2006)........................................... 10, 11, 13, 14

*Sagebrush Rebellion, Inc. v. Watt,*
   713 F.2d 525 (9th Cir. 1983)........................................... 12, 14, 15, 17

*Sw. Ctr. For Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001)............................................................. 9, 14

*United States v. City of Los Angeles,*
   288 F.3d 391 (9th Cir. 2002)............................................................. 9, 18

ii

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE

*Trbovich v. United Mine Workers of Am.,*
 404 U.S. 528 (1972) ......................................................................15
*Washington State Bldg. & Constr. Trades Council v. Spellman,*
 684 F.2d 627 (9th Cir. 1982)......................................... 9, 10, 11, 12, 13
*Yniguez v. State of Arizona,*
 939 F.2d 727 (9th Cir. 1991) ...................................................... passim

**STATE CASES**
*Building Industry Assn. v. City of Camarillo*
 41 Cal. 3d 810 (Cal. 1986) ...........................................................15
*Perry v. Brown,*
 52 Cal. 4th 1116 (Cal. 2011) ............................................ 11, 12, 15, 16

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

Cal. Elec. Code Section 342 ...........................................................4
Cal. Elec. Code Section 9100 ...........................................................1
Cal. Elec. Code Section 9103 ........................................................2, 4
Cal. Elec. Code Section 9103.5 .........................................................4
Cal. Elec. Code Section 9105 ........................................................2, 4
Cal. Elec. Code Section 9107 ...........................................................4
Cal. Elec. Code Section 9108 ...........................................................2
Cal. Elec. Code Section 9109 ...........................................................2
Cal. Elec. Code Section 9110 ...........................................................4
Cal. Elec. Code Section 9113 ..................................................... 3, 4, 5
Cal. Elec. Code Section 9114 ...........................................................3
Cal. Elec. Code Section 9115 ........................................................3, 5
Cal. Elec. Code Section 9118 ........................................................3, 5
Cal. Elec. Code Section 9119 ...........................................................5

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE

Cal. Elec. Code Section 9160 ...................................................................5

Cal. Elec. Code Section 9162 ...................................................................5

Cal. Elec. Code Section 9167 ...................................................................5

Cal. Elec. Code Section 9607 ...................................................................2

Cal. Elec. Code Section 9609 ...................................................................2

Cal. Elec. Code Section 18650 .................................................................2

Fed. R. Civ. P. 24 ...................................................................................14

Fed. R. Civ. P. 24(a) ..............................................................................10

Fed. R. Civ. P. 24(a)(2) ............................................................................9

Fed. R. Civ. P. 24(b)(1)(B) .....................................................................18

**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE**

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Proposed Intervenors are the official proponents and campaign committee for Measure B, the Los Angeles County Code provision challenged in this lawsuit. The Ninth Circuit has repeatedly permitted sponsors and supporters of ballot initiatives and constitutional amendments to intervene in lawsuits challenging those provisions.  This Court should thus allow them to intervene in this case.

### PROCEDURAL HISTORY

On January 10, 2013, Plaintiffs filed this suit, asserting claims against various Los Angeles County entities, and state and local officials.  Plaintiffs allege that the County's recently enacted Measure B, which is now embodied in Title 11, Division 1, Chapter 11.39 of the Los Angeles County Code, violates the First and Fourteenth Amendments to the United States Constitution, and is preempted by California State law.  They seek declaratory and injunctive relief against the enforcement of the Measure.

Proposed Intervenors respectfully request that this Court allow them to intervene.  They have expeditiously filed this intervention motion so as not to cause any unnecessary delay in these proceedings.  In fact, the current parties are not even at issue yet as they have stipulated to allow Defendants an extension of time to February 27, 2013 in which to file a responsive pleading.

### FACTUAL HISTORY

**A.    Chronology of Measure B.**

The means and methods whereby County ordinances may be enacted via initiative generally is set out in California Elections Code Section 9100 et seq.[1]

---

[1]    Unless otherwise expressly stated otherwise, all statutory references are to the California Elections Code.

1   Five residents of Los Angeles County — Michael Weinstein, Marijane Jackson,
2   Arlette De La Cruz, Mark McGrath, and Whitney Engeran (collectively referred to
3   as "Proponents") — exercised their statutory rights by taking the necessary legal
4   steps to become the "Official Proponents" of Measure B.

5           In the autumn of 2011, Proponents started the process of satisfying all legal
6   requirements for placing Measure B on the November 2012 ballot.  Proponents
7   began by supervising the drafting and ultimately finalizing the language of
8   Measure B.  Declaration of Michael Weinstein ("Weinstein decl.") at ¶ 3.
9   Proponents then submitted the requisite Notice of Intention to circulate a County
10  initiative, complete with all required content and in the required format, and paid
11  all required fees for submission of such Notice (Elections Code Section 9103);
12  Weinstein decl. at ¶ 3, and Exhibit A to Weinstein decl.

