Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450

*Attorneys for Proposed Intervenors Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES, <br><br> Defendants. | Case No.: 13-CV-00190-DDP-AGR <br><br> **PROPOSED INTERVENORS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO INTERVENE** <br><br> Date:       April 15, 2013 <br> Time:       10:00 a.m. <br> Judge:      Dean D. Pregerson <br> Location:  Courtroom 3 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003)...................................................... 5, 7, 8

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) .......................................................................... 17

*Building & Const. Trades Dep't v. Reich,*
  40 F.3d 1275 (D.C. Cir. 1994) ........................................................ 14

*Cal. Dep't of Soc. Servs. v. Thompson,*
  321 F.3d 835 (9th Cir. 2003)........................................................... 13

*County of Los Angeles v. Davis,*
  440 U.S. 625 (1979) ..................................................................... 9 n.1

*Diamond v. Charles,*
  476 U.S. 54 (1986) ...................................................................... 14 n.2

*Doe v. Harris,*
  No. C12-5713, 2013 U.S. Dist. LEXIS 4215 (N.D. Cal. Jan. 10, 2013) ............. 14

*Flores v. Arizona*
  516 F.3d 1140 (9th Cir. 2008)......................................................... 13

*Frank v. United Airlines, Inc.,*
  216 F.3d 845 (9th Cir. 2000) ........................................................ 9 n.1

*Idaho Farm Bureau Fed'n v. Babbitt,*
  58 F.3d 1392 (9th Cir. 1995)...................................................... 15, 16

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1991) .................................................................... 15 n.3

*Orhorhaghe v. Immigration & Naturalization Svc.,*
  38 F.3d 488 (9th Cir. 1994)......................................................... 9 n.1

*Perry v. Brown,*
  671 F.3d 1052 (9th Cir. 2012)................................................... *passim*

**PROPOSED INTERVENORS' REPLY MEMORANDUM ISO MOTION TO INTERVENE**

*Perry v. Proposition 8 Official Proponents*,
  587 F.3d 947 (9th Cir. 2009)..................................................... 7, 8, 10, 11, 13

*Pickup v. Brown*,
  No. 2:12-CV-02497, 2012 U.S. Dist. LEXIS 172027 (E.D. Cal. Dec. 4, 2012) . 12

*Portland Audubon Soc. v. Hodel*,
  866 F.2d 302 (9th Cir. 1989).......................................................... 15

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006).......................................................... 16

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983)................................................ 5, 6, 8, 13, 14

*Southwest Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001).......................................................... 15

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972) ............................................................... 5, 6, 13

*Tucson Women's Ctr. v. Ariz. Med. Bd.*,
  No. CV-09-1909, 2009 U.S. Dist. LEXIS 113948 (D. Ariz. Nov. 24, 2009) ...... 16

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002)........................................................ 5, 10

*United States v. Imperial Irrigation Dist.*,
  449 F.2d 509 (9th Cir. 1977)......................................................... 2, 13

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991)............................................... 9, 14 n.2, 15

**STATE CASES**

*People v. Kelly*,
  47 Cal. 4th 1008 (2010) .................................................................. 3

*Perry v. Brown*,
  52 Cal. 4th 1116 (2011) ...........................................................*passim*

**STATUTES**

Elections Code § 9118 ........................................................................ 10

**RULES**

Rule 24(a) ................................................................. 10, 12, 15, 17

Rule 24(b) ........................................................................ 10

**PROPOSED INTERVENORS' REPLY MEMORANDUM ISO MOTION TO INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

I.   NINTH CIRCUIT LAW IS CLEAR THAT PROPONENTS OF A BALLOT INITIATIVE MAY INTERVENE IN CASES CHALLENGING THEIR INITIATIVE. ............................................... 2

II.  PLAINTIFFS SUBMIT AN INCORRECT LEGAL BURDEN AND CITE TO INAPPLICABLE CASE LAW IN THEIR ATTEMPT TO DEFEAT PROPOSED INTERVENORS' SHOWING OF INADEQUATE REPRESENTATION. ................................... 4

A.   The Ninth Circuit Has Repeatedly Held that Proposed Intervenors Need Only Make A Minimal Showing of Inadequate Representation.5

B.   Plaintiffs Rely On Authority That Does Not Apply To The Facts And Issues Of The Present Case. ......................................... 7

III. PLAINTIFFS' OPPOSITION IS DOOMED BY THE FACT THAT DEFENDANTS ADMIT THEY WILL NOT DEFEND THE LAWSUIT ON THE MERITS. ............................................. 8

