1  Tom Myers (SBN 176008)
   E-Mail: tom.myers@aidshealth.org
2  Samantha R. Azulay (SBN 283424)
   E-Mail: samantha.azulay@aidshealth.org
3
   Christina Yang (SBN 266363)
4  E-Mail: christina.yang@aidshealth.org
5  AIDS Healthcare Foundation
   6255 W. Sunset Blvd., 21st FL
6  Los Angeles, CA 90028
7  Phone: 323-860-5200
   Fax: 323-467-8450
8  *Attorneys for Intervenors*
9              UNITED STATES DISTRICT COURT
10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11  VIVID ENTERTAINMENT, LLC;          )  Case No.:  13-CV-00190-DDP-AGR
12  CALIFA PRODUCTIONS, INC.;          )  **INTERVENORS' NOTICE OF**
    JANE DOE a/k/a Kayden Kross; and   )  **MOTION AND MOTION TO**
13  JOHN DOE a/k/a Logan Pierce,       )  **DISMISS PLAINTIFFS'**
14                                     )  **COMPLAINT PURSUANT TO**
                                       )  **FEDERAL RULE OF CIVIL**
15             Plaintiffs,             )  **PROCEDURE 12(B)(6);**
                                       )  **MEMORANDUM OF POINTS AND**
16        vs.                          )  **AUTHORITIES; DECLARATION**
                                       )  **OF SAMANTHA AZULAY IN**
17  JONATHAN FIELDING, Director of     )  **SUPPORT THEREOF**
18  Los Angeles County Department of   )
    Public Health, JACKIE LACEY, Los   )  Date:       July 1, 2013
19  Angeles County District Attorney, and )  Time:       10:00 a.m.
20  COUNTY OF LOS ANGELES,             )  Judge:      Dean D. Pregerson
                                       )  Location:   Courtroom 3
21             Defendants, and         )
22                                     )
    MICHAEL WEINSTEIN, MARIJANE        )
23  JACKSON, ARLETTE DE LA CRUZ,       )
    MARK MCGRATH, WHITNEY              )
24  ENGERAN, and the CAMPAIGN          )
25  COMMITTEE YES ON B, MAJOR          )
    FUNDING BY THE AIDS                )
26  HEALTHCARE FOUNDATION              )
27                                     )
28             Defendants-Intervenors. )

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **July 1, 2013, at 10:00 a.m.**, or as soon thereafter as the matter may be heard, before the Honorable Dean D. Pregerson in Courtroom 3, United States District Court for the Central District of California, 312 N. Spring Street, Los Angeles, California 90012, Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Intervenors"), will move the Court to dismiss the Complaint filed by Vivid Entertainment, LLC Califa Productions, Inc., Jane Doe a/k/a Kayden Kross and John Doe a/k/a Logan Pierce (collectively "Plaintiffs"). This Motion is made pursuant to Fed. R. Civ. Proc. 12(b)(6) and is based on the following grounds:

Intervenors move to dismiss all seven counts of the Complaint because Plaintiffs fail to allege an injury in fact, and as a result, lack standing to assert their claims.

Plaintiffs' First Claim against Defendants under 42 U.S.C. § 1983 ("Section 1983") for violation of the First Amendment by Subjecting Freedom of Expression to a Referendum should be dismissed because: (i) there is no restraint on speech; (ii) any effect on speech is a valid content-neutral time, place, and manner regulation; and (iii) Plaintiffs' contention that a referendum cannot regulate speech is not supported by law.

Plaintiffs' Second Claim against Defendants under Section 1983 for violation of the First Amendment through prior restraint should be dismissed because: (i) there is no restraint on speech; (ii) any effect on speech is a valid content-neutral time, place, and manner regulation; and (iii) Measure B does not place unbridled discretion in the hands of County officials.

1        Plaintiffs' Third Claim against Defendants under Section 1983 for violation

2   of the First Amendment through fees that impose a prior restraint and that are not

3   limited to the expense incident to administration of permitting and enforcement

4   should be dismissed because: (i) there is no restraint on speech; (ii) any effect on

5   speech is a valid content-neutral time, place, and manner regulation; (iii) Measure

6   B does not place unbridled discretion in the hands of County officials; and (iv)

7   Measure B's permitting fees are proportionate to its administration costs as the

8   plain language of Measure B requires that fees be set in an amount sufficient to

9   provide for the cost of any necessary enforcement.

10       Plaintiffs' Fourth Claim against Defendants under Section 1983 based on

11  terms and provisions that are unconstitutionally vague should be dismissed

12  because: (i) Measure B is facially understandable to people of ordinary

13  intelligence; and (ii) and does not leave open a real possibility of discriminatory

14  enforcement.

15       Plaintiffs' Fifth Claim against Defendants under Section 1983 based on

16  unconstitutional over- and under-inclusiveness should be dismissed because: (i)

17  Measure B is not overbroad because it does not create a substantial and real risk of

18  unconstitutional application of the law to parties not before the Court; (ii) Measure

19  B is narrowly tailored to meet a significant government interest and is not required

20  to employ the least restrictive means of achieving its goals; (iii) Measure B's

21  requirements are the least restrictive means of achieving its public health goals;

22  (iv) Measure B's application to commercial speech is not under-inclusive because

23  commercial speech is not afforded the same level of protection as non-commercial

24  speech; and (v) Measure B is not under-inclusive because it only applies to the

25  type of business that creates the public health problem for which it is concerned.

26       Plaintiffs' Sixth Claim against Defendants under Section 1983 based on

27  violations of due process because: (i) Measure B satisfies due process requirements

28  because it provides sufficient notice of what is prohibited activity, allows Plaintiffs

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  time to comply, a cure period for noncompliance, a hearing and a means to appeal

2  hearing decisions; and (ii) Measure B does not subject Plaintiffs to unreasonable

3  searches and seizures because inspections are commonplace in regulated industries

4  and seizures are warranted when government officials have probable cause to

5  believe that the items are evidence of a crime or violation of law.

6       Plaintiffs' Seventh Claim against Defendants based on preemption by state

7  law should be dismissed because: (i) the State does not expressly limit local

8  regulation in the workplace, and in fact expressly allows local government to adopt

9  and enforce higher standards related to occupational safety and health for

10  employees; and (ii) Measure B does not duplicate, contradict or enter an area fully

11  occupied by the state.

12       Pursuant to Local Rule 7-3, Intervenors' counsel timely met and conferred

13  with Plaintiffs' counsel and Defendants' counsel, and discussed the grounds for

14  this Motion on May 2, 2013.  The parties were unable to resolve their differences,

15  and Intervenors, therefore filed this Motion. (Declaration of Samantha R. Azulay at

16  ¶¶ 3-4).

17       This motion is based on this Notice of Motion, the attached Memorandum of

18  Points and Authorities, the [Proposed] Order submitted concurrently herewith, all

19  of the pleadings, files, and records in this proceeding, all matters of which the

20  Court may take judicial notice, and any argument or evidence that may be

21  presented to or considered by the Court prior to its ruling.

