Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450
*Attorneys for Intervenors*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC;<br>CALIFA PRODUCTIONS, INC.;<br>JANE DOE a/k/a Kayden Kross; and<br>JOHN DOE a/k/a Logan Pierce,<br><br>         Plaintiffs,<br><br>   vs.<br><br>JONATHAN FIELDING, Director of<br>Los Angeles County Department of<br>Public Health, JACKIE LACEY, Los<br>Angeles County District Attorney, and<br>COUNTY OF LOS ANGELES,<br><br>         Defendants, and<br><br>MICHAEL WEINSTEIN, MARIJANE<br>JACKSON, ARLETTE DE LA CRUZ,<br>MARK MCGRATH, WHITNEY<br>ENGERAN, and the CAMPAIGN<br>COMMITTEE YES ON B, MAJOR<br>FUNDING BY THE AIDS<br>HEALTHCARE FOUNDATION<br><br>         Defendants-Intervenors. | Case No.:  13-CV-00190-DDP-AGR<br><br>**INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      July 1, 2013<br>Time:     10:00 a.m.<br>Judge:    Dean D. Pregerson<br>Location: Courtroom 3 |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS ...................................................................... 2

    A. Like In Any Workplace, Government May Regulate the Methods and Processes of Producing Films, And Such Regulation Does Not Regulate The Content Of Those Films. ..................................................................... 2

    B. The Purpose of Measure B Is To Prevent the Risk Of Transmission of Sexually Transmitted Diseases During The Production Of Films ............ 4

III. ARGUMENT .......................................................................................... 5

    A. Plaintiffs Have Submitted No Evidence To Establish That They Are Entitled To The Extraordinary Relief Of A Preliminary Injunction ......... 5

        1. To Obtain a Preliminary Injunction, Plaintiffs Must Meet a Heightened Burden of Proof, Using Clear, Admissible, Competent Evidence. ...................................................................................... 6

        2. The Evidence Is Insufficient To Warrant Injunctive Relief. ............ 7

        3. Plaintiff's MJOP Should Be Disregarded. ...................................... 9

    B. Plaintiffs Fail To Demonstrate Likelihood Of Success On The Merits 9

        1. Plaintiffs Lack Standing To Assert Challenge To Measure B ....... 10

        2. Measure B Is Not A Content-Based Restriction, And Does Not Restrict Speech Or Expression ............................................................ 11

            (a) If Measure B Affects Speech At All, It Constitutes A Valid Content-Neutral Time, Place and Manner Restriction............. 13

            (b) Measure B May Be Adopted Via Referendum, And Plaintiffs Fail to Show Otherwise ............................................ 15

        3. Measure B Does Not Constitute A Prior Restraint ....................... 15

(a) Measure B's Permitting and Barrier Protection Requirements Are Not Unlawful Prior Restraints .................. 15

(b) Measure B's Permitting Fees Are Not An Unlawful Prior Restraint .......................................................... 17

4. Measure B Is Not Unconstitutionally Vague ................................ 17

5. Measure B Is Not Underinclusive .................................................. 17

6. Measure B Does Not Violate Plaintiffs' Due Process Rights ........ 18

7. Measure B Is Not Preempted By Cal/OSHA Standards ............... 20

C. Plaintiffs Have Failed To Show That They Will Suffer Immediate Irreparable Harm Absent Preliminary Injunctive Relief ....................... 22

D. The Balance Of Harms Weighs Against Plaintiffs. ............................ 23

IV. CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Advantage Media L.L.C. v. City of Eden Prairie,*
   456 F.3d 793 (8th Cir. 2006) ................................................................. 7

*Alexander v. U.S,*
   509 U.S. 544 (1993) ............................................................................ 15

*Amoco Prod. Co. v. Village of Gambell,*
   480 U.S. 531 (1987) ............................................................................ 23

*Boos v. Barry,*
   485 U.S. 312 (1988) ............................................................................ 11

*Buckley v. Am. Constitutional Law Found.,*
   525 U.S. 182 (1999) ............................................................................ 15

*Caribbean Marine Servs. Co. v. Baldridge,*
   844 F.2d 668 (9th Cir. 1988) .............................................................. 22

*Central Hudson Gas & Elec. v. Public Service Comm'n of New York,*
   447 U.S. 557 (1980) ............................................................................ 18

*City of Renton v. Playtime Theatres, Inc.,*
   475 U.S. 41 (1986) .............................................................................. 18

*Claiborne v. Blauser,*
   2011 U.S. Dist. LEXIS 97755 (E.D. Cal. Aug. 31, 2011) .................... 8

*Connally v. General Constr. Co.,*
   269 U.S. 385 (1926) ............................................................................ 17

*Davidovich v. City of San Diego,*
   2011 U.S. Dist. LEXIS 138319 (S.D. Cal, Dec. 1, 2011) ............... 13-14

*Fidelity Nat. Title Ins. Co. v. Castle,*
   2011 U.S. Dist. LEXIS 135316 (N.D. Cal. Nov. 23, 2011) ................... 7

*Foti v. City of Menlo Park,*
   146 F.3d 629 (9th Cir. 1998) ........................................................... 14-15

*Freedman v. Maryland*,
    380 U.S. 51 (1965) ......................................................................... 16

*G.K Ltd Travel v. City of Lake Oswego*,
    436 F.3d 1064 (9th Cir. 2006) ............................................... 11, 13, 16

*Gilles v. Davis*,
    427 F.3d 197 (3rd Cir. 2005) ....................................................... 10-11

*Global Horizons, Inc. v. United States Department of Labor*,
    510 F.3d 1054 (9th Cir. 2007) ......................................................... 9

*Golden Gate Rest. Ass'n v. City & County of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ........................................................ 24

*Hill v. Colorado*,
    530 U.S. 703 (2000) ....................................................................... 16

*K-2 Ski Co. v. Head Ski Co.*,
    467 F.2d 1087 (9th Cir. 1972) ....................................................... 7, 8

*Los Angeles Memorial Coliseum Com. v. National Football League*,
    634 F.2d 1197 (9th Cir. 1980) .................................................... 22-23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1991) ....................................................................... 10

*Macias v. Grounds*,
    2013 U.S. Dist. LEXIS 50197 (E.D. Cal. Apr. 5, 2013) ...................... 6

*Mazurek v. Armstrong*,
    520 U.S. 968, 972 (1997) ................................................................. 6

*Members of the City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ................................................................. 14, 15

*New York v. Burger*,
    482 U.S. 691 (1987) ....................................................................... 19

*Pimentel v. Dreyfus*,
    670 F.3d 1096 (9th Cir. 2012) ......................................................... 7

*S.D. Myers, Inc. v. City & County of San Francisco,*
   336 F.3d 1174 (9th Cir. 2003).................................................................. 20

