PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC.; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>Plaintiffs,<br><br>vs.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES<br><br>Defendants. | Case No. **CV13-00190 DDP (AGRx)**<br>Assigned to the Hon. Dean D. Pregerson<br><br>**PLAINTIFFS VIVID ENTER-TAINMENT, LLC'S, CALIFA PRODUCTIONS, INC.'S, JANE DOE A/K/A KAYDEN KROSS'S, AND JOHN DOE A/K/A LOGAN PIERCE'S OPPOSITION TO INTERVENORS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:        July 1, 2013<br>Time:       10:00 a.m.<br>Location:  Courtroom 3<br><br>Action Filed:        January 10, 2012 |

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

OPPOSITION TO MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.     PLAINTIFFS HAVE STANDING.................................................................. 1

II.    MEASURE B IS CONTENT BASED AND INFRINGES ON
       PLAINTIFFS' FIRST AMENDMENT FREEDOMS.................................... 4

III.   MEASURE B CANNOT SURVIVE  CONSTITUTIONAL
       SCRUTINY............................................................................................... 7

       A.    Measure B Fails Strict and Intermediate Scrutiny............................. 7

       B.    Measure B Is Not a Valid Even as a Content-Neutral
             Restriction....................................................................................... 9

IV.    EACH COUNT OF THE COMPLAINT  STATES A VIABLE
       CLAIM..................................................................................................... 11

       A.    The Government Cannot Constitutionally Restrict
             First Amendment Activity by Referendum ...................................... 11

       B.    Measure B Imposes an Unconstitutional System of
             Prior Restraint in Violation of The First Amendment...................... 12

       C.    Measure B's Permitting Fees Violate the First
             Amendment...................................................................................... 15

       D.    Measure B is Unconstitutionally Vague............................................ 16

       E.    Measure B is Unconstitutionally Over- and Under-
             Inclusive.......................................................................................... 17

       F.    Measure B Imposes An Unconstitutional System That
             Deprives Plaintiffs of Due Process................................................... 19

       G.    Measure B is Preempted By State Law .............................................. 22

V.     CONCLUSION......................................................................................... 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abilene Retail No. 30, Inc. v. Board of Comm'rs of Dickinson Cnty.*,
    492 F.3d 1164 (10th Cir. 2007).........................................................................19

*Alexander v. United States*,
    509 U.S. 544 (1993).........................................................................12

*Annex Books, Inc. v. City of Indianapolis*,
    581 F.3d 460 (7th Cir. 2009).........................................................................19

*Arizona Right to Life PAC v. Bayless*,
    320 F.3d 1002 (9th Cir. 2003).........................................................................3

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002).........................................................................17

*Barker v. Riverside County Office of Educ.*,
    584 F.3d 821 (9th Cir. 2009).........................................................................1, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................1, 4, 16

*Berger v. City of Seattle*,
    569 F.3d 1029 (9th Cir. 2009).........................................................................4, 13, 15

*Bland v. Fessler*,
    88 F.3d 729 (9th Cir. 1996).........................................................................3

*Board of Airport Commissioners of City of Los Angeles v.*
    *Jews for Jesus, Inc.*,
    482 U.S. 569 (1987).........................................................................17

*Brown v. Entm't Merchs. Ass'n*,
    131 S. Ct. 2729 (2011).........................................................................7, 8, 9

*California Prolife Council PAC v. Scully*,
    989 F.Supp. 1282 (E.D. Cal. 1998), *aff'd,*164 F.3d 1189 (9th Cir. 1999)...........9

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Carroll v. United States,*
    267 U.S. 132 (1925) ................................................................................ 21

*Carver v. Nixon,*
    72 F.3d 633 (8th Cir. 1995) .................................................................... 12

*Central Hudson Gas & Elec. v. Public Serv. Comm'n,*
    447 U.S. 557 (1980) ................................................................................ 18

*Citizens Against Rent Control v. Berkeley,*
    454 U.S. 290 (1981) ................................................................................ 12

*City of Los Angeles v. Alameda Books,*
    535 U.S. 425 (2002) .................................................................................. 7

*City of Rancho Palos Verdes v. Abrams,*
    101 Cal. App. 4th 367 (2002) ................................................................. 24

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986) ......................................................................... 4, 9, 10

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011), *cert. denied,* 132 S. Ct. 1566 (2012) ...... 10, 11, 17

*Cox v. New Hampshire,*
    312 U.S. 569 (1941) ................................................................................ 16

*Daggett v. Webster,*
    1999 WL 33117158 (D. Me. May 18, 1999) .......................................... 8

*Desert Outdoor Adver. Inc. v. City of Moreno Valley,*
    103 F.3d 814 (9th Cir. 1996) .................................................................. 13

*Dombrowski v. Pfister,*
    380 U.S. 479 (1965) .................................................................................. 3

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992) .......................................................................... 12, 13

*Foti v. City of Menlo Park,*
    146 F.3d 629 (9th Cir. 1998) .................................................................. 10

*Freedman v. Maryland,*
    380 U.S. 51 (1965) ................................................................................. 13

iii

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Friedman v. Rogers,*
  440 U.S. 1 (1979) ................................................................... 19

*G.K. Ltd. Travel v. City of Lake Oswego,*
  436 F.3d 1064 (9th Cir. 2006) ............................................. 2, 4, 9, 15

*Hudson v. Capital Mgmt. Int'l, Inc.,*
  1984 WL 2129 (N.D. Cal. Mar. 7, 1984) ..................................... 3

*In re National Sec. Letter,*
  ___ F.Supp.2d ___, 2013 WL 1095417 (N.D. Cal. Mar. 14, 2013) ................. 13

*Johnson v. United States,*
  333 U.S. 10 (1948) .................................................................. 21

*Katz v. United States,*
  389 U.S. 347 (1967) ................................................................ 21

*Long Beach Area Peace Network v. City of Long Beach,*
  574 F.3d 1011 (9th Cir. 2009) ..................................................... 12

*LSO, Ltd. v. Stroh,*
  205 F.3d 1146 (9th Cir. 2000) ...................................................... 3

*Mabee v. White Plains Publ'g Co.,*
  327 U.S. 178 (1946) ................................................................ 13

*Marcus v. Search Warrants of Property at 104 E. 10th Str.,*
  *Kansas City, Mo.,*
  367 U.S. 717 (1961) ................................................................ 21

*Marshall v. Barlow's, Inc.,*
  436 U.S. 307 (1978) ................................................................ 21

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ................................................................ 19

*McCray v. City of Citrus Heights,*
  2000 WL 1174728 (E.D. Cal. Aug. 7, 2000) ...................................... 2

*Members of City Council of Los Angeles v. Taxpayers for Vincent,*
  466 U.S. 789 (1984) ................................................................ 17

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue,*
  460 U.S. 575 (1983) ................................................................ 13

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Minnesota v. Dickerson,*
    508 U.S. 366 (1993) ................................................................. 21

*Murdock v. Pennsylvania,*
    319 U.S. 105 (1943) ............................................................ 15, 16

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) ............................................................ 12, 13

*New Hampshire Right to Life PAC v. Gardner,*
    99 F.3d 8 (1st Cir. 1996) ......................................................... 2, 3

*New York Times v. Sullivan,*
    376 U.S. 254 (1964) ................................................................. 18

*O'Rourke v. Hayes,*
    378 F.3d 1201 (11th Cir. 2004) ................................................. 21

*People ex rel. Sneddon v. Torch Energy Servs., Inc.,*
    102 Cal. App. 4th 181 (2002) ................................................... 24

*Perry v. Brown,*
    671 F.3d 1052 (9th Cir. 2012),
    *cert. granted, Hollingsworth v. Perry,* 133 S. Ct. 786 (2012) ............ 8

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ................................................................... 8

*Reno v. ACLU,*
    521 U.S. 844 (1997) ................................................................. 16

