PAUL J. CAMBRIA, JR. (State Bar No. 177957)
 pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | Case No. **CV13-00190 DDP (AGRx)** <br> Assigned to the Hon. Dean D. Pregerson <br><br> **PLAINTIFFS VIVID ENTER-TAINMENT, LLC'S, CALIFA PRODUCTIONS, INC.'S, JANE DOE A/K/A KAYDEN KROSS'S, AND JOHN DOE A/K/A LOGAN PIERCE'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:  July 1, 2013 <br> Time:  10:00 a.m. <br><br> Courtroom 3 <br><br> Action Filed:        January 10, 2012 <br><br> [Filed concurrently with Request for Judicial Notice; Declarations of Ronald London, Steven Hirsch, Logan Pierce and Kayden Kross, and [Proposed] Order] |

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................ 1

II.  FACTUAL BACKGROUND ........................................................ 1

III. PLAINTIFFS SATISFY THE CRITERIA FOR
     A PRELIMINARY INJUNCTION ............................................... 5

     A.   Plaintiffs Are Likely to Succeed on the Merits of Their
          Challenge ......................................................................... 5

          1.   First Amendment Activity Cannot be Restricted by
               Referendum ............................................................. 5

          2.   Measure B Imposes an Unconstitutional System of
               Prior Restraint in Violation of The First
               Amendment ............................................................. 8

          3.   Measure B's Permitting Fees Violate the First
               Amendment ........................................................... 10

          4.   Measure B is Unconstitutionally Vague ................... 12

          5.   Measure B is Both Under-inclusive and Over-
               inclusive ................................................................ 15

          6.   Measure B Imposes An Unconstitutional System
               That Deprives Plaintiffs of Due Process ................. 16

          7.   Measure B Is Preempted By State Law ................... 19

     B.   Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary
          Injunction ....................................................................... 22

     C.   Any Harm to Defendants Would Be Minimal If Not
          Non-Existent, and Is Outweighed by the Irreparable Harm
          Plaintiffs Face ................................................................ 24

     D.   The Public Interest Favors a Preliminary Injunction .......... 24

IV.  CONCLUSION ....................................................................... 26

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alexander v. United States,*
   509 U.S. 544 (1993) ................................................................. 8

*Armstrong v. Manzo,*
   380 U.S. 545 (1965) ................................................................ 17

*Baggett v. Bullitt,*
   377 U.S. 360 (1964) ................................................................ 12

*Board of Regents of Univ. of Wis. Sys. v. Southworth,*
   529 U.S. 217 (2000) ................................................................. 6

*Brocket v. Spokane Arcades, Inc.,*
   472 U.S. 491 (1985) ................................................................ 16

*Brown v. Entm't Merchs. Ass'n,*
   131 S. Ct. 2729 (2011) ................................................. 1, 7, 8, 15

*Buckley v. American Constitutional Law Foundation,*
   525 U.S. 182 (1999) ................................................................. 6

*California Fed. Savs. & Loan Ass'n v. City of Los Angeles,*
   54 Cal. 3d 1 (1991) ................................................................ 19

*California Prolife Council PAC v. Scully,*
   989 F.Supp. 1282 (E.D. Cal. 1998), *aff'd,* 164 F.3d 1189 (9th Cir. 1999) .......... 7

*Carroll v. United States,*
   267 U.S. 132 (1925) ................................................................ 18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993) ................................................................ 15

*City of Houston v. Hill,*
   482 U.S. 451 (1987) ................................................................ 12

*City of Lakewood v. Plain Dealer Publ'g Co.,*
   486 U.S. 750 (1988) ................................................................ 12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*City of Rancho Palos Verdes v. Abrams,*
    101 Cal. App. 4th 367 (2002) ........................................................ 21

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986) .......................................................................... 1

*Cox v. New Hampshire,*
    312 U.S. 569 (1941) ................................................................. 11, 12

*Daggett v. Webster,*
    1999 WL 33117158 (D. Me. May 18, 1999) ................................ 6

*Dailey v. Superior Court,*
    112 Cal. 94 (1896)........................................................................... 9

*Elrod v. Burns,*
    427 U.S. 347 (1976) ................................................................. 5, 22

*FCC v. Fox Television Stations, Inc.,*
    132 S. Ct. 2307 (2012) ................................................................ 13

*FCC v. League of Women Voters,*
    468 U.S. 364 (1984) ..................................................................... 16

*Flack v. Municipal Court,*
    66 Cal. 2d 981 (1967)..................................................................... 9

*Fly Fish, Inc. v. City of Cocoa Beach,*
    337 F.3d 1301 (11th Cir. 2003)............................................... 11, 12

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992) ................................................................. 11, 12

*Freedman v. Maryland,*
    380 U.S. 51 (1965) ......................................................................... 9

*Friedman v. Rogers,*
    440 U.S. 1 (1979) ......................................................................... 17

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,*
    23 F.3d 1071 (6th Cir. 1994)........................................................ 24

*Gentile v. State Bar,*
    501 U.S. 1030 (1991)................................................................... 12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ................................................................. 12

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City
   Council of Balt.*,
   683 F.3d 539 (4th Cir. 2012)...................................................... 6

*Greater New Orleans Broad. Ass'n v. United States*,
   527 U.S. 173 (1999) ............................................................... 16

*In re Marriage of Candiotti*,
   34 Cal. App. 4th 718 (1995) ..................................................... 9

*In re National Sec. Letter*,
   ___ F.Supp.2d ___, 2013 WL 1095417 (N.D. Cal. Mar. 14, 2013) ................... 9

*In re Portnoy*,
   21 Cal. 2d 237 (1942)............................................................ 19

*Johnson v. United States*,
   333 U.S. 10 (1948) ............................................................... 18

*Katz v. United States*,
   389 U.S. 347 (1967) ............................................................. 18

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009).................................................. 22

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ............................................................. 12

*Long Beach Area Peace Network v. City of Long Beach*,
   574 F.3d 1011 (9th Cir. 2009).................................................... 9

*Marshall v. Barlow's, Inc.*,
   436 U.S. 307 (1978) ............................................................. 18

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ............................................................. 17

*Minnesota v. Dickerson*,
   508 U.S. 366 (1993) ............................................................. 18

*Murdock v. Pennsylvania*,
   319 U.S. 105 (1943) ..................................................... 10, 11, 12

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) ................................................................. 8, 9

*O'Connell v. City of Stockton,*
    41 Cal. 4th 1061 (2007) ............................................................ 19

*O'Rourke v. Hayes,*
    378 F.3d 1201 (11th Cir. 2004).................................................. 18

*People ex rel. Sneddon v. Torch Energy Servs., Inc.,*
    102 Cal. App. 4th 181 (2002) ................................................... 21

*People v. Freeman,*
    46 Cal. 3d 419 (1988)................................................................. 1

*Perry v. Brown,*
    671 F.3d 1052 (9th Cir. 2012),
    *cert. granted, Hollingsworth v. Perry,* 133 S. Ct. 786 (2012) ............................. 6

*Reno v. ACLU,*
    521 U.S. 844 (1997) .................................................................. 12

*Rental Housing Ass'n of N. Alameda County v. City of Oakland,*
    171 Cal. App. 4th 741 (2009) ................................................... 19

*Rubin v. Coors Brewing Co.,*
    514 U.S. 476 (1995) .................................................................. 16

*Sammartano v. First Judicial Dist. Court,*
    303 F.3d 959 (9th Cir. 2002).......................................... 5, 22, 24

*Schad v. Borough of Mount Ephraim,*
    452 U.S. 61 (1981) .................................................................. 1, 7

*Skinner v. Railway Labor Executives' Ass'n,*
    489 U.S. 602 (1989) .................................................................. 18

*Sorrell v. IMS Health, Inc.,*
    131 S. Ct. 2653 (2011) ................................................................ 6

*Speiser v. Randall,*
    357 U.S. 513 (1958) .................................................................. 12

*Terry v. Ohio,*
    392 U.S. 1 (1968) ..................................................................... 18

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Thomas v. Chicago Parks Dist.*,
   534 U.S. 316 (2002) ................................................................. 9

*Thornhill v. Alabama*,
   310 U.S. 88 (1940) ................................................................. 12

*Traverso v. People ex rel. Dep't of Transp.*,
   6 Cal. 4th 1152 (1993) ........................................................... 17

*Trinity United Methodist Parish v. Board of Educ.*,
   907 F.Supp. 707 (S.D.N.Y. 1995) ......................................... 12

