1 | Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
2 | Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
3 | Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
4 | AIDS Healthcare Foundation
5 | 6255 W. Sunset Blvd., 21st FL
6 | Los Angeles, CA 90028
7 | Phone: 323-860-5200
8 | Fax: 323-467-8450
*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

VIVID ENTERTAINMENT, LLC;
CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and
JOHN DOE a/k/a Logan Pierce,

Plaintiffs,

vs.

JONATHAN FIELDING, Director of
Los Angeles County Department of
Public Health, JACKIE LACEY, Los
Angeles County District Attorney, and
COUNTY OF LOS ANGELES,

Defendants, and

MICHAEL WEINSTEIN, MARIJANE
JACKSON, ARLETTE DE LA CRUZ,
MARK MCGRATH, WHITNEY
ENGERAN, and the CAMPAIGN
COMMITTEE YES ON B, MAJOR
FUNDING BY THE AIDS
HEALTHCARE FOUNDATION

Defendants-Intervenors.

Case No.:  13-CV-00190-DDP-AGR

**INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Date:         July 1, 2013
Time:        10:00 a.m.
Judge:       Dean D. Pregerson
Location:   Courtroom 3

*[Filed concurrently with Request for Judicial Notice; Objections to Plaintiffs' Evidence in support of Motion for Preliminary Injunction]*

INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS ....................................................................... 1

    A.    The Purpose of Measure B Is To Reduce The Risk Of Sexually
        Transmitted Disease Infection During The Production Of Films. ....... 1

        1.    Measure B Does Not Address The Content of A Film,
                But Only How A Film Is Actually Made. .................................. 3

    B.    Regulation of Films Sets To Protect Public Health And Safety
        Is A Traditional Area Of Local Concern. Los Angeles County
        Has Numerous Laws Regulating Film Sets. ......................................... 3

        1.    To Protect Public Health and Safety, Los Angeles County
                Requires Permits For All On Location Filming ......................... 4

        2.    To Protect Public Health and Safety, The County
                Requires Permits For All Pyrotechnic Special Effect
                Filming. ....................................................................................... 5

III. ARGUMENT ........................................................................................... 6

    A.    To Obtain A Preliminary Injunction, Plaintiffs Must Meet A
        Heightened Burden of Proof. ................................................................ 6

    B.    Measure B Is Not A Content-Based Restriction, And Does Not
        Restrict Speech Or Expression. ............................................................ 6

        1.    Measure B Is An Appropriate Regulation Of The
                Filmmaking Process, To Protect The Public Against
                Harms That May Arise During The Production Of Films. ........ 8

    C.    If Measure B Affects Speech At All, It Constitutes A Valid
        Content-Neutral Time, Place and Manner Restriction. ....................... 9

    D.    Measure B Does Not Violate Plaintiffs' Due Process Rights. ........... 11

    E.    Measure B Is Not Underinclusive Or Overinclusive. ........................ 13

F.    Measure B Is Not Unconstitutionally Vague. .................................... 13

G.    Measure B Does Not Constitute A Prior Restraint. ........................... 14

H.    Measure B May Be Adopted Via Referendum. ................................. 15

I.    Measure B Is Not Preempted By Cal/OSHA Standards. ................... 15

    1.    Local Regulation Of Traditional Local Interests Are Presumptively Valid And Preemption Is Disfavored .............. 16

    2.    Public Health And Safety, and Filmmaking Are Traditional Local Interests; Their Regulation Is Presumptively Valid ................................................................. 17

    3.    There Is No Express Preemption. ........................................... 18

    4.    There Is No Implied Preemption .............................................. 19

    5.    Measure B Does Not Duplicate Or Contradict State Laws. ...................................................................................... 20

J.    Plaintiffs Have Failed To Show That They Will Suffer Immediate Irreparable Harm Absent Preliminary Injunctive Relief. ................................................................................................ 21

K.    The Balance Of Harms Weighs Against Plaintiffs. ........................... 23

IV. CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Advantage Media, L.L.C. v. City of Eden Prairie,*
  456 F.3d 793 (8th Cir. 2006) ........................................................ 6

*Alexander v. U.S.,*
  509 U.S. 544 (1993) ........................................................ 14

*Amoco Prod. Co. v. Village of Gambell,*
  480 U.S. 531 (1987) ........................................................ 23, 24

*Boos v. Barry,*
  485 U.S. 312 (1988) ........................................................ 7

*Buckley v. Am. Constitutional Law Found.,*
  525 U.S. 182 (1999) ........................................................ 15

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) ........................................................ 18

*City of Renton v. Playtime Theatres, Inc.,*
  475 U.S. 41 (1986) ........................................................ 11, 13

*Connally v. General Constr. Co.,*
  269 U.S. 385 (1926) ........................................................ 14

*Davidovich v. City of San Diego,*
  2011 U.S. Dist. LEXIS 138319 (S.D. Cal. Dec. 1, 2011) ........................ 10

*Fireman's Fund Ins. Co. v. City of Lodi,*
  2002 U.S. App. LEXIS 20999 (9th Cir. Aug. 6, 2002) ......................... 20

*Foti v. City of Menlo Park,*
  146 F.3d 629 (9th Cir. 1998) ........................................................ 11

*G.K. Ltd. Travel v. City of Lake Oswego,*
  436 F.3d 1064 (9th Cir. 2006) ........................................ 7, 9, 10, 15

*Golden Gate Rest. Ass'n v. City & County of S.F.,*
  512 F.3d 1112 (9th Cir. 2008) ........................................................ 24

*Lopez v. Heckler,*
  713 F.2d 1432 (9th Cir. 1983) ........................................................ 25

*Los Angeles Memorial Coliseum Com. v. Nat'l Football League,*
  634 F.2d 1197 (9th Cir. 1980) ........................................ 22, 23

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) ........................................................ 6

*Members of the City Council v. Taxpayers for Vincent,*
466 U.S. 789 (1984) .................................................................. 10, 22

*New York v. Burger,*
482 U.S. 691 (1987) ........................................................................ 13

*S.D. Myers Inc. v San Francisco,*
336 F. 3d 1174 (9th Cir. 2003) ...................................................... 17

*Santa Monica Food Not Bombs v. City of Santa Monica,*
450 F.3d 1022 (9th Cir. 2006) ......................................................... 8

*Thomas v. Chicago Park District,*
534 U.S. 316 (2002) ........................................................................ 15

*Turner Broad. Sys. v. FCC,*
512 U.S. 622 (1994) .......................................................................... 9

*U.S. v. First Nat'l City Bank,*
379 U.S. 378 (1965) ........................................................................ 24

*United States v. Kilbride,*
584 F.3d 1240 (9th Cir. 2009) ........................................................ 14

*Ward v. Rock Against Racism,*
491 U.S. 781 (1989) ........................................................................ 15

*Warden, Md. Penitentiary v. Hayden,*
387 U.S. 294 (1967) ........................................................................ 13

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982) ........................................................................ 24