13          On approximately December 7, 2011, the County issued to Proponents a
14  "circulating" Title and Summary for Measure B.  Weinstein decl. at ¶ 4, and
15  Exhibit B to Weinstein decl.  Proponents then had 180 days to gather sufficient
16  signatures to place the Measure on the ballot.  Weinstein decl. at ¶ 5.  However,
17  before they could collect signatures, Proponents needed to comply with additional
18  legal requirements.  For instance, they needed to prepare petition forms that
19  complied with the California Elections Code.  See Cal. Elec. Code Sections 9105,
20  9108, 9109.  Proponents were also required to execute a "Proponent Statement of
21  Acknowledgement," in conformity with California Elections Code Section 18650.
22  Proponents were also required to retain an executed certification from each
23  supervising signature gatherer, certifying that he or she would not allow the
24  Measure B signatures to be used for any purpose other than qualifying the measure
25  for the ballot.  See Cal. Elec. Code § 9609.  And Proponents had a legal duty to
26  instruct all signature-collectors about the petition-circulation and signature-
27  gathering requirements under state law.  See Cal. Elec. Code § 9607.  No person or
28  entity other than Proponents could submit petitions to the County for signature

1  verification; the County would have summarily rejected petitions submitted by

2  others.  *See* Cal. Elec. Code § 9113.

3  California law places onerous, time-constrained signature-gathering

4  requirements on Proponents. In order to qualify the measure for the ballot, they

5  were responsible for obtaining at least 232,153 valid petition signatures between

6  December 7, 2011 and June 4, 2012.  Weinstein decl. at ¶ 5.  In other words,

7  Proponents needed to supervise the collection of, on average, at least 1,290 valid

8  petition signatures per day during this period.

9  On or about May 29, 2012, Proponents caused the submission of over

10  372,000 signatures for signature verification by county-elections officials.

11  Weinstein decl. at ¶ 7, and Exhibit C to Weinstein decl.  California law provides

12  that county-elections officials and the Secretary of State must provide certain

13  notices to Proponents during the signature-verification process.  *See* Cal. Elec.

14  Code §§ 9114, 9115.  On July 3, 2012, the Los Angeles County Registrar-

15  Recorder/County Clerk notified Proponents that the county-elections officials had

16  verified the requisite number of voter signatures and that, consequently, Measure B

17  qualified for inclusion on the November 2012 ballot.  Weinstein decl., at ¶ 8, and

18  Exhibit C to Weinstein decl.

19  Once the petition had been certified and the measure qualified for the ballot,

20  the County Board of Supervisors was able to either (1) adopt the proposed measure

21  without alteration, or (2) submit the ordinance to the voters.  Elections Code

22  Section 9118.  On July 24, 2012, the Board expressly declined to adopt the

23  proposed measure, and thus submitted it to the voters.  Weinstein decl. at ¶ 9.

24  On November 6, 2012, a majority of Los Angeles County voters approved

25  Measure B, which became Chapter 11.39 et seq. of the Los Angeles County Code.

26  Weinstein decl. at ¶ 16.

27  On January 10, 2013, this lawsuit was filed, arguing among other things that

28  the measure violates the federal constitution, and is preempted by State law.

**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND**
**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE**

1       **B.**    **During The Process Of Enacting Measure B, Proponents Gained**
2                     **Unique Legal Rights And Responsibilities.**

3       By and through Proponents' conduct and action during the above process,

4 they assumed various legal duties and acquired numerous legal rights. By

5 approving the language of the Measure, and submitting the Notice of Intention,

6 Proponents became the "Official Proponents" of Measure B within the meaning of

7 California law. *See* Cal. Elec. Code § 342. As such, among other things, they:

8      • Were responsible for paying the initiative filing fee (Elections Code

9        Section 9103);

10      • Could compel the Los Angeles County elections official to keep the

11        submitted Measure B materials on file, and to furnish them to any

12        person upon request (Elections Code Section 9103.5);

13      • Could compel the elections official to transmit a copy of the proposed

14        Measure to county counsel, and have county counsel return a ballot

15        title and summary of the proposed measure (Section 9105);

16      • Were required to publish ballot title and summary of the proposed

17        measure in a newspaper of general circulation in the County, and file

18        proof of publication with the elections official. Proponents did in fact

19        fulfill such requirements (Section 9105);

20      • Could compel the elections official to ascertain the number of

21        signatures required to sign the petition to qualify the proposed

22        measure for the ballot (Section 9107);