A.   Defendants Affirmatively State That They Will Not Defend The Constitutionality Of Measure B. ..................................... 8

IV.  BECAUSE DEFENDANTS EXPRESSLY REJECTED MEASURE B AND DECLINED TO DEFEND ITS VALIDITY, PROPOSED INTERVENORS MEET THE STANDARD OF PERMISSIVE INTERVENTION. ...................................... 10

V.   PLAINTIFFS' ARGUMENT REGARDING ARTICLE III STANDING FAILS, BECAUSE PROPOSED INTERVENORS NEED NOT MEET ARTICLE III STANDING REQUIREMENTS, AND MOREOVER, PROPOSED INTERVENORS HAVE IN FACT MET ARTICLE III STANDING REQUIREMENTS. ................................ 12

A.   The Ninth Circuit Does Not Require An Independent Showing Of Article III Standing For Proposed Intervenors At This Stage Of The Proceedings. .................................................. 12

B.   Proposed Intervenors Satisfy Article III Standing Implicitly, Because They Show A "Significantly Protectable Interest" Under Rule 24(a)(2). ..................................................................... 15

CONCLUSION..................................................................................... 17

**PROPOSED INTERVENORS' REPLY MEMORANDUM ISO MOTION TO INTERVENE**

The official proponents and campaign committee for Measure B, Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Proposed Intervenors"), submit the following Reply Memorandum in Support of their Petition to Intervene as defendants.

## INTRODUCTION

Proposed Intervenors' role in implementing and defending the underlying constitutionality of Measure B places them firmly within the standards for intervention as of right and permissive intervention.  In this case, Plaintiffs essentially concede three out of the four elements needed to fulfill mandatory intervention requirements—that is, timeliness of the petition to intervene, Proposed Intervenors' protectable interest, and the impact the disposition of this case would have on Proposed Intervenors' protectable interest.  Plaintiffs merely take issue with the fourth element – adequate representation – and submit that the very parties that rejected Measure B in the first place, The County of Los Angeles ("County") and Jonathan Fielding, along with the Los Angeles District Attorney (collectively "Defendants"), will adequately represent Proposed Intervenors' interests and defend Measure B with vigor.

Given that Defendants have expressly disavowed defending this lawsuit, this is quite a heavy lift.  Plaintiffs first base their position on misstating Proposed Intervenors' legal burden and citing to inapplicable case law.  They then try to demonstrate that Defendants support Measure B by relying on a single letter the County sent out to the adult film industry regarding Measure B, the Defendants' retention of private counsel, the Defendants satisfying their obligation to answer the Complaint in this case, and the County's ostensible decision not to completely ignore a law that was enacted by 57% of the voters in Los Angeles County.

To the contrary, it is undisputed that: (1) Defendants had the opportunity to adopt Measure B and expressly declined to do so; and (2) *Defendants will not defend the constitutionality of Measure B*.  Since all seven Counts of the Complaint involve constitutional questions and preemption, Plaintiffs undoubtedly fail to defeat Proposed Intervenors' undeniable showing that the Defendants will not adequately represent their interests.

Likewise, Plaintiffs essentially concede the threshold elements required to establish permissive intervention, and therefore have failed to defeat permissive intervention by Proposed Intervenors.  Plaintiffs have also failed to demonstrate that allowing Proposed Intervenors into the case would unreasonably delay resolution of the lawsuit or burden the Court or the parties.

Finally, Plaintiffs' last argument regarding Article III standing completely misses the mark.  The Ninth Circuit has expressly held that intervenors need not demonstrate Article III standing in order to intervene.  *See, e.g.*, *United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 521 (9th Cir. 1977), *rev'd sub nom. and vacated on other grounds*, *Bryant v. Yellen*, 447 U.S. 352 (1980).  In any event, Proposed Intervenors have shown that they do possess Article III standing in that they have a significantly protectable interest worthy of defending.

Accordingly, this Court should grant Proposed Intervenors' Motion to Intervene in this action.

## I.   NINTH CIRCUIT LAW IS CLEAR THAT PROPONENTS OF A BALLOT INITIATIVE MAY INTERVENE IN CASES CHALLENGING THEIR INITIATIVE.

It is not surprising that Plaintiffs fail to cite a single case where a California court denied the official proponents of a ballot initiative the right to intervene in a lawsuit challenging proponents' ballot initiative.  As stated at length in their Petition to Intervene, ballot initiative proponents have consistently been allowed to intervene in lawsuits challenging their enacted initiatives.  (Proposed Intervenors'

Motion to Intervene, Document 24, *passim*).  And if the law in California was not clear enough, the California Supreme Court took on this very issue and set forth a "published opinion containing an exhaustive review of the California Constitution and statutes," concluding that proponents have this right.  *See Perry v. Brown*, 671 F.3d 1052, 1072 (9th Cir. 2012) ("*Perry I")* (citing *Perry v. Brown*, 52 Cal. 4th 1116, 1127 (2011) ("*Perry II"*).