22                                    Respectfully Submitted,

23

24  DATED:  May 10, 2013            INTERVENORS

25

26                            By: /s/ Samantha R. Azulay
                                   _____
27                                 TOM MYERS
                                   SAMANTHA R. AZULAY
28                                 CHRISTINA YANG
                                   *Attorneys for Intervenors*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

LEGAL STANDARD .......................................................................... 3

ARGUMENT ........................................................................................ 3

I.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS
CHALLENGING MEASURE B ......................................................... 3

II.   MEASURE B DOES NOT VIOLATE THE FIRST AMENDMENT BY
SUBJECTING FREEDOM OF SPEECH TO A REFERENDUM ................. 5

    A. Measure B Does Not Impose Any Restraint On Speech Or
Expression .................................................................................. 5

    B.   To The Extent It Effects Speech At All, Measure B Is A Valid
Content Neutral Time, Place and Manner Restriction ............................ 6

        1.   Measure B is Justified Without Reference To Speech ............... 7

        2.   Measure B Promotes A Significant Governmental Interest ...... 8

        3.   Measure B Is Narrowly Tailored To Advance Its Goal ........... 10

        4.   Ample Alternative Channels for Communication ................... 11

    C.   Plaintiffs' Allegations That First Amendment Rights May Not Be
Limited By Referendum Is Not Supported By Law .......................... 11

III.  MEASURE B'S PERMITTING AND BARRIER PROTECTION
REQUIREMENTS ARE NOT UNLAWFUL PRIOR RESTRAINTS ............ 12

    A. Measure B Is Not A Prior Restraint Because It Does Not Impose Any
Restraint On Speech Or Expression, And If Imposes Any Limitation,
It Is Content-Neutral Time, Place, And Manner Regulation ............ 13

    B. Measure B Does Not Place Unbridled Discretion In The Hands Of
County Officials ........................................................................ 14

    C. The Exercise Of Discretion In The Implementation Of Measure B
Does Not Constitute A Prior Restraint ........................................ 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.    MEASURE B'S PERMIT FEES ARE NOT AN UNLAWFUL PRIOR
RESTRAINT ................................................................................ 15

V.    MEASURE B IS NOT UNCONSTITUTIONALY VAGUE ................. 16

   A. Measure B Is Facially Understandable To People Of Ordinary
     Intelligence And Does Not Leave Open A Real Possibility of
     Discriminatory Enforcement ................................................ 16

VI.    MEASURE B IS NOT OVERBROAD OR UNDER-INCLUSIVE ...... 16

   A. Measure B Is Not Overbroad Because It Does Not Create A
     Substantial And Real Risk Of Unconstitutional Application Of The
     Law ..................................................................................... 16

   B. Measure B Is Not Overbroad Even If It Does Not Use The Least
     Restrictive Means Of Achieving Its Stated Purpose ......... 17

   C. Measure B's Application To Commercial Speech Is Not Under-
     Inclusive Because Commercial Speech Is Not Afforded The Same
     Level Of Protection As Non-Commercial Speech. ............ 17

   D. Measure B Is Not Under-Inclusive Because It Only Applies To The
     Category of Businesses That Create The Public Health Problem It
     Seeks To Diminish. ........................................................... 18

VII.    MEASURE B DOES NOT VIOLATE PLAINTIFFS' RIGHTS TO
DUE PROCESS OF LAW ............................................................ 19

   A. Measure B Complies With Due Process Considerations. ... 19

   B. Measure B Does Not Subject Plaintiffs To Unreasonable Searches
     and     Seizures ................................................................ 20

VIII.  CAL/OSHA STANDARDS DO NOT PREEMPT MEASURE B ........ 21

   A. The State Does Not Expressly Limit Local Regulation In The
     Workplace, And In Fact Expressly Allows Local Government To
     Adopt And Enforce Higher Standards Related To Occupational
     Safety And Health For Employees. ................................... 21

   B. Measure B Is Not Preempted By State Law Because Measure B Does
     Not Duplicate, Contradict Or Enter An Area Fully Occupied By The
     State. ................................................................................. 23

      1. Different Jurisdictions. ............................................. 23

      2. Different Operations. ................................................ 23

      3. Different Purposes. ................................................... 24

CONCLUSION ................................................................................ 25

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alexander v. U.S,*
    509 U.S. 544 (1993) ................................................................. 13

*Am. Mini Theatres,*
    427 U.S.at 70 ........................................................................... 18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................... 3

*Board of Regents of the Univ. of Wisconsin Sys. v. Southworth,*
    529 U.S. 217 (2000) ................................................................. 12

*Board of Trustees of State University of New York v. Fox,*
    492 U.S. 469 (1989) ................................................................. 18

*Buckley v. Am. Constitutional Law Found.,*
    525 U.S. 182 (1999) ................................................................. 12

*Central Hudson Gas & Elec. V. Public Service Comm'n of New York,*
    447 U.S. 557 (1980) ................................................................. 18

*City of Cincinnati v. Discovery Network, Inc.,*
    507 U.S. 410 (1993) ................................................................... 7

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986) ............................................ 9, 10, 13, 18, 19

*Clark v. City of Lakewood,*
    259 F.3d 996 (9th Cir. 2001) ..................................................... 9

*Clark v. Community for Creative Non-Violence,*
    468 U.S. 288 (1984) ................................................................... 9

*Conley v. Gibson,*
    355 U.S. 41 (1957) ..................................................................... 3

*Connally v. General Constr. Co.,*
    269 U.S. 385 (1926) ................................................................. 16

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Davidovich v. City of San Diego,*
   2011 U.S. Dist. LEXIS 138319 at *9-10 (S.D. Cal, Dec. 1, 2011)...................... 9

*Foti v. City of Menlo Park,*
   146 F.3d 629 (9th Cir. 1998) ........................................................... 11

*Freedman v. Maryland,*
   380 U.S. 51 (1965) .......................................................................... 13

*G.K Ltd Travel v. Oswego,*
   436 F.3d 1064 (9th Cir. 2006) ...................................................... *passim*

*Gilles v. Davis,*
   427 F.3d 197 (3rd Cir. 2005) ............................................................ 4

*Harnish v. Manatee County,*
   783 F.2d 1535 (11th Cir. 1986) ................................................. 10, 11

*Hill v. Colorado,*
   530 U.S. 703 (2000) ....................................................................... 16

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 560 (1991) ................................................................. 4

*McMichael v. County of Napa,*
   709 F.2d 1268, 1269 (9th Cir.1983)................................................. 3, 4

*Members of the City Council v. Taxpayers for Vincent,*
   466 U.S. 789 (1984) ................................................................. 11, 17

*Menotti v. City of Seattle,*
   409 F.3d 1113 (9th Cir. 2005)........................................................... 8

*Nat'l Endowment for the Arts v. Finley,*
   524 U.S. 569 (1998) ....................................................................... 16

*S.D. Myers, Inc. v. City & County of San Francisco,*
   336 F.3d 1174 (9th Cir. 2003)......................................................... 23

*Santa Monica Food Not Bombs v. City of Santa Monica,*
   450 F.3d 1022 (9th Cir. 2006)..................................................... 5, 23

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Schenck v. Pro-Choice Network,*
   519 U.S. 357 (1997) ........................................................................... 9