*Santa Monica Food Not Bombs v. City of Santa Monica,*
   450 F.3d 1022 (9th Cir. 2006)................................................................. 11

*Steel Co. v. Citizens for a Better Environment,*
   523 U.S. 83 (1998)................................................................................... 10

*Thomas v. Chicago Park District,*
   534 U.S. 316 (2002)................................................................................ 16

*Turner Broad. Sys. V. FCC,*
   512 U.S. 622 (1994)................................................................................ 13

*Ward v. Rock Against Racism,*
   491 U.S. 781(1989)............................................................................ 16-17

*Warden, Md. Penitentiary v. Hayden,*
   387 U.S. 294 (1967)................................................................................ 19

*West Virginia State Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943)................................................................................ 15

*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982)................................................................................ 23

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990)................................................................................ 10

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)..................................................................... 6, 9, 21, 23

*United States v. First National City Bank,*
   379 U.S. 378 (1965)................................................................................ 23

*United States v. Kilbride,*
   584 F.3d 1240 (9th Cir. 2009)................................................................ 17

**STATE CASES**

**INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Coalition for Fair Rent v. Abdelnour*,

    107 Cal. App. 3d 97 (1980)............................................................... 24

*Hughes v. Lincoln*,

    232 Cal. App. 2d 741 (1965)............................................................. 3

*Krontz v. City of San Diego*,

    136 Cal. App. 4th 1126 (2006)................................................. 16, 18

*People v. White*,

    259 Cal. App. 2d Supp. 936(1968) ................................................ 19

**STATE AND LOCAL STATUTES**

California Code of Regulations Title 8, Section 5193...................................... 20, 21

California Constitution Article XI § 7 ......................................................... 3

California Fire Code § 4801 ........................................................... 1, 3, 12, 19

California Government Code § 14999.20....................................................... 3

California Health & Safety Code § 120175........................................... 5, 14

California Health & Safety Code § 120575........................................... 5, 14

California Labor Code § 144.7 ................................................................. 20

California Labor Code § 144(e)................................................................ 20

California Labor Code § 6307 ................................................................. 20

Los Angeles County Code § 22.56.1830 .............................................. 2, 3

Los Angeles County Code § 22.56.1925 ............................................... 12

Los Angeles County Code Title 11, Division 1, Chapter 11.39 .................... *passim*

Los Angeles County Code, Title 32, § 101.1 ...................................... 1, 3

**OTHER AUTHORITIES**

*Schwarzer, Tashima & Wagstaffe*, California Practice Guide: Federal Civil Procedure Before Trial § 13:165 (The Rutter Group 2012)...........................8

*Schwarzer, Tashima & Wagstaffe*, California Practice Guide: Federal Civil Procedure Before Trial § 13:168 (The Rutter Group 2012)...........................8

*Schwarzer, Tashima & Wagstaffe*, California Practice Guide: Federal Civil Procedure Before Trial § 12:62.2 (The Rutter Group 2012)...........................9

# I.     INTRODUCTION

In this case, Plaintiffs attempt to improperly conflate the process of making a film with the actual contents of a film, in order to claim that a law designed to protect the public health by preventing disease transmission at a workplace is actually an impermissible content-based regulation of speech.  They make this claim despite the facts that (1) the law at issue makes no reference to the content of any film, nor regulates what films may be shown in Los Angeles County, and (2) Plaintiffs state that the most objectionable (to them) feature of the law – requiring utilization of prophylactic protection when engaging in certain sexual acts during the making of films – *is already required under California State law.*  (Compl. at ¶¶ 5, 32-35, 101.)

The law at issue, Title 11, Division 1, Chapter 11.39 of the Los Angeles County Code ("Measure B"),[1] does not regulate the content of speech.  It does not dictate or favor what is ultimately shown to viewers.  Rather, Measure B merely regulates the condition under which a film, produced for commercial purposes, is made, such that the public health is protected. Governments are well within their power to do this, to protect the health, welfare, and safety of people and property. For example, every single provision in the California Labor Code, such as minimum wages, overtime, etc. applicable to employees working in the motion picture industry, regulates the conditions under which a commercial film can be made.

Los Angeles County, in order to protect the health, welfare, and safety of its citizens, also has enacted a number of other ordinances and permitting schemes, which regulate the conditions under which a motion picture can be made.[2]  Like

---

[1] Attached as Ex. A to Intervenors' Request for Judicial Notice ("RJN").

[2] *See e.g.*, Los Angeles County Code, Title 32, § 101.1 *et seq.* ("Los Angeles Fire Code") (requiring, *inter alia*, the obtaining of a permit from fire code officials for use of pyrotechnic special effects, and employment of fire safety officers at filmmaker's expense in certain hazardous circumstances); Cal. Fire Code § 4801 *et seq.* (requiring, *inter alia*, certain electrical and mechanical specifications for film

Measure B, the purpose of these regulations is to protect against harms that can occur when films are made.  These are conditions that all filmmakers must work under, including Plaintiffs.  Moreover, the films cannot be made unless and until there is compliance with these laws.  And yet, everyone (including Plaintiffs) understands that, even though the regulations may affect how a movie is made, they say nothing about the content of the films being made, they are not content-based (nor any) restrictions on speech, nor do they constitute impermissible prior restraints on speech.

In this Motion, Plaintiffs have not presented credible evidence clearly establishing that they are entitled to extraordinary relief.  In fact, they have submitted virtually no evidence whatsoever, and appear to be relying primarily on the allegations contained in their Complaint, and the answers of one set of Defendants to the Complaint.  As a matter of law, this simply does not create the necessary factual record establishing entitlement to extraordinary relief.  Together with the evidence presented by Intervenors, and the fact that Plaintiffs' First Amendment and other constitutional law arguments, as well as their preemption arguments, are flawed, Intervenors respectfully submit that issuance of a preliminary injunction is not warranted.

## II.    STATEMENT OF FACTS

### A.    <u>Like In Any Workplace, Government May Regulate the Methods and Processes of Producing Films, And Such Regulation Does Not Regulate The Content Of Those Films.</u>

It is well-settled that local governments, like Los Angeles County, may condition the filming of motion pictures on obtaining permits which themselves contain conditions on the filming process.  Recognizing this, the State of California has sought to encourage local governments to adopt certain procedures for the

---

sets); Los Angeles County Code § 22.56.1830 *et seq*. (requiring application for and receipt of filming permit, which contains numerous conditions for all on-location filming), attached as Exhibits B, C, and D, respectively, to accompanying Request For Judicial Notice.