*Santa Monica Food Not Bombs v. City of Santa Monica,*
    450 F.3d 1022 (9th Cir. 2006) ............................................... 4, 15

*Schad v. Borough of Mount Ephraim,*
    452 U.S. 61 (1981) .................................................................... 4

*Schneider v. New Jersey,*
    308 U.S. 147 (1939) ................................................................. 11

*Secretary of State of Md. v. Joseph H. Munson Co.,*
    467 U.S. 947 (1984) ................................................................. 17

*Shuttlesworth v. Birmingham,*
    394 U.S. 147 (1969) ............................................................. 2, 13

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Skinner v. Railway Labor Executives' Ass'n,*
   489 U.S. 602 (1989) ............................................................... 21

*Smith v. Goguen,*
   415 U.S. 566 (1974) ............................................................... 16

*Terry v. Ohio,*
   392 U.S. 1 (1968) .................................................................. 21

*Thomas v. Chicago Police Dist.,*
   534 U.S. 316 (2002) ............................................................... 14

*Thompson v. Western States Med. Ctr.,*
   535 U.S. 357 (2002) ............................................................... 10

*Tollis, Inc. v. County of San Diego,*
   505 F.3d 935 (9th Cir. 2007) .................................................... 11

*Traverso v. People ex rel. Dep't of Transp.,*
   6 Cal. 4th 1152 (1993) ........................................................... 19

*Turner Broad. Sys. v. FCC,*
   512 U.S. 622 (1994) ............................................................. 8, 9

*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.,*
   32 Cal. 3d 762 (1982) ............................................................ 23

*United States v. Corinthian Colleges,*
   655 F.3d 984 (9th Cir. 2011) .................................................... 25

*United States v. O'Brien,*
   391 U.S. 367 (1968) ............................................................. 8, 9

*United States v. Playboy Entm't Group, Inc.,*
   529 U.S. 803 (2000) ......................................................... 4, 8, 10

*United States v. Stevens,*
   559 U.S. 460 (2010) ........................................................... 6, 17

*Virginia v. American Booksellers Assocs.,*
   484 U.S. 383 (1988) ............................................................ 2, 3

*West Virginia State Board of Education v. Barnette,*
   319 U.S. 624 (1943) ......................................................... 11, 12

vi

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Yniguez v. Arizonans for Official English,*
    69 F.3d 920 (9th Cir.1995),
    *vacated on other grounds,* 520 U.S. 43 (1997).................................................. 8, 9

**OTHER CASES**

*In re JS Brower & Assocs., Inc.,*
    Cal. OSHAB 77-1315 (Oct. 17, 1980)........................................ 23

*In re Sacramento Mun. Util. Dist.,*
    Cal. OSHAB, 00-1136, 2001 WL 427621 (Mar. 14, 2001) ............................. 23

*In re SAIC,*
    Cal. OSHAB 03-2201, 2009 WL 1204886 (Apr. 17, 2009)............................. 23

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I................................................................ passim

U.S. Const. amend. IV....................................................... 20, 21

U.S. Const. amend. XIV........................................................ 19, 20

Cal. Const. art. I, § 7................................................................. 19

**STATE AND LOCAL STATUTES**

California Labor Code § 142.3................................................ 23

California Labor Code § 144................................................... 23

California Labor Code § 144(e) .............................................. 23

California Labor Code § 144.5.......................................... 22, 23

California Labor Code § 144.7.......................................... 22, 23

California Labor Code § 1173................................................. 23

California Labor Code § 6304.1.............................................. 23

California Labor Code § 6304/3003........................................ 23

California Labor Code § 6307................................................. 23

California Labor Code § 6309................................................. 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

California Labor Code § 6400 ........................................................................... 24

California Labor Code § 6423 *et seq.* ........................................................... 24

Los Angeles County Code § 11.39.010 ........................................... 1, 2, 5, 6

Los Angeles County Code § 11.39.080 *et seq.* ............................... 1, 2, 18

Los Angeles Code § 11.39.110 ........................................... 14, 16, 19, 20

Los Angeles County Code § 11.39.120 ......................................................... 16

Los Angeles County Code § 11.39.130 ............................................ 16, 21, 22

Los Angeles County Code § 11.39.140 ......................................................... 16

Los Angeles County Code § 22.56.1830 *et seq.* ......................................... 6

**REGULATIONS**

Cal. Code Regs. tit. 8, § 5193(b) ................................................................. 23

**RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 3, 4

Fed R. Civ. P. 12(c) ................................................................................. 22

Fed. R. Civ. P. 15(a) ................................................................................ 25

Fed. R. Civ. P. 24(c) ............................................................................. 3, 4

**OTHER AUTHORITIES**

60 Ops. Cal. Atty. Gen. 44 (1977) ............................................................... 24

Charles A. Wright, et al., Federal Practice & Procedure § 1920
    (2d ed. 1986 & Suppl. 1995) ............................................................... 3

Cindy Ramirez, *El Paso City Hall Demolition: From Hollywood to Historic,
    Firm Topples Towers Nationwide*, El Paso Times, Apr. 7, 2013 ...................... 7

*Holy Fireballs, Batman! The Hospital Exploded*, Chi. Trib., Aug. 30, 2007 ........... 7

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# OPPOSITION

The County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B") and Intervenors' Motion to Dismiss ("Motion") both suffer from the faulty premise that Measure B is "no different than any of the other numerous safety regulations required in the making of any type of film." Mot. at 6. Quite to the contrary, Measure B is worlds apart from the fire codes, production facility, zoning, and location-use regulations referenced in the Motion. *Id.* None of those regulations applies based on the type or genre of film that a producer or performer might wish to create – unlike Measure B, which is a content-specific regulation that targets only "adult film." The generic regulations that Intervenors invoke also do not dictate what acts may be filmed, as does Measure B. Measure B's permitting, inspection, suspension/revocation, and punishment provisions, in addition to being content-based, also are uniquely broad, heavy-handed, and invasive, as well as unconstitutional.

The Complaint in this action highlights these infirmities through seven properly pled claims. Plaintiffs plainly have sufficiently alleged "enough facts to state [] claim[s] that [are] plausible on [their] face" to survive a motion under Rule 12(b)(6), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007), especially given that, on a motion to dismiss, all allegations in the Complaint must be accepted as true, and all reasonable inferences from them must also be drawn in Plaintiffs' favor. *See, e.g.*, *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). Here, the Complaint's allegations preclude any notion that "Measure B does not impose any restraint on speech or expression," Mot. at 5, as well as any prospect that Intervenors' Motion to Dismiss can be granted.

## I.    PLAINTIFFS HAVE STANDING

Plaintiffs have standing to bring this constitutional facial challenge to the validity of Measure B. Compl. ¶¶ 1-2. Measure B regulates "adult films," L.A. Cnty. Code §§ 11.39.010, 11.39.080 *et seq.*, and subjects any individual or company

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

who violates it to a wide range of penalties, including criminal prosecution. *Id.* §§ 11.39.110-140. The Complaint alleges that Plaintiffs produce and perform in adult films, and as alleged therein and as discussed below, they desire to continue exercising First Amendment rights to free speech and expression that protect adult films. The Complaint further alleges that compliance with and threatened enforcement of Measure B prevent Plaintiffs from fully exercising those rights. *Id.* ¶¶ 2, 10, 11, 55, 61, 76, 89, 97. This is further reinforced by declarations submitted in support of Plaintiffs' motion for a preliminary injunction.[1] Plaintiffs have thus suffered injury-in-fact, which can be remedied by Measure B's invalidation.