*Turner Broad. Sys. v. FCC*,
   512 U.S. 622 (1994) ................................................................. 7

*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*,
   32 Cal. 3d 762 (1982) ............................................................ 20

*United States v. Caronia*,
   703 F.3d 149 (2d Cir. 2012) ..................................................... 6

*Viacom Int'l, Inc. v. FCC*,
   828 F.Supp. 741 (N.D. Cal. 1993) ........................................ 22

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982) ............................................................... 12

*Welch v. Brown*,
   __ F.Supp.2d ___, 2012 WL 6020122 (E.D. Cal. Dec. 3, 2012) ......... 2, 5, 22, 25

*Wendling v. City of Duluth*,
   495 F.Supp. 1380 (D. Minn. 1980) ....................................... 11

*West Va. State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ................................................................. 5

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .......................................................... 2, 5, 24

*Yniguez v. Arizonans for Official English*,
   69 F.3d 920 (9th Cir. 1995),
   *vacated on other grounds*, 520 U.S. 43 (1997) ...................... 7

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**OTHER CASES**

*In re JS Brower & Assocs., Inc.,*
    Cal. OSHAB 77-1315 (1980)........................................................................ 20

*In re Sacramento Mun. Util. Dist.,*
    Cal. OSHAB 00-1136, 2001 WL 427621 (Mar. 14, 2001) .............................. 20

*In re SAIC,*
    Cal. OSHAB 03-2201, 2009 WL 1204886 (Apr. 17, 2009)............................. 20

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I................................................................................... passim

U.S. Const. amend. IV................................................................... 17, 18, 19

U.S. Const. amend. XIV................................................................... 1, 16, 17

Cal. Const. art. I, § 2(a) ...................................................................................... 8

Cal. Const. art. I, § 7.......................................................................................... 16

**STATE AND LOCAL STATUTES**

California Elections Code § 9100 *et seq.* .......................................................... 6

California Labor Code § 142.3......................................................................... 20

California Labor Code § 144............................................................................. 20

California Labor Code § 144.5.......................................................................... 20

California Labor Code § 144.7.......................................................... 2, 20, 21

California Labor Code § 1173........................................................................... 20

California Labor Code § 6304.1........................................................................ 20

California Labor Code § 6304/3003.................................................................. 20

California Labor Code § 6307........................................................................... 20

California Labor Code § 6400........................................................................... 20

Los Angeles County Code § 11.39.010 ...................................................... 7, 8, 16

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Los Angeles County Code § 11.39.080 ........................................................ 3, 4, 15

Los Angeles County Code § 11.39.110 ........................................... 8, 9, 13, 14, 17

Los Angeles County Code § 11.39.130 ................................................................ 18

Los Angeles County Code § 22.56.1925(C) ......................................................... 21

**REGULATIONS**

Cal. Code Regs. tit. 8, § 5193 ................................................................... 3, 20, 21

**RULES**

Fed. R. Civ. P. 65(a) .................................................................................................. 1

**OTHER AUTHORITIES**

43 Ops. Cal. Atty. Gen. 261 (1964) .................................................................... 20

60 Ops. Cal. Atty. Gen. 44 (1977) ...................................................................... 21

77 Ops. Cal. Atty. Gen. 147 (1994) .................................................................... 19

Jacob Weis, *No Condoms in Porn Country*, May 9, 2013
    http://projectwordsworth.com/no-condoms-in-porn-country ........................... 15

Mark Kernes, *The Latest Porn Unfriendly Place: Ventura County*
    May 7, 2013, http://business.avn.com/articles/legal/The-Latest-Porn-
    Unfriendly-Place-Unincorporated-Ventura-County-516286.html ................... 15

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, July 1, 2013, at 10:00 a.m., be-fore the Honorable Dean Pregerson, in Courtroom 3, 2nd Floor, located at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiffs, Vivid Entertainment Group, Califa Productions, Inc., and Jane Doe and John Doe, also known professionally as, respectively, Kayden Kross and Logan Pierce, will and hereby do move this Court, pursuant to Fed. R. Civ. P. 65(a), to preliminarily enjoin the enforcement of the County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B").

Plaintiffs originally filed a Motion for a Preliminary Injunction on April 5, 2013, with an accompanying Memorandum of Points and Authorities (Docket Nos. 39 & 40) and Request for Judicial Notice (Docket No. 38), and concurrently there-with, a Motion for Judgment on the Pleadings (Docket No. 37), all noticed for hear-ing May 6, 2013. The Preliminary Injunction Motion incorporated by reference the Motion for Judgment on the Pleadings, especially (though not solely) for purposes of the Preliminary Injunction Motion's showing that Plaintiffs are likely to succeed on the merits of this action.

On April 16, 2013, the Court granted a Motion to Intervene by Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation Motion ("Intervenors"). In response to the parties' Stipu-lation (Docket No. 45) to remove the hearing on Plaintiffs' Motion for Judgment on the Pleadings from the calendar, to continue the Preliminary Injunction hearing, and to enable the Intervenors' to submit a Motion to Dismiss, the Court vacated Plaintiffs' Motion for Judgment on the Pleadings (though that was not sought in the Stipulation) (Docket No. 46).

Now, in an Opposition to the Motion for Preliminary Injunction (Docket No. 51), Defendants challenge Plaintiffs' incorporation by reference of the Motion for Judgment on the Pleadings. Accordingly, it has become clear that a new motion for

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

preliminary injunction would be prudent in order for Plaintiffs' position to be fully presented for adjudication.

Plaintiffs accordingly submit this Motion for Preliminary Injunction to show expressly, rather than by incorporation, that they are likely to succeed on the merits of this suit, as set forth in greater detail in the concurrently filed Withdrawal of Motion for Preliminary Injunction Without Prejudice and the Declaration of Ronald G. London in Support of Plaintiffs' [Refiled] Motion for Preliminary Injunction. Plaintiffs' Motion is based on this Notice, the Memorandum of Points and Authorities accompanying it, Request for Judicial Notice, and Declarations submitted on behalf of the Plaintiffs, along with the above-noted Declaration of Ronald G. London.

Plaintiffs brought this civil rights action challenging Measure B's constitutionality, because among other things, it imposes an intolerable burden on the exercise of rights under the First Amendment.  In view of the constitutional rights that Plaintiffs enjoy, and the various ways in which Measure B's enforcement violates those rights, enforcement of Measure B should be preliminarily enjoined.  As more fully discussed in the Memorandum of Points and Authorities accompanying the Motion, Plaintiffs are likely to succeed on the merits of their First Amendment (and other) challenges to Measure B; Plaintiffs will also thus suffer irreparable injury if Measure B is enforced pending a challenge to its constitutionality, the balance of equities favors Plaintiffs, and the public interest will be advanced by a preliminary injunction. *E.g.*, *Welch v. Brown*, __ F.Supp.2d ___, 2012 WL 6020122, at *2 (E.D. Cal. Dec. 3, 2012) (citing, *inter alia*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Measure B inflicts constitutional harm by forcing adult film producers to pay fees and obtain permits from the Los Angeles County Department of Public Health, before any production occurs.  The permitting and fee regime requires all principals and management-level employees – including film directors – to complete blood

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

borne pathogen training, and allows immediate and potentially permanent permit revocation without prior notice.  Measure B also requires the use of condoms during the production of adult films, even though the performers are – as are all performers in adult films – consenting adults engaged in constitutionally protected expression. Measure B is backed by draconian penalties that the County Department of Public Health enjoys total discretion to enforce against the adult film industry under broad, vague, and unlimited enforcement powers.

Measure B is thus far different from the typical fire codes, production facility, zoning, and/or location-use regulations that may generically apply.  None of those ordinances regulates based on the type or genre of film that a producer or performer might wish to create – unlike Measure B, which is a content-specific regulation that targets only "adult film."  Those generic regulations also do not dictate what acts may be filmed, as does Measure B, the permitting, inspection, suspension/revoca-tion, and punishment provisions of which, in addition to being content-based, are also uniquely broad, heavy-handed, and invasive.