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ........................................................................ 6, 23

*Young v. Am. Mini Theatres, Inc.,*
427 U.S. 50 (1976) .......................................................................... 11

### STATE CASES

*Big Creek Lumber Co. v. County of Santa Cruz,*
38 Cal. 4th 1139 (2006) ...................................... 16, 18, 20, 21

*Coalition for Fair Rent v. Abdelnour,*
107 Cal. App. 3d 97 (1980) ........................................................... 25

*Cohen v. Bd. of Supervisors,*
40 Cal. 3d 277 (1985) ..................................................................... 20

*Hughes v. Lincoln,*
232 Cal. App. 2d 741 (1965) ........................................................... 4

*Krontz v. City of San Diego,*
  136 Cal. App. 4th 1126 (2006) .......................................................... 14

*People v. White,*
  259 Cal. App. 2d Supp. 936 (1968) ................................................. 12

*Sherwin-Williams Co. v. City of Los Angeles,*
  4 Cal. 4th 893 (1993) ................................................................ 20, 21

CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

Cal. Code Regs. § 5193 ................................................................ 20, 21

Cal. Const. art. XI, § 7 ......................................................................... 4

Cal. Fire Code § 4801 ........................................................................ 13

Cal. Gov't Code § 14999.20 ................................................................. 3

Cal. Health and Safety Code § 120175 ..................................... 2, 4, 10, 17

Cal. Health and Safety Code § 120575 ..................................... 2, 4, 10, 17

Cal. Lab. Code § 6307 ......................................................................... 19

Cal. Lab. Code § 6316 ......................................................................... 18

Cal. Lab. Code § 142.3 ........................................................................ 19

Cal. Lab. Code § 144(e) ...................................................................... 19

Los Angeles County Code § 11.39.010 ........................................ 2, 3, 13

Los Angeles County Code § 11.39.080 ........................................... 2, 20

Los Angeles County Code § 11.39.080(4) ........................................... 2

Los Angeles County Code § 11.39.080(A)(1) ...................................... 20

Los Angeles County Code § 11.39.080(A), ............................... 2, 13, 15

Los Angeles County Code § 11.39.080(C) ........................................ 12

Los Angeles County Code § 11.39.090 ........................................... 2, 20

Los Angeles County Code § 11.39.110 .............................................. 3

Los Angeles County Code § 11.39.110(A) .................................... 2, 13

Los Angeles County Code § 11.39.110(B) ....................................... 12

Los Angeles County Code § 11.39.110(C) ....................................... 12

Los Angeles County Code § 11.39.110(D) ..................................................... 12, 15

Los Angeles County Code § 11.39.150 ........................................................... 2, 20

Los Angeles County Code § 22.56.1830 ............................................................. 4

Los Angeles County Code § 22.56.1850 ........................................................ 4, 5

Los Angeles County Code § 22.56.1860(A) .................................................. 4, 14

Los Angeles County Code § 22.56.1870 .............................................................. 5

Los Angeles County Code § 22.56.1890 .............................................................. 5

Los Angeles County Code § 31.100 ..................................................................... 5

Los Angeles County Code § 32.105.6.36 ............................................................. 5

Los Angeles County Code § 32.105.6.47 ............................................................. 5

Los Angeles County Code § 32.108 ................................................................... 12

Los Angeles County Code § 32.109 ................................................................... 12

Los Angeles County Code § 32.4803.4 ................................................................ 5

Los Angeles County Code § 32.4807.1.1 ....................................................... 5, 14

Los Angeles Municipal Code § 12.22.1 ............................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

In this case, Plaintiffs attempt to conflate the process of making a film with the actual contents of a film, and rely on a misreading of the statute in question, in order to claim that a law designed to protect the public health by preventing disease transmission is actually an impermissible content-based regulation of speech.  They make this claim despite the facts that (1) the law at issue makes no reference to the content of any film, nor regulates what films may be shown in Los Angeles County, and (2) Plaintiffs state that the most objectionable (to them) feature of the law – requiring utilization of prophylactic protection when engaging in certain sexual acts during the making of films – *is already required under California State law.* (Compl.¶¶ 5, 32-35, 101.)

# II. STATEMENT OF FACTS

**A.  The Purpose of Measure B Is To Reduce The Risk Of Sexually Transmitted Disease Infection During The Production Of Films.**

As Plaintiffs state, Los Angeles County is the epicenter of the production of films where, during production, performers actually engage in sexual intercourse and other sexual acts.  Further, it has been established that, in engaging in these acts during filming, performers are potentially exposed to blood, semen, and other bodily fluids that may contain gonorrhea, syphilis, and other viruses and diseases (sexually transmitted diseases, or STDs).  Intervenors' Request for Judicial Notice ("RJN"), Ex. A, at p. 2.

The rate of STD infection for performers who actually engage in sexual intercourse and other acts is higher than in the general population.  *Id.*  It has also been found that STDs contracted during the making of films can be and are transmitted to other residents of Los Angeles County who are in no way involved in the making of the films. RJN, Ex. A at p. 2-3.

Simply put, Title 11, Division 1, Chapter 11.39 of the Los Angeles County Code ("Measure B") seeks to prevent the risk of STD exposure and infection during the making of films in Los Angeles County.  The Measure lists various

INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

findings regarding the risk of contracting HIV and other STDs during filmmaking. Section 2 of Measure B states, in part:

> The Los Angeles County Department of Public Health has documented widespread transmission of sexually transmitted infections associated with the activities of the adult film industry within Los Angeles County.

Further, Section 3 of Measure B, entitled "Purpose and Intent," states:

> The . . . purpose and intent in enacting this ordinance is to minimize the spread of sexually transmitted infections resulting from the production of adult films in the County of Los Angeles, which have caused a negative impact on public health and the quality of life of citizens living in Los Angeles.  RJN, Ex. B.

STD infection and prevention is a classic public health problem, which the County of Los Angeles has the duty and authority to address.  Cal. Health and Safety Code §§ 120175 and 120575.  In order to protect public health and safety, and to fulfill its statutory obligation to prevent the spread of sexually transmitted diseases, the County adopted Measure B.

Measure B reduces and prevents STD infection during filmmaking in a number of ways.  First, it defines the filmmaking activities that pose risk of STD transmission and infection.  Los Angeles County Code § 11.39.010.  For those productions where such activities will be actually engaged in during filmmaking, producers are required to (1) obtain a permit to engage in such conduct during filming (§ 11.39.080), (2) post the permit (§ 11.39.090), (3) have their owners and management level employees undergo training regarding exposure to blood borne pathogens (the type of pathogens the performers actually engaging sexual conduct during filming could be exposed to) (§ 11.39.080(A)), and (4) develop an exposure control plan which seeks to minimize exposure to STDs, and the material containing STDs, during film production (§ 11.39.150).  Finally, for those performers who actually engage in sexual intercourse during filming, condoms must be used.  § 11.39.110(A).