23      • Were required to circulate the petition among registered voters in the

24        County for signature, to qualify the proposed measure for the ballot,

25        and to complete the collection of sufficient signatures within 180 days

26        from the date of receipt of the title and summary. (Sections 9110,

27        9113). Proponents fulfilled this requirement;

28

- Even after a sufficient number of signatures had been collected, Proponents retained the exclusive statutory right to decide whether to file the initiative petitions for signature verification. *See* Cal. Elec. Code § 9113 ("The petition shall be filed by the proponents, or by any person or persons authorized in writing by the proponents."). No person other than Proponents possessed this unique legal right;

- Compel the elections official to examine the petition and determine whether sufficient signatures had been gathered to qualify it for the ballot, and to certify the results to the County Board of Supervisors (Section 9115). The petition was determined to contain sufficient signatures;

- Once the petition has been certified, compel the County Board of Supervisors to either (1) adopt the proposed measure without alteration, or (2) submit the ordinance to the voters. The Board declined to adopt the proposed measure, and thus submitted it to the voters (Section 9118);

- Compel county counsel to prepare an impartial analysis of the proposed measure showing the effect of the measure on existing law, and the operation of the measure (Section 9160);

- Compel the elections official to print the proposed measure, and to provide a copy to any voter upon request (Section 9119);

- May file a written ballot argument for the proposed Measure, as well as a rebuttal to an argument against the proposed Measure, to be included with the sample ballot (Sections 9162, 9167). After Measure B was approved for the ballot, Proponents had statutory preference to be the authors of any ballot argument and rebuttal. Proponents were the authors of the argument and rebuttal. Weinstein decl. at ¶ 10, and

**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE**

Exhibit D to Weinstein decl.  Thus, California law gives Proponents a preferred status as official advocates for Measure B.

In addition to satisfying their many legal duties, Proponents also dedicated substantial time, effort, reputation, and personal resources in campaigning for Measure B.  Weinstein decl. at ¶¶ 6, 7, and 10.  Mr. Weinstein, for example, authored campaign literature, helped to raise money, founded and served on the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, did numerous press events, spoke to various organizations, and organized volunteers.  Weinstein decl. at ¶¶ 6 and 10.  Aside from the statutory powers and duties reserved exclusively to Proponents, the Committee was directly responsible for all aspects of the campaign to qualify Measure B for the ballot and enact it into law. Weinstein decl. at ¶ 6.  During the campaign, the Committee spent over $2 million dollars to qualify Measure B for the ballot and operate a countywide campaign to persuade a majority of Los Angeles County voters to approve it. Weinstein decl. at ¶ 6.  The Proponents' and Committee's substantial investments of time and money, in addition to the Committee's unique status as a "primarily formed ballot measure committee" under state law, distinguish their interest in Measure B from that of other supporters in the general public.

**C.   Defendants Generally Are Not In Favor Of Measure B, And Will Not Adequately Represent The Interests Of Proponents In Defending And Upholding Measure B.**

Based on Defendants' own actions and statements, it is clear that they see Measure B as flawed and a poor use of government resources, and have little interest in upholding and enforcing Measure B.

Members of the Los Angeles County Board of Supervisors have been outspoken in the opposition to the passage of Measure B.  Supervisor Zev

1   Yaroslavsky, claiming to be concerned about the "enforceability" of the law,

2   pronounced worry that the Measure would be "a mockery from the starter's gate."

3   Weinstein decl. at ¶¶ 11 and 12, and Exhibit E to Weinstein decl.  Supervisor

4   Yaroslavsky also claimed that adult film production is a "niche that generates only

5   about 1.5% of [Los Angeles County's] sexually transmitted diseases."  Weinstein

6   decl. at ¶ 12, and Exhibit E to Weinstein decl.  Explaining her vote to not adopt the

7   measure, Supervisor Gloria Molina stated, "I'm trying to understand why we

8   would, as a county, take on the huge responsibility of workplace issues . . . . We're

9   all in favor of porno stars using . . . condoms. . . . But the issue is . . . liability for

10  the county . . .. Why would we add to this burden?"  Further, Supervisor Molina

11  declared that regulating the adult film industry is the State of California's job:

12  "[T]ell me where local jurisdictions have taken over workplace responsibilities that

13  belong to Cal/OSHA? . . . [W]hy would our municipality take on responsibility for

14  workplace issues that are not presently our responsibility? . . . So I just don't

15  understand how all of a sudden we are taking away the workplace responsibilities

16  of Cal/OSHA and inheriting all the liability that goes along with this."  Weinstein

17  decl. at ¶ 12, Exhibit F to Weinstein decl. at pp. 67-74.  Further, the Board signaled

18  its opposition to Measure B when, after the measure garnered enough signatures to

19  qualify for the ballot, it refused to adopt the Measure itself.  Weinstein decl. at ¶ 9,

20  and Exhibit F to Weinstein decl.