The Court in *Perry I* also took the time to explain the reasons behind California courts' liberal policy in favor of intervention: "Although other states may act differently, California's conferral upon proponents of the authority to represent the People's interest in the initiative measure they sponsored is consistent with that state's unparalleled commitment to the authority of the electorate: 'No other state in the nation carries the concept of initiatives as 'written in stone' to such lengths as does California." *See Perry I*, 671 F.3d at 1064 (citing *People v. Kelly*, 47 Cal. 4th 1008 (2010) (internal quotation marks omitted)).

Furthermore, if there were any question left as to the official proponents' right to intervene in a case challenging their ballot measure *where the government was willing to defend the case* (which is not even the case here as Defendants have declined), the Court in *Perry I* laid that to rest as well.  Despite the fact that the government in *Perry I* refused to defend the lawsuit, the Ninth Circuit specifically addressed situations where a government entity remains ready and willing to stay in the suit.  The Ninth Circuit explained the special circumstances of defending a challenged law where that law was adopted through a ballot initiative, and recognized the "realistic risk that the public officials may not defend the approved initiative measure 'with vigor.'"  *See Perry II,* 52 Cal. 4th at 1149-50.  Again emphasizing the importance of guarding "the people's right to exercise initiative power," the Court found that "because of the risk that public officials may not defend an initiative's validity with vigor, a court should ordinarily permit the

official proponents of an initiative measure to intervene in an action challenging the validity of the measure." *See id.*

In this case, it is not only clear that Defendants will not defend the merits of the constitutional and preemption claims at issue "with vigor," the Defendants admit they will not defend these claims *at all.*   Indeed, Defendants readily acknowledge that they "have **declined to defend the constitutionality of Measure B** and have taken a position of neutrality regarding whether Measure B is constitutional and/or preempted by California law."   (Defendants' Supplemental Statement of Non-Opposition to Proposed Intervenors' Motion to Intervene ("Supplemental Statement"), Document 35 at p. 1).   As Defendants even point out in their Supplemental Statement, their refusal to defend the constitutionality of Measure B places Proposed Intervenors squarely within the confines of *Perry II.* Therefore, under the indisputable current state of the law, Proposed Intervenors have authority to defend Measure B's validity because Defendants have declined to do so.

The law in this Circuit is clear.  In accordance with *Perry I* and *II* and a long line of Ninth Circuit precedent, Proposed Intervenors, as official proponents of Measure B, should unquestionably be granted leave to intervene as of right.

## II.   PLAINTIFFS SUBMIT AN INCORRECT LEGAL BURDEN AND CITE TO INAPPLICABLE CASE LAW IN THEIR ATTEMPT TO DEFEAT PROPOSED INTERVENORS' SHOWING OF INADEQUATE REPRESENTATION.

Plaintiffs essentially concede, because they must, that Proposed Intervenors satisfy the first three elements required for mandatory intervention.  Indeed, Plaintiffs merely dedicate one short footnote stating that they contend that Proposed Intervenors have not satisfied these other three elements, without offering any reason to support this notion.  (Plaintiffs' Opposition to Motion to

Intervene, Document 34, at p. 4 n.1).  Instead, Plaintiffs focus on the fourth

requirement—inadequate representation—by misstating the burden of proof for

this factor and citing to inapplicable case law.

### A. The Ninth Circuit Has Repeatedly Held that Proposed Intervenors Need Only Make A Minimal Showing of Inadequate Representation.

"[The Ninth Circuit] has consistently followed *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972), in holding that the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate and that the burden of making this showing is minimal."  *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (full citations omitted).  Even the cases Plaintiffs cite present this minimal standard.  *See Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) (holding that the burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests "may be" inadequate); *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002) (finding that intervenor made the minimal showing needed to establish that the City defendants' representation "may" be inadequate where "past dealings of the parties indicate a marked divergence of positions concerning key elements of the decree and underlying theories of liability.").