*Thomas v. Chicago Park District,*
   534 U.S. 316 (2002) ...................................................................... 13, 14

*Turner Broad. Sys. V. FCC,*
   512 U.S. 622 (1994) ........................................................................... 7

*Ward v. Rock Against Racism,*
   491 U.S. 781(1989) ..................................................... 7, 13, 14, 15

*Warden, Md. Penitentiary v. Hayden,*
   387 U.S. 294 (1967) ......................................................................... 20

*West Virginia State Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943) ......................................................................... 12

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ........................................................................... 4

**STATE CASES**

*Deluxe Theater & Bookstore v. City of San Diego,*
   175 Cal. App. 3d 980 (1985) ........................................................... 9

*DeVita v. County of Napa*
   9 Cal. 4th 763 (1995) ..................................................................... 21

*Krontz v. City of San Diego,*
   136 Cal. App. 4th 1126 (2006) ................................................. 13, 19

*Loska v. Superior Court,*
   188 Cal. App. 3rd 569 (1986) ......................................................... 18

*People v. White,*
   259 Cal. App. 2d Supp. 936(1968) ............................................... 20

*Petrillo v. Bay Area Rapid Transit Dist.,*
   197 Cal. App. 3d 798 (1988) ......................................................... 19

*Sherwin-Williams Co. v. City of Los Angeles*,
 4 Cal. 4th 893 (1993) ...................................................................... 23

**STATE AND LOCAL STATUTES**

California Code of Regulations Title 8......................................................... 24

California Code of Regulations Title 8, Section 5193 ............................. 21

California Fire Code § 4801 ............................................................................ 6

California Labor Code § 144 ....................................................................... 22

California Labor Code § 6307 ............................................................... 23, 24

California Labor Code § 6316 ....................................................................... 22

California Labor Code § 6317 and 6319 ..................................................... 23

California Labor Code Section 144.7 ........................................................ 21

California Labor Code Sections 140...................................................... 21, 23

Los Angeles County Code § 22.56.1830 ..................................................... 6

Los Angeles County Code Title 11, Division 1, Chapter 11.39 ....................*passim*

Los Angeles County Code, Title 32, § 101.1 .............................................. 6

**FEDERAL STATUTES**

42 United States Code § 1983 ........................................................................ 1

**FEDERAL RULES**

Federal Rules of Civil Procedure 8(a) ......................................................... 3

Federal Rules of Civil Procedure 8(e) ......................................................... 3

Federal Rules of Civil Procedure 12(b)(6) .................................................. 3

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs allege six claims under 42 U.S.C. § 1983 and one state preemption claim in their Complaint seeking to invalidate the Safer Sex in the Adult Film Industry Act, Title 11, Division 1, Chapter 11.39 of the Los Angeles County Code ("Measure B"). Plaintiffs assert that Measure B restricts their artistic expression, requires permits that are unreasonably expensive, grants too much discretion to administrative officials in the permitting and enforcement process, offers insufficient procedural safeguards in resolving disputes, that various provisions are vague and over-inclusive and under-inclusive, and that Measure B improperly encroaches on the State's jurisdiction over safety standards on an adult film set.

Drawing the most strained inferences from the allegations, Plaintiffs' presumed theories are: (1) Measure B inhibits their desire to freely express unprotected sex in the actual making of the film in order to realize their artistic vision; (2) performers are consenting adults and may choose to have sex in the workplace in the manner in which they please; (3) that the adult film industry takes steps to protect its performers so no one else should protect them; and (4) that the County does not have the right to require workplace safety measures within its geographic boundaries because Cal/OSHA does that, and Cal/OSHA already requires condoms to be used on set. Not one of these theories is recognized by courts as a plausible cause of action.

Plaintiffs' Complaint almost entirely rests on their contention that Measure B inhibits their ability to freely speak and express themselves. Notably absent from the Complaint, however, are any facts to support this notion that speech or expression are restrained. Nowhere does Measure B, which is attached to the Complaint, contain a restraint of speech-related conduct or otherwise restrict the content of what may be shown in the final adult films Plaintiffs distribute; it merely sets forth workplace safety measures that must be followed prior to and

during the actual production of these films, namely to: (1) get a public health permit; (2) obtain health training; (3) post the public health permit on sets; and (4) use condoms for vaginal and anal sex. *To be clear, Measure B does not require that condoms or other safety measures appear in the final product or film.*

Perhaps more importantly, Plaintiffs fail to allege that they applied for a film permit, were denied a film permit, or were penalized for failing to comply with Measure B. Plaintiffs also fail to allege that Measure B is actually being enforced at all by the County. Such deficiencies in the Complaint are fatal to Plaintiffs' claims as they cannot establish the requisite injury in fact to demonstrate Article III standing. On this ground alone, the Complaint should be dismissed.

Further, even if the allegations in Plaintiffs' Complaint adequately allege that Measure B affects speech, Counts I through VI of Plaintiffs' Complaint should still be dismissed because, as more fully explained below, Measure B contains content-neutral time, place and manner provisions, which are narrowly tailored to advance significant governmental interests, and that leave open ample alternative channels of communication. Plaintiffs challenge an assortment of Measure B's provisions, none of which regulate on the basis of the ideas or views or expressions of the films themselves. Because the challenged regulations, as alleged in the Complaint, are content-neutral, are supported in the express language of Measure B by the significant government interest of protecting the public health, are narrowly tailored to achieving those public health goals, and leave open ample alternative channels for Plaintiffs to communicate their message by allowing Plaintiffs to show whatever content these please in the final product, Measure B, is constitutional.

Further, the facts alleged in the Complaint do not lend any support to Plaintiffs' contentions that Measure B acts as a prior restraint on speech, or allows County officials to exercise unbridled discretion in making decisions. The

language of Measure B, rather, enunciates specific and objective standards by which it is to be enforced.

Intervenors respectfully request that the Court grant their Motion to Dismiss Counts I through VII of the Complaint.

## LEGAL STANDARD

Plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957).

However, in *Twombly*, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Twombly*, 550 U.S. at 561 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." *Id*. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS CHALLENGING MEASURE B.

As an initial matter, Plaintiffs fail to establish standing here. "Standing is a threshold question in every case before a federal court." *McMichael*

1
2
3
4

*v. County of Napa*, 709 F.2d 1268, 1269 (9th Cir.1983).  Before Plaintiffs may invoke the judicial process they must show "'such a personal stake in the outcome of the controversy as to assure the concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends . . ..'" *Id.*

5
6
7
8
9
10
11
12

To meet this constitutional burden, Plaintiffs must clearly demonstrate that they have suffered an "injury in fact – an invasion of a legally protected interest" that is "concrete and particularized, and actual or imminent." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1991); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").  Plaintiffs lack standing because they have failed to show that Measure B's provisions of which they complain have injured them in any legally cognizable way.

13
14
15
16
17
18

In *Gilles v. Davis*, 427 F.3d 197 (3rd Cir. 2005), Plaintiffs challenged a university permit policy alleging that it was viewpoint based and standardless, vesting unbridled discretion in university officials.  The Court held that Plaintiffs did not have standing to assert a claim challenging the permitting scheme because they never applied for permits.  *Gilles*, 427 F.3d at 208.