1   issuance of these permits.  Cal. Gov't Code § 14999.20 *et seq.*  It is also well-

2   settled that local governments may, under the powers granted to them by the

3   California Constitution, make and enforce regulations to protect the health and

4   safety of its residents.  Cal. Const. art. XI, § 7; *see, e.g.*, *Hughes v. Lincoln*, 232

5   Cal. App. 2d 741, 746-47 (1965).

6       For example, Los Angeles County Code Section 22.56.1830 *et seq.* sets out

7   the requirement that all filmmaking is conditioned on obtaining a permit.

8   Requirements for obtaining the permit include providing and complying with

9   certain information in the permit application, such as a plan for mitigation of noise

10   and contaminants while filming, and payment of requisite fees.  The applicant also

11   must show that filming will not endanger the public health, safety or general

12   welfare.  Clearly, this law has an effect on how a film is made.  Just as clearly, this

13   law is designed to protect against various harms that can arise from the production

14   of a film – interference with the regular business of the surrounding neighborhood,

15   endangering the public health, safety, or general welfare of the nearby community

16   during the process of filming, etc.

17       Likewise, Los Angeles County Fire Code, Title 32, § 101.1 *et seq.* sets out

18   the requirements and conditions under which filming involving explosives and

19   other flammable materials can take place.  Such requirements can include fire

20   safety officers on set (at filmmaker's expense) and obtaining a permit from a fire

21   code official, as well as review and approval of pyrotechnical special effects and

22   open flames by a fire code official.  Clearly, this law has an effect on how a film is

23   made.  Just as clearly, this law is designed to protect against various harms that can

24   arise from the production of a film – namely, risk of fires while on the set and risk

25   of dangerous explosions, affecting workers on these movie sets.

26       However, none of these laws dictates the content of any film shown in Los

27   Angeles County.

28

INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**B.**     **The Purpose of Measure B Is To Prevent the Risk Of Transmission of Sexually Transmitted Diseases During The Production Of Films.**

Like the other Los Angeles County laws listed above, Measure B also is designed to protect against various harms that can arise from the production of a film.  In this case, the harm is infection with a sexually transmitted disease.

Los Angeles County is the epicenter of the production of films where performers engage in sexual intercourse and other sexual acts in the United States.  Further, it has been established that, in the making of these films, workers are potentially exposed to blood, semen, and other bodily fluids that may contain gonorrhea, syphilis, and other viruses and diseases (sexually transmitted diseases, or STDs).  RJN, Ex. E, at p. 2.  The rate of STD infection in people working in production of these films, especially the performers who engage in sexual intercourse and other acts that may expose them to STDs during filming, is higher than in the general population.  *Id.*  It has also been found that STDs contracted during the making of these films can be and are transmitted to other residents of Los Angeles County who are in no way involved in the making of the films.  *Id.* at p. 2-3.

Measure B itself lists various findings regarding the risk of contracting HIV and STDs during filmmaking in which performers actually engage in sexual intercourse.  For example, Section 2 of Measure B states, in part:

- The Los Angeles County Department of Public Health has documented widespread transmission of sexually transmitted infections associated with the activities of the adult film industry within Los Angeles County.

Further, Section 3 of Measure B, entitled "Purpose and Intent," states:

The people of Los Angeles hereby declare their <u>purpose and intent in enacting this ordinance is to minimize the spread of sexually transmitted infections resulting from the production of adult films in the County of Los Angeles, which have caused a negative impact on public health and the quality of life of citizens living in Los Angeles.</u>

(emphasis added).  RJN, Ex. A.

This is a classic public health problem, which the County of Los Angeles has the duty and authority to address.  Cal. Health & Safety Code § 120575 ("It is the duty of the local health officers to use every available means to ascertain the existence of cases of [STDs] . . . and to take all measures reasonably necessary to prevent the transmission of infection."), § 120175 ("Each health officer . . . shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases.").

In order to protect both the workers and other residents of Los Angeles County, the County adopted Measure B.  Measure B protects against STD transmission by, among other things, requiring that producers of films where performers engage in sexual intercourse, and other sexual acts: (1) get a public health permit; (2) obtain health training; (3) post this public health permit on their film sets; and (4) use condoms for vaginal and anal sex.

Note that nowhere does the Measure address, or even refer to, the content of the films made. It is not concerned with what is shown; it is only concerned with ensuring that the film is made in a manner that is protective of the public health.

## III.   ARGUMENT

### A.   Plaintiffs Have Submitted No Evidence To Establish That They Are Entitled To The Extraordinary Relief Of A Preliminary Injunction

Plaintiffs' Motion is unique – and fatally defective – in that they have submitted virtually no evidence in support of it.  Instead, Plaintiffs ask this Court to utilize and rely on assertions made by Plaintiffs in another pleading – Plaintiffs' Motion for Judgment on the Pleadings ("MJOP").  However, the MJOP, and all

papers in support of it, have been vacated by the Court (Dkt. No. 46) and are of no effect.[3]

Even if Plaintiffs' claimed evidence in the MJOP were properly before this court, it consists solely of (1) the unverified allegations contained in Plaintiffs' Complaint, (2) the unverified Answer to the Complaint, from one set of Defendants, and (3) a single letter from Defendants.  Plaintiffs use these documents to assert various constitutional violations and attempt to establish the irreparable harm that necessitates a preliminary injunction.  As discussed below, this is insufficient, as a matter of law, to meet Plaintiffs' heightened evidentiary burden establishing entitlement to extraordinary relief.

1.   **To Obtain A Preliminary Injunction, Plaintiffs Must Meet A Heightened Burden of Proof, Using Clear, Admissible, Competent Evidence.**

In order to be granted the extraordinary relief of a preliminary injunction, Plaintiffs must make a "clear showing," with concrete evidence, to demonstrate: (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in Plaintiffs' favor; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Because of the extraordinary nature of the relief requested, the burden of proof necessary to obtain a preliminary injunction is much higher than the preponderance of evidence standard for regular proceedings in a civil matter.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("the requirement for substantial proof is much higher" when the court considers a motion for preliminary injunction) (internal citations omitted); *Winter*, 555 U.S. at 22 (citing *Mazurek*).

---

[3] When a motion or order is vacated, it is of no effect.  *See, e.g.*, *Macias v. Grounds*, 2013 U.S. Dist. LEXIS 50197, at*3-4 (E.D. Cal. Apr. 5, 2013) (vacating mooted motions because they had no bearing on the substantive matter before the court).