In addition, the Motion cites only general standing requirements, and fails to recognize that different standards apply in the type of challenge made here. "It is well settled that traditional principles of standing are relaxed in the context of a pre-enforcement challenge to an ordinance on First Amendment grounds, where a violation of the ordinance results in criminal penalties." *McCray v. City of Citrus Heights,* 2000 WL 1174728, at *4 (E.D. Cal. Aug. 7, 2000) ("[T]he standing requirement of threatened or actual injury is met where 'the law is aimed directly at plaintiffs, [and they] will have to take significant and costly compliance measures or risk [] prosecution.'") (citing *Virginia v. American Booksellers Assocs.,* 484 U.S. 383, 392 (1988).[2] In such an instance, plaintiffs are deemed to be injured by the fact that they might be chilled from exercising their right to free expression or forego expression in order to avoid enforcement consequences. *McCray,* at *4 (citing *American Book-*

---

[1]   *See* Declaration of Steven Hirsch ("Hirsch Decl.") ¶¶ 6-7, 18, 20-32; Declaration of Kayden Kross ¶¶ 2-4, 9-15; Declaration of Logan Pierce ¶¶ 2-3, 8-11, included with the concurrently filed Motion for Preliminary Injunction.

[2]   *See also New Hampshire Right to Life PAC v. Gardner,* 99 F.3d 8, 13-15 (1st Cir. 1996); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 151 (1969) ("The Constitution can hardly be thought to deny to one subjected to the restraints of ... an ordinance the right to attack its constitutionality, because he has not yielded to its demands.") (citation omitted); *G.K. Ltd. Travel v. City of Lake Oswego,* 436 F.3d 1064, 1075 (9th Cir. 2006) ("[P]laintiffs need not establish standing prior to bringing [a] facial challenge, which seeks to invalidate the entire ordinance.").

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*sellers*, 484 U.S. at 393) (harm can be realized without enforcement when danger of an ordinance is self-censorship); *New Hampshire Right to Life*, 99 F.3d at 13. Accordingly, "it is 'sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.'" *Arizona Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000)). "Constitutional challenges based on the First Amendment present unique standing considerations," such that "threatened enforcement [that] implicates First Amendment rights … tilts dramatically toward a finding of standing." *Id.* (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965); *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996); quoting *LSO, Ltd.*, 205 F.3d at 1155).

Plaintiffs thus need not have applied for a permit under Measure B to have standing. *Contra* Mot. at 4. Rather, Plaintiffs' pre-enforcement challenge under the First Amendment targets a law aimed directly at them, they will have to take costly and significant compliance measures or risk criminal prosecution if Measure B is not invalidated, and their speech is being chilled by Measure B. Accordingly, Plaintiffs have standing on this ground as well.[3]

---

[3] If there is any procedural defect, it is not Plaintiffs' standing, but rather that the Motion to Dismiss is improper. A motion under Fed. R. Civ. P. 12(b)(6) cannot be filed after a responsive pleading has been lodged. Intervenors first stated an intent to enter this case a full month before moving to do so on March 1, 2013, Docket Nos. 24, 26 ¶ 3, and thus could have so moved *before* Defendants answered. Instead, they waited until two days *after* the Answer to even begin intervention. Docket No. 21 (Answer filed Feb. 27, 2013). Intervenors at that time stated their intention to expressly take over responsibility from Defendants to "defend Measure B vigorously" on behalf of the people of Los Angeles County. Docket No. 24 at 17:9-10. They now ask that the Court disregard the Answer, but cite no authority allowing intervention to essentially start the case over. Intervenors sought and were allowed to step into the Defendants' shoes, and must take the case in the procedural posture that they found it. Charles A. Wright, et al., Federal Practice & Procedure § 1920 at 488-89 (2d ed. 1986 & Suppl. 1995); *Hudson v. Capital Mgmt. Int'l, Inc.*, 1984 WL 2129, at *2 (N.D. Cal. Mar. 7, 1984). They accordingly became subject to the Answer already filed, and were precluded at that point from bringing a 12(b)(6) motion.

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.   MEASURE B IS CONTENT BASED AND INFRINGES ON PLAINTIFFS' FIRST AMENDMENT FREEDOMS

Intervenors claim Plaintiffs must first "demonstrate that the First Amendment even applies." Mot. at 5:19-24 (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006)). But Measure B plainly targets "adult film," a genre protected by the First Amendment and which is the Plaintiffs' stock-in-trade, and requires a government permit in order to make such movies. *See* Compl. ¶¶ 1, 8-11 (citing *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)). Even were Measure B not content-based, it clearly implicates the First Amendment, as a form of protected speech is specifically targeted by the statute. Accordingly, Intervenors ultimately bear the burden of establishing the constitutionality of each challenged provision. *See, e.g., United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 817 (2000). Thus, to move past a Rule 12(b)(6) motion, the Complaint need only include enough factual allegations to show plausible claims that Measure B is unconstitutional. *Twombly*, 550 U.S. at 556-57. The Complaint readily meets this standard.

As stated in a case upon which Intervenors heavily rely, "whether a statute is content neutral or content based … can be determined on the face of it," and "if the statute describes speech by content then it is content based." *G.K. Ltd. Travel*, 436 F.3d at 1071; *see also Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) ("A regulation is content-based if … by its very terms, [it] singles out particular content for differential treatment."). Here, Measure B describes speech – specifically, "adult film" – in terms of content, *i.e.*, that in which "performers actually

---

The instant Motion's impropriety is underscored by the Intervenors' failure to comply with Fed. R. Civ. P. 24(c), which required them to file a pleading identifying their proposed defenses along with their intervention motion. Had they done so, the Court could have considered the efficacy of Intervenors' 12(b)(6) motion along with the intervention motion – by failing to comply, Intervenors waived the right to challenge the Complaint with the instant Motion. Intervenors cannot use their decision to delay participation in this case, and failure to comply with Rule 24(c), to avoid the fact that the instant Motion should be denied as procedurally improper.

---

4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

engage in" specified sex acts "and/or any other sexual activity that may result in the transmission of blood and/or potentially infections materials." L.A. Cnty. Code § 11.39.010. It is accordingly content-based.

Measure B does *not* apply to *all* commercial "film, video, multimedia or other representation" where the activity depicted "may result in transmissions of blood and/or any other potentially infectious materials." L.A. Cnty. Code § 11.39.010. Indeed, the Motion admits that Measure B treats commercial adult filmmaking "differently from the general population and from other businesses." Mot. at 19:3-6. Measure B applies only to films "of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration … and/or any other sexual activity." L.A. Cnty. Code § 11.39.010. This specifically targets Plaintiffs' speech (and that of the adult film industry as a whole), and directs how and what Plaintiffs capture as performances in their films. Intervenors even admit Measure B restricts Plaintiffs to depicting sex without condoms only "digitally or through simulation," which by definition limits how actors' performances must be staged. Mot. at 11:16-18.

It is simply not true, as Intervenors posit, that Measure B "allow[s adult film producers] to show whatever content they please in the final product," and "does not restrict any final message or content." Mot. at 2:21-23, 10:27. For example, Plaintiffs could not film, and thus could not explicitly "show," a condom-less act of "actual[ ] … vaginal or anal penetration." *See* §§ 11.39.010, 11.39.110.A. The fact that "[n]owhere in Measure B does it say that condoms are required to be seen in the final product or film," Mot. at 5:26-27, does not save it from being content-based. Measure B's requirement for condoms in all filmed acts of vaginal or anal penetra-tion means that, in order to comply, adult film producers must either show the sex act with the condom in view, shoot it in such a way that the condom is not visible, or use after-the-fact digital trickery or other editing to make the condom "disappear." Each of these choices dictate to adult film producers how they must shoot and/or edit their speech. This cuts directly to the producers' and performers' artistic and editorial

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

choices.  Inasmuch as it does so based solely on whether a film includes specific content – *i.e.*, vaginal or anal penetration – the regulation is plainly content-based.