Given these contours, and the manner in which it necessarily intrudes on adult films' expressive elements, Measure B facially violates numerous First Amendment and other protections.  Significantly, Defendant Los Angeles County has acknowledged that "Plaintiffs' Complaint presents important constitutional questions that require and warrant judicial determination," Answer at 1 (Docket No. 21), and "Defendants have declined to defend the constitutionality of Measure B," and in fact "are not defending [its] constitutionality."  *See* Defendants' Supplemen-tal Statement of Non-Opposition to Proposed Intervenors' Motion to Intervene at 1 (Docket No. 35).  Rather, the Defendants assert, the burden of defending Measure B falls to Intervenors.  *Id.*  But despite this, Defendants steadfastly have refused to forgo enforcing Measure B pending resolution of the concededly "important constitutional questions."  Answer at 1.  Quite to the contrary, the County issued an interim permit fee schedule (making no effort to ensure fees are limited to the cost

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

incident to permitting), and has taken the position that "they have no discretion" other than to implement and enforce Measure B, "unless [it] is held to be unconstitutional or ... unenforceable." Answer at 14 (Third & Fourth Aff. Defenses).

A preliminary injunction pending a final determination of unconstitutionality is therefore necessary given the many infirmities apparent on the face of Measure B. Measure B curtails the freedom of expression via a county ballot initiative, while also resting on "findings" that lack a legislative record. In addition, it serves as a prior restraint by preemptively prohibiting the production of adult films in a variety of circumstances. Measure B also gives the Department of Public Health unlimited, standardless discretion to suspend and revoke permits, and to seize "any evidence" that "bears on" compliance, without limit or cause, and the permit fees act as a prior restraint in their own right. In addition, Measure B is unconstitutionally vague due to its incorporation of key terms and mandates without any adequate definition, and is unconstitutionally under-inclusive and over-inclusive as well. Enforcing Measure B also presents serious due process problems that threaten Plaintiffs' liberty and property interests.

Plaintiffs, Defendants, and Intervenors have engaged in numerous discussions regarding this litigation. During those discussions, Plaintiffs have requested that Defendants agree not to enforce Measure B during the pendency of this action, and that Intervenors consider consenting to have the County do so. Defendants and Intervenors repeatedly have rejected these requests. Accordingly, this Motion is necessary. *See* Declaration of Robert Corn-Revere accompanying Plaintiffs' Opposition to Motion to Intervene (Docket No. 34) ¶ 5.

///

///

///

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

For all these reasons, Plaintiffs satisfy the requirements for grant of a preliminary injunction and thus respectfully request the Court to grant this Motion.

DATED: May 29, 2013        LIPSITZ GREEN SCIME CAMBRIA LLP
                            PAUL J. CAMBRIA, JR.

                            SANTEN & HUGHES LPA
                            H. LOUIS SIRKIN

                            DAVIS WRIGHT TREMAINE LLP
                            ROBERT CORN-REVERE
                            RONALD G. LONDON
                            JANET L. GRUMER
                            MATTHEW D. PETERSON

                            By:   /s/ Matthew D. Peterson
                                  Matthew D. Peterson

                            Attorneys for Plaintiffs
                            VIVID ENTERTAINMENT, LLC;
                            CALIFA PRODUCTIONS, INC.;
                            JANE DOE a/k/a Kayden Kross; and
                            JOHN DOE a/k/a Logan Pierce

5
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Vivid Entertainment Group, Califa Productions, Inc., and Jane Doe and John Doe, also known professionally as, respectively, Kayden Kross and Logan Pierce, are among the many producers, distributors, and performers of adult films that are shot in Los Angeles County. [1]  It is beyond dispute that such works – including erotic adult films – are protected by the First Amendment, which applies to the States and their subdivisions under the Fourteenth Amendment. *See, e.g., Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986).  Plaintiffs and those similarly situated with them have been impeded in exercising their First Amendment rights to create such works ever since the adoption of the recently enacted County of Los Angeles Safer Sex in the Adult Film Industry Act, also known and referred to as "Measure B."  As shown below, Measure B's constitutional flaws are apparent on its face and from the initial submissions in this case,[2] and it accordingly should be preliminarily enjoined.

### II.   FACTUAL BACKGROUND

Measure B targets constitutionally protected expressive enterprises that have longstanding roots in Los Angeles County, and that make significant contributions to its economy.  Since *People v. Freeman*, 46 Cal. 3d 419 (1988), held creation of

---

[1]   *See* Declaration of Steven Hirsch ("Hirsch Decl.") ¶¶ 2-7; Declaration of Kayden Kross ("Kross Decl.") ¶¶ 2-4; Declaration of Logan Pierce ("Pierce Decl.") ¶¶ 2-3.

[2]   Measure B is attached to the Complaint (Docket No. 1) and is codified at Los Angeles County Code of Ordinances Chapter 11-3.  Other fatal constitutional flaws would be apparent with factual development at later stages of the case.  These include demonstrable falsity of some of Measure B's "findings" and the highly disputed nature of others, an inability to show Measure B can satisfy First Amendment scrutiny given the lack of legislative record or factual underpinnings for its findings, and additional over-inclusiveness problems as well. *See* Measure B § 2(a), (d); *see also Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011) (insufficiency of findings precludes showing Measure B identifies an "actual problem in need of solving,").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

non-obscene adult films protected by the First Amendment, and not in violation of California's criminal prostitution statutes, Los Angeles County has become a leading location for production of adult films globally.  Indeed, Measure B acknowledges "the production of sexually explicit adult films is legal in … California," and that California state law provides requirements to protect adult film performers and models.  Measure B § 2(c), (g)-(h).

Given the nature of the industry, adult film producers are keenly aware of the potential health risks to performers from the exchange of bodily fluids.  As the public first became aware of diseases like HIV/AIDS and hepatitis, the industry provided information about the diseases, their transmission, and how to prevent exposure.  Since then, leading adult films creators and producers adopted strict requirements for each production, to protect performers and prevent the spread of HIV and other sexually transmitted diseases ("STDs").  *See* Hirsch Decl. ¶¶ 8-17.  Adult film industry members and their trade associations created testing and reporting regimes to assist producers and performers to ensure safe and healthy work environments.  This led to availability of databases that provide continually updated information on performers who have a negative-test status, based on monthly (or more frequent) testing.  Adult film producers and performers can access the database to confirm the negative-test status of any performer on any given production date.  No law-abiding producer would allow a performer to participate in the production of an adult film without a current negative-test confirmation, and no performer would agree to film without confirming his or her co-performers' negative test status.  *Id.*; Kross Decl. ¶¶ 5-6.

At the same time, the State of California enacted its own laws and regulations regarding exposure to blood borne pathogens, which confer jurisdiction over the field of occupational safety and health in California workplaces – including those in Los Angeles County – to the California Occupational Safety and Health Standards Board ("Standards Board") and Division of Occupational Safety and Health ("Cal-OSHA").  California Labor Code section 144.7 required the Standards Board to adopt a blood

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

borne pathogen standard that protects employees exposed to blood borne pathogens in the workplace. Title 8, section 5193 of the California Code of Regulations contains the prescribed standards. Cal. Code Regs. tit. 8, § 5193(b). It is against this backdrop that Measure B was proposed and enacted.

Nonetheless, Measure B requires adult film producers to obtain permits from the Los Angeles County Department of Public Health ("Department") **before** any production can take place, which requires producers to pay fees and file applications that demonstrate successful completion of blood borne pathogen training approved by the Department. L.A. Cnty. Code § 11.39.080. If the producer is a business entity, *all* of its "principals and management-level employees" (which are undefined terms), including any and all film directors, must complete the required course. *Id.* Once an application is approved and a permit issues, it is valid for only two years, and must be displayed at all times where any adult film is shot. *Id.* §§ 11.39.080.B, 11.39.090. Measure B further requires the use of condoms by performers for all acts of anal or vaginal sex during the production of adult films. *Id.* § 11.39.110.A. For all these purposes, "adult films" are "any film, video, multimedia or other representation," defined as those containing "sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another performer; and/or any other sexual activity that may result in the transmission of blood and/or any other potentially infectious materials." *Id.* § 11.39.010.

Department inspectors enjoy access to "any location suspected of conducting any activity" regulated by Measure B, without notice. *Id.* § 11.39.120. They may thereupon take possession of "any sample, photograph, record or other evidence, including any documents *bearing on*" compliance with Measure B. *Id.* § 11.39.130. The Department may, at any time, without prior notice, suspend or revoke permits for *any* violation of Measure B's provisions, or of *any other laws* – which are not

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

identified or limited – if the violation may create a risk to performers of exposure to STDs, which "risks" also are undefined. *Id.* § 11.39.110.