---

Those who violate these requirements may be subject, after an administrative review and adjudication process, to suspension or revocation of the permit, and may pay fines.  § 11.39.110.

### 1.     Measure B Does Not Address The Content of A Film, But Only How A Film Is Actually Made.

It is critical to note that *nowhere does Measure B address the content of any films made, or the impact of that content on a viewer*. It is not concerned with what is shown; it is only concerned with ensuring that the film is made in a manner that is protective of the public health.

Despite this, Plaintiffs appear to try to latch onto the definition of "adult film" in the Measure (§ 11.39.010) as meaning that Measure B seeks to regulate a certain type of film based on its content – commonly known as "adult films." However, the term "adult films" in Measure B refers to specific activities engaged in during the making of a film (activities which pose a risk of STD infection), and *not* to the content or viewpoint contained in any particular film or category of films.  Under Measure B, *any* film, even a "Disney" film, would be defined as an "adult film" for Measure B purposes if the performers actually engaged in the defined activities during filming.  Moreover, much of what is commonly understood as "adult themed" content – nudity, simulated intercourse, etc. – are not covered by Measure B, because of the low risk of STD infection from those activities during filming.

### B.     Regulation of Films Sets To Protect Public Health And Safety Is A Traditional Area Of Local Concern. Los Angeles County Has Numerous Laws Regulating Film Sets.

It is well-settled that local governments, like Los Angeles County, may condition the filming of motion pictures on obtaining permits, *which themselves contain conditions on the filming process.*  Recognizing this, the State of California has sought to encourage local governments to adopt certain procedures for the issuance of these permits.  Cal. Gov't Code § 14999.20 *et seq*.

It is also well-settled that local governments may, under the powers granted to them by the California Constitution, make and enforce regulations to protect the health and safety of its residents.  Cal. Const. art. XI, § 7; *see, e.g.*, *Hughes v. Lincoln*, 232 Cal. App. 2d 741, 746-47 (1965).  Moreover, state law requires counties to take steps to identify and prevent the spread of sexually transmitted diseases.  Cal. Health & Safety Code § 120575 ("It is the duty of the local health officers to use every available means to ascertain the existence of cases of [STDs]. . . and to take all measures reasonably necessary to prevent the transmission of infection."), § 120175 ("Each health officer . . . shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases.").

### 1.    To Protect Public Health and Safety, Los Angeles County Requires Permits For All On Location Filming.

There are numerous Los Angeles County laws regulating the production of commercial films.  Plaintiffs already are required to obtain a temporary use permit when filming on location.  Los Angeles County Code § 22.56.1830 *et seq*. (RJN, Ex. C). The stated purpose of this requirement is "to regulate specified short-term land use activities to avoid or mitigate adverse effects or incompatibility between such . . . activities and the surrounding area. . . ."

In order to receive a permit, Plaintiffs must make a number of satisfactory showings, including "The operating practices proposed to be used . . . to mitigate noise, dust, air, contaminants, garbage, and vibration associated with and as a result of the proposed temporary use." § 22.56.1850(A)(9).  Moreover, Plaintiffs are required to substantiate, "to the satisfaction of the [County]," numerous facts, including "That the operation of the requested use . . . will not jeopardize, endanger or otherwise constitute a menace *to the public health, safety or general welfare*." § 22.56.1860(A) (emphasis added).

Plaintiffs must also meet other, currently undefined requirements.  Plaintiffs must provide "such other information as the [County] may require."  §

---

22.56.1850(A)(11).  Further, the County may impose additional conditions "as [it] deems necessary" on granting a permit "as will make possible the operation of the proposed temporary use in an orderly and efficient manner and in accord with the intent and purpose of this title." § 22.56.1890.  Finally, issuance of a film permit also is conditioned on the payment of a permit fee. § 22.56.1870.

Like Measure B, these laws are designed to protect against various harms that can arise from the production of a commercial film – namely, risk of harm to public health and welfare from the filmmaking process.  Moreover, like Measure B, none of these laws dictates the content of any film shown in Los Angeles County.

## 2.    To Protect Public Health and Safety, The County Requires Permits For All Pyrotechnic Special Effect Filming.

Similarly, filmmaking involving pyrotechnics and special effects is separately regulated by the Los Angeles County Fire Code.  A conditional permit is required to be obtained from the County for use and handling of this material.  Los Angeles County Code § 32.105.6.36 (RJN, Ex. D).  Under Section 32.105.6.47, additional permits may be required as well.

Further, at the discretion of the County, to preserve "life or property," the County "shall require the [filmmaker] to employ or cause the employment of one or more approved fire safety officers or advisors to be on duty at such place during [a] hazardous activity" as a condition for obtaining a permit. § 32.4807.1.1.  Under Section 32.4803.4, fees are charged for these permits.

Finally, Chapter 48 of the California Fire Code (RJN, Ex. E), which has been adopted by Los Angeles County (§ 31.100), sets out very specific requirements concerning the size of film sets, electrical engineering, wiring, fire detectors, etc. that must be met in order for a permit to issue.

Like Measure B, these laws are designed to protect against various harms that can arise from the production of a film – namely, risk of fires and explosions

that can harm people and property. Moreover, like Measure B, none of these laws dictates the content of any film shown in Los Angeles County.

### III. ARGUMENT

**A.     To Obtain A Preliminary Injunction, Plaintiffs Must Meet A Heightened Burden of Proof.**

Because of the extraordinary nature of injunctive relief, the burden of proof necessary to obtain a preliminary injunction is much higher than the preponderance of evidence standard for regular proceedings in a civil matter. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("the requirement for substantial proof is much higher" when the court considers a motion for preliminary injunction) (internal citations omitted); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S.7 (2008).

Establishing a likelihood of success on the merits requires that Plaintiffs make a clear showing, with competent evidence, that *for every element of each challenged provision of Measure B,* they have a likelihood of success on the merits. This is especially true where, as here, Measure B contains a severability provision (§ 8), so that Plaintiffs must establish every element, even including standing, for each provision of Measure B that they challenge. *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) ("Because the code's provisions are properly considered severable, [Plaintiff] must show injury, causation, and redressability with respect to each provision it challenges.")

**B.     Measure B Is Not A Content-Based Restriction, And Does Not Restrict Speech Or Expression.**

Plaintiffs attempt to argue that Measure B is a content-based restriction on speech, and therefore subject to strict constitutional scrutiny. This assertion simply is incorrect. Measure B makes no preference or disapproval regarding the content of any film, does not restrict what films may be shown in Los Angeles County, and is unconcerned with the impact upon the viewer of any film.

It is well-settled that a content-based restriction on speech is one where the justification for the restriction is "focuse[d] only on the *content of the speech* and *the direct impact that speech has on its listeners.*"  *Boos v. Barry*, 485 U.S. 312, 320 (1988) (emphasis added).  In determining whether a law is "content-based," courts focus on whether a regulation of speech was adopted out of disagreement with a message sought to be conveyed.  *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1071-72 (9th Cir. 2006).