21         Likewise, opposition to Measure B throughout the County governmental

22  bureaucracy has been manifest.  Mario Perez, the Los Angeles County Public

23  health Department's Division of HIV and STD programs claims that "[While]

24  [e]very resident of the county matters to us . . . there are many groups we have to

25  serve with scarce resources."  Weinstein decl. at ¶ 12, and Exhibit E to Weinstein

26  decl.  Further, Defendant Jonathan Fielding, Director of the Los Angeles County

27  Department of Public Health, has also been critical of the Measure, again citing

28  supposed concerns about the ability of the County to enforce compliance with the

1  measure, as well as the scope and cost of enforcement.  Weinstein decl. at ¶ 13,

2  Exhibit G to Weinstein decl.

3          The Los Angeles County Counsel's office has also expressed skepticism

4  with respect to the Measure.  In previous litigation, County counsel noted that

5  efforts to protect the health of workers in the adult film industry amounted to a

6  "minimal" public need.  Weinstein decl. at ¶ 15, and Exhibit I to Weinstein decl. at

7  pp. 107-108.  Further, as stated in a July 23, 2012 Memorandum from County

8  Counsel to the Board of Supervisors, Counsel claims that "[a] challenge solely to

9  the constitutionality of the ordinance" – as is the case here – "need not be defended

10 by the County."    Weinstein decl. at ¶ 14, and Exhibit H to Weinstein decl. at p.

11 91.  The same Memorandum also notes that, should the County take any steps to

12 enforce the measure, it would **then have to** defend any actions brought by litigants

13 based on that enforcement.  Weinstein decl. at ¶ 14, and Exhibit H to Weinstein

14 decl. at pp. 91-92.  It should be noted that the instant suit is not based on County's

15 enforcement but is a constitutional challenge to the measure.  This makes explicit

16 that the County has interests in both having the Measure overturned, and in not

17 vigorously enforcing the Measure.

18         Finally, Counsel and Proponents disagree as to the scope of the Measure.

19 Proponents argue that the Measure may be enforced in all jurisdictions and areas

20 within the County, while Counsel maintains that the Measure may be enforced

21 only in (1) unincorporated areas of the County, (2) incorporated areas which have

22 separately and expressly adopted the Measure, and which do not have their own

23 health officer.  Weinstein decl. at ¶ 14, and Exhibit H to Weinstein decl. at pp. 90-

24 91.  Thus, Counsel interprets the Measure much more narrowly than do

25 Proponents.

26         Proponents believe that no other party in this case will adequately represent

27 their interests as Official Proponents with state constitutional and statutory rights

28 with respect to Measure B.

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE

**ARGUMENT**

**A.     Proposed Intervenors Are Entitled To Intervene As A Matter Of Right.**

Four requirements must be satisfied to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2): (1) the intervention motion must be timely filed; (2) the applicant must have a "significantly protectable" interest relating to the subject of the action; (3) the disposition of the action might, as a practical matter, impair the applicant's ability to protect its interest; and (4) the applicant's interest might be inadequately represented by the existing parties. *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 817-18 (9th Cir. 2001) (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)).  Each of these requirements must be evaluated liberally in favor of intervention:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, [the court] often prevent[s] or simplif[ies] future litigation involving related issues; at the same time, [the court] allow[s] an additional interested party to express its views . . . .

*United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (citing *Forest Conservation Council v U.S. Forest*, 66 F.3d 1489, 496 n.8 (9th Cir. 1995)); *see also Berg*, 268 F.3d at 818; *Washington State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982).  Proposed Intervenors satisfy all four intervention requirements, each of which will be addressed in turn.

1      **1.    Proposed Intervenors Have Timely Filed This Motion.**

2      Three criteria determine whether a motion to intervene satisfies the

3 timeliness requirement: (1) the stage of the proceedings; (2) the reason for delay, if

4 any, in moving to intervene; and (3) prejudice to the parties. *Glickman*, 82 F.3d at

5 836-837. Proposed Intervenors filed their motion at the very earliest stages of this

6 proceeding (a day after the deadline for Defendants to file a responsive pleading);

7 they have not delayed in moving to intervene; and the parties will not be

8 prejudiced in any way because Proponents' intervention will not delay the current

9 case activity.