Even so, Plaintiffs claim that the Proposed Intervenors must make a "compelling showing" where the government is a party to the case.  However, Plaintiffs' proposed standard is not used in California courts where official proponents of a ballot initiative seek to intervene in order to defend the law that was previously rejected by the government defendant, and where that same government defendant refuses to defend the lawsuit.  Indeed, the leading case in

1  the Circuit, *Perry I*, which did address situations where the government remains in

2  the case where a ballot initiative was being challenged, makes no mention of an

3  obligation on part of the proposed intervenors to make a "compelling showing"

4  that they would not be adequately represented.  *See Perry I*, 671 F.3d 1052.

5  Further, the *Sagebrush Rebellion* and *Trbovich* cases involved government entities

6  on the same party side as intervenors, and intervenors were not required to make a

7  "compelling showing" to rebut a presumptions of adequate counsel.  *See*

8  *Sagebrush Rebellion,* 713 F.2d 525; *Trbovich,* 404 U.S. 528.

9      Finally, even if a heightened burden applied where government entities are

10 involved, this burden would not apply here where the government admits it does

11 not want to be involved.  Here, Defendants are only willing to participate on the

12 sidelines and "support efforts by Plaintiffs and the Proposed Intervenors to resolve

13 the important constitutional questions raised by Measure B."  (Supplemental

14 Statement, Document 35 at p. 2).  Thus, Defendants are not truly participating in

15 the case because they will not defend the lawsuit on the merits.

16     In Plaintiffs' next attempt to raise the bar for Proposed Intervenors, Plaintiffs

17 contend that where the intervenor and the existing party have the "same ultimate

18 objective," the Proposed Intervenor must make a compelling showing defeating a

19 presumption of adequacy.  (Plaintiffs' Opposition, Document 34 at 5-7).

20 Plaintiffs' argument requires little response.  There is no question that Proposed

21 Intervenors and Defendants do not share the same objective.

22     First, Defendants rejected Measure B when they had the opportunity to

23 adopt it.  Second, Defendants have specifically rejected presenting any defense to

24 the constitutionality of Measure B, which further affirms Proposed Intervenors'

25 belief that Defendants desire that Measure B get overturned.  Proposed Intervenors

26 have a fervent interest in Measure B being upheld by this Court.  Accordingly,

**PROPOSED INTERVENORS' REPLY MEMORANDUM ISO MOTION TO INTERVENE**

Defendants and Proposed Intervenors do not share "ultimate goals" requiring that Proposed Intervenors make a "compelling showing" to the contrary.

### B.   Plaintiffs Rely On Authority That Does Not Apply To The Facts And Issues Of The Present Case.

Finally, the cases Plaintiffs cite in their effort to show adequate representation by the Defendants in this case, are misplaced.  In *Arakaki*, 324 F.3d 1078, the proposed intervenors were not even proponents of an initiative; they were merely individuals who received benefits under an Act being challenged by taxpayers.  And Plaintiffs' reliance throughout their Opposition on *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) (which they cite as "*Perry v. Schwarzenegger*"), as a case where a public interest group was not permitted to intervene in an action challenging that proposition, is easily distinguishable because those intervenor applicants were not official proponents of the challenged law, and the official proponents had already intervened to defend the law at issue.

In particular, the proposed intervenor in *Perry v. Proposition 8 Official Proponents*, was the group Campaign for California Families, which was not an official sponsor or proponent of the challenged Proposition 8.  Plaintiffs neglect to mention that the Proposition 8 proponents, Official Proponents of Prop. 8 and ProtectMarriage.com, were earlier permitted to intervene as of right.  *See Perry v. Proposition 8 Official Proponents*, 587 F.3d at 949-50 (noting that district court allowed intervention by the Official Proponents of Prop. 8 and ProtectMarriage.com, a ballot committee under California law, so that they could defend the constitutionality of Proposition 8).

In addition, unlike here, in *Arakaki* and *Perry v. Proposition 8 Official Proponents,* the existing defendants did not reject the enacted statute at issue when they had the opportunity to adopt it.  In *Perry v. Proposition 8 Official Proponents*,

1   the official Proponents of the law at issue defended the case.  *See Perry v.*

2   *Proposition 8 Official Proponents*, 587 F.3d 947.  Obviously, the official

3   Proponents of Proposition 8 did not previously reject the law being challenged.  In

4   *Arakaki*, the government defending the action did not reject the Act being

5   challenged.  *See Arakaki*, 324 F.3d 1078.  In sum, the cases Plaintiffs rely upon to

6   support their notion that Proposed Intervenors are adequately represented by

7   Defendants are inapplicable and should be disregarded.

8

9   **III.   PLAINTIFFS' OPPOSITION IS DOOMED BY THE FACT THAT**

10   **DEFENDANTS ADMIT THEY WILL NOT DEFEND THE LAWSUIT ON THE MERITS.**

11

12         In any event, regardless of which standard is considered by the Court,

13   Proposed Intervenors have made a compelling showing that the Defendants will

14   not adequately represent their interests.