19
20
21
22
23
24
25
26
27
28

In this case, Plaintiffs offer only conclusory and speculative allegations of the injuries they purportedly suffer because of Measure B.  Plaintiffs do not even allege that they applied for a film permit under Measure B, that they were denied a permit, or that they were cited for violating Measure B for failure to obtain a permit.  In fact, Plaintiffs do not even allege that the County is actually enforcing Measure B.  Instead, they repeatedly state that "Defendants . . . have threatened to and will enforce and implement the challenged provisions . . .." (Complaint at ¶¶ 55, 61, 76, 89, 97).  In other words, Plaintiffs fail to allege any concrete, particularized, actual or imminent injury that stems from the enforcement of Measure B.  Because Plaintiffs fail to establish Article III standing, their

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Complaint should be dismissed in its entirety.

## II.    MEASURE B DOES NOT VIOLATE THE FIRST AMENDMENT BY SUBJECTING FREEDOM OF SPEECH TO A REFERENDUM.

### A. Measure B Does Not Impose Any Restraint On Speech Or Expression.

Plaintiffs allege in Count I of their Complaint that (1) their freedom of expression is inhibited by Measure B in that condoms are required to be worn when filming acts of sexual intercourse; and (2) that a voter referendum may not act to limit speech or expression. Even if all factual allegations are construed in the light most favorable to Plaintiffs, they are still wrong on both counts.

First, conspicuously missing from the Complaint are any allegations to demonstrate how Measure B regulates the final content of the films, as Measure B in no way mandates the content or viewpoint of any film. Moreover, as **Plaintiffs admit that they are already required under existing state law to use barrier protection when filming such acts** (Complaint at ¶¶ 5, 32-35, 101), it is unclear exactly what they are complaining about. For this reason alone, Plaintiffs entire Complaint should be dismissed. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006) ("Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies.").

Further, Plaintiffs fail to allege any facts to show what content they are restricted from expressing. *Nowhere in Measure B does it say that condoms are required to be seen in the final product or film that Plaintiffs create and sell.* Measure B simply sets forth measures to protect actors and actresses who make

adult films from contracting and/or transmitting HIV and other sexually transmitted diseases ("STDs") while in the workplace making these films (and, as a consequence, spreading these diseases to other citizens of Los Angeles County).

In this sense, Measure B is no different than any of the other numerous safety regulations required in the making of any type of film—such as safety regulations for stunts and special effects, fire codes, wage and hour laws, and child labor laws.[1]  For example, filmmakers may not kill actors to express the idea that someone dies in the film, or blow up buildings to show that this authentically occurred.  Measure B, like these rules regulating film production, does not regulate how the final cut must appear, but rather concerns only the safety on the film set and the well-being of the people both on and off the set.

In particular, during the making of adult films, workers may be exposed to blood, semen, and other fluids that contain disease.  In other workplaces where such exposure could occur, the workers—an EMT, physician, or dentist for example—are required to wear gloves or other protective gear.  All Measure B does is ensure that these same common sense requirements apply to a film set.

**B.  To The Extent It Effects Speech At All, Measure B Is A Valid Content-Neutral Time, Place and Manner Restriction.**

Even assuming Measure B has some impact on speech, it is a classic "secondary effects" regulation.  A "government may impose reasonable restrictions

---

[1]  *See e.g.*, Los Angeles County Code, Title 32, § 101.1 *et seq.* ("Los Angeles Fire Code") (requiring, *inter alia*, the obtaining of a permit from fire code officials for use of pyrotechnic special effects, and employment of fire safety officers at filmmaker's expense in certain hazardous circumstances); Cal. Fire Code § 4801 *et seq.* (incorporated by reference into Los Angeles Fire Code) (requiring, *inter alia*, certain electrical and mechanical specifications for film sets); Los Angeles County Code § 22.56.1830 *et seq.* (requiring application for and receipt of filming permit, which contains numerous conditions for all on-location filming), attached as Exhibits 1, 2, and 3 respectively, to accompanying Request For Judicial Notice.

on the time, place, or manner of engaging in protected speech provided that they are adequately justified without reference to the content of the regulated speech." *See G.K ltd Travel v. Oswego*, 436 F.3d 1064, 1071 (9th Cir. 2006) (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428 (1993)).  A content-neutral regulation is one that "confers benefits or imposes burdens on speech without reference to the ideas or views expressed." *See Turner Broad. Sys. V. FCC*, 512 U.S. 622, 642-43 (1994); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").

To be a valid time, place and manner restriction, in addition to being justified without reference to content, the restrictions must be "narrowly tailored to serve a significant governmental interest and . . . leave open ample alternative channels for communication of the information." *See G.K ltd Travel*, 436 F.3d at 1071 (citing *Ward,* 491 U.S. at 791).  Applying these principles here, Measure B's requirements are not regulations based on the content of the films Plaintiffs make. The purpose of Measure B is not to allow or deny speech on the basis of content, but rather to serve a significant public health interest, and its provisions are narrowly tailored to serve that interest.

> 1.     *Measure B Is Justified Without Reference To Speech.*

First, the Court must determine whether the challenged regulation is "justified without reference to the content of the regulated speech." *G.K Ltd. Travel*, 436 F.3d at 1071-72 (quoting *Ward*, 491 U.S. at 791). In doing so, courts focus on determining whether a regulation of speech was adopted out of disagreement with a message sought to be conveyed.  *See id.*  "Whether a statute is content neutral or content based is something that can be determined on the face of

1  it; if the statute describes speech by content then it is content based." *See id.*

2  (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1129 (9th Cir. 2005)).

3      In this case, Plaintiffs do not allege that Measure B describes any type of

4  content that it seeks to prohibit, nor can they.  It does not distinguish favored

5  speech from disfavored speech based on the ideas or views expressed, or describe

6  types of content in Plaintiffs' products that should be restricted.  Plaintiffs offer no

7  allegations suggesting that Measure B was enacted, or their business was targeted

8  specifically, because of a desire to stifle certain viewpoints.  Measure B merely

9  sets forth safety regulations that must be followed during the making of films, and

10  is silent regarding the idea or view expressed in the final cut.  Accordingly,

11  Measure B on its face is justified without reference to speech.

12      2.    *Measure B Promotes A Significant Governmental Interest.*

13      Once it has been established that a regulation is justified without reference to

14  content, the Court must determine whether the regulation advances a significant

15  government interest.  *See G.K Ltd. Travel*, 436 F.3d at 1073.  Measure B lists in

16  Section 2, various findings regarding the risk of contracting HIV and STDs in the

17  adult industry.  For example, Measure B states, in part:

18

19      • The HIV/AIDS crisis, and the ongoing epidemic of sexually transmitted
          infections as a result of the making of adult films, has caused a negative
20        impact on public health and the quality of life of citizens living in Los
          Angeles.
21

22      • The Los Angeles County Department of Public Health has documented
          widespread transmission of sexually transmitted infections associated
23        with the activities of the adult film industry within Los Angeles County.
24

25      • The Los Angeles County Department of Public Health has stated that the
          use of condoms is the best and most effective way to stem the spread of
26        sexually transmitted infections within the adult film industry.