Establishing a likelihood of success on the merits requires that Plaintiffs make a clear showing, with competent evidence, that *for every element of every one of their causes of action*, they have a likelihood of success on the merits.  *See, e.g.*, *Pimentel v. Dreyfus*, 670 F.3d 1096, 1106 (9th Cir. 2012) (reversing lower court's granting of preliminary injunction because plaintiff failed to demonstrate likelihood of success on the merits, as she did not adequately allege or establish necessary elements of her claims).  As Measure B contains a severability provision (§ 8), Plaintiffs must also establish Article III standing for every provision of Measure B they challenge.  *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) (holding that because code contained severability provision, plaintiff was required to establish standing as to each individual provision, and could not simply bring claims against sign code in its entirety, where plaintiff challenged constitutionality of sign code due to denial of its permit applications).

Further, consistent with the heightened burden of proof, the evidentiary burden on Plaintiffs is heightened as well.  A party seeking preliminary injunctive relief must present evidence contained in oral testimony, affidavits or declarations, or a verified complaint – *i.e.*, *evidence in sworn or verified form*.  The motion must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings." *Fidelity Nat. Title Ins. Co. v. Castle*, No. 11-00896, 2011 U.S. Dist. LEXIS 135316, at *10-11 (N.D. Cal. Nov. 23, 2011) (internal citation omitted); *see also K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972).

## 2.   The Evidence Is Insufficient To Warrant Injunctive Relief.

In the instant case, Plaintiffs have submitted no such evidence.  Plaintiffs have submitted no declarations or other sworn pleadings.  As a threshold matter, they have submitted no competent evidence to even establish such basic elements as standing or ripeness (as set forth below, at Section III.B.1), let alone the

elements of their causes of action, irreparable harm, public interest, and equities favoring the issuance of a preliminary injunction.

The only items that Plaintiffs rely on are the unverified Complaint, the unverified Answer of one set of Defendants, and Plaintiffs' Request for Judicial Notice (attaching a letter purportedly authored by Defendant Jonathan E. Fielding").  This in no way rises to the level of the admissible, competent evidence required to meet the heightened burden present in a request of a preliminary injunction.  *Claiborne v. Blauser*, 2011 U.S. Dist. LEXIS 97755, at *20-21 (E.D. Cal. Aug. 31, 2011) ("the focus on this motion [for preliminary injunction] is not the sufficiency of the allegations of his pleading, but rather whether the allegations have been adequately demonstrated with *evidence* sufficient to show that he is likely to prevail on the merits") (emphasis added).[4]

Even when a moving party relies on *verified* pleadings, courts require additional specificity, and not general assertions or conclusory allegations.  *K-2 Ski Co.*, 467 F.2d at 1088-89 ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction; but if the facts so appearing consist largely of general assertions which are substantially controverted by counter-affidavits, a court should not grant such relief unless the moving party makes a further showing sufficient to demonstrate that he will probably succeed on the merits.") (internal citations omitted).

Here, Plaintiffs fail to submit *any* concrete, verified evidence, and no declarations, demonstrating their likelihood of success on the merits or the other

---

[4] Courts routinely expect affidavits or declarations as evidentiary support for a motion for preliminary injunction. *See, e.g.,* Schwarzer, Tashima &Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial § 13:165 (The Rutter Group 2012) ("Rutter Guide") ("Most evidentiary matters [on a motion for preliminary injunction] are presented to the court in the form of declarations or affidavits."), and§ 13:168 ("Preliminary injunctions are usually won or lost on the strength of the affidavits submitted.").

required *Winter* elements.  This absence of evidence simply is inadequate to support the Court's granting of the extraordinary relief that is a preliminary injunction.

### 3.    Plaintiff's MJOP Should Be Disregarded.

Further, Plaintiffs' 9-page Memorandum in support of its Motion for Preliminary Injunction contains very little in the way of argument, relying mainly on conclusory bullet points and case citations.  Instead, it constantly requests that the reader refer to Plaintiffs' 25-page MJOP for a purportedly full discussion of Plaintiffs' positions, arguments, and asserted evidence.  This is problematic for a number of reasons.

That Motion and its contents are not before the Court, as the Court has vacated the Motion (Dkt. No. 26).  Plaintiffs thus cannot rely on this document, as it currently is not part of the case.[5]

### B.    Plaintiffs Fail To Demonstrate Likelihood Of Success On The Merits

If a party fails to make an adequate showing on this merits inquiry, no analysis of the remaining *Winter* elements is even necessary – the motion for preliminary injunction must simply be denied.  *See Global Horizons, Inc. v. United States Dep't of Labor,* 510 F.3d 1054, 1058 (9th Cir. 2007) ("When ... a party has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary.").

---

[5] Even assuming that it were part of the case, Plaintiffs' use of and reliance on it is an obvious attempt to circumvent the 25-page limit for a memorandum of points and authorities set forth in Local Rule 11-6, and should therefore be stricken. Combined, the two memoranda total 34 pages – far in excess of the 25-page limit. To avoid exceeding the page limit, Plaintiffs could have filed an *ex parte* application seeking the Court's approval to do so.  Rutter Guide § 12:62.2. However, Plaintiffs did not do so.

1

**1.  Plaintiffs Lack Standing To Assert Challenge To Measure B**

2       As an initial matter, Plaintiffs cannot demonstrate a likelihood of success on

3   the merits, because they fail to establish standing to challenge Measure B.  Courts

4   must resolve the threshold standing question before proceeding to consider the

5   merits of the claim.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95

6   (1998); *Whitmore v. Arkansas*, 594 U.S. 149, 155-56 (1990) ("A federal court is

7   powerless to create its own jurisdiction by embellishing otherwise deficient

8   allegations of standing.").

9       In addition to failing to establish even such basic standing facts as a legal

10  capacity to sue and be sued,[6] Plaintiffs fail to show that they have suffered an

11  "injury in fact – an invasion of a legally protected interest" that is "concrete and

12  particularized, and actual or imminent."  *Lujan v. Defenders of Wildlife*, 504 U.S.

13  555, 560 (1991).  They have submitted no evidence establishing that they ever

14  even applied for a permit under Measure B, let alone were denied a permit.

15  Plaintiffs never even state that the County issued them a citation for violating

16  Measure B, or that the County is actually enforcing Measure B against Plaintiffs

17  themselves – any supposed intent on part of the County is not the same as actual

18  enforcement efforts.  *See* Compl. ¶¶ 55, 61, 76, 89, 97 (stating only that

19  "Defendants . . . have threatened to and will enforce and implement the challenged

20  provisions . . .").  Plaintiffs therefore fail to establish standing.  *See Gilles v. Davis*,

21  427 F.3d 197, 208 (3d Cir. 2005) (holding plaintiffs did not have standing to assert

22

23

---

24  [6] There is no evidence that the corporate Plaintiffs are in good standing with the

25  Secretary of State and thus have the capacity to sue.  A corporation that is not in

26  good standing may neither prosecute a lawsuit nor defend one.  Fed. R. Civ. P.
    17(b)(2).  Likewise, there is no evidence that the individual Plaintiffs are

27  employees when engaging in the acts subject to Measure B (or that the corporate
    Plaintiffs employ people who are subject to Measure B, such as film performers),

28  which is pivotal to their preemption argument, discussed in Section III.B.7 below.

constitutional claims regarding permitting process because they never applied for permits).