Framing a film permit requirement as a health or safety measure does not make it content-neutral or preclude a conflict with the First Amendment.  For example, someone who objects to westerns could offer an animal-cruelty regulation that all but prohibits burdening horses with riders on film.  Creative camera angles, careful editing, and/or digital trickery could put cowboys on their mounts in the eyes of the audience.  But as is established, the First Amendment prohibits such content-based, overbroad regulations, even in the name of, in this example, animal safety.  *See generally United States v. Stevens*, 559 U.S. 460 (2010).  It is no more constitutional, in the name of performer safety, for a content-based, overbroad regime to dictate what types of expression – *i.e.*, actual penetrative sexual acts without condoms – may or may not be committed to film.

It is plainly incorrect that Measure B is akin to "the other numerous safety regulations required in the making of any type of film – such as safety regulations for stunts and special effects, fire codes, wage and hour laws, and child labor laws."  Mot. at 6:4-7.  First, none of the cited ordinances, attached as exhibits to Intervenors' Request for Judicial Notice ("RJN") (Docket No. 50), are directed at a particular genre or type of movie, and instead apply to all productions equally.  *See* RJN Exs. 1-3.[4]  Measure B, however, targets only adult films, and does not even encompass all commercial films where the activity depicted "may result in transmissions of blood and/or any other potentially infectious materials."  L.A. Cnty. Code § 11.39.010.

Second, none of the cited ordinances have a direct impact on the *content* of the productions they are regulating.  *See* RJN Exs. 1-3.  For example, there is no limit to a filmmakers' ability depict all sorts of fire and explosions in a film as long as safety

---

[4]   The obvious exception is the portion of Los Angeles County Code § 22.56.1830 *et seq.* (RJN Ex. 3) that incorporates provisions from Measure B.

6

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

requirements are met.  *See* RJN Ex. 1.[5]  However, in order to maintain the permit required by Measure B for filming, adult film producers and performers must limit the content in their films in the manner dictated by the ordinance.  As noted above, regardless of the safety measures taken to prevent the spread of STDs, a film maker absolutely may not film an act of anal or vaginal penetration without barrier protection.  Intervenors effectively admit this content-based restriction when they claim condom-less sex could be simulated or digitally depicted instead.  Mot. at 11:16-18.

Finally, none of the cited ordinances contain provisions similar in scope or breadth to Measure B's permitting, permit suspension and revocation, training, civil and criminal punishment, inspection, and search and seizure provisions.  Nor do they suffer from Measure B's numerous facial infirmities, including vagueness, over- and under-inclusiveness, and constitutional violations identified in the Complaint.[6]  Accordingly, as alleged in the Complaint, Measure B is a content-based regulation that infringes on Plaintiffs' First Amendment rights, rendering it subject to strict scrutiny that it is "rare" for any regulation to survive.  *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011).

### III.   MEASURE B CANNOT SURVIVE CONSTITUTIONAL SCRUTINY

### A.   Measure B Fails Strict and Intermediate Scrutiny

Because it is a content-based restriction on protected speech, Measure B is subject to strict scrutiny, which requires demonstrating a compelling government interest that Measure B is narrowly drawn to serve, *Brown*, 131 S. Ct. at 2738, or at a

---

[5]   It is also not true that "filmmakers may not ... blow up buildings to show that this actually occurred." Mot. at 6:8-9.  S*ee, e.g.*, Cindy Ramirez, *El Paso City Hall Demolition:  From Hollywood to Historic, Firm Topples Towers Nationwide*, El Paso Times, Apr. 7, 2013, 2013 WLNR 8461526; *Holy Fireballs, Batman!  The Hospital Exploded*, Chi. Trib., Aug. 30, 2007, at 8, 2007 WLNR 17035465.

[6]   Regulation of adult content often suffers from overly intrusive "neutral" regulations that are used for – or have the effect of – suppressing speech. *See, e.g.*, *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 440-41, 447-48, 450 (2002).

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

minimum, to intermediate scrutiny requiring furtherance of important governmental interests through regulation that is no greater than necessary to achieve those objectives. *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). "Content-based [speech] regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Defendants and Intervenors thus bear the burden of rebutting the presumption of invalidity. *Playboy Entm't Group*, 529 U.S. at 817.

Measure B's genesis as a ballot measure means that there is no legislative or factual record for its findings, and thus there is no basis for evaluating the government interest in enforcing Measure B, identifying an "actual problem in need of solving," or establishing a "direct causal link" between adult film and the spread of STDs. *Brown*, 131 S. Ct. at 2738. As alleged in the Complaint, the drafters of Measure B included a section entitled "Findings and Declaration," that makes various statements about the adult film industry and about the spread of STDs in Los Angeles County. Compl. ¶¶ 37-39; Measure B at 1. But these "findings" are not supported by any references or facts, and none of the "findings" were directly considered or adopted by the County, and thus remain unsubstantiated claims. *Id.* Accordingly, there is no legislative record to support the "findings" in Measure B.

Moreover, no deference may be given the unsubstantiated "findings" that Measure B posits. *See Perry v. Brown*, 671 F.3d 1052, 1075 (9th Cir. 2012), *cert. granted, Hollingsworth v. Perry*, 133 S. Ct. 786 (2012). As one court put it, "no court has accorded legislative deference to ballot drafters." *Daggett v. Webster*, 1999 WL 33117158, at *1 (D. Me. May 18, 1999) (citing, *inter alia, Yniguez v. Arizonans for Official English*, 69 F.3d 920, 945 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 43 (1997) (deference normally accorded legislative findings does not apply with same force when First Amendment rights at stake; in addition, because measure was ballot initiative, it was not subject to extensive hearings or considered legislative analysis)). Courts decline to accord legislative deference to statutes that are the

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

product of the initiative process, because their adoption does not enjoy any fact-gathering or evaluation process that in part justifies deference to legislative enactments, and/or because no systematic study is undertaken in conjunction with ballot measures. *California Prolife Council PAC v. Scully,* 989 F.Supp. 1282, 1299 & n.42 (E.D. Cal. 1998), *aff'd,*164 F.3d 1189 (9th Cir. 1999).  Even the *G.K. Ltd. Travel* case heavily relied upon by Intervenors, including for their claims to deference for Measure B's findings, Mot. at 9, confirms that deference requires steps such as "legislative deliberation, [] dynamic dialog with the City's residents and businesses[,] extensive hearings," and "reliance on the experience of other cities." 436 F.3d at 1073.  None of these occurred with respect to Measure B.

Because there is nothing supporting the purported "findings" in Measure B, and its findings are not entitled to deference, there is no way to evaluate whether the government has a compelling or even an important interest. *See Yniguez,* 69 F.3d at 945 ("assertion and conjecture" insufficient to demonstrate a state interest).  There is also no way to determine if Measure B is narrowly drawn or no greater than necessary to serve the claimed governmental interest.  Measure B thus necessarily fails strict and intermediate scrutiny. *Brown,* 131 S. Ct. at 2738; *Turner,* 512 U.S. at 662.