If a permit is suspended or revoked, work must not only stop on a given production, its producer cannot engage in *any* other filming, thus prohibiting the creation of other works as well. *Id.* The Department may reinstate a permit, or issue a new permit, to a producer whose permit was revoked, *id.* § 11.39.110.D-H, but nothing in Measure B requires the Department to do so, or when it should do so. To effectuate its permitting (and enforcement) regime, Measure B imposes a fee structure, but only states the fee "shall be set … in an amount sufficient to provide for the cost of any necessary enforcement." *Id.* § 11.39.080.A.[3] Any person found to have violated Measure B faces fines, civil actions, and jail time. *Id.* §§ 11.39.120, 11.39.140.

Upon filing of the Complaint to commence the action, Plaintiffs promptly engaged in discussions with the County regarding the issues in the Complaint, and granted Defendants extensions of time in which to respond. Declaration of Robert Corn-Revere accompanying Plaintiffs' Opposition to Motion to Intervene (Docket No. 34) ¶ 4. Defendants ultimately filed an answer, in which they acknowledged that the Complaint "presents important constitutional questions that require and warrant judicial determination." Answer at 1 (Docket No. 21). Defendants nonetheless claim "neutrality" on whether Measure B is constitutional, have "declined to defend," and in fact "are not defending [its] constitutionality." Defendants' Supplemental Statement of Non-Opposition to Proposed Intervenors' Motion to Intervene at 1 (Docket No. 35). Yet this stance of "neutrality" has not included a commitment to forgo

---

[3]   The Department has stated that Measure B has become effective, even though it has not conducted any proceedings, conducted any analyses, or otherwise taken steps to establish the proper amount of permitting fees. Instead, it has set a "provisional fee" ranging from $2,000 to $2,500 per year, without any findings or factual basis for the amount, or any explanation how it will determine where within that range to set the fee for any specific applicant or permittee. Letter from Jonathan E. Fielding to "Producers of Adult Films in Los Angeles County," dated Dec. 14, 2012.  Request for Judicial Notice, Exhibit A.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

enforcing Measure B pending judicial review, or to attempt a narrowing construction. To the contrary, Defendants issued an interim permit fee schedule as a first step in implementing Measure B, and have taken the position "they have no discretion" other than to enforce "unless Measure B is held to be unconstitutional or otherwise unenforceable." Answer at 14 (Third & Fourth Aff. Defenses).

## III.   PLAINTIFFS SATISFY THE CRITERIA FOR A PRELIMINARY INJUNCTION

The Court should enjoin the enforcement of Measure B until a final determination of its constitutionality, as Plaintiffs satisfy each of the four elements for grant of a preliminary injunction. *See, e.g., Welch v. Brown*, __ F.Supp.2d ___, 2012 WL 6020122, at *2 (E.D. Cal. Dec. 3, 2012) (citing, *inter alia, Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs are likely to succeed on their challenge to Measure B, such that irreparable harm is presumed, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and maintaining the *status quo ante* while this case proceeds clearly tilts in Plaintiffs' favor, as does the public interest, which always favors upholding First Amendment principles and preventing constitutional violations. *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).

## A.   Plaintiffs Are Likely to Succeed on the Merits of Their Challenge

Measure B suffers a variety of constitutional and other defects, any of which, standing alone, suffices to require invalidation. So long as Plaintiffs are likely to succeed on any of the following grounds, a preliminary injunction should issue, though, ultimately, Plaintiffs are likely to succeed on each challenge to Measure B.

### 1.   First Amendment Activity Cannot be Restricted by Referendum

Measure B violates the First Amendment by curtailing freedom of expression via county ballot initiative. "One's right to life, liberty, and property, to free speech, a free press, … and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." *West Va. State Bd. of Educ. v. Barnette*, 319

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

U.S. 624, 638 (1943).  The exercise of First Amendment freedoms cannot be limited by referendum, *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 194 (1999) ("voters may no more violate the ... Constitution by enacting a ballot issue than [may] the general assembly"), in part – but by no means solely – because regulating by public vote is inherently content-based.[4]  Here, Measure B was on the November 2012 ballot per California's initiative process, whereby if an initiative's proponent collects enough signatures and a county clerk certifies them, the measure is put to public vote,[5] which here resulted in Measure B's adoption.  Limiting First Amendment rights in this manner is simply impermissible.

In addition, as Measure B was enacted by referendum, its findings are not backed by any legislative record.  *See* Measure B § 2.  Its drafters included a section entitled "Findings and Declaration" that makes various statements about adult films and the spread of STDs.  Measure B at 1.  But these "findings" are not supported by any references or facts, and none were directly considered or adopted by the County, and thus remain unsubstantiated claims that receive no deference,[6] meaning there is no legislative record supporting Measure B's "findings."  *See Perry v. Brown*, 671 F.3d 1052, 1075 (9th Cir. 2012), *cert. granted, Hollingsworth v. Perry*, 133 S. Ct. 786 (2012).[7]

---

[4]  *Board of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235-36 (2000).  That Measure B purported to be a "public health" ballot measure does not immunize it from First Amendment scrutiny.  *Sorrell v. IMS Health, Inc.*, 131 S. Ct.2653 (2011).  *See United States v. Caronia*, 703 F.3d 149, 166 (2d Cir. 2012); *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 683 F.3d 539, 556 (4th Cir. 2012).

[5]  *See* Cal. Elec. Code § 9100 *et seq.*  The Los Angeles County Registrar-Recorder/County Clerk certified the signatures in support of Measure B on July 3, 2012.  Though given the opportunity, the County, through its Board, declined to implement Measure B.  Docket No. 24 at 3:22-23; Docket No. 25 ¶ 9.

[6]  Though a determination to such effect is not necessary to granting a preliminary injunction, Measure B's claims about purported links between adult films and STDs are misleading and incorrect.

[7]  *Cf. Daggett v. Webster*, 1999 WL 33117158, at *1 (D. Me. May 18, 1999) ("[N]o court has accorded legislative deference to ballot drafters.") (citing, *inter alia*,

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Yet as a content-based restriction on protected speech, Measure B is subject to strict scrutiny, which requires demonstrating a compelling government interest that Measure B is narrowly drawn to serve, *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011), or at a minimum, intermediate scrutiny requiring furtherance of important governmental interests through regulation no greater than necessary to achieve those objectives. *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994). Measure B is clearly content-based in that its requirements and restrictions target a category of speech – non-obscene sexual expression – that is protected by the First Amendment. *See, e.g., Schad*, 452 U.S. at 65. Measure B applies not to *all* "film, video, multimedia," etc., where the activity depicted may result in transmissions of blood and/or any other potentially infectious materials," but rather only those that involve "sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration … and/or any other sexual activity." L.A. Cnty. Code § 11.39.010.

Measure B thus specifically targets Plaintiffs' speech (and that of the adult film industry as a whole), and directs how and what Plaintiffs capture as performances on film. Hirsch Decl. ¶¶ 23-32; Kross Decl. ¶¶ 11-15; Pierce Decl. ¶¶ 8-9. Measure B affects how adult film producers shoot, edit, and even script their movies, the settings and moods they can evoke, and drastically effects both creative and editorial discretion, and the level of output that adult film producers and performers can maintain. *Id.* Intervenors even admit that Measure B restricts Plaintiffs to depicting unprotected sex only "digitally or through simulation," which by definition limits how actors' performances must be staged. Intervenors' Memo in Support of Motion to Dismiss at 11 (Docket No. 49) ("Mot. to Dismiss Mem."). Plaintiffs may

*Yniguez v. Arizonans for Official English*, 69 F.3d 920, 945 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 43 (1997) (deference normally accorded legislative findings does not apply with same force when First Amendment rights at stake; in addition, because measure was ballot initiative, it was not subjected to extensive hearings or considered legislative analysis); *California Prolife Council PAC v. Scully*, 989 F.Supp. 1282, 1299 & n. 42 (E.D. Cal. 1998), *aff'd*, 164 F.3d 1189 (9th Cir. 1999)).

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

not film, and thus could not explicitly "show," a condom-less act of "actual[ ] … vaginal or anal penetration."[8] This specifically targets Plaintiffs' speech (and that of the adult film industry as a whole), directs how and what Plaintiffs may capture as performances in their films, and dictates how adult film producers must shoot and/or edit their speech.