In no way does Measure B fit the definition of a content-based restriction on speech.  There is nothing in Measure B limiting, restricting, or indeed even commenting on the content of any film shown in Los Angeles County.  For example, Measure B does not require that *any,* let alone all, depiction of sexual intercourse in a film shown in Los Angeles County show condom use.  In fact, Measure B makes no reference to the content of any film whatsoever.  Plaintiffs are free to show whatever films they like in Los Angeles County.

Likewise, Measure B is similarly silent on the impacts of any film on the viewer.  There is no reference to or mention of any such impact, nor does the Measure B attempt to address any impact.  The residents of Los Angeles County are free to view whatever films they like.

Also, Measure B is silent as to, and unconcerned with, the message conveyed in any film.  Plaintiffs are still free to convey any message they wish concerning any subject matter, including sexual intercourse.

Finally, Plaintiffs' primary objection to Measure B is that it requires the use of condoms during filming when performers actually engage in sexual intercourse during filming.  However, Plaintiffs state that *they are already required under existing state law to use barrier protection when filming actual sexual intercourse or other sexual acts.* (Compl. ¶¶ 5, 32-35, 101.) As such, it is unclear exactly what free speech violations they are complaining about, and what content Measure B restricts that is not already subject to an unchallenged regulation.

1   Plaintiffs present no evidence whatsoever that Measure B regulates the final

2   content of any film, or the impact of that content upon a viewer. For this reason

3   alone, Plaintiffs' First Amendment claims fail.  *See Santa Monica Food Not Bombs*

4   *v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006) ("Although it is

5   common to place the burden upon the Government to justify impingements on

6   First Amendment interests, it is the obligation of the person desiring to engage in

7   assertedly expressive conduct to demonstrate that the First Amendment even

8   applies.").

9         **1.**     **Measure B Is An Appropriate Regulation Of The**
       **Filmmaking Process, To Protect The Public Against Harms**

10                               **That May Arise During The Production Of Films.**

11        Measure B is a public health regulation, and is analogous to other similar

12  regulations applicable to filmmaking generally, such as regulations setting

13  minimum wage and hour requirements, codes requiring permits for all types of

14  filming in Los Angeles County, or fire safety regulations applicable during filming.

15  These already existing regulations, applicable to Plaintiffs during the process of

16  filmmaking, are not unconstitutional, nor have Plaintiffs challenged them as such.

17  Rather, such regulations are proper to ensure safety of not only performers, but the

18  safety of other citizens, to protect property, and to avoid nuisance to surrounding

19  communities.

20        Measure B is no different from these other public health and safety

21  regulations, which all filmmakers – including Plaintiffs – must abide by in Los

22  Angeles County.  Measure B simply seeks to protect performers and the general

23  public from STD infection through exposure to blood, semen, and other fluids that

24  contain disease during the making of films.

25        Despite this, Plaintiffs nevertheless assert that Measure B has an impact on

26  the filmmaking process, affecting how Plaintiffs "shoot, edit, and even script their

27  movies." Motion, p. 7.  Even if this is true, this does not transform Measure B into

28  a content-based restriction on speech, for the simple fact that *every* regulation

regarding a film set will impact the filmmaking process, and it is clear that these regulations are not content-based restrictions on speech.

For example, Los Angeles County's general film permit law requires that the proposed filming activity and methods of filming will not, among other things, constitute a menace to the public health, safety, or general welfare, and that it will be done in a way that mitigates noise, dust and vibration. Ensuring compliance with these requirements certainly will affect how a film will be shot, scripted, edited, etc. Likewise, the Los Angeles County Fire Code regulation of pyrotechnic filming imposes requirements concerning who must be on a film set, specific requirements regarding film set size, electrical engineering and wiring, and other safety precautions. Ensuring compliance with these requirements certainly will affect how a pyrotechnic special effect scene is scripted, filmed, shot, and edited.

Finally, and as a matter of common sense, even if a script calls for a character to be killed and/or maimed, numerous laws and regulations prevent the performer from actually deliberately being killed or maimed. Ensuring compliance with these requirements certainly will affect how a scene is scripted, filmed, shot, and edited. And yet, *none of these regulations are content-based restrictions on speech,* and neither is Measure B.

## C. If Measure B Affects Speech At All, It Constitutes A Valid Content-Neutral Time, Place and Manner Restriction.

Even assuming Measure B has some effect on speech, it is a classic content-neutral, "secondary effects" regulation. A "government may impose reasonable restrictions on the time, place, or manner of engaging in protected speech provided that they are adequately justified *without reference to the content of the regulated speech.*" *See G.K. Ltd. Travel*, 436 F.3d at 1071 (internal quotation omitted) (emphasis added). A content-neutral regulation is one that "confers benefits or imposes burdens on speech without reference to the ideas or views expressed." *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642-43 (1994). As stated above,

1   Measure B says nothing regarding the content of any film, and Plaintiffs present no

2   evidence whatsoever that Measure B regulates the final content of any film.

3       To be a valid time, place, and manner restriction, the restrictions must be

4   "narrowly tailored to serve a significant governmental interest and . . . leave open

5   ample alternative channels for communication of the information." *See G.K. Ltd*

6   *Travel*, 436 F.3d at 1071.  Measure B satisfies all of these elements.

7       As shown in Section II.A above, Measure B promotes a significant

8   governmental interest in protecting the public health.  The face of Measure B states

9   that it is being enacted to protect the public health of Los Angeles County

10  residents.  It is well-settled that public health and safety are significant

11  governmental interests justifying some time, place and manner regulations. *See,*

12  *e.g., Davidovich v. City of San Diego*, 2011 U.S. Dist. LEXIS 138319, at *9-10

13  (S.D. Cal. Dec. 1, 2011); Cal. Health & Safety Code §§ 120575, 120175.

14      Second, Measure B's provisions are narrowly tailored to serve this interest

15  in public health and safety.  Measure B *only* regulates conduct that could result in

16  transmitting a disease; it is precisely aimed at the source of the problem – STD

17  exposure and infection in the making of films. *See Members of the City Council v.*

18  *Taxpayers for Vincent*, 466 U.S. 789, 807-08 (1984) (upholding ordinance banning

19  posted signs on public property as "the city did no more than eliminate the exact

20  source of the evil it sought to remedy," *i.e.*, accumulation of these signs posted on

21  public property, constituting a "visual assault").

22      Finally, Plaintiffs have not demonstrated that no alternative means of

23  communication exist if Measure B is enforced.  Plaintiffs submit no evidence

24  demonstrating that, by not being able to produce films in exactly the manner they

25  deem most appropriate in Los Angeles County, they cannot express the viewpoints

26  they want to express in their final product. *See Members of the City Council*, 466

27  U.S. at 791 ("[T]he First Amendment does not guarantee the right to employ every

28  conceivable method of communication at all times and in all places. . . .").