10

11      **2.    Proposed Intervenors Have A Significantly Protectable Interest In**

12             **The Subject Matter Of This Lawsuit.**

13      The Ninth Circuit has consistently adopted the principle that the Proponents

14 of a ballot measure have a sufficient interest in the subject matter of litigation

15 attacking the measure to intervene as a matter of right. *See Perry v. Brown*, 671

16 F.3d 1052, 1064 (9th Cir. Cal. 2012) (conferring authority on the official

17 proponents of Proposition 8 to defend the constitutionality of that initiative);

18 *Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) ("there is a virtual

19 *per se* rule that the sponsors of a ballot initiative have a sufficient interest in the

20 subject matter of the litigation to intervene pursuant to Fed. R. Civ. P. 24(a).");

21 *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (ruling that a public-interest

22 group and chief petitioner who supported "an initiative [had] a 'significant

23 protectable interest' in defending the legality of the measure"); *Spellman*, 684 F.2d

24 at 630 (holding that "the public interest group that sponsored the [challenged]

25 initiative[] was entitled to intervention as a matter of right under Rule 24(a)").

26      Most recently, when faced with this issue after the passage of Proposition 8,

27 a statewide gay marriage ban, the Ninth Circuit asked the California Supreme

28 Court to certify the question of whether, "the official proponents of an initiative

measure possess either a particularized interest in the initiative's validity or the authority to assert the State's interest in the initiative's validity, which would enable them to defend the constitutionality of the initiative upon its adoption or appeal a judgment invalidating the initiative, when the public officials charged with that duty refuse to do so." *See Perry v. Schwarzenegger*, 628 F.3d 1191, 1193 (9th Cir. 2011). The California Supreme Court unanimously ruled that "the official proponents of the initiative are authorized … to appear and assert the state's interest in the initiative's validity." *Perry v. Brown*, 52 Cal. 4th, 1116, 1127 (Cal. 2011). In making its ruling, the California Supreme Court stated:

> Plaintiffs have not cited, and our research has not disclosed, any decision in which the official proponents of an initiative measure were precluded from intervening or appearing as real parties in interest in a postelection case challenging the measure's validity, even when they did not have the type of distinct personal, legally protected interest in the subject matter of the initiative measure that would ordinarily support intervention or real party in interest status on a particularized interest basis. Instead, they have been permitted to participate as parties in such litigation simply by virtue of their status as official proponents of the challenged measure.

*See Perry v. Brown*, 52 Cal. 4th at 1147-1148.

Indeed, a long line of Ninth Circuit precedent supports intervention by initiative proponents, initiative sponsors, and constitutional-amendment supporters. In *Yniguez*, the Ninth Circuit held that an organization and spokesman who campaigned for a ballot initiative had "sufficient interest[s] in the subject matter of the litigation to intervene" in a suit challenging that initiative. *Yniguez*, 939 F.2d at 735. In *Prete*, the court ruled that the chief initiative petitioner and a public interest group that supported the initiative had "a 'significant protectable interest' in defending the legality of the measure." *Prete*, 438 F.3d at 954. Similarly, in *Spellman*, the court found that "the public interest group that sponsored the [challenged] initiative[] was entitled to intervention as a matter of right under Rule

1   24(a)." *Spellman*, 684 F.2d at 630. And, in *Idaho v. Freeman*, 625 F.2d 886, 887

2   (9th Cir. 1980), the Ninth Circuit concluded that an organization had the right to

3   intervene in a suit challenging the ratification procedures for a constitutional

4   amendment supported by that organization. Likewise, in *Sagebrush Rebellion, Inc.*

5   *v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), a case challenging the federal

6   government's creation of a wildlife conservation area, the court held that "there

7   [could] be no serious dispute . . . concerning . . . the existence of a protectable

8   interest" on the part of an organization that supported the conservation area's

9   creation. District courts have dutifully followed this guidance: in *Bates*, for

10  example, the Court permitted intervention by the official proponents of a state

11  constitutional amendment setting term limits for state legislators. *See Bates v.*

12  *Jones*, 904 F. Supp. 1080, 1086 (N.D. Cal. 1995) ("The individualized interest of

13  official proponents of ballot initiatives in defending the validity of the enactment

14  they sponsored is sufficient to support intervention as of right.").

15          Here, Proposed Intervenors are the official proponents and campaign

16  committee of Measure B, and as such, they hold unique legal statuses regarding

17  that initiative. By creating, proposing, and campaigning for Measure B,

18  Proponents have exclusively exercised many state statutory and constitutional

19  rights, including: (1) the right to propose Measure B by initiative; (2) the statutory

20  right to submit completed signature petitions, thereby authorizing the County to

21  place Measure B on the ballot; and (3) the statutory preference to designate

22  arguments in support of Measure B for the official voter guide. *See Perry v.*

23  *Brown*, 52 Cal. 4th at 1142 ("Under [Election Code sections related to preparing

24  arguments for the ballot pamphlet] and related statutory provisions . . . the official

25  proponents of an initiative measure are recognized as having a distinct role—

26  involving both authority and responsibilities that differ from other supporters of the

27  measure—with regard to the initiative measure the proponents have sponsored.")