15       **A.   Defendants Affirmatively State That They Will Not Defend The**

16          **Constitutionality Of Measure B.**

17         While Proposed Intervenors need only show that the Defendants may not

18   adequately represent them, there is no doubt that Plaintiffs have made a compelling

19   showing that the Defendants will not adequately represent their interests.

20         Courts consider several factors in determining the adequacy of

21   representation, including: (1) whether the interest of a present party is such that it

22   will undoubtedly make all of Proposed Intervenors' arguments; (2) whether the

23   present party is capable and willing to make such arguments; and (3) whether

24   Proposed Intervenors would offer any necessary elements to the proceeding that

25   other parties would neglect.  *See Sagebrush Rebellion,* 713 F.2d at 528.

26         Defendants' Supplemental Statement makes this analysis quite

27   straightforward.  Defendants will <u>not</u> make Proposed Intervenors' arguments

28   because they will not defend the constitutionality of Measure B.  Proposed

Intervenors are prepared to defend Measure B as constitutional and not preempted by State law.  For example, Proposed Intervenors submit that Measure B does not contain a content-based restriction of speech-related conduct.  Further, Proposed Intervenors would argue that Measure B does not preempt state law because Measure B does not seek to enact an occupational health and safety standard but rather a public health standard applicable to film activity.  Defendants concede that they will not make these arguments, and certainly do not include any defenses to the merits of the constitutional claims in their affirmative defenses.  (Supplemental Statement, Document 35 at p. 1; Answer to Complaint, Document 21 at pp. 13-15).  Rather, Defendants suggest that Proposed Intervenors are necessary parties to litigate the constitutionality of Measure B.  (Supplemental Statement, Document 35 at p. 1; Answer to Complaint, Document 21 at pp. 13-14).

Finally, there is no question that Proposed Intervenors will add an extra element to the lawsuit *because* they will defend the constitutionality of Measure B, and no other party to the case will.  Quite simply, Defendants and Proposed Intervenors are not "on the same side" with the "same ultimate goal" as Plaintiffs contend.  (Plaintiffs' Opposition Brief, Document 34 at pp. 1, 7).  Indeed, as Plaintiffs admit in their Opposition Brief, a reason the Court in *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991).[1] found that intervenors were not adequately represented was because the government was not proceeding on the merits, and

---

[1] While Plaintiffs are correct that *Yniguez* was vacated, it was vacated on grounds unrelated to the issue of intervention, and therefore continues to offer viable Ninth Circuit authority with respect to rulings related to issues that were not up for review.  While a vacated appellate opinion may no longer be binding on other courts, the opinion remains persuasive authority on those points that were not directly reversed.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 646 (1979) (Stewart, J. dissenting); *see also Orhorhaghe v. Immigration & Naturalization Svc.*, 38 F.3d 488, 493 n.4 (9th Cir. 1994); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 856 (9th Cir. 2000) (following vacated opinion on point that was not reversed by the Supreme Court).

therefore "no party will be able to assert [the statute's] constitutionality." (Opposition Brief, Document 34 at p. 12-13).   Here, too, Defendants refuse to defend Plaintiffs' lawsuit on the merits, and therefore there is currently no party to defend the constitutionality of Measure B.  Proposed Intervenors' interest in upholding Measure B will not be supported by any existing party unless they are permitted to intervene in the case.  The Court should thus allow them to intervene under Rule 24(a).

## IV.   BECAUSE DEFENDANTS EXPRESSLY REJECTED MEASURE B AND DECLINED TO DEFEND ITS VALIDITY, PROPOSED INTERVENORS MEET THE STANDARD OF PERMISSIVE INTERVENTION.

Plaintiffs do not dispute that Proposed Intervenors meet the threshold requirements for permissive intervention: (1) independent grounds for jurisdiction; (2) timeliness; and (3) the applicant's claim or defense, and the main action, have a question of law or question of fact in common.  *See City of Los Angeles*, 288 F.3d at 403.  Despite these concessions, Plaintiffs once again urge this Court to deny Proposed Intervenors' motion because, they claim, Proposed Intervenors fail to show that they are not adequately represented by the Defendants.  (Plaintiffs' Opposition at p. 14-15).  Citing *Perry v. Proposition 8 Official Proponents*, 587 F.3d at 955, Plaintiffs contend that Proposed Intervenors and Defendants have "indistinguishable interests," and therefore, they should not be permitted to intervene pursuant to Rule 24(b).  Again, Plaintiffs are wrong.