27

28

Accordingly, at Section 3 of Measure B, entitled "Purpose and Intent," it states:

> The people of Los Angeles hereby declare their <u>purpose and intent in enacting this ordinance is to minimize the spread of sexually transmitted infections resulting from the production of adult films in the County of Los Angeles, which have caused a negative impact on public health and the quality of life of citizens living in Los Angeles.</u>

(emphasis added).  The face of Measure B clearly states that it is being enacted to protect the public health of Los Angeles County citizens by preventing the spread of disease.  Plaintiffs have alleged no facts to defeat this.  In addition, courts agree that public health and safety are significant governmental interests justifying some time, place and manner regulations.  *See e.g. Schenck v. Pro-Choice Network*, 519 U.S. 357, 375-76 (1997); *Davidovich v. City of San Diego*, 2011 U.S. Dist. LEXIS 138319 at *9-10 (S.D. Cal, Dec. 1, 2011); *Deluxe Theater & Bookstore v. City of San Diego*, 175 Cal. App. 3d 980, 984 (1985).

Plaintiffs further claim that Measure B violates the First Amendment by purporting to rely upon the above "findings" in the text of the initiative. (Complaint at ¶ 54).  In determining whether an ordinance furthers governmental interests, however, courts grant deference to the judgment of the legislative body charged with the responsibility of making determinations whether the government's ends are advanced by a regulation.  *See G.K. Ltd. Travel,* 436 F.3d at 1073 (citing *Clark v. City of Lakewood,* 259 F.3d 996, 1011 (9th Cir. 2001)); *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 299 (1984).  Moreover, the "First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated . . . so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem the city addresses." *City of Renton v. Playtime Theatres,*

*Inc.*, 475 U.S. 41, 51-52 (1986).  Thus, Plaintiffs' Complaint fails to sufficiently allege that Measure B's regulations lack a significant government interest.

### 3.    *Measure B Is Narrowly Tailored To Advance Its Goal.*

Content-neutral time place and manner restrictions must also be narrowly drawn to further their interest in order to pass constitutional muster.  *See G.K. Ltd. Travel,* 436 F.3d at 1074; *Renton*, 475 U.S. at 52.  The regulation, however, does not need to do so in the least restrictive or intrusive manner.  *See G.K. Ltd. Travel,* 436 F.3d at 1073-74; *see also Renton*, 475 U.S. at 52 (a local government "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems.")); *Harnish v. Manatee County*, 783 F.2d 1535, 1540 (11th Cir. 1986) ("[i]f the means reasonably advance the goal, the courts should not attempt to speculate as to whether less restrictive means exist.  Rather an analysis should be limited to whether the means are reasonably and narrowly drawn to further that objective.").

In *Renton,* the Court assessed a zoning ordinance that was enacted to preserve the "quality of urban life" in its city, and that affected only theaters that showed adult films.  *See Renton*, 475 U.S. 41.  The Court concluded that the regulation at issue was narrowly tailored "to affect only that category of theaters shown to produce the unwanted secondary effects" and thus was a valid time, place and manner restriction.  *See id.* at 52.  Similarly, here Measure B was enacted as a public health initiative to reduce the spread of HIV and other STDs.  Measure B contains provisions that directly impact the spread of STDs (e.g. requirement of training and use of barrier protection/condoms, and a permit conditioned on taking these preventative measures).  It does no more than attempt to prevent the source of its concerns—unprotected sexual conduct while filming that creates the risk of transmitting diseases.  Measure B does not restrict any final message or content,

1   and does not contain provisions that go beyond simply reducing the risk of

2   spreading diseases.  Measure B is narrowly tailored, regulating only conduct that

3   could result in transmitting a disease, and allowing whatever content Plaintiffs

4   choose to show and sell in the end.  Thus, Plaintiffs fail to allege that Measure B is

5   not narrowly tailored to achieve its goals.  *See Harnish*, 783 F.2d at 1540

6   (upholding ordinance as "the city did no more than eliminate the exact source of

7   the evil it sought to remedy.").

8                   4.      *Ample Alternative Channels for Communication.*

9         Plaintiffs have the burden of alleging that no alternative means of

10  communication exist if Measure B is enforced.  Plaintiffs have failed to do so.

11  "[T]he First Amendment does not guarantee the right to employ every conceivable

12  method of communication at all times and in all places. . . ."  *Members of the City*

13  *Council v. Taxpayers for Vincent*, 466 U.S. 789, 791 (1984).

14        Again, nowhere in their Complaint do Plaintiffs show that they cannot

15  express the viewpoints they want to express in their final product.  Plaintiffs are

16  free to make and sell a final product that depicts (digitally or through simulation)

17  unprotected sex if that is the message they seek to express.  Further, because these

18  films can be viewed virtually anywhere, the performance is not location-specific,

19  and Plaintiffs do not allege that the content or broadcast requires them to make

20  their films only in Los Angeles County, they have alternative channels of

21  communication.  Alternative modes of communication need only be "ample" (*Foti*

22  *v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998), *amended on denial of*

23  *rehearing* 1998 U.S. App. LEXIS 17149, No. 97-16061 (9th Cir. 1998)), not

24  equivalent or as subjectively desirable.  Since Plaintiffs have ample ways to

25  express themselves, Measure B is a valid time, place and manner restriction.

26  **C.   Plaintiffs' Allegation That First Amendment Rights May Not Be**
    **Limited By Referendum Is Not Supported By Law.**

27

28

---

Plaintiffs specifically allege in Count I of their Complaint that Measure B violates the First Amendment by curtailing freedom of expression by a county referendum, and that First Amendment freedoms cannot be limited by referendum. Plaintiffs cite to a variety of cases to support their contention.  (Complaint at ¶ 53). However, these cases do not support what Plaintiffs allege.  For instance, the Court in *Buckley v. Am. Constitutional Law Found.,* 525 U.S. 182, 194 (1999) did not issue a carte blanche rule that referendums could not limit speech; it merely noted that ballot initiatives related to political speech are also subject to judicial scrutiny. *See Buckley*, 525 U.S. at 194.

*West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624 (1943), is not even related to a ballot initiative; it dealt with a school board that compelled its students to salute the American flag, a forced expression of political speech. *Barnette* is completely inapplicable to this case as it does not relate to a ballot initiative or even a permit scheme.  Finally, in *Board of Regents of the Univ. of Wisconsin Sys. v. Southworth,* 529 U.S. 217, 235-36 (2000), the Court merely considered whether the First Amendment permitted a public university to charge its students certain fees to fund viewpoint neutral extracurricular programs; it did not determine that a referendum is inherently content-based as Plaintiffs allege. (Complaint at ¶ 53).

As Measure B does not regulate the content of speech, it may be adopted via initiative.

## III.   MEASURE B'S PERMITTING AND BARRIER PROTECTION REQUIREMENTS ARE NOT UNLAWFUL PRIOR RESTRAINTS.

Plaintiffs contend that the permitting requirements of Measure B, and the imposition of penalties for not complying with permitting and or/barrier protection requirements, are unconstitutional prior restraints on speech.  A "prior restraint" is

an administrative or judicial order that forbids certain communications in advance of the time that such communications are to occur.  *See Alexander v. U.S*, 509 U.S. 544, 550 (1993).