2.  **Measure B Is Not A Content-Based Restriction, And Does Not Restrict Speech Or Expression.**

Even assuming each Plaintiff has established standing, Measure B does not regulate the content of speech.  Measure B is silent regarding the content of any film, and does not restrict what films may be shown in Los Angeles County.  Most importantly, Plaintiffs state that they are already required under existing state law to use barrier protection when filming acts of sexual intercourse or other sexual acts. (Compl. at ¶¶ 5, 32-35, 101.)  As such, it is unclear exactly what violations they are complaining about, and what content Measure B restricts that is not already subject to an unchallenged regulation.

Plaintiffs present no evidence whatsoever that Measure B regulates the final conduct of any film. For this reason alone, Plaintiffs' First Amendment claims fail. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006) ("Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies.").

A content-based restriction on speech is one where the justification for the restriction is "focuse[d] only on the content of the speech and the direct impact that speech has on its listeners." *Boos v. Barry*, 485 U.S. 312, 320 (1988).  In determining whether a law is "content-based," courts focus on whether a regulation of speech was adopted out of disagreement with a message sought to be conveyed. *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1071-72 (9th Cir. 2006).

In no way does Measure B fit the definition of a content-based restriction on speech.  There is nothing in Measure B limiting or restricting the content of any

1  film shown in Los Angeles County.  In fact, Measure B makes no reference to the
2  content of any film whatsoever.

3  Likewise, Measure B is similarly silent on the impacts of any film on the
4  viewer.  There is no reference to or mention of any such impact, nor does the
5  Measure B attempt to address any impact.  Measure B simply is not, as Plaintiffs
6  allege, a content-based restriction on anyone's speech. Plaintiffs are as free to show
7  whatever films they wish to show in Los Angeles County now as they were before
8  the passage of Measure B.  Plaintiffs cannot succeed on any count in their
9  Complaint that Measure B is an unlawful, content-based restriction on speech.

10  Measure B is a public health regulation, and is analogous to other similar
11  regulations applicable to filmmaking generally, such as regulations setting
12  minimum wage and hour requirements, codes requiring permits for all types of
13  filming in Los Angeles County, or fire safety regulations applicable during filming.
14  These already existing regulations, applicable to Plaintiffs during the process of
15  filmmaking, and are not unconstitutional, nor have Plaintiffs challenged them as
16  such.  Rather, such regulations are proper to ensure safety of not only workers, but
17  the safety of other citizens, to protect property, and to avoid nuisance to
18  surrounding communities, both on and off film sets.  *See, e.g.*, Los Angeles County
19  Code § 22.56.1925 (requiring permit application for all on-location filming,
20  including plan for mitigating any nuisance resulting from filming); *see also* Cal.
21  Fire Code § 4801 *et seq.* (requiring approval and permitting from officials for
22  pyrotechnic special effects, and fire safety officers supervising on set in certain
23  circumstances).

24  Measure B is no different from these other public health and safety
25  regulations, which all filmmakers – including Plaintiffs – must abide by in Los
26  Angeles County.  Measure B simply seeks to protect performers and the general
27  public from STD infection through exposure to blood, semen, and other fluids that
28

contain disease during the making of films, in a manner similar to other workplaces where such exposure may also occur.

### (a)   If Measure B Affects Speech At All, It Constitutes A Valid Content-Neutral Time, Place and Manner Restriction

Even assuming Measure B has some effect on speech, it is a classic "secondary effects" regulation.  A "government may impose reasonable restrictions on the time, place, or manner of engaging in protected speech provided that they are adequately justified *without reference to the content of the regulated speech*."  *See G.K. Ltd. Travel v. Oswego*, 436 F.3d 1064, 1071 (9th Cir. 2006) (internal quotation omitted) (emphasis added).  As stated above, Measure B says nothing regarding the content of any film, and Plaintiffs present no evidence whatsoever that Measure B regulates the final content of any film.

A content-neutral regulation is one that "confers benefits or imposes burdens on speech without reference to the ideas or views expressed."  *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642-43 (1994).  Even if they had established any effect on speech, Plaintiffs fail to demonstrate that Measure B is not an acceptable secondary effects regulation.

To be a valid time, place, and manner restriction, in addition to being justified without reference to content, the restrictions must be "narrowly tailored to serve a significant governmental interest and . . . leave open ample alternative channels for communication of the information."  *See G.K Ltd Travel*, 436 F.3d at 1071.  Measure B satisfies all of these elements.

As shown in Section III.B.2 above, Measure B promotes a significant governmental interest in protecting the public health.  The face of Measure B states that it is being enacted to protect the public health of Los Angeles County residents.  Measure B, § 2-3.  It is well-settled that public health and safety are significant governmental interests justifying some time, place and manner regulations. *See, e.g.,Davidovich v. City of San Diego*, 2011 U.S. Dist. LEXIS

138319, at *9-10 (S.D. Cal. Dec. 1, 2011); Cal. Health & Safety Code §§ 120575, 120175.

Second, Measure B's provisions are narrowly tailored to serve this interest in public health and safety.  Measure B *only* regulates conduct that could result in transmitting a disease; it is precisely aimed at the source of the problem – STD exposure and infection in the making of films.  *See Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 807-08 (upholding ordinance banning posted signs on public property as "the city did no more than eliminate the exact source of the evil it sought to remedy," *i.e.*, accumulation of these signs posted on public property, constituting a "visual assault").

And finally, Plaintiffs have not demonstrated that no alternative means of communication exist if Measure B is enforced.  Plaintiffs submit no evidence demonstrating that, by not being able to produce films in exactly the manner they deem most appropriate in Los Angeles County, they cannot express the viewpoints they want to express in their final product.  First, Plaintiffs are free to make and sell a final product that depicts (digitally or through simulation) unprotected sex, if that is the message they seek to express.  Second, because these films are viewed virtually everywhere, and the performance (unlike, say, a play or concert) is not location-specific, filmmakers who want to film sexual intercourse without using condoms can simply make their films in another county,[7] **and then show those films in Los Angeles County.**  Alternative modes of communication need only be "ample" (*Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998), *amended on denial of rehearing*, 1998 U.S. App. LEXIS 17149, No. 97-16061 (9th Cir. 1998)),

---

[7]  Many filmmakers have applied for permits to film outside of Los Angeles County.  RJN, Ex. F.  Even though neighboring Ventura County has now passed legislation similar to Measure B, due to similar threats to public health (RJN, Exs. G and H), there are many other areas bordering Los Angeles County where people may film.

not equivalent or as subjectively desirable, nor (assuming Plaintiffs' objection to filming elsewhere is cost) as inexpensive as possible.  *See Members of the City Council*, 466 U.S. at 791 ("[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places. . . . .").  Plaintiffs have ample channels of communication, even with Measure B.