**B.     Measure B Is Not a Valid Even as a Content-Neutral Restriction**

Even assuming *arguendo* that Measure B is not content-based, to be valid, it still must (1) be justified without reference to content; (2) serve significant governmental interests; (3) be narrowly tailored to serve that interest; and (4) leave open alternative channels for communicating the information. *See G.K. Travel,* 436 F.3d at 1071.  As discussed above, there is no record or evidence to determine if Measure B addresses any governmental interest, let alone a "significant" one.  Similarly, there is no way to determine whether Measure B is narrowly tailored to serve that interest.  The Motion's reference to *City of Renton v. Playtime Theatres,* 475 U.S. 41 (1986), for the proposition that Measure B is narrowly tailored in that it addresses "secondary effects" is misplaced. Mot. at 10:16-11:7. In that case, the record included "detailed

9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

findings" based on "extensive testimony" and studies regarding identified secondary effects, which allowed the Court to find that the city had a substantial governmental interest. 475 U.S. at 51-52. Here, there is no such record or evidence, so whether Measure B relates to a primary or secondary effects is inapposite.[7]

In addition to having no evidence supporting the claimed governmental interest, because Measure B is overbroad and under-inclusive as discussed below in section IV.E, it cannot be narrowly tailored. This failure to demonstrate tailoring is particularly important here, where speech is being limited. Even if, for purposes of argument, Measure B need not be the least restrictive alternative, it still may not "unnecessarily impose[] significant burdens on First Amendment-protected speech." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 950 (9th Cir. 2011) (citing *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 373 (2002) ("If the First Amendment means anything, it means that regulating speech must be a last – not first – resort.")), *cert. denied*, 132 S. Ct. 1566 (2012). That Measure B may be interpreted as dictating camera angles, editing practices, and similar steps in the process of producing protected speech, *see supra* 5, 7, reinforces that it burdens more speech than necessary.

Finally, Measure B does not provide ample alternative channels for communication. In *Foti v. City of Menlo Park*, cited in the Motion, a city ordinance restricted, among other things, the size and number of signs a protester may have while picketing. 146 F.3d 629, 634 (9th Cir. 1998). The court found ample alternatives for communication because protestors could still "convey their message through leafleting or sidewalk speeches" and continue picketing "which offers unique advantages to other forms of communication." *Id.* at 641. Here, conversely, the "alternatives" that Intervenors propose do not allow Plaintiffs to convey their message and cannot be

---

[7] Moreover, secondary effects analysis is "irrelevant" to the present case in any event, as it does not involve the zoning of adult entertainment. *E.g.*, *Playboy Entm't Group*, 529 U.S. at 815.

---

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

considered "ample."  As alleged throughout the Complaint, Measure B prohibits Plaintiffs from expressing themselves in their desired way anywhere in Los Angeles County, where each works or is located, so that compliance would require leaving the County entirely.  *See, e.g.*, Compl. ¶¶ 2, 8-11; *see also* Hirsch Decl. ¶¶ 21-32.[8]

More importantly, Measure B bans specific, protected forms of expression – specifically, acts of vaginal or anal penetration without the use of barrier protection. Compl. ¶ 42.  It is not a viable "alternative" means of communication that Measure B may allow Plaintiffs to produce films that suggest condom-less sex, without the ability to show it explicitly, as Intervenors suggest.  This misses the point that constitutional expression is prohibited.  Accordingly, Measure B cannot even meet the standards required for a content-neutral time, place and manner restriction.  For these reasons, Intervenors' contention throughout the Motion that Measure B is a valid, content-neutral regulation must fail.

## IV.   EACH COUNT OF THE COMPLAINT STATES A VIABLE CLAIM

The Complaint properly alleges that Measure B impermissibly infringes on Plaintiffs' First Amendment rights.  The following addresses the Motion's additional challenges to each of the seven counts, and shows each count to state a viable claim.

### A.   The Government Cannot Constitutionally Restrict First Amendment Activity by Referendum

The Supreme Court articulated the controlling constitutional principle in *West Virginia State Board of Education v. Barnette*:

---

[8]   Intervenors' assertion that Plaintiffs suffer no constitutional deprivation because they are free to film outside Los Angeles County betrays the infirmity of their position.  It is hornbook law that a speaker may not be silenced in one place, on the argument that he may speak in some other place.  *See, e.g., Schneider v. New Jersey*, 308 U.S. 147, 163 (1939); *Redondo Beach*, 657 F.3d at 957 (Smith, J., concurring).  Even under secondary effects analysis on which Intervenors erroneously rely, it is not permissible to close all venues within a jurisdiction, on the theory that nearby locales offer "alternative" opportunities.  *See, e.g., Tollis, Inc. v. County of San Diego*, 505 F.3d 935, 941-42 (9th Cir. 2007).

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

319 U.S. 624, 638 (1943). This discussion of the Constitution and the limits on the majority's ability to curtail its freedoms is not limited to the specific facts of the *Barnette* case, as Intervenors contend. Mot. at 12:11-15. Instead, the Court confirms that the rights guaranteed by the Constitution, including First Amendment rights, cannot be limited by public vote, which necessarily includes referendums. This position is supported by the other cases cited in the Complaint. Compl. ¶ 53; *see also Carver v. Nixon*, 72 F.3d 633, 640 (8th Cir. 1995) ("voters may not adopt an unconstitutional law any more than the legislature") (citing *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 295 (1981)). As discussed above, and as alleged in the Complaint, Measure B limits Plaintiffs' First Amendment rights, which the Supreme Court has held cannot be done via a public vote. Therefore, the first count of the Complaint states a viable claim for violation of the First Amendment.

**B.    Measure B Imposes an Unconstitutional System of Prior Restraint in Violation of The First Amendment**

The Complaint properly alleges that Measure B violates the First Amendment by imposing a prior restraint on producing constitutionally protected films. Compl. ¶¶ 57-62. A prior restraint is any government action that restricts or forbids speech in advance of the time it is to be made or disseminated. *Alexander v. United States*, 509 U.S. 544, 550 (1993). As the Supreme Court has made clear, "prior restraints … are the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and thus carry a "heavy presumption" of invalidity. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009).

12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A statute that "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official – as by requiring a permit or license which may be granted or withheld in the discretion of such official – is an unconstitutional … prior restraint upon the enjoyment of those freedoms." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969); *see also Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009) ("A permitting requirement is a prior restraint on speech and therefore bears a heavy presumption against its constitutionality.") (citing *Forsyth County*, 505 U.S. at 130) (internal quotation marks omitted)).  It is impermissible to condition "the free exercise of First Amendment rights on the unbridled discretion of government officials." *Desert Outdoor Adver. Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (internal quotation marks and citation omitted).

Most importantly, a "provision [that] clearly restrains speech of a particular content … must [] meet the heightened justifications for sustaining prior-restraints [] in *Freedman v. Maryland*[, 380 U.S. 51 (1965),] and must be narrowly tailored to serve a compelling governmental interest." *In re National Sec. Letter*, ___ F.Supp.2d ___, 2013 WL 1095417, at *6 (N.D. Cal. Mar. 14, 2013).  In this regard, the content-specific nature of the enactment is a critical factor.  Filmmakers, like members of the traditional press, typically are subject to general business regulations and taxes that present no First Amendment problem. *E.g., Mabee v. White Plains Publ'g Co.*, 327 U.S. 178, 184 (1946).  But when such enactments target a particular speaker or focus on the content of speech, they become unconstitutional prior restraints. *E.g., Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 583-84 & n.6 (1983).

Measure B represents a classic example of such a restraint. *See Nebraska Press Ass'n*, 427 U.S. at 549.  As alleged in the Complaint, Measure B preemptively prohibits the production of any adult film if its director (among others) has not completed a blood borne pathogen training course affirmatively approved by the

---

13

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Department, if the production has not secured a permit issued by the Department, and/or if the performers do not use condoms for all penetrative acts of anal or vaginal sex, even if in their sound discretion and artistic judgment they wish to forgo doing so.  Compl. ¶ 58.  Such a restriction on speech and expression does not survive strict scrutiny when the allegations in the Complaint are accepted as true.[9]

Because it targets particular speech and an identified class of speakers, Measure B is content based, and cannot be passed off as a general health and safety regulation.  This fact necessarily defeats Intervenors' conclusion that the "procedural guarantees of the prior restraint doctrine need not be satisfied in this case."  Mot. at 13:28-14:1.  The Motion does not make any further showing that the procedural requirements are satisfied.  Instead, Intervenors contend "Measure B does not place unbridled discretion in the hands of County officials," and therefore is constitutional.  *See id.* at 14:4-15:6.  The Complaint's above allegations, which must be taken as true, contradict this conclusion, and instead show that Measure B does ***not*** "contain adequate standards to guide the official's decision."  *Id.* at 14:8-10 (citing *Thomas v. Chicago Police Dist.*, 534 U.S. 316, 323 (2002); Compl. ¶¶ 58, 59).