In this regard, Measure B is far different from typical fire codes, production facility, zoning, and/or location-use regulations that generically apply. None of those ordinances regulates based on the type or genre of film that a producer or performer might wish to create – unlike Measure B, which is a content-specific regulation that targets only "adult film." Such generic regulations also do not dictate what acts may be filmed, as does Measure B, the permitting, inspection, suspension/revocation, and punishment provisions of which, in addition to being content-based, are also uniquely broad, heavy-handed, and invasive. In sum, Measure B is quintessential content-based regulation, rendering it subject to the strict scrutiny that it is "rare" for any regulation to survive. *Brown*, 131 S. Ct. at 2738.

### 2. Measure B Imposes an Unconstitutional System of Prior Restraint in Violation of The First Amendment

Regardless of any legislative record – or lack thereof -- the mechanism dictated by Measure B's drafters violates the First Amendment by imposing a prior restraint on producing constitutionally protected films. A prior restraint is any government action or order that restricts or forbids speech in advance of the time it is to be made or disseminated. *Alexander v. United States*, 509 U.S. 544, 550 (1993). As the Supreme Court has made clear, "prior restraints … are the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*,

---

[8]   L.A. Cnty. Code §§ 11.39.010, 11.39.110.A. The fact that Measure B may not state that condoms must be seen in the final film does not save it from being content-based. The requirement for condoms in all filmed acts of vaginal or anal penetration means that, to comply, adult film producers must either show the sex act with the condom in view, shoot it in such a way that the condom is not visible, or use after-the-fact digital trickery or other editing to make the condom "disappear."

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

427 U.S. 539, 559 (1976),[9] and thus carry a heavy presumption of invalidity. *E.g.,*
*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th
Cir. 2009). A "provision [that] restrains speech of a particular content ... must []
meet the heightened justifications for sustaining prior-restraints [] in *Freedman v.*
*Maryland*[,380 U.S. 51, 59 (1965),] and must be narrowly tailored to serve a com-
pelling governmental interest." *In re National Sec. Letter*, ___ F.Supp.2d ___, 2013
WL 1095417, at *6 (N.D. Cal. Mar. 14, 2013). This means "that (1) any restraint
prior to judicial review can be imposed only for a specified brief period during which
the status quo must be maintained; (2) expeditious judicial review of that decision
must be available; and (3) the censor must bear the burden of going to court to sup-
press the speech and must bear the burden of proof once in court." *Id.* at *8 (quoting
*Thomas v. Chicago Parks Dist.*, 534 U.S. 316 (2002)). Measure B does not conform
to most of these requirements, and in certain ways directly violates some of them.
*See, e.g.,* L.A. Cnty. Code § 11.39.110.C, E, H.

Measure B represents a classic example of a prior restraint. *See Nebraska*
*Press Ass'n*, 427 U.S. at 549. It preemptively prohibits the production of any adult
film if its director (among others) has not completed a blood borne pathogen training
course affirmatively approved by the Department, if the production has not secured a
permit issued by the Department, and/or if the performers do not use condoms for all
acts of anal or vaginal sex, even if in their sound discretion and artistic judgment they
wish to forgo doing so. The permit and condom requirements are preconditions to

---

[9] California courts have also universally rejected prior restraints. As the guar-
antees of free speech and press in article I, section 2(a) of the California Constitution
are "more definitive and inclusive than the First Amendment," the burden on a party
seeking a prior restraint is more onerous, and potentially insurmountable. *In re Mar-*
*riage of Candiotti*, 34 Cal. App. 4th 718, 724 (1995). For over a century, California
courts have relied on this guarantee, *see Dailey v. Superior Court*, 112 Cal. 94, 97
(1896), as well as on the First Amendment, to reject prior restraints, which the Cali-
fornia Supreme Court has denounced as perhaps "the most severe method of intellec-
tual suppression known in modern times." *Flack v. Municipal Court*, 66 Cal. 2d 981,
988 n.5 (1967).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

producing adult films that serve as prior restraints. *Cf.* Kross Decl. ¶ 15 (Measure B has brought production of adult films on performer's website to a halt).

Measure B also prohibits the production of adult films by any entity that has had a permit suspended or revoked, including even creating other works having nothing to do with the suspension/revocation. The Department is granted unlimited, standardless discretion to impose such suspensions and/or revocations, thus allowing the Department to institute a lengthy or potentially permanent restriction on protected speech. Measure B further empowers Department inspectors to take possession of "any evidence" that "bears on" compliance with Measure B, without limitation or a cause requirement, which could conceivably include sole copies of adult films produced in alleged violation of Measure B. Measure B also permits the suppression of expression and speech by imposing serious civil and criminal penalties for noncompliance with its permitting and/or barrier-protection requirements. The threat of these unbounded investigatory and enforcement measures are further preconditions to producing adult films that serve as prior restraints on protected speech. On all these grounds, Measure B must be invalidated as an unconstitutional prior restraint upon protected expression and the creation and dissemination of protected speech.

### 3.  Measure B's Permitting Fees Violate the First Amendment

Measure B further violates the First Amendment by requiring the payment of a permitting fee as a precondition to producing any adult film, thus imposing another form of prior restraint. Just as with a licensing regime, conditioning the ability to produce expressive works on the payment of a fee to the government is presumptively unconstitutional. *See* § III.A.2 *supra.* Measure B's fee regime is also utterly at odds with well-established case law through which the Supreme Court has shown its aversion to special taxes or fees on expressive activities. It is bedrock law that no one may be "compelled to purchase, through a license fee or a license tax, the privilege freely granted by the constitution." *Murdock v. Pennsylvania,* 319 U.S. 105, 114 (1943) (internal quotation marks omitted). Although the government may im-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

pose fees limited to the "expense incident to the administration" of a speech regulation, *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941), they must be narrowly tailored to match administrative costs. *Murdock*, 319 U.S. at 113-14. Excessive fees are "viewed as a tax on the exercise of the fundamental rights guaranteed by the First Amendment and hence [as] prior restraint[s]." *Wendling v. City of Duluth*, 495 F.Supp. 1380, 1385 (D. Minn. 1980). The government bears the burden of proving that a license fee is reasonably related to the recoupment of the costs in administering the program for which the fee is collected. *See Murdock*, 319 U.S. at 113-114; *Cox*, 312 U.S. at 577. Multiple courts have held *Cox* and *Murdock* apply fully to "adult" expression. *See, e.g.*, *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1314 (11th Cir. 2003).

In order to secure a filming permit, adult film producers must pay permitting fees to the Department, which has set a "provisional fee" that ranges from $2,000 to $2,500 per year and indicated that payment will be required immediately. *See supra* note 3. Plaintiffs may not exercise their First Amendment rights to create adult films without first paying the required fee. Accordingly, the fee regime under Measure B is a precondition to producing adult films and a prior restraint on protected speech. Such an arbitrary fee cannot survive constitutional scrutiny. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131-37 (1992).

Measure B's permit fee is also an unlawful tax on speech, rather than a fee incident to legitimate regulatory costs. Measure B does not provide the Department any guidance on how to set the fee, other than stating it should be "sufficient to provide for the cost of any necessary enforcement." The setting of the "provisional fee" range in the December 14, 2012, letter was devoid of analysis, findings or factual basis, or explanation how the Department will determine where within the range to set the fee for any permittee. The Department offered *no* insight into administrative costs associated with implementation or enforcement, *or* the amount of money it proposes to collect. *See supra* note 3. Due to this failure to obtain reliable evidence

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

supporting the provisional fee, and to Measure B's failure to limit the fee, or to set parameters for setting it, so that it is limited to providing for the cost of enforcement, there is no meeting the burden to demonstrate that the permitting fees are reasonably related to recouping the costs of administering Measure B.  *See Murdock*, 319 U.S. at 113-14; *Cox*, 312 U.S. at 577; *Fly Fish*, 337 F.3d at 1314.

### 4.      Measure B is Unconstitutionally Vague

Measure B's provisions and mandates violate basic First Amendment doctrine that the government cannot use a vague standard for the sensitive task of regulating constitutionally protected speech.  *E.g., Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) (if a law threatens to inhibit exercise of constitutionally protected rights, like free speech, "a more stringent vagueness test should apply").  Imprecise speech restrictions are invalid for a number of reasons.  Without clear guidelines, those subject to the restriction cannot understand what is forbidden and what is not.[10]  A vague standard also impermissibly chills speech, causing speakers to "steer far wider of the unlawful zone," *Speiser v. Randall*, 357 U.S. 513, 526 (1958), and to restrict their expression "to that which is unquestionably safe."  *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964).  Speech restrictions that lack clear limits also afford government officials too much discretion to curb disfavored expression.[11]

---

[10] *See, e.g., Reno*, 521 U.S. at 871; *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *Gentile v. State Bar*, 501 U.S. 1030, 1048 (1991) (regulation of speech is unconstitutional when those subject to it can do no more than "guess at its contours"); *Trinity United Methodist Parish v. Board of Educ.*, 907 F.Supp. 707, 718 (S.D.N.Y. 1995) ("To avoid chilling the exercise of vital First Amendment rights, restriction of expression must be expressed in terms which clearly inform citizens of prohibited conduct and in terms susceptible of objective measurement.").