---

INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

10

1    Like films that depict death without actually killing performers, Plaintiffs are

2  free to make and sell a final product that depicts unprotected sex, if that is the

3  message they seek to express.  Further, because these films are viewed virtually

4  everywhere, and the performance (unlike, say, a play or concert) is not location-

5  specific, filmmakers who want to film sexual intercourse without using condoms

6  can simply make their films in another place, **and then show those films in Los**

7  **Angeles County.** [1] Alternative modes of communication need only be "ample"

8  (*Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998), *amended on denial of*

9  *rehearing,* 1998 U.S. App. LEXIS 17149, No. 97-16061 (9th Cir. 1998)), not

10  equivalent or as subjectively desirable, nor (assuming Plaintiffs' objection to

11  filming elsewhere is cost) as inexpensive as possible.[2]  Plaintiffs have ample

12  channels of communication, even with Measure B.

13       **D.    Measure B Does Not Violate Plaintiffs' Due Process Rights.**

14       Plaintiffs' due process argument – that training must occur before permits

15  are issued,[3] and permits may be revoked for any alleged violation *prior to any*

16  *notice or opportunity to be heard,* and that once a permit is suspended, Plaintiffs

17

18  [1] In fact, from Plaintiffs' evidence (London Decl., Ex. D), it appears Pierce is
enthralled that he is flown to Spain for work (Dkt. 55-1 at p. 33), and Kross leaves
19  [2] In their declarations (Hirsch ¶¶ 24-32; Pierce ¶¶ 10-11; Kross ¶¶ 14-15), Plaintiffs
20  make it clear that their primary concern is economic – viewers won't want to
purchase films with condoms, and moving production out of Los Angeles will limit
21  access to existing filmmaking infrastructure, such as "French Chateau" sets.
However, the First Amendment does not require a government to ensure that a
22  specific industry will be able to run their business at low costs; it requires that the
23  government refrain from effectively denying operation of that business as a
whole.  *See Renton,* 475 U.S. at 54 ("we have never suggested that the First
24  Amendment compels the Government to ensure that adult theaters, or any other
25  kinds of speech-related businesses for that matter, will be able to obtain sites at
26  bargain prices"); *Young v. Am. Mini Theatres, Inc.,* 427 U.S. 50, 78 (1976) (the
inquiry for First Amendment purposes is not concerned with economic impact).
27  [3] This is a misreading of Measure B – Section 11.39.080 expressly allows
28  conditional permits, pending completion of training.

1  may engage in no filming *whatsoever* (Motion, p. 17) – appears to be based on a

2  complete misreading of Measure B.  The plain language of Measure B puts

3  Plaintiffs on sufficient notice of what constitutes prohibited activity, and what

4  Plaintiffs can do prior to the imposition of penalties to avoid those penalties.

5  Measure B sets forth five clear main requirements for compliance: obtain a

6  permit, post the permit on set, develop an exposure control plan, get bloodborne

7  pathogen training, and use condoms for vaginal and anal sex.  Measure B also

8  gives adequate notice of how Plaintiffs may cure or contest any alleged

9  deficiencies in complying with the regulation *prior to the imposition of a penalty*.

10  First, a Notice to Comply, stating alleged deficiencies, is issued.  Sanctions

11  may be avoided simply by complying with the Notice.  § 11.39.110(B).  Second, if

12  a Notice is contested, a full administrative review is engaged, and any penalty is

13  imposed only *after* completion of the review. § 11.39.110(C) and (D).  Finally,

14  even if, at the end of this process, a permit is suspended, the permittee is not

15  banned from **all** filmmaking – just those filmmaking activities where performers

16  actually engage in the activities set out in Measure B during production of the film.

17  Section 11.39.080(C).[4]

18  The notice, notice to cure, opportunity to be heard *prior to the imposition of*

19  *any penalty*, and level of penalty contained in Measure B are more than sufficiently

20  protective of Plaintiff's due process rights.

21  Plaintiffs also fail to demonstrate that Measure B subjects them to any

22  unreasonable search or seizure.  First, inspections on property that are subject to

23  regulation, *for purposes of ensuring compliance with the regulation*, are not

24  considered *per se* unconstitutional.  *People v. White*, 259 Cal. App. 2d Supp. 936,

25  942 (1968).  And warrantless administrative inspections are permissible in well-

26  regulated industries, such as filmmaking.  *See New York v. Burger*, 482 U.S. 691,

27

28  [4]The Los Angeles Fire Code has a similar penalty and administrative review
provisions for permits.  *See, e.g.*, §§ 32.108.1, 32.109.3, 109.3.1 (RJN, Ex. D).

710-11 (1987) ("if inspection is to be effective . . . , unannounced, even *frequent*, inspections are essential") (internal citation omitted) (emphasis in original).  Other film regulations *already* allow for government employees to be present during working hours to ensure compliance.  *See, e.g.,* Cal. Fire Code § 4801 *et seq.* Finally, Measure B provides adequate notice of potential inspections.

It is also well-established that the government may seize items that it has probable cause to believe are evidence of a crime or violation of law. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967).

### E.     Measure B Is Not Underinclusive Or Overinclusive.

First, Measure B is not underinclusive even though it does not apply to the general population, or to "non-commercial" films.  Measure B only regulates the activities that create the problems it seeks to resolve – risk of STD infection by performers actually engaging in sexual intercourse and other sexual acts during commercial filmmaking.  *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52-53 (1986).  Measure B targets this activity because it has a markedly different effect on the community in terms of STD exposure and ultimately, public health, than do other businesses and the population at large.

Second, Plaintiffs' assertion that Measure B is "overinclusive" relies on a misreading of the Measure.  There is a risk of STD exposure and transmission when performers actually engage in a number of acts, in addition to actual sexual intercourse during filming.  When these acts occur, principals and management level employees are required to undergo blood borne pathogen training to help minimize those risks.  §§ 11.39.010 and 11.39.080(A).  However, when performers specifically engage in sexual intercourse, condoms are required – they are not required for other sexual acts.  § 11.39.110(A).  The "regulatory scope" is calibrated, and Measure B merely treats two different risks of exposure in two different ways. It is not overinclusive.

### F.     Measure B Is Not Unconstitutionally Vague.

A law is unconstitutionally vague only if people "of common intelligence must guess at its meaning and differ as to its application." *See Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926); *see also United States v. Kilbride*, 584 F.3d 1240, 1258 (9th Cir. 2009). No provisions or terms in Measure B are such that a person of common intelligence must guess at their meaning. Further, certain key terms of which Plaintiffs complain, such as "adult film," "producer of adult film," and "commercial purposes" are specifically defined in Part I of Measure B, and other terms, such as "commercial purposes" and "reasonably suspected," are capable of general understanding, and are found in many statutes.

Plaintiffs also allege that Measure B contains numerous "discretionary mandates" that are vague. These "mandates" are commonly found in statutes, and are capable of general understanding. As discussed above, the County general film permit law requires substantiation of certain things "to the satisfaction of the [County]." Los Angeles County Code § 22.56.1860(A). Likewise, the Fire Code mandates that, at the discretion of the County, in order to preserve "life or property," the County shall require fire safety officers or advisors on duty when certain hazardous activities take place during filming. § 32.4807.1.1.