28  *see also Yniguez*, 939 F.2d at 733 ("[State] law recognizes the ballot initiative

1   sponsor's heightened interest in the measure by giving the sponsor official rights

2   and duties distinct from those of the voters at large").  Similarly, the Campaign

3   Committee holds a distinctive legal position: it is the only "primarily formed ballot

4   measure committee" under California law endorsed by Proponents in support of

5   Measure B.  In short, Proposed Intervenors' unique legal statuses regarding

6   Measure B are unmatched by any other person or organization.

7         Proposed Intervenors have indefatigably labored in support of Measure B.

8   Proponents complied with a myriad of legal requirements to procure Measure B's

9   enactment, such as (1) filing forms prompting the County to prepare Measure B's

10  Title and Summary, (2) paying the initiative filing fee, (3) drafting legally

11  compliant signature petitions, (4) overseeing the collection of more than 372,000

12  signatures, (5) instructing signature-collectors on state-law guidelines, and (6)

13  obtaining certifications from supervising signature-gatherers.  Weinstein decl. at ¶¶

14  3-7 and 10.  Proponents devoted substantial time, effort, and resources through

15  fundraising, campaigning, monetary donations, organizing volunteers, and

16  assisting the Committee.  Weinstein decl. at ¶ 6.  Likewise, the Campaign

17  Committee—which was responsible for all aspects of the campaign (aside from

18  those legal duties assigned exclusively to Proponents)—labored incessantly,

19  collecting and disbursing over $2 million dollars, all with the goal of achieving

20  Measure B's enactment.  Weinstein decl. at ¶ 6.  It is thus clear that Proposed

21  Intervenors—unlike any other person or organization—have invested greatly in

22  enacting and protecting Measure B.

23        In this case, Plaintiffs directly challenge Measure B under the Federal

24  Constitution.  It is well settled under Ninth Circuit precedent that Proposed

25  Intervenors' unique legal status as Measure B's official proponents and campaign

26  committee endow them with a significantly protectable interest permitting them to

27  intervene as of right. *See Perry v. Brown*, 671 F.3d at 1064; *Yniguez*, 939 F.2d at

28  735; *Prete*, 438 F.3d at 954; *Spellman*, 684 F.2d at 630; *Bates*, 904 F. Supp. at

1  1086.  Ninth Circuit precedent also demonstrates that Proposed Intervenors'
2  tireless support of Measure B also establishes their right to intervene.  *See*
3  *Sagebrush Rebellion*, 713 F.2d at 528; *Freeman*, 625 F.2d at 887.

4
5  **3.    This Court's Ruling Might Impair Proposed Intervenors'**
6  **Significantly Protectable Interests.**

7          When a proposed intervenor "would be substantially affected in a practical
8  manner by the determination made in the action, he should, as a general rule, be
9  entitled to intervene."  *Berg*, 268 F.3d at 822 (quoting the Advisory Committee's
10  notes from Fed. R. Civ. P. 24).  Not surprisingly, the Ninth Circuit has routinely
11  concluded that supporters of an initiative or amendment have a sufficiently
12  protectable interest that could be impaired by a suit challenging the supported
13  provision.  *See Prete*, 438 F.3d at 954 ("[A]n adverse court decision on such [an
14  initiative] measure may, as a practical matter, impair the interest held by the public
15  interest group"); *Bates*, 904 F. Supp. at 1086 ("The interest of . . . the official
16  proponents of [the challenged] Proposition . . . in its continued validity could
17  obviously be impaired in this litigation"); *Freeman*, 625 F.2d at 887 (holding that
18  an organization's protectable interest in a constitutional amendment supported by
19  that organization "would as a practical matter be significantly impaired by an
20  adverse decision"); *Sagebrush Rebellion*, 713 F.2d at 528 (holding that "there can
21  be no serious dispute . . . concerning . . . the existence of a protectable interest on
22  the part of the [proposed intervenor] which may, as a practical matter, be
23  impaired").
24          Here, Plaintiffs ask this Court to declare that Measure B violates the United
25  States Constitution.  They also seek to enjoin County officials from enforcing that
26  newly enacted provision of the County Code.  If the Court grants this relief, all
27  Proposed Intervenors' labor in support of Measure B will be for naught.  Thus, this
28

Court's ruling could directly impair Proposed Intervenors' interest in Measure B, by undoing all that they have done in obtaining its enactment.