For the reasons stated above, Proposed Intervenors' interests conflict with Defendants' interests.  The fact is, these same Defendants had opportunities to adopt Measure B and chose to reject it; a majority of the County Board of Supervisors expressly voted against adopting Measure B, and as a consequence, it was submitted to the voters of Los Angeles County.  *See* Elections Code § 9118.

Further, these same Defendants openly denounced Measure B as a waste of government resources and a "mockery" to try to enforce.  (Declaration of Michael Weinstein, Document 26, at ¶¶ 11-15).  And now that Defendants have an opportunity to defend the constitutionality of Measure B, they are explicitly refusing to do so.  The Defendants clearly have an interest in seeing Measure B overturned by the Court so that they do not have to enforce it.  While Defendants refuse to defend the constitutionality of Measure B, Proposed Intervenors are passionately committed to seeing Measure B upheld by the Court.  When one party wants something the other party does not, those interests are not aligned.  Clearly, the Proposed Intervenors' and Defendants' interests in Measure B are quite distinguishable.

And again, Plaintiffs' reliance on *Perry v. Proposition 8 Official Proponents* is misplaced because in that case the official proponents of the law at issue had already been allowed to intervene in the case as of right.  *See Perry v. Proposition 8 Official Proponents*, 587 F.3d at 949-50.  Such is not the case here, where currently there are no existing parties to defend Measure B.  Since Proposed Intervenors have met the requirements for intervention as of right, Plaintiffs' argument regarding permissive intervention is not well taken.

Plaintiffs further assert that granting Proposed Intervenors a right to intervene in this case will unduly delay or prejudice the adjudication of the original parties' rights.  Yet the Plaintiffs fail to demonstrate how Proposed Intervenors' participation would cause a delay.  Since Defendants will not defend the constitutionality of Measure B, they will not be propounding the same discovery or filing the same motions as Proposed Intervenors.  In addition, Proposed Intervenors are seeking entry into the case in its very beginning stages, and will meet whatever deadlines are imposed by the Court and cooperate with all Court directions.  Their participation will not cause any delay in this matter.

In sum, Proposed Intervenors satisfy all the requirements for permissive intervention. This Court should therefore grant their request to intervene.

## V.   PLAINTIFFS' ARGUMENT REGARDING ARTICLE III STANDING FAILS, BECAUSE PROPOSED INTERVENORS NEED NOT MEET ARTICLE III STANDING REQUIREMENTS, AND MOREOVER, PROPOSED INTERVENORS HAVE IN FACT MET ARTICLE III STANDING REQUIREMENTS.

Plaintiffs' contention that Proposed Intervenors should be denied intervention because they lack Article III standing, is frivolous and their arguments in this regard hold no water, for several reasons:  (1) the Ninth Circuit does not require that Proposed Intervenors show Article III standing in order to intervene at the outset of litigation; and (2) Proposed Intervenors satisfy Article III standing implicitly by demonstrating they have a "significantly protectable interest" under Rule 24(a)(2).  Furthermore, Proposed Intervenors' unique position as official proponents and sponsors of Measure B is analogous to that of the intervenors in *Perry I*, 671 F.3d 1052 where the Ninth Circuit affirmed the ability of Proposition 8 ballot measure proponents to defend the constitutionality of the proposition in federal court.

### A.   The Ninth Circuit Does Not Require An Independent Showing Of Article III Standing For Proposed Intervenors At This Stage Of The Proceedings.

Under well-established Ninth Circuit law, Article III standing requirements are not applicable to Proposed Intervenors.  The reason for this is that the Ninth Circuit has not required that proposed intervenors independently demonstrate Article III standing where they seek to intervene at the outset of the litigation.  *See Pickup v. Brown*, No. 2:12-CV-02497, 2012 U.S. Dist. LEXIS 172027, at *3-4 (E.D. Cal. Dec. 4, 2012) ("While acknowledging that some circuits require that

intervenors satisfy standing requirements, the Ninth Circuit has not yet incorporated this factor into its test for intervention as of right.") (citing *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 n.2 (9th Cir. 2009)).