To prevail on their §1983 claim based on an unlawful prior restraint, Plaintiffs typically must show that the regulation restrains speech, puts unbridled discretion in the hands of government officials charged with granting or denying the permits, and allows the decision maker unlimited time to render a decision on the matter affecting the permit.  *See Krontz v. City of San Diego*, 136 Cal. App. 4th 1126, 1133 (2006) (citing *Freedman v. Maryland*, 380 U.S. 51, 58-60 (1965)).  However, where a permitting scheme is content-neutral, it is not subject-matter censorship, but rather a content-neutral time, place and manner regulation, and therefore, "the procedural requirements of the prior restraint doctrine need not be satisfied."  *See G.K. Ltd. Travel*, 436 F.3d at 1082 (citing *Thomas v. Chicago Park District*, 534 U.S. 316, 322, (2002)(emphasis added)).


A. **Measure B Is Not A Prior Restraint Because It Does Not Impose Any Restraint On Speech Or Expression, And If It Imposes Any Limitation, It Is A Content-Neutral Time, Place And Manner Regulation.**


First, Count II of Plaintiffs' Complaint fails because, as enumerated in detail above, Measure B does not regulate speech.  Second, again the standards applied in assessing a proper time, place and manner restriction are: (1) the regulation must be imposed without reference to the content of the regulated speech; (2) the regulations are narrowly tailored to serve a significant government interest; and (3) the regulation leave open ample alternative channels for communication of the information.  *See G.K. Ltd. Travel,* 436 F.3d at 1073-74; *Renton*, 475 U.S. at 52; *Ward,* 491 U.S. at 791.  As stated above, Measure B on its face imposes regulations without reference to content, and narrowly advances significant government purposes.  Therefore, the procedural guarantees of the prior restraint

1   doctrine need not be satisfied in this case.  *See Thomas*, 534 U.S. at 322; *G.K. Ltd.*
2   *Travel,* 436 F.3d at 1082.

3
4   **B. Measure B Does Not Place Unbridled Discretion In The Hands Of**
5   **County Officials.**

6   Since Measure B does not require the satisfaction of procedural safeguards,
7   Measure B will not be considered an unlawful prior restraint unless it is shown that
8   it gives the County unbridled discretion to enforce.  To avoid impermissible
9   discretion, the challenged ordinance should "contain adequate standards to guide
10  the official's decision and render it subject to effective judicial review."  *See*
11  *Thomas*, 534 U.S. at 323 (permitting scheme includes standards that "are
12  reasonably specific and objective, and do not leave the decision to the whim of the
13  [permitting official].").  Measure B has undoubtedly done so.

14  Plaintiffs fail to point to any part of Measure B that gives County officials
15  discretion to grant a permit, or penalize an adult film producer by content.  To the
16  contrary, Measure B's permitting scheme contains four specific requirements to get
17  and keep a permit—pay for a permit, conduct blood borne pathogen training, post
18  the permit on the work site, and use condoms during vaginal and anal sex.  The
19  County simply enforces Measure B in accordance with these objective standards; it
20  has no ability under Measure B to censure an adult film producer by the content of
21  the films it produces.

22
23  **C. The Exercise Of Discretion In The Implementation Of Measure B Does**
24  **Not Constitute A Prior Restraint.**

25  Furthermore, regulations are regularly upheld even where there is some elastic
26  review and discretion.  *See G.K. Ltd. Travel,* 436 F.3d at 1084.  "While these
27  standards are undoubtedly flexible, and the officials implementing them will
28  exercise considerable discretion, perfect clarity and precise guidance have never

been required even of regulations that restrict expressive activity." *See Ward*, 491 U.S. at 794.  As stated above, Measure B on its face does not restrict content, and does not allow for discretion.  Nevertheless, even if Measure B did allow for some discretion, such discretion is allowable and does not convert the permitting scheme to an unlawful prior restraint.  Because Measure B's provisions do not on their face vest unbridled discretion in public officials to deny speech, they are constitutional.

## IV.  MEASURE B'S PERMIT FEES ARE NOT AN UNLAWFUL PRIOR RESTRAINT.

Plaintiffs next allege that the County's $2,000 - $2,500 provisional permit fee constitutes an unlawful prior restraint and is not limited to the expense incident to administration of the County's permitting and enforcement.  Plaintiffs conclude that the permit fee is therefore an unlawful tax on speech, rather than a fee incident to legitimate regulatory costs.  Plaintiffs' allegations in Count III also fail to state a claim.

First, as enumerated above, Plaintiffs' Complaint fails to show any speech that is being restrained or "taxed" by Measure B.  Second, Plaintiffs fail to allege an unlawful prior restraint since they do not allege facts to show that Measure B's permitting scheme allows unbridled discretion.

Third, Plaintiffs fail to allege any facts to show that $2,000 - $2,500 is not proportionally representative of the costs incurred by the County.  They do not allege why they believe the evidence supporting Measure B's provisional fees is unreliable.  Indeed, as Plaintiffs even state in their Complaint, Measure B (at Section 11.39.080(A)) requires that permit fees "shall be set by the Department in an amount sufficient to provide for the cost of any necessary enforcement." (Complaint at ¶ 64).  Measure B, thus, facially satisfies any requirement that it be proportionately representative of the costs incurred by the County.

1
2
3
4

## V.    MEASURE B IS NOT UNCONSTITUTIONALLY VAGUE.

5
6

### A. **Measure B Is Facially Understandable To People Of Ordinary Intelligence And Does Not Leave Open A Real Possibility of Discriminatory Enforcement.**

7
8
9
10
11
12
13
14

Plaintiffs' complaint in Count IV is that a number of Measure B's definitions and mandates are too vague to pass constitutional muster.  A court may find a regulation to be unconstitutionally vague for two reasons.  First, the First Amendment protects speakers from arbitrary and discriminatory enforcement of vague standards.  *See Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 588-89 (1998).  Second, a law is vague if people "of common intelligence must guess at its meaning and differ as to its application."  *See Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).

15
16
17
18
19
20
21
22
23

Measure B's provisions are not vague.  The phrases Plaintiffs complain about, such as "adult film," "producers of adult film," and "commercial purposes," are either clearly defined in Part I of Measure B, or are so facially understandable to a person of ordinary intelligence, that they are not defined.  Plaintiffs fail to allege that persons of ordinary intelligence would not understand what they would need to do to comply with Measure B, or even what other meanings could be given to the plain language of Measure B.  Such allegations are insufficient to show that a regulation is unconstitutionally vague.  *See G.K. Ltd. Travel,* 436 F.3d at 1085.

24

## VI.    MEASURE B IS NOT OVERBROAD OR UNDER-INCLUSIVE.

25
26
27
28

Plaintiffs' next claim for relief contends that Measure B is "both over- and under-inclusive."  (Complaint at ¶ 79).  These claims are not well-pled in the Complaint and should also be dismissed.