### (b)   Measure B May Be Adopted Via Referendum, And Plaintiffs Fail To Show Otherwise

As Measure B does not restrict First Amendment freedoms, it was validly adopted via the county referendum process.  Plaintiffs cannot show that a valid law, even if it has some effect on speech, is suddenly rendered invalid solely because it was adopted via initiative.  *E.g., Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 194 (1999) (noting that ballot initiatives related to political speech are also subject to judicial scrutiny); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) (addressing political speech, and not free speech allegedly restricted by ballot initiative or permit scheme).

### 3.   Measure B Does Not Constitute A Prior Restraint

### (a)   Measure B's Permitting and Barrier Protection Requirements Are Not Unlawful Prior Restraints

Neither Measure B, nor the permitting fee contained within Measure B, constitutes a prior restraint on Plaintiffs' freedom of expression under the First Amendment.  A "prior restraint" is an administrative or judicial order that forbids certain communications in advance of the time that such communications are to occur.  *See Alexander v. U.S.*, 509 U.S. 544, 550 (1993).  Again, Measure B in no way prohibits or restricts the showing of any films in Los Angeles County, or the contents or depictions of any films shown in Los Angeles County.  Plaintiffs are free to broadcast or disseminate whatever films they want.

To demonstrate that Measure B is a prior restraint, Plaintiffs must show that it (1) restrains speech, (2) puts unbridled discretion in the hands of government officials charged with granting or denying the permits, and (3) allows the

1  decisionmaker unlimited time to render a decision on the matter affecting the

2  permit.  *See, e.g., Krontz v. City of San Diego*, 136 Cal. App. 4th 1126, 1133 (2006)

3  (citing *Freedman v. Maryland*, 380 U.S. 51, 58-60 (1965)).

4          Plaintiffs present no evidence showing that Measure B does any of these

5  things, because Measure B does not regulate content.  As discussed above, Measure

6  B is at most a content-neutral time, place, and manner regulation, so "*the*

7  *procedural requirements of the prior restraint doctrine need not be satisfied.*"  *See*

8  *G.K. Ltd. Travel*, 436 F.3d at 1082 (citing *Thomas v. Chicago Park District*, 534

9  U.S. 316, 322 (2002) (emphasis added).[8]

10          Measure B thus is not an unlawful prior restraint unless it is shown that it

11  gives the County unbridled discretion to enforce.  *See Chicago Park District*, 534

12  U.S. at 323 (finding permitting scheme permissible because it includes standards

13  that are "reasonably specific and objective, and do not leave the decision to the

14  whim of the [permitting official].").  Because Measure B contains objective

15  standards for its permitting scheme (*i.e.*, pay for a permit, conduct bloodborne

16  pathogen training, post the permit on the work site, and use condoms during vaginal

17  and anal sex), there is no "unbridled discretion" placed in the hands of County

18  officials.  Measure B also limits the time that a decisionmaker has to render a

19  decision regarding any penalties for noncompliance.  Measure B, § 4, §

20  11.39.110(D) (providing that a written notice of decision shall be issued, specifying

21  any penalties, within five days of the administrative review or waiver, excluding

22  weekends and holidays).  Plaintiffs have submitted no evidence to the contrary.

23  Any discretion allowed by Measure B is well within constitutional norms.  *See G.K.*

24  *Ltd. Travel*, 436 F.3d at 1084; *see also Ward v. Rock Against Racism*, 491 U.S. 781,

25  794 (1989) (although the criteria in challenged regulation was somewhat elastic and

26

27  [8]Where a court determines that a permitting scheme is a prior restraint and is not
28  content-neutral, that permitting scheme must typically include certain procedural
   safeguards, such as a process for swift judicial appeal. *Freedman*, 380 U.S. at 58.

required reasonable discretion to be exercised by the permitting authority, that alone did not make the regulation an unconstitutional prior restraint).

        **(b)**   <u>**Measure B's Permitting Fees Are Not An Unlawful Prior Restraint**</u>

Measure B itself provides that permit fees "shall be set by the Department in an amount sufficient to provide for the cost of any necessary enforcement." Measure B at § 11.39.080(A).  Plaintiffs have set forth no evidence to demonstrate that the $2,000-$2,500 permitting fee is not proportionally representative of the costs incurred by the County in enforcing Measure B.  Plaintiffs also have no evidence showing that any speech is being restrained or "taxed" by Measure B. Plaintiffs also fail to show that Measure B's permitting scheme or its related fees allows unbridled discretion.

    **4.**   <u>**Measure B Is Not Unconstitutionally Vague**</u>

A law is unconstitutionally vague only if people "of common intelligence must guess at its meaning and differ as to its application."  *See Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926); *see also United States v. Kilbride*, 584 F.3d 1240, 1258 (9th Cir. 2009) (because statutory term had a "clear meaning," it was not vague and therefore did not leave enforcement of the statute to "complete discretion" of enforcing authorities).  No provisions or terms in Measure B are such that a person of common intelligence must guess at their meaning.  Further, certain key terms of which Plaintiffs complain, such as "adult film," "producer of adult film," and "commercial purposes" are specifically defined in Part I of Measure B.

    **5.**   <u>**Measure B Is Not Underinclusive**</u>

Plaintiffs' assertion that that Measure B is underinclusive, because it applies only to "commercial" filmmaking, is both unclear and unsupported.

First, Measure B is not underinclusive even though it does not apply to the general population.  Measure B only regulates the individuals or entities that create

1  the problems it seeks to resolve.  *See City of Renton v. Playtime Theatres, Inc.*, 475

2  U.S. 41, 52-53 (1986).  Measure B targets commercial filmmaking where

3  performers actually engage in sexual intercourse, and not other businesses and the

4  general population, because this activity has a markedly different effect on the

5  community in terms of STD exposure and ultimately, public health, than do other

6  businesses and the population at large.

7  　　Second, Plaintiffs' assertion that Measure B is underinclusive because it

8  applies only to "commercial" filmmaking is unsupported.  Commercial speech,

9  like the films Plaintiffs claim Measure B wrongfully regulates, may be regulated if

10  it concerns lawful activity and is not misleading, the asserted governmental interest

11  is substantial, the regulation directly advances the asserted governmental interest,

12  and the regulation is not more extensive than necessary to serve that interest.  *See*

13  *Central Hudson Gas & Elec. v. Public Serv. Comm'n of New York*, 447 U.S. 557,

14  563 (1980).  As discussed above in Section III.B.2, Measure B meets these

15  requirements.  Moreover, noncommercial filmmaking in which performers engage

16  in sexual intercourse has not been found to pose the substantial health risks that

17  underpin Measure B.