For example, L.A. County Code § 11.39.110(F) provides that the Department "may … modify, suspend, revoke or continue all such actions previously imposed," for reasons "including but not limited to" certain specified justifications.  Compl. ¶ 58.  Measure B does not limit the Department's imposition of these restrictions or penalties to any specified criteria, and its "including but not limited to" language in

---

[9]   Measure B also (1) prohibits the production of adult films by any entity that has had a permit suspended or revoked, including even creating other works having nothing to do with the suspension/revocation; (2) grants the Department unlimited, standardless discretion to impose such suspensions and/or revocations, thus allowing it to institute a lengthy or potentially permanent restriction on protected speech; (3) empowers Department inspectors to take possession of "any evidence" that "bears on" compliance with Measure B, without limitation or a cause requirement, which could conceivably include sole copies of adult films produced in alleged violation of Measure B; and (4) permits suppression of expression and speech by imposing civil and criminal penalties for non-compliance with permitting and/or barrier-protection requirements.  Compl. ¶¶ 58-59.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  fact permits *any* justification the Department might conceive, just as the permissive
2  language of what the Department "may" do gives it free reign. *See G.K. Travel*, 436
3  F.3d at 1083-84. *Cf. Santa Monica Food Not Bombs*, 450 F.3d at 1041 ("'May' is a
4  term of nearly infinite elasticity, given the unbounded variety of human events.").

5      Additionally, nothing in Measure B limits or guides the Department's discre-
6  tion to determine whether a given blood-borne pathogen training class, which is a
7  prerequisite for obtaining the required permit, meets Department approval. Compl.
8  ¶ 58. These threats of unbounded approval, investigatory, and enforcement measures
9  are further preconditions to producing adult films that serve as prior restraints on
10  protected speech. Thus, the Complaint adequately alleges that Measure B is an
11  unconstitutional prior restraint on Plaintiffs' First Amendment rights.

12      **C.    Measure B's Permitting Fees Violate the First Amendment**
13      Measure B further violates the First Amendment by requiring the payment of
14  a permitting fee as a precondition to producing any adult film, thus imposing another
15  form of prior restraint. Just as with a licensing regime, conditioning the ability to
16  produce expressive works on the payment of a fee to the government is presump-
17  tively unconstitutional. *Berger*, 569 F.3d at 1037. As alleged in the Complaint, the
18  Department set a "provisional fee" that ranges from $2,000 to $2,500 per year, but
19  did not provide any analysis, findings or factual basis for the amount, or any explana-
20  tion how the Department will determine where within the range to set the fee for any
21  particular permittee. Compl. ¶ 66. Although the government may constitutionally
22  impose a fee limited to the "expense incident to the administration" of a speech regu-
23  lation, *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941), such fees must be narrowly
24  tailored to match actual administrative costs. *Murdock v. Pennsylvania*, 319 U.S.
25  105, 113-14 (1943).

26      Contrary to Intervenors' argument in the Motion, the *government* bears the
27  burden of demonstrating that a license fee is reasonably related to the recoupment of
28  the costs in administering the program for which the fee is collected. *See Murdock*,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  319 U.S. at 113-14; *Cox*, 312 U.S. at 577.  It is not Plaintiffs' burden to plead, let

2  alone prove, that the fee is not proportional to the Department's costs.  Mot. at 15:19-

3  22.  Intervenors fault the Complaint for not stating "why ... the evidence supporting

4  Measure B's provisional fees is unreliable," *id.*, but as set forth in the Complaint and

5  above, there is no "evidence."  Thus, by alleging failure to support the amount of

6  provisional fee required to create films and engage in protected First Amendment

7  activities, Plaintiffs properly state a claim that the fee represents an unconstitutional

8  prior restraint on speech.

9  ### D.    Measure B is Unconstitutionally Vague

10  The Complaint alleges Measure B contains unconstitutionally vague terms and

11  mandates that would require a person of common intelligence to guess or be unsure

12  as to their meanings, and thus require them to guess as to what was needed to com-

13  ply.  Compl. ¶¶ 72-73.  The Complaint specifically identifies terms and mandates

14  from Measure B that are vague.  *Id.* (terms include "adult film," "exposure control

15  plan," "producer of adult film," "principals," "management-level employees," "com-

16  mercial purposes," "reasonably suspected," "hazardous condition," "interference";

17  mandates include L.A. Cnty. Code §§ 11.39.110.A, 11.39.110.D-F, 11.39.120.C-D,

18  11.39.130, 11.39.140).  It is basic First Amendment doctrine that the government

19  cannot use a vague standard for the sensitive task of regulating constitutionally pro-

20  tected speech.  *E.g., Reno v. ACLU*, 521 U.S. 844, 874 (1997).  Instead, the govern-

21  ment must set "reasonably clear guidelines for law enforcement officials and triers of

22  fact in order to prevent arbitrary and discriminatory enforcement."  *Smith v. Goguen*,

23  415 U.S. 566, 572-73 (1974).

24  The Motion incorrectly contends that these allegations are missing from the

25  Complaint.  Mot. at 16:18-22.  The Motion also disputes the Complaint's allegations,

26  which is improper for purposes of a motion to dismiss, wherein allegations in a com-

27  plaint are accepted as true.  *Twombly*, 550 U.S. at 556.  Intervenors cite no evidence

28  or authority to support their conclusion that "Measure B's provisions are not vague,"

OPPOSITION TO MOTION TO DISMISS

16

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  or even an explanation of how Measure B's provisions challenged in the Complaint

2  might be interpreted. Mot. at 26:15. Again, it is not Plaintiffs' burden to offer "other

3  meanings," *id.*, but rather Intervenors' burden to demonstrate that Measure B is not

4  vague. Thus, the Complaint properly states a claim for unconstitutional vagueness.

5        **E.    Measure B is Unconstitutionally Over- and Under-Inclusive**

6        The Complaint properly states a claim that Measure B is both over- and under-

7  inclusive. As an initial matter, the Motion misstates the law, in claiming that "an

8  overbreadth claim ... must [plead] a realistic danger that Measure B will significantly

9  compromise [] First Amendment protections of parties not before the Court." Mot. at

10  17:4-8 (citing *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466

11  U.S. 789, 800 (1984)). Overbreadth challenges will also lie where a statute "restricts

12  protected First Amendment activity and does not employ means narrowly tailored to

13  serve a compelling governmental interest." *Secretary of State of Md. v. Joseph H.*

14  *Munson Co.*, 467 U.S. 947, 967 n.13 (1984); *Stevens*, 559 U.S. 460. Examples of

15  overbreadth challenges where speech regulated was *not* that of parties not before the

16  courts, but rather of plaintiffs themselves, include *Ashcroft v. Free Speech Coalition*,

17  535 U.S. 234 (2002); *Board of Airport Commissioners of City of Los Angeles v. Jews*

18  *for Jesus, Inc.*, 482 U.S. 569 (1987), and *Redondo Beach*, 657 F.3d at 949.

19        Here, the Complaint alleges that Measure B regulates a vast amount of ex-

20  pression involving actual oral, vaginal, or anal penetration that do not pose risks of

21  transmitting STDs because other alternatives are available – specifically measures

22  already taken by the adult film industry. Compl. ¶ 80. Accepting this allegation as

23  true, as is required on a motion to dismiss, Measure B is over-inclusive. In addition,

24  even producers of adult films that include only oral sex are subject to prior restraints

25  that Measure B imposes, even though they are not subject to its condom mandate.

26        On under-inclusiveness, Intervenors argue that "Measure B treats filmmaking

27  differently from the general population and from other businesses because it has a

28  markedly different effect on the community" relating to the "spread [of] STDs," Mot.