[11] *See, e.g., Forsyth County*, 505 at 133; *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988); *City of Houston v. Hill*, 482 U.S. 451, 468-69 n.18 (1987); *Kolender*, 461 U.S. at 358, 360; *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, Measure B incorporates the use of several terms without definition and in many instances defines terms in language that would leave persons of common intelligence unsure as to their specific meaning, forcing them to necessarily guess as to what specific actions and/or characteristics would be subject to regulation. *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). These terms include, but are not limited to, the terms "adult film," "exposure control plan," "producer of adult film," "principals," "management-level employees," "commercial purposes," "reasonably suspected," "hazardous condition," "interference," and other terms. Indeed, the very fact that Intervenors have to take such pains explaining who and what Measure B purportedly does and does not cover underscores the vagueness.[12]

Measure B also incorporates several mandates without explanation, that are discretionary in nature, such that a person of common intelligence would be unsure as to their specific meaning, forcing them to necessarily guess as to what specific actions are required and/or prohibited under the regulation. These mandates include, but are not limited to, the following (all emphases added):

- "Any permit issued pursuant to this chapter *may* be suspended or revoked" and fines "*may* be imposed . . . for a violation of this chapter *or any other violation of law* creating a risk" of STD exposure. L.A. Cnty. Code § 11.39.110.A.

- "For permits that have been suspended or revoked, the notice of decision shall specify . . . the terms upon which the permit may be reinstated or reissued, *if any*." *Id.* § 11.39.110.D.

- "Notwithstanding any other provision of this chapter, if any *immediate danger to the public health or safety* is found or is *reasonably suspected*, the department *may* immediately suspend the adult film production public health permit, initiate a criminal complaint *and/or* impose *any* fine permitted by this chapter ....

---

[12]   Mot. to Dismiss Mem. at 2, 5-6, 11. Moreover, the County is under no obligation to adopt these interpretations, so there is no remedying the vagueness based solely on Intervenors' say-so.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Immediate danger to the public health and/or safety shall include *any* condition, based upon inspection findings *or other evidence*, that *can* cause, or is *reasonably suspected* of causing, infection or disease transmission, or *any* known or *reasonably suspected hazardous condition*." *Id.* § 11.39.110.E.

- "The department may ... modify, suspend, revoke *or* continue all such actions previously imposed upon a permittee ... for violations of this chapter *or any other laws or standards affecting public health and safety* ... or the exposure control plan of the permittee, *or any combination thereof*, or for *interference* with a county health officer[] ...." *Id.* § 11.39.110.F.

- "[T]he department may impose a fine on persons violating *any* provision of this chapter or *any law, regulation or standard incorporated into this chapter*." *Id.* § 11.39.120.C.

- "Any person or entity who ... violates *any* law, ordinance or regulation governing *any activity regulated by this chapter* ... is guilty of a misdemeanor." *Id.* at § 11.39.120.D.

- "The county health inspector may enter and inspect any location *suspected* of conducting *any activity regulated by this chapter* ... and take possession of *any* sample . . . or other evidence, including any documents *bearing on* adult film producer's compliance with the provisions of the chapter." *Id.* § 11.39.130.

- "A civil action to enforce the provisions of this section may be brought by the county counsel, the district attorney or *any person directly affected* by said failure to comply ...." *Id.* § 11.39.140.

The vagueness and subjective definitions of the above terms and mandates do not provide adequate guidance to those subject to Measure B, and do not make clear what is forbidden and what is permissible. This uncertainty, coupled in particular with potential civil and criminal punishments for violation, necessarily will chill protected speech and expression. In addition, the vagueness and subjective definitions of the above terms and mandates do not provide adequate guidance to law enforce-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ment officers and Department officials, who themselves necessarily have to guess at the meaning of these terms and mandates, and their application, affording too much enforcement discretion, and potentially leading to differential application of the law.

### 5.     Measure B is Both Under-inclusive and Over-inclusive

Measure B cannot withstand either strict or even intermediate scrutiny to the extent it is unconstitutionally under-inclusive.  Even if the government can demonstrate legitimate ends (which it does not here, as shown above), "when they affect First Amendment rights they must be pursued by means that are [not] seriously under-inclusive[.]"  *Brown*, 131 S. Ct. at 2741-42 (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).  "Under-inclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  *Id.* at 2740.

Measure B claims to address the spread of HIV/AIDS and other STDs in Los Angeles County.  *See generally* Measure B, §§ 2-3.  But Measure B fails to address STD risks to the overall population of Los Angeles County, of which the adult film industry is only a tiny percentage.  It also applies only to adult films produced for a commercial purpose, to the exclusion of non-commercial films whose performers are exposed to risks (accepting *arguendo* the Measure's assumptions) that are the same as those for performers in commercial adult films.  L.A. Cnty. Code § 11.39.080.

This drastic under-inclusiveness suggests that Measure B is actually intended to disfavor and restrict constitutionally protected speech and expression involved in the creation of adult films, and to target and harm the adult film industry.  Indeed, Intervenors' staff member who drafted Measure B has stated publicly that he would like to see adult filmmakers driven out of California.[13]  Measure B thus fails for

---

[13]    *See* London Declaration Ex. D, Jacob Weis, *No Condoms in Porn Country*, May 9, 2013, http://projectwordsworth.com/no-condoms-in-porn-country/ (quoting AIDS Healthcare Foundation's Mark McGrath, Measure B's drafter, as stating he "considers the adult industry 'quasi-human trafficking" and that "I don't give a shit about their jobs," while questioning whether "these [are] the types of jobs we need in California").  This is also reflective of other jurisdictions motivated by similar

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

multiple reasons under a strict scrutiny analysis.  Under-inclusiveness is equally fatal under intermediate scrutiny, *see, e.g.*, *FCC v. League of Women Voters*, 468 U.S. 364, 396-98 (1984); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995); *Greater New Orleans Broad. Ass'n v. United States,* 527 U.S. 173, 190-93 (1999), such that Measure B would be invalid even if that somewhat more forgiving standard applied.

Measure B is also unconstitutionally over-inclusive.  Measure B's permitting and related regulations apply to all adult films, defined as any "in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or in animate object … and/or any other sexual activity that may result in the transmission of blood and/or any other potentially infectious materials."  L.A. Cnty. Code § 11.39.010.  Yet Measure B's disease-transmission protections, in the form of requiring condoms, applies only to "any acts of vaginal or anal intercourse." *Id.* § 11.39.110.A.  Accordingly, its regulatory scope is far, far broader than its mandate animated by its asserted interest.  This, too, violates the Plaintiffs' First Amendment rights.  *See, e.g.*, *Brocket v. Spokane Arcades, Inc.*, 472 U.S. 491, 499-500, 504, 507 (1985).[14]

### 6.   Measure B Imposes An Unconstitutional System That Deprives Plaintiffs of Due Process

The Due Process Clause of the Fourteenth Amendment, guarantees that no person shall be deprived of life, liberty or property without due process of law.  U.S. Const. amend. XIV; *see also* Cal. Const. art. I, § 7.  To ensure this right, the Four-teenth Amendment requires "some form of hearing before an individual is finally

---

concerns.  *See* London Declaration Ex. E, Mark Kernes, *The Latest Porn Unfriendly Place: Ventura County*, May 7, 2013,  http://business.avn.com/articles/legal/The-Latest-Porn-Unfriendly-Place-Unincorporated-Ventura-County-516286.html (County adopted Measure B-like ordinance in reaction to residents' complaints about being able to "hear and see the sex scenes" being shot).

[14]  As noted, *supra*, note 2, there may be other grounds on which Measure B is unconstitutional, including other types of overbreadth, which would include that it regulates a vast amount of expression involving actual oral, vaginal, or anal penetra-tion that do not pose risks of transmitting STDs because other alternatives are avail-able, specifically measures already taken by the adult film industry.  Compl. ¶ 80.