## G.    Measure B Does Not Constitute A Prior Restraint.

A "prior restraint" is an administrative or judicial order that forbids certain communications in advance of the time that such communications are to occur. *See Alexander v. U.S.*, 509 U.S. 544, 550 (1993). For Measure B to be a prior restraint, Plaintiffs must show that it (1) restrains speech, (2) puts unbridled discretion in the hands of government officials, and (3) allows the decisionmaker unlimited time to render a decision on the matter affecting the permit. *See, e.g., Krontz v. City of San Diego*, 136 Cal. App. 4th 1126, 1133 (2006).

Again, Measure B in no way prohibits or restricts the showing of any films in Los Angeles County, or the contents or depictions of any films shown in Los Angeles County. Plaintiffs are free to broadcast or disseminate whatever films

they want.  Measure B also does not give the County unbridled discretion to enforce.  *See Thomas v. Chicago Park District*, 534 U.S. 316, 323 (2002) (finding permitting scheme permissible because it includes standards that are "reasonably specific and objective, and do not leave the decision to the whim of the [permitting official].").  Because Measure B contains objective standards for its permitting scheme (*i.e.*, pay for a permit, conduct bloodborne pathogen training, post the permit on the work site, and use condoms during vaginal and anal sex), there is no "unbridled discretion" placed in the hands of County officials.  Measure B also limits the time that a decisionmaker has to act.  § 11.39.110(D) (written notice of decision shall be issued within five days of the administrative review).  Any discretion allowed by Measure B is well within constitutional norms.  *See G.K. Ltd. Travel*, 436 F.3d at 1084; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Finally, Measure B itself provides that permit fees "shall be set by the Department in an amount sufficient to provide for the cost of any necessary enforcement."  § 11.39.080(A). Plaintiffs have set forth no evidence to demonstrate that the $2,000-$2,500 permitting fee is not proportionally representative of the costs incurred by the County in enforcing Measure B.

## H.  Measure B May Be Adopted Via Referendum.

Plaintiffs' referendum argument is a red herring.  An otherwise valid law that may have some impact on speech is not suddenly rendered invalid solely because it was adopted via initiative.  *See, e.g., Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 194 (1999) (noting that ballot initiatives related to political speech are also subject to judicial scrutiny).

## I.  Measure B Is Not Preempted By Cal/OSHA Standards.

Plaintiffs' assertion that Measure B is preempted by California Labor Code and regulations ("State Laws") is incorrect.[5]  As Cal/OSHA itself explains, in a letter reviewing a city permit ordinance similar to Measure B in that it requires the use of condoms during filming of actual sexual intercourse (Los Angeles Municipal Code § 12.22.1 (RJN, Ex. F)), the preemptive reach of State Laws is expressly limited only to explicit enforcement of Cal/OSHA's own regulations and standards.  They contain no express limitations of local laws, and explicitly provide that local governments may regulate workplaces.  Moreover, as a threshold matter, it is unclear that Plaintiffs have standing to assert this claim with respect to condom use, in that there is no evidence that they are employees, or employ people, and thus covered by the State Laws.[6]

1.   **Local Regulation Of Traditional Local Interests Are Presumptively Valid And Preemption Is Disfavored.**

In *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006), the California Supreme Court upheld local laws regarding timber cutting in the face of a state regulatory scheme, and set out the following principles of analysis regarding preemption challenges:

> The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption.  We have been particularly 'reluctant to infer legislative intent to preempt a field covered by municipal regulation *when there is a significant local interest to be served that may differ from one locality to another*.'  'The common thread of the cases is that if there is a significant local interest to be served which may differ from one locality to another

---

[5]  Again, Plaintiffs state that the State Laws already require them to use barrier protection when filming acts of sexual intercourse or other sexual acts. (Compl. ¶¶ 5, 32-35, 101.)  This undercuts all of their First Amendment claims.

[6]  As discussed below, State Laws only apply to employees, not independent contractors, and no declaration of Plaintiff (Hirsch ¶ 13, Pierce ¶ 2, and Kross ¶ 3) alleges that they are employees (or employed performers) when actually engaging in sexual intercourse, only that they merely "contract" when engaging in such acts.

1

2

then the presumption favors the validity of the local ordinance against an attack of state preemption.'

3

4

5

6

7

8

Thus, when local government regulates in an area over which it traditionally has exercised control . . . courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. . . .  '[I]t is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.'  (citations omitted) (emphasis added)

9

10

      **2.**    **Public Health And Safety, and Filmmaking Are Traditional Local Interests; Their Regulation Is Presumptively Valid.**

11

12

13

14

15

16

As shown in Section II.B above, it is well-established that local governments, under their police power, can and do regulate film sets to protect public health and safety.  They are allowed to do so even if those regulations affect the occupational safety of employees on those sets.  Moreover, local governments have a statutory duty to detect and prevent STD infections.  This duty is not limited to non-workplace settings.  Cal. Health and Safety Code §§ 120175, 120575.

17

18

19

20

21

22

23

24

25

26

27

28

It is thus clear that that local governments traditionally have exercised control over regulation of films sets and of public health and safety, and that these matters are of significant local interest.  Indeed, in this case, Los Angeles County has an exceedingly local, exceedingly significant interest, in that it is the primary locality where certain types of filmwork, involving actual sexual intercourse, occurs. Thus, California state law has a general policy against finding preemption, and the Ninth Circuit has recognized that it should not be found unless "the purported conflict (between two laws) is in fact a genuine one, *unresolvable short of choosing between one enactment and the other.*"  *S.D. Myers Inc. v San Francisco*, 336 F. 3d 1174, 1177 (9th Cir. 2003) (citation omitted; emphasis added).  Further, "when interpreting statutory provisions 'intended to further two

1  separate objectives,' [California courts] have 'stressed the importance of
2  attempting to harmonize these goals.'" *Big Creek Lumber*, 38 Cal.4th at 1161 n.16.

3          Therefore, for Measure B to be preempted, Defendants must show not only
4  that the legislature intended to occupy the entire field of occupational safety and
5  health, but that such occupation is so extensive that it cannot tolerate any local
6  ordinance that may impact occupational safety and health, even ordinances
7  regulating traditional local interests.  It is manifest that the legislature has
8  expressed no such intention.

9          **3.      There Is No Express Preemption.**

10         In construing the scope of possible preemptive language in statutes,
11  "'*[E]ach phrase* within [an express preemption provision] *limits* the universe of
12  [local action] pre-empted by the statute.'" *Big Creek Lumber*, 38 Cal.4th at 1155
13  (citation omitted; emphasis added and in original). In the process of establishing
14  occupational safety and health standards, the California Legislature expressly
15  validated and maintained the ability of local governments to regulate workplaces
16  pursuant to their police power:

17            Except as limited . . ., nothing in this part shall deprive the governing
18            body of any county, city, or public corporation, board, or department,
19            of any power or jurisdiction over or relative to any place of
             employment.
20  Cal. Lab. Code § 6316.  As understood by Cal/OSHA,[7] the above means that "For
21  example, [local] building permits are issued and [local] fire codes are enforced . . .
22  even though that enforcement may affect occupational safety and may overlap with
23  Cal OSHA jurisdiction."  RJN, Ex. G, at p. 3-4 (Cal/OSHA Letter).