### 4.   The Existing Parties Will Not Adequately Represent Proposed Intervenors' Interests.

"[T]he requirement of inadequacy of representation is satisfied if the [proposed intervenor] shows that representation of its interests '*may be*' inadequate." *Sagebrush Rebellion*, 713 F.2d at 528 (emphasis added); *accord Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). "[T]he burden of making this showing is minimal." *Sagebrush Rebellion*, 713 F.2d at 528; *accord Trbovich*, 404 U.S. at 538 n.10; *Bates*, 904 F. Supp. at 1087.

Accordingly, in *Perry v. Brown*, 52 Cal. 4th at 1149-1150, the Court held:

> [A]lthough public officials ordinarily have the responsibility of defending a challenged law, in instances in which the challenged law has been adopted through the initiative process there is a realistic risk that the public officials may not defend the approved initiative measure "with vigor." This enhanced risk is attributable to the unique nature and purpose of the initiative power, which gives the people the right to adopt into law measures that their elected officials have not adopted and may often oppose.  Second, . . . because of the risk that public officials may not defend an initiative's validity with vigor, a court should ordinarily permit the official proponents of an initiative measure to intervene in an action challenging the validity of the measure in order "to guard the people's right to exercise initiative power."□

*Perry v. Brown*, 52 Cal. 4th at 1149-1150 (citations omitted) (citing *Building Industry Assn. v. City of Camarillo*, 41 Cal. 3d 810, 822 (Cal. 1986) ("Despite the fact that the city or county would have a duty to defend the ordinance, a city or county might not do so with vigor if it has underlying opposition to the ordinance.")

The California Supreme Court also recognized a ballot sponsor's right to intervene even in cases where the government entity does not decline to participate in the lawsuit:

> The experience of California courts in reviewing challenges to voter-approved initiative measures over many years thus teaches that permitting the official proponents of an initiative to participate as parties in postelection cases, **even when public officials are also defending the initiative measure**, often is essential to ensure that the interests and perspective of the voters who approved the measure are not consciously or unconsciously subordinated to other public interests that may be championed by elected officials, and that all viable legal arguments in favor of the initiative's validity are brought to the court's attention.

*Perry v. Brown*, 52 Cal. 4th at 1151 (emphasis added).  The Ninth Circuit has also acknowledged that oftentimes the government's motivation to defend a voter-enacted initiative is much less than the proponent's:

> [A]s appears to be true in this case, the government may be less than enthusiastic about the enforcement of a measure adopted by ballot initiative; for better or worse, the people generally resort to a ballot initiative precisely because they do not believe that the ordinary processes of representative government are sufficiently sensitive to the popular will with respect to a particular subject.  While the people may not always be able to count on their elected representatives to support fully and fairly a provision enacted by ballot initiative, they can invariably depend on its sponsors to do so.

*Yniguez*, 939 F.2d at 733.  District Courts have similarly reasoned:

> [A]n official sponsor of a ballot initiative may be considered to add an element not covered by the government in defending the validity of the initiative in that the very act of resorting to a ballot initiative indicates a rift between the initiative's proponents and voters and their elected officials on the issue that underlies the initiative.

*Bates*, 904 F. Supp. at 1087 (citations omitted).

1    The statutory requirements of Measure B reflect this sharp "rift" between the
2    people and their elected representatives.  As previously stated, Defendants have
3    previously opposed litigation compelling them to take steps identical to those
4    found in Measure B.  Moreover, the County Board of Supervisors expressly voted
5    against adopting Measure B.  Meanwhile, over 57% of the County residents voting
6    in the November 2012 election voted in favor of Measure B.  Clearly, there is a rift
7    between the people and their government.  This prompted Proposed Intervenors to
8    endure the personally arduous initiative process to enact the laws desired by the
9    people.  The voters of Los Angeles County thus depend on Proposed Intervenors,
10   and not their elected officials, to defend Measure B vigorously.

11   Further, presumably County Counsel will represent the officials sued in this
12   case.  As shown above, Defendants, including County Counsel, have made clear
13   their skepticism and disfavor towards Measure B as expensive, difficult to enforce,
14   not a compelling or effective use of government resources, and subject to litigation
15   should they attempt to implement and enforce it.  This is exactly why the Board of
16   Supervisors *expressly declined to adopt the measure when it had the opportunity* –
17   the Board, and by extension the County government, does not favor or support
18   Measure B.  Parties who expressly declined to adopt the Measure, and who have
19   written extensively regarding supposed limitations and deficiencies of the
20   Measure, will not adequately represent the interests of those who diligently labored
21   for its enactment.