Though Plaintiffs are correct that a circuit court split exists as to whether a proposed intervenor must establish Article III standing independently of other parties, and that the United States Supreme Court has not yet explicitly resolved this issue, Plaintiffs conveniently gloss over the fact that courts within the Ninth Circuit do not require proposed intervenors to demonstrate Article III standing. *See, e.g.*, *United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 521 (9th Cir. 1977), *rev'd sub nom. and vacated on other grounds*, *Bryant v. Yellen*, 447 U.S. 352 (1980) ("A party seeking to intervene pursuant to Rule 24, Federal Rules of Civil Procedure, need not possess the standing necessary to initiate the lawsuit.") (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972); *Yniguez*, 939 F.2d at 731 ("In order for an individual to intervene in ongoing litigation between other parties, he need only meet the *Sagebrush Rebellion* [Rule 24(a)(2)] criteria."); *Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 845-46 (9th Cir. 2003) (noting that intervenor "did not need to meet Article III standing requirements to intervene") (internal citations omitted); *Flores v. Arizona*, 516 F.3d 1140, 1165 (9th Cir. 2008), *rev'd and remanded on other grounds*, *Horne v. Flores*, 557 U.S. 433 (2009) ("Parties need not have standing to intervene in our circuit . . .") (internal citations omitted).

Plaintiffs cite to no opinion from a court within the Ninth Circuit that proposed intervenors must meet Article III standing requirements, because none exist.  Though Plaintiffs rely on caselaw from circuits outside of the Ninth Circuit, ostensibly showing that Proposed Intervenors must show Article III standing to litigate in federal court, these cases are clearly distinguishable from the instant case, as they do not involve a situation like the one here, where Defendants expressly declined the opportunity to adopt a legislative measure, and subsequently

refused to defend the measure in court.  (Plaintiffs' Opposition to Motion to Intervene, Document 34, at p. 16-18 (citing, for example, *Building & Const. Trades Dep't v. Reich*, 40 F.3d 1275 (D.C. Cir. 1994) (finding that proposed intervenor trade association's interests in wage and hour rule were adequately represented by the Secretary of Labor, who defended interpretation of rule).) Proposed Intervenors need not show Article III standing.[2]

Moreover, where proposed intervenors are the official backers of a ballot initiative being challenged by a lawsuit, the Ninth Circuit does not require that these proposed intervenors demonstrate the requirements of Article III standing. *See, e.g.*, *Sagebrush Rebellion*, 713 F.2d at 527 (without requiring that proposed intervenors demonstrate Article III standing, holding that a "public interest group [is] entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported"); *Doe v. Harris*, No. C12-5713, 2013 U.S. Dist. LEXIS 4215, at *5-6 (N.D. Cal. Jan. 10, 2013) (proponents of ballot proposition "are not required to demonstrate that they have independent Article III standing in order to be permitted to intervene in this action") (internal citations omitted).  This body of case law further demonstrates why Proposed Intervenors – as the official

_____

[2] While some Ninth Circuit opinions indicate that a proposed intervenor must show Article III standing if seeking to enter a case during post-judgment appeal, this does not affect Proposed Intervenors' ability to intervene here, at the outset of litigation. *See, e.g.*, *Yniguez*, 939 F.2d at 731 ("However, where no party appeals, the 'case or controversy' requirement of Article III also qualifies an applicant's right to intervene post-judgment.") (internal citations omitted).  Further, the United States Supreme Court also differentiates between standing required for intervention while litigation is ongoing and standing required during appeal. *See Diamond v. Charles*, 476 U.S. 54, 68 (1986) (noting that proposed intervenor could "piggyback" on the State's standing and intervene in the appeal, if the State chose to appeal as well).  Plaintiffs concede that there is a difference between the standing required for intervention on appeal, as opposed to at the outset of litigation.  (Plaintiffs Opposition, Document 34 at 16).

**PROPOSED INTERVENORS' REPLY MEMORANDUM ISO MOTION TO INTERVENE**

proponents and campaign committee of Measure B – need not show Article III standing in order to intervene here.

### B. Proposed Intervenors Satisfy Article III Standing Implicitly, Because They Show A "Significantly Protectable Interest" Under Rule 24(a)(2).

Even assuming that Article III standing is required, Proposed Intervenors satisfy it by demonstrating a "significantly protectable interest" as required under Ninth Circuit standards for intervention as of right under Rule 24(a)(2).  The Ninth Circuit has long held that the requirement for Article III standing is "implicitly addressed" by the Rule 24(a)(2) requirement of asserting a "significant protectable interest."  *See Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989), *overruled on other grounds*, *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (internal citations omitted) ("declin[ing] to incorporate an independent standing inquiry into [Ninth] [C]ircuit's intervention test.  However, the standing requirement is at least implicitly addressed by our requirement that the applicant must 'assert [] an interest relating to the property or transaction which is the subject of the action.'"); *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing *Portland*).[3]

As the official Measure B proponents and campaign committee, Proposed Intervenors have demonstrated such a "significantly protectable interest."  The Ninth Circuit and district courts within it have long found that proponents of legislation or regulations sufficiently demonstrate a "significantly protectable interest" for purposes of Rule 24(a)(2) intervention as of right.  *See, e.g., Idaho*

---

[3] Article III standing requires that a party show they have suffered an "injury in fact – an invasion of a legally protected interest" that is "concrete and particularized, and actual or imminent."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1991).

*Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (permitting intervention after finding that conservation groups had an interest in challenge to listing of a snail under the Endangered Species Act, where they were active in getting the snail listed) (internal citations omitted); *Prete v. Bradbury*, 438 F.3d 949, 954-55 (9th Cir. 2006) (concluding that chief petitioner for measure, and public interest group, as "main supporter of the measure," had a "significant protectable interest" and therefore could intervene); *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV-09-1909, 2009 U.S. Dist. LEXIS 113948, at *10-11, 16 (D. Ariz. Nov. 24, 2009) (permitting intervention by public interest group that had actively supported legislation at issue).

Further, *Perry I* recently affirmed that "through the proponents of ballot measures, the People of California must be allowed to defend in federal courts, including on appeal, the validity of their use of the initiative power." *Perry I*, 671 F.3d at 1064 ("[T]he California Constitution and Elections Code endow the official sponsors of an initiative measure with the authority to represent the State's interest in establishing the validity of a measure enacted by the voters, when State's elected leaders refuse to do so."). Therefore, because Defendants have stated that they "are not defending the constitutionality of Measure B" (Supplemental Statement, Document 35 at 1), Proposed Intervenors possess the authority to defend Measure B.[4]

---

[4] It appears that by directing this Court to case law from other circuits, Plaintiffs hope this Court will ignore the relevant holding in *Perry I*. However, these other courts' decisions are of no import here, and cannot override the *Perry I* court's reasoning, which directly applies to Proposed Intervenors as official proponents and campaign committee for Measure B: "All that matters, for federal standing purposes, is that the People have an interest in the validity of Proposition 8 and that, under California law, Proponents are authorized to represent the People's interest."

**PROPOSED INTERVENORS' REPLY MEMORANDUM ISO MOTION TO INTERVENE**

This *Perry I* opinion also highlights how Plaintiffs erroneously rely on *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65-66 (1997), for the proposition that an intervenor must "independently" fulfill Article III standing requirements.   *Arizonans* is completely distinguishable from the instant case, and the Ninth Circuit has subsequently recognized the important differences between applicable California and Arizona law.  "[U]nlike in *Arizonans*, we do know that California law confers on 'initiative sponsors' the authority 'to defend, in lieu of public officials, the constitutionality of initiatives made law of the State." *Perry I*, 671 F.3d at 1072 (noting that *Arizonans* Court based its holding on the fact that "[a]bsent some conferral of authority by state law [on proponents] . . . proponents of a ballot measure would not be able to appeal a decision striking down the initiative they sponsored.").  Further, Plaintiffs cannot rely on *Arizonans* for the observation that the Court has "never 'identified initiative proponents as Article III-qualified defenders of the measures they advocated'" (Plaintiffs' Opposition, Document 34 at 16), because this is untrue after the Ninth Circuit's decision in *Perry I*.

For all of the reasons set forth above, Proposed Intervenors need not demonstrate Article III standing in order to intervene in this action, and even if they do, they have met any such standing requirement by showing a "significantly protectable interest" under Rule 24(a)(2).  And further, the Ninth Circuit concluded in *Perry I* that official proponents of Proposition 8, similarly positioned to Proposed Intervenors here, could defend the constitutionality of that proposition in federal court.

## CONCLUSION

Proposed Intervenors have a significant, protectable interest in the subject matter of this action—the constitutionality of Measure B.  That interest might be impaired by the outcome of this action, and is not being represented <u>at all</u> by the

**PROPOSED INTERVENORS' REPLY MEMORANDUM ISO MOTION TO INTERVENE**

existing parties.  Therefore, Proposed Intervenors satisfy the requirements for intervention as of right.  Proposed Intervenors also meet the standards of permissive intervention.  While a showing of Article III standing is not required under the circumstances of this case, Proposed Intervenors have demonstrated that they meet those standards as well.  For these reasons, Proposed Intervenors' Motion to Intervene should be granted.

Respectfully Submitted,

DATED:  April 1, 2013                          AIDS HEALTHCARE FOUNDATION


By:  /s/ Samantha R. Azulay
     TOM MYERS
     SAMANTHA R. AZULAY
     CHRISTINA YANG
     *Attorneys for Proposed Intervenors*