**A. Measure B Is Not Overbroad Because It Does Not Create A Substantial And Real Risk Of Unconstitutional Application Of The Law.**

Plaintiffs allege that Measure B is over-inclusive because the adult film industry self-regulates itself to protect performers from contracting STDs. However, this allegation is not a cognizable overbreadth claim.  For Plaintiffs to prevail on an overbreadth claim, there must be a realistic danger that Measure B will significantly compromise recognized First Amendment protections of parties not before the Court.  *See Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Measure B only applies to film production that creates the risk of spreading HIV and other STDs.  It, therefore, does not apply to producers of film that do not expose actors and actresses to the risk of spreading HIV and other STDs.

**B. Measure B Is Not Overbroad Even If It Does Not Use The Least Restrictive Means Of Achieving Its Stated Purpose.**

As discussed at length above, Measure B is not a content-based regulation. As a consequence, it is not analyzed under the strict scrutiny analysis and does not require that its provisions be the least restrictive means of achieving its goals, as Plaintiffs insist (Complaint at ¶¶ 84-85).  Measure B must merely be narrowly tailored to achieve a significant governmental interest.  Again, as described above, Measure B passes this test.

**C. Measure B's Application To Commercial Speech Is Not Under-Inclusive Because Commercial Speech Is Not Afforded The Same Level Of Protection As Non-Commercial Speech.**

Plaintiffs allege that Measure B is under-inclusive because it only applies to adult films made for commercial purposes and does not regulate presumably private sexual acts that are filmed. This claim fails as well.

It is permissible to regulate commercial speech if the regulation meets the following standard: (1) the commercial speech concerns lawful activity and is not

misleading; (2) the asserted governmental interest is substantial; (3) the regulation directly advances the asserted governmental interest; and (4) the regulation is not more extensive than necessary to serve that interest. *See Central Hudson Gas & Elec. V. Public Service Comm'n of New York*, 447 U.S. 557, 563 (1980); *Loska v. Superior Court*, 188 Cal. App. 3rd 569 (1986). The regulation need not be the least restrictive means to attain the desired end; There only needs to be a reasonable "fit" between the government's ends and the means chosen to accomplish those ends. *See Board of Trustees of State University of New York v. Fox*, 492 U.S. 469 (1989). As this is a lesser standard than the standard enunciated for time, place and manner regulations, for the reasons detailed above, Measure B meets these standards as well.

### D. Measure B Is Not Under-Inclusive Because It Only Applies To The Category of Businesses That Create The Public Health Problem It Seeks To Diminish.

Plaintiffs also claim that Measure B is unconstitutionally under-inclusive because it fails to address the risks of sexually transmitted diseases in the general population. Plaintiffs' Complaint misses the point. Measure B is not unconstitutionally under-inclusive for failing to regulate other businesses or private individuals. The stated purpose of Measure B is to protect the public health by preventing the risk of transmitting diseases in a workplace environment where that risk uniquely occurs.

Measure B need only regulate the persons or businesses that create the problems it seeks to resolve. *See Renton*, 475 U.S. at 52-53 (valid and narrowly tailored response to only affect category of business shown to create the unwanted secondary affects the law is concerned about did not improperly "single out" one type of business for discriminatory treatment); *Am. Mini Theatres*, 427 U.S.at 70, 71 n. 34 (a distinction may be drawn between adult theatres and other types of theatres "without violating the govt.'s paramount obligation of neutrality in its

regulation of protected communication" because "it is the secondary effect which the ordinance attempts to avoid, not the dissemination of 'offensive speech.'"). Here, as in *Renton*, Measure B treats filmmaking differently from the general population and from other businesses because it has a markedly different effect on the community – that is, it is an industry that may spread STDs at the workplace, and subsequently, the community at large.

## VII.  MEASURE B DOES NOT VIOLATE PLAINTIFFS' RIGHTS TO DUE PROCESS OF LAW.

### A.  Measure B Complies With Due Process Considerations.

Plaintiffs' Sixth claim for relief asserts that Measure B impinges upon their life, liberty and property interests in the expressive works they create and their ongoing freedom to create such works.  (Complaint at ¶ 93).  To the extent this claim contends that Measure B is content-based or view-point based, Intervenors reiterate the response given to the claims above, and maintain that Measure B does not restrict any speech.  Due process also requires that when the government seeks to deprive a person of property, it must provide the individual with notice and an opportunity to be heard.  *See Krontz*, 136 Cal. App. 4th at 1141(citing *Petrillo v. Bay Area Rapid Transit Dist.,*197 Cal. App. 3d 798, 808 (1988)).  Plaintiffs, however, fail to allege how Measure B deprives them of life, liberty and property without notice and an opportunity to be heard.

Plaintiffs claim that Measure B violates due process because it allows the County to suspend or revoke permits without prior hearing or any procedural safeguards whatsoever.  (Complaint at ¶ 96).  Plaintiffs' allegation fails because the plain language of Measure B places Plaintiffs on sufficient notice of what constitutes prohibited activity.  *See Krontz*, 136 Cal. App. 4th at 1141.  Measure B clearly sets forth the four main requirements to make an adult film in compliance

with it: obtain a permit, get workplace training, post the permit on set, and use condoms for vaginal and anal sex.

And notably, Measure B sets out in detail Plaintiffs' opportunities to cure any deficiencies and come into compliance with Measure B if they are cited for a violation.  Specifically, according to Measure B Section 4, 11.39.110(B), if the County determines that a permittee has failed to comply with a provision of Measure B, it must first issue a <u>written notice to comply</u>.  Further, the notice to comply also advises permittees of their right to seek administrative review of the decision to issue a notice to comply.  Plainly, Plaintiffs have been given adequate notice of what Measure B proscribes, and have the opportunity to cure deficiencies, or challenge the existence of violations following the issuance of each written notice to comply.

**B.  <u>Measure B Does Not Subject Plaintiffs To Unreasonable Searches and Seizures.</u>**

It is difficult to follow the legal theory in Count VI related to the Fourth Amendment.  Inspections within regulated industries are commonplace and not considered *per se* unconstitutional.  *See People v. White*, 259 Cal. App. 2d Supp. 936, 942 (1968) ("The rule seems to be firmly established that searches or seizures pursuant to licensing statutes which require inspection are valid and not subject to constitutional objection.").  Further, it is also well-established that the government may seize items that it has probable cause to believe are evidence of a crime or a violation of law.  *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) (holding that the Fourth Amendment allows for seizure of evidence when there is "probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction").

Finally, Measure B places the film industry on notice about the inspection

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

and enforcement procedures, properly defines the scope of the inspection, and limits the discretion of the inspecting officers.  In particular, Measure B, Section 4, § 11.39.130 states that the County health officer may inspect the location where an adult film is being produced, and for purposes of enforcing Measure B, may take possession of specifically listed items.  Therefore, Plaintiffs have failed to state a plausible claim under the First, Fourth or Fourteenth Amendment in Count VI of their Complaint.

## VIII.   CAL/OSHA STANDARDS DO NOT PREEMPT MEASURE B.

### A.   The State Does Not Expressly Limit Local Regulation In The Workplace, And In Fact Expressly Allows Local Government To Adopt And Enforce Higher Standards Related To Occupational Safety And Health For Employees.

Plaintiffs contend that Measure B is preempted by California Labor Code Sections 140, *et seq.*, and specifically California Labor Code Section 144.7, and the California Code of Regulations Title 8, Section 5193, which mandates the use of barrier protection in the workplace when employees are exposed to blood or other potentially infectious material during the production of films (collectively, the "State Laws").  (Complaint at ¶ 101).[2]

In determining California State preemption challenges, Courts consider whether regulations enforceable by the State act to limit the local government's police power.  While there is a presumption in favor of the right of initiative, it is rebuttable when it is clearly indicated that the Legislature, "as part of the exercise of its power to preempt all local legislation in matters of statewide concern, has

---

[2] Again, Plaintiffs' argument that Measure B's allegedly unconstitutional requirement of using barrier protection is already required of them under existing State law, undercuts their entire First Amendment claims.

1   intended to restrict that right."  *See DeVita v. County of Napa* 9 Cal. 4th 763, 776

2   (1995).  That is not the case here.

3          The State Laws contain no express limitations of local laws.  In particular,

4   Labor Code § 6316 states that local governments are not deprived of "any power or

5   jurisdiction over or relative to any place of employment."  Cal. Lab. Code § 6316.

6   Further, Chapter 6 of Division 1, Section 144 of the Labor Code, describes ways in

7   which local governments can assist the State of California Department of Industrial

8   Relations, Division of Occupational Safety and Health ("Cal/OSHA") in enforcing

9   its occupational safety and health regulations.  Specifically, Section 144(e) makes

10  clear that when not enforcing the regulations under Title 8 CCR, local governments

11  have free reign:

12          Nothing in this section shall affect or limit the authority of any state or
13          local agency as to any matter other than the enforcement of
            occupational safety and health standards adopted by the board;
14          however, nothing herein shall limit or reduce the authority of local
            agencies to adopt and enforce higher standards relating to
15          occupational safety and health for their own employees.
16
17  Cal. Lab. Code § 144(e) (emphasis added).

18          It is clear that the only matter that the State put solely in the hands of

19  Cal/OSHA is the enforcement of the occupational safety and health standards

20  adopted by the Standards Board.  This is not surprising given that local authorities

21  commonly regulate places of employment, including film sets, in a number of

22  ways.  For instance, building permits are issued and fire codes are enforced

23  regardless of employment status even though that enforcement may affect

24  occupational safety, and may overlap with Cal/OSHA jurisdiction.  *Local*

25  *governments are only prohibited from the explicit enforcement of Cal/OSHA's own*

26  *regulations*.  Thus, the County is not prevented from adopting and enforcing its

27  own standards related to health and safety in workplace environments such as an

28

adult film production set.  Moreover, it is clear that Measure B does not seek to enforce Cal/OSHA standards, but is its own regulatory scheme.

**B.  Measure B Is Not Preempted By State Law Because Measure B Does Not Duplicate, Contradict Or Enter An Area Fully Occupied By The State.**

Under California law, '"[a] conflict [between a local ordinance and state law] exists [only] if the local legislation [1] duplicates, [2] contradicts, or [3] enters an area fully occupied by general law, either expressly or by legislative implication.'"  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032-33 (9th Cir. 2006) (citing *S.D. Myers, Inc. v. City & County of San Francisco,* 336 F.3d 1174, 1177 (9th Cir. 2003) (last four alterations in original) (quoting *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893 (1993)).

Measure B on its face does not substantively duplicate or contradict the State Laws, or encroach upon a fully occupied field, because the laws apply to different jurisdictions, operate differently and were enacted for different purposes.

1.   *Different Jurisdictions.*

California Labor Code Sections 140, *et seq.*, are enforced by Cal/OSHA. The Cal/OSHA enforcement unit only has jurisdiction over places of employment in California.  Cal. Lab. Code § 6307.  This means that Cal/OSHA may only act where there is an employer-employee relationship.  As a consequence, the State Laws do not affect the same people that are affected by Measure B.  Actors or volunteers who are independent contractors are not within Cal/OSHA's jurisdiction, and Plaintiffs do not allege that any performers are employees of any company when making adult films (Complaint at *e.g.* ¶¶ 8-11).  But Measure B applies regardless of employment relationship, and therefore, applies to independent contractors and volunteers in the adult film industry.

2.   *Different Operations.*

1    Measure B and Cal/OSHA also operate differently.  Cal/OSHA operates to

2 adequately enforce and administer all occupational safety and health standards and

3 regulations adopted by the Cal/OSHA Standards Board and appealable to the

4 Appeals Board.  Cal. Lab. Code §§ 6317 and 6319.  To the contrary, Measure B

5 operates as a permitting scheme, in which obtaining and maintaining a film permit

6 is conditioned on following four main requirements.  Measure B does not allow the

7 County to take action either in place of, or in the same way as Cal/OSHA

8 regulations, and would not implicate the Cal/OSHA Appeals Board process.

9    Inspections also operate differently for Cal/OSHA and Measure B.  The

10 Cal/OSHA enforcement unit conducts inspections of California workplaces in

11 response to a report of an industrial accident, a complaint about an occupational

12 safety and health hazard, or as part of an inspection program targeting industries

13 which have a high rate of occupational hazards, fatalities, injuries or illnesses.  *See*

14 Title 8 CCR Division 1, Chapter 6 *et seq*.  The system for which Cal/OSHA asserts

15 its authority is, generally, by issuing citations that include administrative penalties

16 for violating one or more of Cal/OSHA's workplace safety standards.  *Id.*  These

17 penalties are not criminal in nature.  *Id.*  Measure B states that the County may

18 conduct spot inspections for purposes of enforcing Measure B.  Measure B Section

19 4, § 11.39.130.

20    3.    *Different Purposes.*

21    Finally, Measure B was enacted for a different purpose than the State Laws.

22 The Standards Board regulations are created to protect the health and safety of

23 employees in places of employment.  Cal. Lab. Code § 6307.  The Standards Board

24 has adopted a general purpose regulation which applies to adult film production as

25 well as other places of employment.  Measure B states that its intent and purpose is

26 to minimize the spread of STDs resulting from the production of adult films, which

27 have caused a negative impact on the public health and the quality of life of its

28

citizens.  Measure B's permit process serves the purpose of protecting the public health and safety regardless of employment relationship.

In sum, the State laws do not preempt action by the County because Measure B does not seek to enact an occupational health and safety standard, but rather a public health standard applicable to adult film activity (regardless of employment relationship) within County boundaries.  Given these manifest differences, it is clear that Measure B is not duplicative of, or contradictory to, the State Laws, and covers a field that is not fully occupied by Cal/OSHA.

Measure B is not preempted and County VII should be dismissed.

## CONCLUSION

For the reasons set forth above, Intervenors respectfully request that the Court grant their Motion to Dismiss the Complaint in its entirety and with prejudice.

Respectfully Submitted,

DATED:  May 10, 2013                     INTERVENORS


By: /s/ Samantha R. Azulay
    TOM MYERS
    SAMANTHA R. AZULAY
    CHRISTINA YANG
    *Attorneys for Intervenors*