18  　　**6.**　　**Measure B Does Not Violate Plaintiffs' Due Process Rights**

19  　　Plaintiffs fail to demonstrate that Measure B deprives them of life, liberty,

20  and property without notice and an opportunity to be heard, or that there is any

21  enforcement measure currently pending against them.  The plain language of

22  Measure B puts Plaintiffs on sufficient notice of what constitutes prohibited

23  activity.  *See, e.g.,Krontz*, 136 Cal. App. 4th at 1141 (when government seeks to

24  deprive a person of property, it must provide notice and an opportunity to be

25  heard).

26  　　Measure B sets forth four clear main requirements for compliance: obtain a

27  permit, post the permit on set, get bloodborne pathogen training, and use condoms

28  for vaginal and anal sex.  Measure B also gives adequate notice of how Plaintiffs

1   may cure any deficiencies in complying with the regulation *prior to the imposition*

2   *of a penalty*.  *See* Measure B, § 4, § 11.39.110(B)-(D) (if County determines

3   permittee has failed to comply with Measure B, it must first issue a written notice

4   to comply setting forth deficiencies and corrective measures necessary to cure prior

5   to imposition of a fine or other penalty, and permittees also have the right to seek

6   administrative review of adverse finding).  Measure B also provides adequate

7   notice of, and clearly defines the scope of, what is subject to potential officer

8   inspection.  Measure B, § 4, § 11.39.130.

9        Plaintiffs also fail to demonstrate that Measure B subjects them to any

10  unreasonable search or seizure.  First, inspections on property that are subject to

11  regulation, *for purposes of ensuring compliance with the regulation*, are not

12  considered *per se* unconstitutional.  *People v. White*, 259 Cal. App. 2d Supp. 936,

13  942 (1968) ("The rule seems to be firmly established that searches or seizures

14  pursuant to licensing statutes which require inspection are valid and not subject to

15  constitutional objection.").  And warrantless administrative inspections are

16  permissible in well-regulated industries.  *See New York v. Burger*, 482 U.S. 691,

17  710-11 (1987) ("if inspection is to be effective . . . , unannounced, even *frequent*,

18  inspections are essential" to achieve purpose of regulatory scheme addressing

19  "major social problem") (internal citation omitted) (emphasis in original).

20  Furthermore, film production is well-regulated, and these regulations permit

21  government employees to be present during working hours to ensure compliance.

22  *See, e.g.,* Cal. Fire Code § 4801 *et seq.* (requiring fire safety officers supervising

23  on set in certain circumstances).  Moreover, as set forth above, Measure B provides

24  adequate notice of potential inspections.

25       It is also well-established that the government may seize items that it has

26  probable cause to believe are evidence of a crime or violation of law. *See Warden,*

27  *Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) (Fourth Amendment allows

28

1   for seizure of evidence when there is "probable cause . . . to believe that the

2   evidence sought will aid in a particular apprehension or conviction").

3

4   **7.      Measure B Is Not Preempted By Cal/OSHA Standards**

5       Plaintiffs' assertion that Measure B is preempted by California Labor Code §

6   144.7 and California Code of Regulations, Title 8, § 5193 ("State Laws") is

7   misplaced.[9]  As Cal/OSHA itself concedes in a letter reviewing a city ordinance

8   similar to Measure B (RJN, Ex. I) (regarding Los Angeles Municipal Code §

9   12.22.1 (RJN, Ex. J)), the preemptive reach of these laws is expressly limited only

10  to explicit enforcement of Cal/OSHA's own regulations.  They contain no express

11  limitations of local laws, and explicitly provide that local governments may

12  regulate workplaces, and even enact separate and distinct occupational health and

13  safety standards.  Cal. Labor Code § 144(e).

14      Given the explicit state constitutional regulatory powers given to local

15  governments, California state law has a general policy against preemption, and it

16  should not be found unless "the purported conflict (between two laws) is in fact a

17  genuine one, unresolvable short of choosing between one enactment and the

18  other."  *S.D. Myers Inc. v San Francisco*, 336 F. 3d 1174, 1177 (9th Cir. 2003)

19  (citation omitted).  An impermissible conflict between a local ordinance and state

20  law exists only if the local legislation "[1] duplicates, [2] contradicts, or [3] enters

21  an area fully occupied by general law, either expressly or by legislative

22  implication."  *Id.* (citation omitted).

23      As discussed above, Cal/OSHA regulations expressly do not occupy the

24  entire field. In addition, Cal/OSHA may regulate and enforce its standards only

25  where there is an employer-employee relationship.  Cal. Lab. Code § 6307.

26

27  [9]Again, Plaintiffs state that the State Laws already require them to use barrier

28  protection when filming acts of sexual intercourse or other sexual acts. (Compl. at
    ¶¶ 5, 32-35, 101.)  This undercuts all of their First Amendment claims.

Measure B applies regardless of employment relationship, as it applies to independent contractors or others who do not have an employer-employee relationship.[10]  Second, there is not sufficient duplication; any requirements in Measure B are not coextensive with the requirements in 8 Cal. Code Regs. 5193. For example, the training requirements of Section 5193 apply only to employees who are exposed to bloodborne pathogens (§ 5193(g)(2)(A)), while Measure B's training encompasses owners and management-level employees (§ 11.39.080(A)(1)).  Moreover, Measure B expressly requires use of condoms while filming certain acts without exception (§ 11.39.110(A)), while Section 5193 only requires use of a range of "appropriate personal protective equipment," and only when "occupational exposure remains after institution of engineering and work practice controls" (§ 5193(d)(4)(A)).  Finally, unlike Measure B, Section 5193 also contains an exception to its requirements where it is shown that use of protective devices could cause harm to an employee or co-employee (§ 5193(d)(4)(B)).

Finally, there is nothing contradictory about the two laws. Section 5193 is a wide-ranging regulatory scheme regarding bloodborne pathogen exposure and control, set out across all industries.  Measure B, by contrast, targets a specific act in a specific industry, and directs specific persons not necessarily covered by Section 5193, to take specific steps that are not necessarily required by Section 5193.  The State of California specifically limited Section 5193's reach and scope in order to allow local governments to regulate in this area.  There is no preemption.

[10] As discussed above, Plaintiffs have presented no facts showing anyone subject to Measure B works as an employee for any entity, as opposed to an independent contractor not subject to Cal/OSHA jurisdiction.

**C.**   **Plaintiffs Have Failed To Show That They Will Suffer Immediate Irreparable Harm Absent Preliminary Injunctive Relief**

A mere "possibility of irreparable harm" will not suffice to show the requisite irreparable harm in the absence of a preliminary injunction.  *Winter*, 555 U.S. at 22.  Plaintiffs "must do more than merely allege imminent harm sufficient to establish standing; [they] must *demonstrate* immediate threatened injury…" *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668 (9th Cir. 1988) (emphasis in original).  As set forth in Section III.B.1, Plaintiffs have not even established the required injury to demonstrate Article III standing, and have clearly also failed to identify any immediate threatened injury from Measure B that rises to the level of irreparable harm requiring preliminary injunctive relief.

Plaintiffs attempt to establish that Measure B has caused them irreparable harm in two ways:  (1) their allegations of First Amendment violations require a presumption of irreparable harm, and (2) Plaintiffs cannot produce adult films or perform in adult films.

However, as established above, Measure B does not preclude Plaintiffs from freely exercising their free speech rights.  Measure B only regulates the conditions under which a film may be made, to protect public health and safety, in the same manner as all other regulations applicable to the filmmaking process, such as labor laws, fire codes, and general film permitting regulations.  Plaintiffs may still create films portraying sexual intercourse, and other sexual acts, and show the films containing the precise content they wish in Los Angeles County.

In fact, nowhere do Plaintiffs claim any harm arising from the Measure B permitting process itself.  To show irreparable harm, Plaintiffs must demonstrate a "real and concrete injury or even threat thereof when [they] sought the preliminary injunction." *Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  Plaintiffs are silent on their experience with the application process for a permit under Measure B.  They are silent on whether the County issued them a citation for violation of Measure B, and they do not

1  allege that the County is enforcing Measure B now against Plaintiffs, to their

2  detriment.  As a result, Plaintiffs fail to establish any First Amendment violation,

3  so there also is no presumption of irreparable harm.

4       Further, as discussed above, if filmmakers desire to film sex acts without use

5  of condoms, they may do so in many other counties in California.  To the extent

6  this constitutes a "harm," it is monetary in nature (the alleged extra costs of filming

7  outside Los Angeles County), and monetary harms generally are not considered to

8  be "irreparable." *Los Angeles Memorial Coliseum Com.*, 634 F.2d at 1202

9  ("monetary injury is not normally considered irreparable").

10      **D.    The Balance Of Harms Weighs Against Plaintiffs.**

11      It is Plaintiffs' burden to show that the balance of the equities tips in their

12 favor, that their alleged harms outweigh other harms the proposed preliminary

13 injunction would cause.  *Winter*, 555 U.S. at 20; *see also Amoco Prod. Co. v.*

14 *Village of Gambell*, 480 U.S. 531, 542 (1987) (court "must balance the competing

15 claims of injury and must consider the effect on each party of the granting or

16 withholding of the requested relief").  Moreover, where the impact of an injunction

17 reaches beyond the parties, carrying with it a potential for public consequences, a

18 plaintiff must demonstrate that the public interest favors entering a preliminary

19 injunction.  *See U.S. v. First Nat'l City Bank,* 379 U.S. 378, 383 (1965); *see also*

20 *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (noting that "courts . . .

21 should pay particular regard for the public consequences in employing the

22 extraordinary remedy of injunction"). Plaintiffs have failed to present any evidence

23 that will meet this burden.

24      Measure B does not regulate the content of films that may be shown in Los

25 Angeles County.  Therefore, there is no expressive harm stemming from Measure

26 B.  The only "harm" from Measure B is the alleged cost to a filmmaker in moving

27 his production outside of Los Angeles County in order to avoid compliance with

28

Measure B.  This "harm" is far outweighed by the harms to the residents of Los

Angeles County should Measure B be enjoined.

Should Measure B be enjoined, an effective method of preventing STD

infection also will be enjoined, which will have a deleterious impact on public

health, as well as on those people making films in Los Angeles County.[11]  The

incidence of STDs among workers who engage in sexual intercourse during the

production of films in Los Angeles County is up to ten times that of the general

population.  RJN, Ex. E, at p. 2. The "general public has an interest in the health of

[city and county] residents and workers."  *See Golden Gate Rest. Ass'n v. City &*

*County of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008) (staying preliminary

injunction and permitting city ordinance to go forward, in part because the public

interest supported granting a stay).  A preliminary injunction of Measure B would

absolutely have a negative impact on the public interest in its own health.

Further, Measure B is a rare example of direct democracy – fully 57% of

Los Angeles County voters cast a vote in favor of Measure B in November 2012.

The voters of Los Angeles County thus have a unique and vital interest in seeing

their legislative will upheld.  Passed initiatives are presumptively valid, and should

be overturned only if it clearly cannot withstand scrutiny.  *See Coalition for Fair*

*Rent v. Abdelnour*, 107 Cal. App. 3d 97, 114 (1980) ("[It] has long been our

judicial policy to apply a liberal construction to this [initiative] power wherever it

is challenged in order that the right be not improperly annulled.").  There would be

a tremendous harm to voter participation, and to the initiative process itself, if

voters understood that their vision of what their government should do, and how

---

[11] Individual Plaintiffs' numerous contentions that they are "consenting adults,"
while true, are beside the point.  Numerous laws, such as the California Labor
Code, govern and regulate adult behavior, even when adults would consent to act
otherwise.  For example, an employer is required to pay the minimum wage, even
if a worker would consent to a lower wage.

their community should function, could be summarily and preliminarily blocked, especially given the evidentiary record in this case. *Id.* ("The right of initiative is precious to the people and is one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter.") (internal citations omitted).

Granting Plaintiffs' motion for preliminary injunction would harm the public interest, public health, and directly contravene the demonstrated public support for Measure B.

## IV.   CONCLUSION

For the foregoing reasons, Intervenors respectfully request that Plaintiffs' Motion for Preliminary Injunction be denied.

In the event that the Court determines a preliminary injunction is appropriate, Intervenors respectfully request that the Court enjoin only those individual provisions of Measure B for which Plaintiffs have adequately shown that a preliminary injunction is proper, as Measure B contains a severability provision.

In the event that the Court determines a preliminary injunction is appropriate, Intervenors further respectfully request that the Court require that Plaintiffs provide bond in an amount the Court considers proper under Rule 65(c) of the Federal Rules of Civil Procedure.

Respectfully Submitted,


DATED:  May 13, 2013                    INTERVENORS

                                        By:/s/ Samantha R. Azulay
                                        TOM MYERS
                                        SAMANTHA R. AZULAY
                                        CHRISTINA YANG
                                        *Attorneys for Intervenors*