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

at 19:3-6, but provide no support for this assertion. Simply repeating or extrapolating concepts from findings in an ordinance that receive no deference, *see supra* 8-9, does not qualify. And the Motion does not address at all the Complaint's allegation that Measure B is under-inclusive because it fails to deal with adult film productions that are not for a commercial purpose, but still pose the same health risks that Measure B purports to address. *See* Compl. ¶ 81; L.A. Cnty. Code § 11.39.080.C.

Intervenors' contention that the standard for regulating "commercial speech" applies in this case does not contest this allegation and is irrelevant, as there is no "commercial speech" at issue. *See* Mot. at 17:24-18:11. As noted in the case cited in the Motion, commercial speech involves "speech proposing a commercial trans-action," *i.e.*, "advertising." *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 562, 563 (1980). Intervenors admit, however, that Measure B applies to "adult films made for commercial distribution" (yet another content-based dis-tinction), which has nothing to do with advertisements. Mot. at 17:24-25.[10] *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 266 (1964) (that a speaker is paid for publishing works of expression, or that they are sold, does not render them "commercial" for First Amendment purposes).

Lastly, the Motion's reliance on "secondary effects" analysis is misplaced, as discussed *supra* at III.B. Mot. at 18:15-19:6. As also already addressed, there is no evidence referenced in Measure B or cited in the Motion to support Intervenors' claim that differential treatment of "filmmaking" is justified. *Supra* 8-9 (citing Mot. at 19:3-5). In any event, if other activity presents the same harms as those Measure B purports to address, that suggests Measure B actually seeks to disfavor and restrict constitutionally protected speech and expression involved in adult films, and to target

---

[10] Furthermore, *Central Hudson* explains that Intervenors are simply incorrect in stating that regulations of commercial speech are subject to a "lesser standard than the standard enunciated for time, place and manger regulations." Mot. at 18:9-10. *See Central Hudson*, 447 U.S. at 562-65.

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and harm the adult film industry, rendering it under-inclusive and not targeted to the claimed secondary effects. *See, e.g., Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460, 463 (7th Cir. 2009) (regulation invalidated where City failed to produce evidence that stores regulated as sexually oriented businesses were associated with crime or disorderly conduct different from outlets like Blockbuster Video or Barnes & Noble); *cf. Abilene Retail No. 30, Inc. v. Board of Comm'rs of Dickinson Cnty.*, 492 F.3d 1164, 1185-86 (10th Cir. 2007). In sum, the Motion fails to dispute that the Complaint adequately states a claim that Measure B is unconstitutionally over- and under-inclusive.

### F.   Measure B Imposes An Unconstitutional System That Deprives Plaintiffs of Due Process

The Due Process Clause of the Fourteenth Amendment, guarantees that no person shall be deprived of life, liberty or property without due process of law. U.S. Const. amend. XIV; *see also* Cal. Const. art. I, § 7. To ensure this right, the Fourteenth Amendment requires "some form of hearing before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Here, as alleged in the Complaint, Plaintiffs have liberty and property interests in the expressive works they create through the exercise of their First Amendment rights, in the documents and other personal property used to create those works, and in their ongoing freedom to continue to create such works. *See, e.g., Friedman v. Rogers*, 440 U.S. 1, 12 n.11 (1979) (protected property interests in means of communication); *Traverso v. People ex rel. Dep't of Transp.*, 6 Cal. 4th 1152, 1160-61 (1993) (broad due process protections for personal property). The Complaint and text of Measure B included with it adequately state a claim that Measure B allows deprivations of those rights without prior notice or hearing.

The Motion ignores portions of Measure B, and interprets others in a way not supported by its plain language. Measure B allows the Department to suspend or revoke, without prior hearing or any procedural safeguards whatsoever, the required

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

permit for *any* alleged violation of Measure B *or* any alleged violation of *any other law* that may create a risk for performers of exposure to STDs. L.A. Cnty. Code § 11.39.110.A. The written notice provision Intervenors cite comes after, and does not clearly limit, this broad suspension and revocation provision. Mot. at 20:3-12 (citing L.A. Cnty. Code § 11.39.110.B). As all "reasonable inferences" from allegations in the Complaint must be drawn in Plaintiffs' favor, Intervenors' position, which is merely an interpretation of Measure B, is unavailing. *See, e.g.*, *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).[11]

The Motion also fails to address another provision of Measure B that allows the Department to "immediately suspend the adult film public health permit, initiate a criminal complaint and/or impose any fine permitted by this chapter" in certain circumstances. L.A. Cnty. Code § 11.39.110.E. If a Measure B permit is suspended or revoked, work not only must stop on the production giving rise to the suspension or revocation, but the producer cannot engage in *any* filming, thus prohibiting the creation of other works. *Id.* § 11.39.080.C. Any such producer whose permit is suspended or revoked has no recourse until *after* they lose the ability to work and exercise their First Amendment rights. *Id.* § 11.39.110.C. In addition, if a permit is suspended, the Department may refuse, with unfettered discretion, to reinstate the permit, or to issue a new permit to a given producer. *Id.* § 11.39.110.D. Thus, the Department has the ability – potentially for a single technical violation – to destroy, almost overnight, a producer's entire business, and to eliminate the jobs of its employees and contractors, without due process protections. Therefore, the Complaint states a claim that Measure B violates the Fourteenth Amendment.

---

[11]   In this regard, it should be kept in mind that in implementing and enforcing Measure B, the County is not bound by either Intervenors' interpretation of the suspension and revocation provisions, nor any other spin that the Motion offers as to how Measure B might apply – including how Intervenors characterize what adult film producers may film, and what they may not.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In addition, the Fourth Amendment contains a presumptive warrant require-
ment for searches and seizures, *Katz v. United States*, 389 U.S. 347, 357 (1967); *see
also Johnson v. United States*, 333 U.S. 10, 14-15 (1948), which applies even more
stringently in the First Amendment context. *Marcus v. Search Warrants of Property
at 104 E. 10th Str., Kansas City, Mo.*, 367 U.S. 717 (1961). There is no warrant re-
quirement in Measure B, rendering its search and seizure provisions presumptively
invalid. As the Complaint alleges, Measure B violates Plaintiffs' Fourth Amendment
rights, under which they have liberty and property interests to be free from unreason-
able searches and seizures of their persons, including their bodily fluids and other
aspects of their physical persons, as well as a property interest to be free from unrea-
sonable searches and seizures in private spaces where Plaintiffs engage in conduct
filmed to create expressive works protected by the First Amendment.[12] That Inter-
venors find it "difficult to follow" this claim cannot make Measure B constitutional.

Intervenors agree that "probable cause" is required for warrantless search or
seizure. Mot. at 20:21-23; *see Carroll v. United States*, 267 U.S. 132, 155-56 (1925).
However, Measure B allows Department inspectors to access, without notice, "any
location" that is merely *suspected* of conducting any activity [that is] regulated by"
Measure B. L.A. Cnty. Code § 11.39.130 (emphasis added). "Suspicion" (or even
"reasonable suspicion," which is *not* the language used by Measure B), is a lesser
standard than probable cause, and therefore cannot satisfy the Fourth Amendment.
*Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("reasonable suspicion" is stan-
dard for protective searches under *Terry v. Ohio*, 392 U.S. 1 (1968), but is "less than

---

[12] *See, e.g., Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989) (where the "Government seeks to obtain physical evidence from a person, the Fourth Amendment may be relevant at several levels"); *O'Rourke v. Hayes*, 378 F.3d 1201, 1207-08 (11th Cir. 2004) (workers have Fourth Amendment reasonable expec-tation of privacy in area of place of business that is off-limits to the public, such that government officers must have a search warrant to enter those areas) (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978)).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

probable cause" and thus cannot authorize search beyond that necessary to determine if suspect is armed).

Finally, the power of Department Inspectors is not limited to "specifically listed items," as Intervenors contend. Mot. at 21:2-5. Instead, Inspectors may take possession of "any sample, photograph, record *or other evidence*, including any documents" that "bear on" compliance with Measure B, without any limitation or cause requirement. L.A. Cnty. Code § 11.39.130 (emphasis added). The "or other evidence" phrase gives Inspectors unbounded seizure authority, which could cover personal property, private documents, and "samples" from any person present at a location where an inspector "suspects" that activity regulated by Measure B is occurring. *Id.* For each of these reasons, the Complaint states a claim that Measure B violates the Fourth and Fourteenth Amendments.

## G.   Measure B is Preempted By State Law

Intervenors do not dispute that the Complaint properly states a claim for declaratory relief regarding whether Measure B is preempted by California law. Instead, the Motion goes to the merits of this claim, which is not properly considered on a 12(b)(6) motion. The Motion should therefore be denied as to Count VII, and Intervenors should raise their arguments in a Rule 12(c) or 56 motion. In any event, the Motion fails to demonstrate that Measure B is *not* preempted.[13]

---

[13]   The footnote in the Motion claiming that the Complaint's preemption claim undercuts its constitutional claims is rebutted by the Motion itself. Mot. at 21 n.2. Aside from preempting Measure B, Cal/OSHA law in fact *highlights* how Measure B differs from not only the Cal/OSHA regime, but also the other permitting and zoning regulations Intervenors cite. *See supra* 6-7. Cal/OSHA's regime is a regulation of general application that generically governs a variety of businesses in the State where risks may exist for transmission of blood borne pathogens. Unlike Measure B, it does not target expressive conduct, let alone any specific type of content, such as adult film, or any other genre. Nor does it establish a system of prior restraint, or an unconstitutional fee. Because of these differences with Measure, the Cal/OSHA regime is not subject to obvious facial challenge. To the extent the State applies Cal/OSHA law to adult film, an "as applied" First Amendment challenge might lie to particular enforcement actions. None of this, however, negates the extent to which Measure B overlaps with, and in many respects replicates Cal/OSHA regulations, which thus preempt Measure B. That Plaintiffs are not yet challenging the Cal/OSHA regulations is irrelevant.

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

As alleged in the Complaint, California has exercised its exclusive authority to specifically regulate workplace transmission of blood borne pathogens.  Compl. ¶¶ 100-106.  Labor Code section 144.7 requires the Standards Board to adopt a blood borne pathogen standard that protects employees exposed to blood borne pathogens in the workplace.  Title 8, section 5193 contains the prescribed standards.  Cal. Code Regs. tit. 8, § 5193(b).  Regulation 5193 and Labor Code section 144.7 apply to adult film performers and include the required use of condoms in the adult film industry. The State legislature has stated that the Standards Board has exclusive jurisdictions over conflicting occupational health and safety standards.  *See* Cal. Lab. Code § 1173.

In view of this detailed regulatory framework, California expressly intends to occupy the field with regard to workplace safety.  "California has actively asserted jurisdiction over all places of employment with California since 1917.  Exceptions to the broad claims of jurisdiction have been narrowly construed." *In re SAIC*, Cal. OSHAB 03-2201, 2009 WL 1204886 (Apr. 17, 2009); *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal. 3d 762 (1982); *In re JS Brower & Assocs., Inc.*, Cal. OSHAB 77-1315 (Oct. 17, 1980); *In re Sacramento Mun. Util. Dist.*, Cal. OSHAB 00-1136, 2001 WL 427621 (Mar. 14, 2001) (employer has burden to prove exception to jurisdiction exists).  Moreover, "[u]nder the Labor Code, the Division (referring to Cal-OSHA) has jurisdiction over every employment and place of employment of California.  (Labor Code section 6307.)" *In re SAIC*, Cal. OSHAB 03-2201.  *See also* Cal. Lab. Code §§ 6307, 6304.1, 6304/3003, 144.5, 144, 144.7, 142.3.

Intervenors incorrectly rely on a portion of Labor Code section 144(e) to argue that "local governments have free reign" to adopt and enforce "standards related to health and safety in workplace environments."  Mot. at 22:10-11, 26-27.  Intervenors highlight the portion of section 144(e) stating that "nothing herein shall limit or re-duce the authority of local agencies to adopt and enforce higher standards relating

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to occupational safety and health," while failing to quote the rest of the provision, which gives local agencies that power only "*for their own employees*."  This plain language shows that the exception Intervenors rely upon applies only to employees of "local agencies," and does <u>not</u> empower the County to implement its own work-place health and safety standards.

Intervenors also incorrectly contend that Measure B does not enter an area fully occupied by state law. *Id.* at 23:16-26.  California Labor Code section 6400 specifically applies the Cal/OSHA standards to all places of employment, including those where independent contractors and others work.  Cal. Lab. Code § 6400 (expressly applying existing regulations to employers at "multiemployer worksites"). Thus, the claim that Cal/OSHA only applies where there is an employer-employee relationship, while Measure B applies "regardless of employment relationship," is not supported by the law.  Mot. at 23:16-26.

That Measure B involves a permit process is also unavailing. *Id.* at 24:1-8. When a county is preempted from regulating a certain area of law, a permit condition that duplicates state law cannot be used as a vehicle to avoid or circumvent preemp-tion. *See, e.g., City of Rancho Palos Verdes v. Abrams*, 101 Cal. App. 4th 367 (2002) (FCC has exclusive jurisdiction over radio communication, so city could not require permits for ham radio operators); *People ex rel. Sneddon v. Torch Energy Servs., Inc.*, 102 Cal. App. 4th 181 (2002).[14]  Here, Measure B improperly grants the County the ability to condition film permits on occupational safety and health standards adopted by the Standards Board, which the County is preempted from regulating.

The claim that Measure B is not preempted because Cal/OSHA enforcement penalties are only civil in nature is similarly incorrect.  Mot. at 24:9-19.  Under Labor

---

[14]  The California Attorney General has reached similar conclusions. *See* 60 Ops. Cal. Atty. Gen. 44 (1977) (Health & Safety Code occupies field of housing discrimination so county could not require anti-discrimination marketing as part of issuing building permits).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Code section 6423 *et seq.*, violators of Cal/OSHA regulations are subject to a range of penalties, including criminal prosecution. The related suggestion that Cal/OSHA may not conduct "spot inspections" like those authorized by Measure B is similarly inaccurate. *See, e.g.*, Cal. Lab. Code § 6309 ("If the division learns or has reason to believe that an employment or place of employment is not safe or is injurious to the welfare of an employee, it may … summarily investigate the same … without notice or hearings.")

None of these arguments relate to the question of preemption. Intervenors may honestly believe that the policy they championed is superior to the Cal/OSHA regulations. But that faith has nothing to do with whether California has occupied the field with preexisting regulations. The argument that Cal/OSHA and Measure B have different purposes is therefore baseless. Mot. at 24:20-25:2.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion to Dismiss be denied.

In the alternative, should the Court be inclined to grant any portion of the Motion to Dismiss, Plaintiffs respectfully request they be granted leave to amend their claim or claims to rectify any deficiencies found. Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (standard for granting leave to amend is "generous").

OPPOSITION TO MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: May 29, 2013

LIPSITZ GREEN SCIME CAMBRIA LLP
PAUL J. CAMBRIA, JR.

SANTEN & HUGHES LPA
H. LOUIS SIRKIN

DAVIS WRIGHT TREMAINE LLP
ROBERT CORN-REVERE
RONALD G. LONDON
JANET L. GRUMER
MATTHEW D. PETERSON

By:   /s/ Matthew D. Peterson
          Matthew D. Peterson

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC;
CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and
JOHN DOE a/k/a Logan Pierce

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899