---

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Here, Plaintiffs have liberty and property interests in the expressive works they create through the exercise of their First Amendment rights, in the documents and other personal property used to create those works, and in their ongoing freedom to continue to create such works. *See, e.g., Friedman v. Rogers*, 440 U.S. 1, 12 n.11 (1979) (protected property interests in means of communication); *Traverso v. People ex rel. Dep't of Transp.*, 6 Cal. 4th 1152, 1160-61 (1993) (broad due process protections for personal property under Federal and California law). Yet Measure B allows deprivation of those rights without prior notice or hearing.

More specifically, Measure B allows the Department to suspend or revoke, without prior hearing or any procedural safeguards whatsoever, the required permit for *any* alleged violation of Measure B's provisions *or* any alleged violation of *any other law* that may create a risk for performers of exposure to STDs. L.A. Cnty. Code § 11.39.110.A. If a Measure B permit is suspended or revoked, work not only must stop on the production giving rise to the suspension or revocation, but the producer cannot engage in *any* filming, thus prohibiting the creation of any other works. *Id.* § 11.39.080.C. Any such producer whose permit is suspended or revoked has no recourse until *after* they lose the ability to work and exercise their First Amendment rights. *Id.* § 11.39.110.C. In addition, if a permit is suspended, the Department may refuse, with unfettered discretion, to reinstate the permit, or to issue a new permit to a given producer. *Id.* § 11.39.110.D. Thus, the Department has the ability – for potentially a single technical violation – to destroy, almost overnight, a producer's entire business, and to eliminate the jobs of its employees and contractors, without due process protections. This is untenable under the Fourteenth Amendment.

In addition, Plaintiffs have a Fourth Amendment liberty interest to be free from unreasonable searches and seizures of their persons, including bodily fluids

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and other aspects of their physical persons, as well as a property interest to be secure from unreasonable searches and seizures within the private spaces where they engage in conduct filmed to create expressive works protected by the First Amendment.[15] The Fourth Amendment also contains a presumptive warrant requirement for searches and seizures, *see Katz v. United States*, 389 U.S. 347, 357 (1967); *see also Johnson v. United States*, 333 U.S. 10, 14-15 (1948), and allows a warrantless search or seizure only with probable cause. *See Carroll v. United States*, 267 U.S. 132, 155-56 (1925). Yet Measure B allows Department inspectors to access, without notice, "any location" that is merely "*suspected* of conducting any activity [that is] regulated by" Measure B. L.A. Cnty. Code § 11.39.130 (emphasis added). Inspectors may then take possession of "any sample, photograph, record or other evidence, including any documents" that "bears on" compliance with Measure B, without any limitation or cause requirement. *Id.* This includes the authority to seize personal property, private documents, and "samples" from any person present at a location where an inspector "suspects" that activity regulated by Measure B is occurring. *Id.*

By not including a warrant requirement, the search and seizure provisions of Measure B are presumptively invalid. *See Katz*, 389 U.S. at 357. In addition, Measure B does not require an inspector to have probable cause before searching a location or seizing items. Instead, the inspector must only "suspect" activity regulated by Measure B is occurring. However, "suspicion" (or even "reasonable suspicion," which is *not* the language used by Measure B), is a lesser standard than probable cause, and therefore cannot satisfy the Fourth Amendment.[16] Accordingly,

---

[15]   *See, e.g., Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989) (where the "Government seeks to obtain physical evidence from a person, the Fourth Amendment may be relevant at several levels"); *O'Rourke v. Hayes*, 378 F.3d 1201, 1207-08 (11th Cir. 2004) (workers enjoy reasonable expectation of privacy under Fourth Amendment in area of place of business that is off-limits to the public, such that government officers must have a search warrant to enter those areas) (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978)).

[16]   *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("reasonable suspicion" is the standard applied to protective searches under *Terry v. Ohio*, 392

---

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Measure B's provisions for searching individuals at locations suspected of being regulated by Measure B, and for the seizure of all manner of personal items, fail to satisfy the Fourth Amendment, and therefore are invalid.

### 7.    Measure B Is Preempted By State Law

Plaintiffs will also succeed on the merits independent of Measure B's constitutional flaws because Measure B is preempted by provisions of the California Labor Code and related regulations, and is thus unenforceable and void.  Local ordinances are preempted by state law if the issue regulated is one of "statewide concern," or the state's interest is "more substantial" than that of the county.  *California Fed. Savs. & Loan Ass'n v. City of Los Angeles*, 54 Cal. 3d 1, 18 (1991).  Preemption also occurs when "local legislation duplicates, contradicts, or enters an area fully occupied by general [state] law, either expressly or by legislative implication." *Rental Housing Ass'n of N. Alameda County v. City of Oakland*, 171 Cal. App. 4th 741, 752 (2009) (citation omitted).  *See also In re Portnoy*, 21 Cal. 2d 237 (1942); *O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1067 (2007).  A local ordinance is preempted if it enters an area "'fully occupied' by general law," when the Legislature manifests such an intent, expressly or impliedly, in that:

> 1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; 2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or 3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality."

77 Ops. Cal. Atty. Gen. 147 (1994) (citation omitted).

California has exercised exclusive authority to specifically regulate workplace transmission of blood borne pathogens.  Compl. ¶¶ 100-106.  Cal-OSHA is the sole entity empowered to set blood borne pathogen regulations, and the Labor Code man-

---

U.S. 1 (1968), but is a standard "less than probable cause" that does not authorize a constitutional search beyond that necessary to determine if a suspect is armed).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

dates that the Standards Board is "the only agency in the state authorized to adopt occupational safety and health standards."[17]  Labor Code section 144.7 requires the Standards Board to adopt a blood borne pathogen standard, and Regulation 5193 is that standard for protecting employees exposed to blood borne pathogens in the workplace.  Cal. Code Regs. tit. 8, §5193(d).  Regulation 5193 and Labor Code section 144.7 apply to adult film performers and include the required use of condoms in the adult film industry.

Through this detailed regulatory framework, California expressly intends to occupy the field of workplace safety.  "California has actively asserted jurisdiction over all places of employment with California since 1917.  Exceptions to the broad claims of jurisdiction have been narrowly construed."  *In re SAIC*, Cal. OSHAB 03-2201, 2009 WL 1204886 (Apr. 17, 2009); *see also United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal. 3d 762 (1982); *In re JS Brower & Assocs., Inc.*, Cal. OSHAB 77-1315 (1980); *In re Sacramento Mun. Util. Dist.*, Cal. OSHAB 00-1136, 2001 WL 427621 (Mar. 14, 2001) (employer has burden to prove exception to jurisdiction).  Moreover, "the Division (referring to Cal-OSHA) has jurisdiction over every employment and place of employment of California [under] Labor Code section 6307[.]"  *In re SAIC*, Cal. OSHAB 03-2201.  *See also* Cal. Lab. Code §§ 6307, 6304.1, 6304/3003, 144.5, 144, 144.7, 142.3.  California Labor Code section 6400 specifically applies the Cal/OSHA standards to all places of employment, including those where independent contractors and others work.

In addition to expressly occupying the field, the state can impliedly occupy the field, which is determined based on "the whole purpose and scope of the legis-lative scheme and ... whether the field is one which requires uniform regulation throughout the state."  43 Ops. Cal. Atty. Gen. 261, 262 (1964) (citations omitted).

---

[17]  Cal. Lab. Code § 142.3(a)(l); *see also* Cal. Lab. Code § 1173 (Standards Board has exclusive jurisdiction over conflicting occupational health and safety standards).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Regarding workplace safety, the Legislature has enacted a comprehensive statutory scheme that covers multiple areas, including Hazardous Substances Information and Training (Section 6360). *See also* Sections 6300-6700. This legislative scheme is lengthy and thorough — implying that the Legislature intended to occupy the field, in addition to expressing its intent. It also reasonably can be implied that the Legislature intended the State retain jurisdiction over occupational safety and health rules adopted by the Standards Board, as the Legislature requires all agencies other than the Department of Industrial Relations (which oversees the Occupational Safety and Health Standard Board) to enter written agreements with the State before assisting with implementation of any of the Standard Board's statutes, including Labor Code § 144.7. Measure B is clearly preempted under this detailed web of State legislation and regulation, especially given that Measure B duplicates Regulation 5193 and/or Labor Code § 144.7. *See* L.A. Cnty. Code § 22.56.1925(C) (expressly invoking Cal. Code Regs. tit. 8, § 5193).

The fact that Measure B involves a permit process does not save it from preemption. *See, e.g., City of Rancho Palos Verdes v. Abrams*, 101 Cal. App. 4th 367 (2002) (FCC has exclusive jurisdiction over radio communication, so city could not require permits for ham radio operators); *People ex rel. Sneddon v. Torch Energy Servs., Inc.*, 102 Cal. App. 4th 181 (2002). The California Attorney General has reached similar conclusions. *See* 60 Ops. Cal. Atty. Gen. 44 (1977) (Health & Safety Code occupies field of housing discrimination so county could not require anti-discrimination marketing as part of issuing building permits). Here, Measure B improperly grants the County the ability to condition film permits on occupational safety and health standards adopted by the Standards Board, which the County is preempted from regulating.

The content-based permitting scheme of Measure B *highlights* how it differs from not only the Cal/OSHA regime, but other permitting and zoning regulations that may apply generally to filmmaking. *See supra* 8. Cal/OSHA's regime is a

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

regulation of general application that generically governs a variety of businesses in the State where risks may exist for transmission of blood borne pathogens.  Unlike Measure B, Cal/OSHA regulations do not target expressive conduct, let alone any specific type of content, such as adult film, or any other genre.  Nor does it establish a system of prior restraint, or an unconstitutional fee.  Ultimately, Measure B is preempted because it trods the same ground as the Cal/OSHA regime, albeit in manner that, not coincidentally, targets Plaintiffs' protected expression.[18]

## B.   Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction

Because Plaintiffs are likely to succeed on the merits of their challenges to Measure B, and in particular that their First Amendment rights are being violated, they also have demonstrated a likelihood of irreparable harm.  The Supreme Court has repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. at 373.  *See also Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009); *Sammartano*, 303 F.3d at 973-74; *Welch*, 2012 WL 6020122, at *15; *Viacom Int'l, Inc. v. FCC*, 828 F.Supp. 741, 744 (N.D. Cal. 1993).  In addition to a presumption of irreparable injury due to the First Amendment violations, it is obvious that Measure B inflicts irreparable harms on Plaintiffs.

Measure B already has resulted in Plaintiffs being unable to exercise their First Amendment rights to produce adult films in Los Angeles County by being unable to produce adult films in areas subject to Measure B without paying the designated fees, acquiring the required permits, and incorporating condom use into all performances on acts of anal or vaginal sex.  The declaration submitted on behalf of Plaintiff Vivid demonstrates how being shunted from Los Angeles County has had a drastic effect

---

[18]   Because of these differences with Measure B, Cal/OSHA regulations are not subject to an obvious facial challenge.  *See supra* § III.A.1-5.  However, to the extent the State applies Cal/OSHA law to adult film, an "as applied" First Amendment challenge might lie against particular enforcement actions.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

on how Vivid is impeded from fully exercise its right to free expression through the production of adult films. *See generally* Hirsch Decl. ¶¶ 26-32. It has denied Vivid of access to facilities and services necessary to its production – and that cannot be moved or found elsewhere, as they are tied to the non-adult film industry – and has affected the availability of performers, technicians, unique locations, and sets and set dressing/props. *Id.* This impact translates directly to what Vivid is able to depict on film, and even has forced it to adjust its script-writing, and has otherwise intruded on its creative and editorial discretion. *Id.* Measure B has also had an adverse impact on how frequently Vivid can schedule production days, and the level of output the studio is able to maintain.

Similarly, Measure B intrudes on Plaintiffs Kayden Kross's and Logan Pierce's creative choices regarding whether they opt for condom use when performing in adult films, including those implicating Ms. Kross's intimate personal relationships. Kross Decl. ¶¶ 9-16; Pierce Decl. ¶¶ 7-9. Measure B has directly limited how frequently Ms. Kross is able to work, including causing indefinite postponements of shooting in Los Angeles County, which has led her to anticipate forgoing as many as 16 productions over the balance of 2013. Kross Decl. ¶¶ 13-14. Measure B also has brought a complete halt to Ms. Kross's production of adult films for her Club Kayden website. *Id.* ¶ 15. Measure B similarly has limited opportunities for Mr. Pierce to express himself in adult films, and reduced the frequency and quantity of productions in which he can appear. Pierce Decl. ¶¶ 10-11. In addition, insofar as Plaintiffs Kross and Pierce are popular performers whose output is affected by Measure B, it causes irreparable harm to their reputation and position in the industry – and, more importantly, with audiences. All these incursions on Plaintiffs rights to free expression constitute irreparable harm and compel grant of a preliminary injunction.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### C.   Any Harm to Defendants Would Be Minimal If Not Non-Existent, and Is Outweighed by the Irreparable Harm Plaintiffs Face

Defendants will suffer little or no harm if enjoined from enforcing Measure B. Despite Measure B's unsupported claims otherwise, the adult film industry already follows numerous safeguards to protect the health of actors and the public. *See supra* 2 (citing declarations). These efforts ensure that all performers participating in any law-abiding adult film production are protected from STDs, and by extension, that the public is protected, such that maintaining the *status quo ante* is not problematic. *Id.* And because Measure B is so limited as to the segment of the populace to which it applies, even its enforcement will have a minimal impact on overall public health.

Indeed, the County has survived for many years, including over 30 years since HIV/AIDS was identified in the United States, without Measure B. It "would be a stretch of reason to conclude that it would suffer significant harm having to wait a few more months to know whether the law is enforceable," *Welch*, 2012 WL 6020122, at *16, especially given the limited impact on the public outside the adult film industry. Thus, enjoining Measure B's implementation until its legality can be determined will not significantly impact the vast majority of people in Los Angeles County. Given that Plaintiffs have demonstrated irreparable injury if a preliminary injunction does not issue, the balance of equities clearly tips in Plaintiffs' favor. *See Winter*, 555 U.S. at 20.

### D.   The Public Interest Favors a Preliminary Injunction

A preliminary junction is particularly warranted in this case because "'it is always in the public interest to prevent the violation of ... constitutional rights.'" *Sammartano*, 303 F.3d at 974 (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)). "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Id.* "Given the limited scope and duration of a preliminary injunction," there should be "no difficulty in concluding that protect-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ing ... First Amendment rights outweighs the public's interest in rushing to enforce an unprecedented law." *Welch*, 2012 WL 6020122, at *16.  The public interest inquiry thus "collapses" into the Plaintiffs' showing of likelihood of success on the merits, which they have satisfied above.

To the extent the public interest inquiry "addresses impact on non-parties rather than parties," *Sammartano*, 303 F.3d at 974, Measure B's negative impacts spread well beyond Plaintiffs, to many others in Los Angeles County.  Measure B impacts all other businesses and individuals involved in the adult film industry in numerous and obvious ways, including (1) preventing performers from exercising First Amendment rights; (2) preventing individuals and businesses from creating new adult films; and (3) potentially shutting down production of new films, impacting hundreds and thousands of individuals directly and indirectly involved in the adult film industry, including those who support the industry through services such as catering or transportation.  *See generally* Hirsch Decl. ¶¶ 7, 26-32.

Furthermore, Measure B's potential positive effects are limited.  As discussed above, it provides little or no improvement to public health insofar as it reaches only adult film performers but not the rest of the general populace by which they are vastly outnumbered.  As a result, the interests Measure B purports to protect do not and cannot outweigh Plaintiffs' and the public's interest in the free exercise of First Amendment and other constitutional rights.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for a Preliminary Injunction and enjoin Defendants from enforcing Measure B pending a final determination of its constitutionality.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: May 29, 2013          LIPSITZ GREEN SCIME CAMBRIA LLP
                             PAUL J. CAMBRIA, JR.

                             SANTEN & HUGHES LPA
                             H. LOUIS SIRKIN

                             DAVIS WRIGHT TREMAINE LLP
                             ROBERT CORN-REVERE
                             RONALD G. LONDON
                             JANET L. GRUMER
                             MATTHEW D. PETERSON

                             By:   /s/ Matthew D. Peterson
                                   Matthew D. Peterson

                             Attorneys for Plaintiffs
                             VIVID ENTERTAINMENT, LLC;
                             CALIFA PRODUCTIONS, INC.;
                             JANE DOE a/k/a Kayden Kross; and
                             JOHN DOE a/k/a Logan Pierce

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899