24

25

26

27  [7]  Cal OSHA's interpretations of its statutes and regulations are entitled to judicial
28  deference.  *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467
     U.S. 837, 842-44 (1984).

The limitation reserved above is codified in Labor Code Section 144(e), which states that the preemptive reach of these laws is expressly limited only to explicit enforcement of Cal/OSHA's own regulations and standards:

> Nothing in this section shall affect or limit the authority of any state or local agency as to any matter *other than the enforcement of occupational safety and health standards adopted by the board*. . . .

As stated by Cal OSHA, "[t]he Legislature allows local safety action, other than explicit enforcements of the Division's own regulations. It has done so in express and unambiguous terms." As also concluded by Cal OSHA, "[L]ocalities may adopt and enforce their own standards as long as long as that adoption is within the localities' police powers. This is true even if the local standards could be construed as 'occupational safety and health standards.'"[8]

Finally, Cal OSHA jurisdiction only extends to a relationship between employee and employer; independent contractors are not subject to Cal OSHA jurisdiction. Cal. Lab. Code Section 6307; RJN, Ex. G at p. 3. By these express limitations on the scope of Cal OSHA jurisdiction, the legislature has made it clear that local regulation of local interests, even if they may have some impact on occupational health and safety, has not been preempted.

### 4. There Is No Implied Preemption.

Plaintiffs' argument that the supposedly vast scope and range of Cal OSHA regulation implies preemption is easily addressed:

> The Legislature's 'preemptive action in specific and expressly limited areas weighs against an inference that preemption by implication was intended elsewhere.'In addition, and specifically pertinent here, "[p]reemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local

---

[8] Plaintiffs' assertion that only Cal OSHA may adopt occupational safety and health standards (Cal. Lab. Code §142.3) is beside the point, as Measure B is not such a standard.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

regulations.  Similarly, it should not be found when the statutory scheme recognizes local regulations.'

*Big Creek Lumber*, 38 Cal.4th at 1157.

As in *Big Creek Lumber*, both bars to implied preemption exist here.  The Labor Code limits Cal OSHA jurisdiction to employees and to enforcement of Cal OSHA standards.  Likewise, the Labor Code expressly allows for local regulation of workplaces.  There is no implied preemption.

### 5.   Measure B Does Not Duplicate Or Contradict State Laws.

As a threshold matter, the doctrine of preemption by duplication does not apply to Measure B, as the doctrine is largely confined to state penal ordinances, due to double jeopardy concerns.  *See Fireman's Fund Ins. Co. v. City of Lodi*, 2002 U.S. App. LEXIS 20999, at *71-72 (9th Cir. Aug. 6, 2002) (citing *Cohen v. Bd. of Supervisors*, 40 Cal. 3d 277, 475 n.12 (1985)).

Moreover, "[l]ocal legislation is 'duplicative' of general law when it is coextensive therewith."  *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993).  There is not sufficient duplication; any requirements in Measure B are not coextensive with the requirements in 8 Cal. Code Regs. 5193.  RJN, Ex. G at p. 3-4.  Again, unlike Section 5193 which is limited only to employees, Measure B applies to all persons, regardless of employment relationship.  Further, the training requirements of Section 5193 apply *only* to employees who are exposed to bloodborne pathogens (§ 5193(g)(2)(A)), while Measure B's training encompasses owners (who, by definition, are not employees) and management-level employees, regardless of whether or not they are exposed to blood-borne pathogens (indeed, most if not all owners and mid-level employees are not performers, and therefore will not be exposed) (Measure B, § 11.39.080(A)(1)).

Furthermore, the permit and permit posting requirements of Measure B (§§ 11.39.080, 11.39.090) have no analog in the Cal OSHA regulations.  In addition, the exposure control plan required in Measure B (§ 11.39.150), while it

---

1    incorporates parts of the Cal OSHA regulations, must expressly set out and

2    describe how the plan will comply with the requirements of Measure B itself.

3           To the extent there may be overlap between Cal OSHA standards to protect

4    employee health, and Measure B's protection of public health and safety during

5    filmmaking, such overlap is allowable.  RJN, Ex. G at p. 3-4; *see also Big Creek*

6    *Lumber,* 38 Cal. 4th at 1159,1160 (localities may regulate impacts of logging, even

7    when state has regulated general conditions of logging:  "[l]ogging, even when

8    conducted  according to state regulations, may have *some* impacts properly

9    addressed by the [local] zoning authority. That the state has sought to reduce and

10   control these same occurrences through general regulation does not preempt local

11   zoning control, any more than the state and federal regulation of industrial air

12   pollution would preclude a local zoning authority from relying on air pollution as a

13   reason for excluding industrial plants from residential districts.").

14          Finally, there is nothing contradictory about the two laws.  A law is not

15   contradictory to another is if it is not "inimical" to it – in other words, "the

16   ordinance does not prohibit what the statute commands or command what it

17   prohibits." *Sherwin-Williams*, 4 Cal. 4th at 902.  None of the requirements of

18   Measure B is inimical to or contradicts Cal/OSHA standards.

19          In sum, Section 5193 is a wide-ranging regulatory scheme regarding

20   bloodborne pathogen exposure and control, set out across all industries.  Measure

21   B, by contrast, is local regulation of filmmaking and public health that targets a

22   specific act in a specific industry, and directs specific persons not necessarily

23   covered by Section 5193, to take specific steps that are not necessarily required by

24   Section 5193.  The State of California specifically limited Section 5193's reach

25   and scope in order to allow local governments to regulate in this area.  There is no

26   preemption.

27   **J.    Plaintiffs Have Failed To Show That They Will Suffer Immediate**
          **Irreparable Harm Absent Preliminary Injunctive Relief.**
28

Plaintiffs attempt to establish that Measure B has caused them irreparable harm in two ways:  (1) their allegations of First Amendment violations require a presumption of irreparable harm, and (2) Plaintiffs cannot produce or perform in films in *exactly the manner they want* (*i.e.,* without condoms) in Los Angeles County.

As established above, Measure B does not preclude Plaintiffs from freely exercising their free speech rights.  Measure B only regulates the conditions under which a film may be made, to protect public health and safety, in the same manner as all other regulations applicable to the filmmaking process, such as labor laws, fire codes, and general film permitting regulations.  Given these legitimate rules, Plaintiffs (or any filmmaker or performer) can *never* produce or perform in films in *exactly the manner they want*.[9]  However, Plaintiffs may still create films portraying sexual intercourse, and other sexual acts, and may still show the films containing the precise content they wish in Los Angeles County.

In fact, nowhere do Plaintiffs claim any harm arising from the Measure B permitting process itself.  To show irreparable harm, Plaintiffs must demonstrate a "real and concrete injury or even threat thereof when [they] sought the preliminary injunction." *Los Angeles Memorial Coliseum Com. v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  Plaintiffs are silent on their experience with the application process for a permit under Measure B.  They are silent on whether the County issued them a citation for violation of Measure B.

Also, any harm arising from Measure B is not irreparable, as Plaintiffs are able to conduct filmmaking outside of Los Angeles County.[10]  Further, and it

---

[9] As discussed above in Section III.C, the First Amendment does not guarantee that individuals may express themselves in precisely the manner they most prefer. *See Members of the City Council*, 466 U.S. at 791.
[10] Moreover, as set out in footnote 2 above, the First Amendment does not require that businesses be run as cheaply or as profitably as possible.

1  apparently cannot be said enough, **Plaintiffs claim that they are already**
2  **required under State law to use condoms when filming actual sexual**
3  **intercourse** – by their own admission, they already cannot produce or perform in
4  films without use of condoms.  The exact "harm" Plaintiffs find in Measure B as
5  irreparable already exists![11]

6      Every other "harm" complained of by Plaintiffs – costs of training, permit
7  fees, and costs associated with moving filming outside of Los Angeles County to
8  avoid compliance with Measure B – is monetary in nature, and monetary harms
9  generally are not considered to be "irreparable." *Los Angeles Memorial Coliseum*
10 *Com.*, 634 F.2d at 1202 ("monetary injury is not normally considered irreparable").

11     Plaintiffs claim that Measure B "forces" them to curtail film production,
12 resulting in monetary harm.  It is unclear how this "force" is applied, and how
13 Plaintiffs are "compelled" not to film, other than that Plaintiff simply choose not to
14 film actual sexual intercourse with condoms.  Not only is this contradicted by
15 Plaintiffs' claim that state law requires condom use, Plaintiffs' position merely
16 appears to be that such films would have a small viewer market, and would not be
17 as profitable.  Such monetary "harm" is purely speculative, and is belied by the
18 fact that at least one company filming in Los Angeles uses condoms when filming
19 actual sexual intercourse.  RJN, Ex. H.

20     **K.    The Balance Of Harms Weighs Against Plaintiffs.**
21     It is Plaintiffs' burden to show that the balance of the equities tips strongly
22 in their favor, that their alleged harms outweigh other harms the proposed
23 preliminary injunction would cause. *Winter*, 555 U.S. at 20; *see also Amoco Prod.*

24
25 [11] Individual Plaintiffs' numerous contentions that they are "consenting adults,"
while true, are beside the point.  Numerous laws, such as the California Labor
26 Code, govern and regulate adult behavior, even when adults would consent to act
27 otherwise.  For example, an employer is required to pay the minimum wage, even
if a worker would consent to a lower wage.  This is also true concerning Plaintiffs'
28 allegation that State Laws already require condom use.

1   *Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987).  Moreover, where the impact

2   of an injunction reaches beyond the parties, carrying with it a potential for public

3   consequences, a plaintiff must demonstrate that the public interest favors entering a

4   preliminary injunction.  *See U.S. v. First Nat'l City Bank,* 379 U.S. 378 (1965); *see*

5   *also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  Plaintiffs do not

6   meet this burden.

7          Measure B does not regulate the content of films that may be shown in Los

8   Angeles County.  Therefore, there is no expressive harm stemming from Measure

9   B.  The only "harms" from Measure B are the alleged monetary costs to a

10   filmmaker in complying with Measure B and/or with moving his production

11   outside of Los Angeles County.  This "harm" is far outweighed by the harms to the

12   residents of Los Angeles County should Measure B be enjoined.

13          Should Measure B be enjoined, an effective method of preventing STD

14   infection also will be enjoined, which will have a deleterious impact on public

15   health. The disproportionate incidence of STDs among performers who engage in

16   sexual intercourse during the production of films in Los Angeles County is up to

17   ten times that of the general population, and these infections do not stay just within

18   the performer community. RJN, Ex. A, at p. 2.

19          Despite Plaintiffs' cavalier attitude that the current rate of STD infection is

20   somehow acceptable (perhaps Plaintiffs could explain to a person infected during

21   any period of injunction that this is not a "significant harm" and is of "limited

22   impact" (Motion, p. 24)), the "general public has an interest in the health of [city

23   and county] residents and workers."  *See Golden Gate Rest. Ass'n v. City & County*

24   *of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008), *overruled on other grounds in part as*

25   *stated in Sattari v. Washington Mut.*, 2010 U.S. Dist. LEXIS 120821 (D. Nev. Oct.

26   29, 2010).  A preliminary injunction of Measure B would absolutely have a

27   negative impact on the public interest in its own health, and public health in

28   general.  Moreover, Plaintiffs' claimed attempts at "self regulation" and "voluntary

---

INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

compliance" to protect against STD exposure have not been successful.[12]  "Faced

with such a conflict between financial concerns and preventable human suffering,

we have little difficulty concluding that the balance of hardships tips decidedly in .

. . favor [of preventing suffering]."  *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th

Cir. 1983).

Further, Measure B is a rare example of direct democracy – fully 57% of

Los Angeles County voters cast a vote in favor of Measure B in November 2012.

The voters of Los Angeles County thus have a unique and vital interest in seeing

their legislative will upheld.  Passed initiatives are presumptively valid, and should

be overturned only if it clearly cannot withstand scrutiny.  *See Coalition for Fair

Rent v. Abdelnour*, 107 Cal. App. 3d 97, 114 (1980) ("[It] has long been our

judicial policy to apply a liberal construction to this [initiative] power wherever it

is challenged in order that the right be not improperly annulled.")*.  There would be

a tremendous harm to voter participation, and to the initiative process itself, if

voters understood that their vision of what their government should do, and how

their community should function, could be summarily and preliminarily blocked,

especially given the evidentiary record in this case. *Id.* ("The right of initiative is

precious to the people and is one which the courts are zealous to preserve to the

fullest tenable measure of spirit as well as letter.") (internal citations omitted).

Granting Plaintiffs' Motion would harm the public interest, public health,

and directly contravene the demonstrated public support for Measure B.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.  In the

alternative, given Measure B's severability provision, only those provisions of

Measure B that Plaintiffs have established entitlement to injunctive relief should be

enjoined.

---

[12]CBS/AP, "Porn Star Syphilis Case: Jesse Spencer, aka 'Mr. Marcus,' Sentenced to Jail for Knowingly Exposing Co-Stars to Disease," (Jun. 5, 2013) (RJN, Ex. I).

Respectfully Submitted,

DATED:  June 10, 2013

INTERVENORS

By:/s/ Samantha R. Azulay
     TOM MYERS
     SAMANTHA R. AZULAY
     CHRISTINA YANG
     *Attorneys for Intervenors*