22   The Ninth Circuit has also found that intervention is warranted where the
23   facts indicate that the defendant government official desires the same legal
24   outcome sought by the plaintiff.  *See Sagebrush Rebellion*, 713 F.2d at 528.  And,
25   the inadequate-representation prong is even satisfied where the existing parties—
26   because of inability or unwillingness—might not present the intervenor's
27   arguments.  *See id*; *Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977).  In
28   previous litigation, the County similarly opposed actions that are identical to the

1    requirements of Measure B – to take steps, including the requirement that

2    performers wear condoms - to protect the health and safety of adult film workers.

3    *See* Demurrer to Petitioners' Verified Petition For Writ Of Mandate, filed by the

4    County in Los Angeles Superior Court case BS121665, attached as Exhibit I to

5    Weinstein decl.

6        The Ninth Circuit has also allowed initiative proponents to intervene if the

7    government interprets the initiative amendment differently than the proponents.

8    *See Yniguez*, 939 F.2d at 738. As stated above, County Counsel's narrow

9    interpretation of the scope and applicability of Measure B to only parts of the

10    County is at odds with that of Proponents' more expansive view that it applies to

11    the entire County. These significant distinctions between County Counsel's and

12    Proposed Intervenors' legal views about Measure B demonstrate that he is unable

13    to adequately represent Proposed Intervenors' interests.

14        In sum, Proposed Intervenors satisfy all of the requirements for intervention

15    as of right. This Court should grant their request to intervene.

16

17    **B.**     **Proposed Intervenors Have Satisfied The Requirements For**

18           **Permissive Intervention.**

19        Fed. R. Civ. P. 24(b)(1)(B) establishes the requirements for permissive

20    intervention. "[A] court may grant permissive intervention where the applicant for

21    intervention shows (1) independent grounds for jurisdiction; (2) the motion is

22    timely; and (3) the applicant's claim or defense, and the main action, have a

23    question of law or question of fact in common." *City of Los Angeles*, 288 F.3d at

24    403. Proposed Intervenors satisfy each of these requirements.

25        First, Proposed Intervenors have independent grounds for jurisdiction in this

26    case. Plaintiffs' claims seek to undermine Proposed Intervenors' state

27    constitutional and statutory rights as the Official Proponents and the Campaign

28

**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND**
**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE**

1 | Committee for Measure B.  This direct attack on Proposed Intervenors' rights
2 | creates sufficient grounds for jurisdiction.
3 |      Second, Proposed Intervenors have timely filed their Motion to Intervene.
4 | In determining timeliness for purposes of permissive intervention, the Ninth
5 | Circuit "considers precisely the same three factors—the stage of the proceedings,
6 | the prejudice to existing parties, and the length of and reason for the delay"—that it
7 | considers when determining timeliness for purposes of mandatory intervention.
8 | *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir.
9 | 1997).  As previously demonstrated, Proposed Intervenors satisfy the timeliness
10 | requirement: they filed their motion at the very earliest stages of this proceeding
11 | and around the same time the Defendants were given to file their responsive
12 | pleading; they have not delayed in moving to intervene; and the parties will not be
13 | prejudiced in any way because this intervention does not interrupt or delay any
14 | current case activity.
15 |      Third, Proposed Intervenors' defenses to Plaintiffs' claims present questions
16 | of law in common with the issues involved in the "main action."  Plaintiffs' claims
17 | and Proposed Intervenors' defenses both involve the constitutionality of Measure
18 | B under the Federal Constitution: Plaintiffs seek a declaration that Measure B
19 | violates the Federal Constitution, and Proposed Intervenors contend that Measure
20 | B complies with the Federal Constitution.  These arguments present inextricably
21 | intertwined and completely overlapping questions of law.
22 |      In sum, Proposed Intervenors satisfy all the requirements for permissive
23 | intervention. This Court should therefore grant their request to intervene.
24 |
25 | **CONCLUSION**
26 |      Proposed Intervenors have significantly protectable interests in Measure B.
27 | The Defendants will not adequately represent their interests because they have
28 | argued against the implementation of Measure B; Defendants interpret Measure B

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE

1 | differently than Proposed Intervenors; and they will not present all of Proposed
2 | Intervenors' arguments.  This Court should thus allow Proposed Intervenors to
3 | intervene in this action.
4 |
5 |                              Respectfully Submitted,
6 |
7 | DATED:  March 1, 2013          AIDS HEALTHCARE FOUNDATION
8 |
9 |
10 |                         By: *Samantha Azulay*
11 |                             TOM MYERS
                                SAMANTHA R. AZULAY
12 |                             *Attorneys for Proposed Intervenors*
13 |

**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE**