Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450

*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>Plaintiffs,<br>vs.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES,<br><br>Defendants, and<br><br>MICHAEL WEINSTEIN, MARIJANE JACKSON, ARLETTE DE LA CRUZ, MARK MCGRATH, WHITNEY ENGERAN, and the CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION<br><br>Defendants-Intervenors. | Case No.: 13-CV-00190-DDP-AGR<br><br>**INTERVENORS' OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:     July 1, 2013<br>Time:    10:00 a.m.<br>Judge:   Dean D. Pregerson<br>Location: Courtroom 3<br><br>*[Filed concurrently with Request for Judicial Notice; Objections to Plaintiffs' Evidence in support of Motion for Preliminary Injunction]* |

INTERVENORS' OBJECTIONS TO EVIDENCE ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Intervenors") hereby submit their objections to the Declaration of Steven Hirsch, and the Declaration of Ronald G. London and attached Exhibit D, filed in support of Plaintiffs' Motion for Preliminary Injunction.

## Objections to the Declaration of Steven Hirsch

Intervenors object to the following paragraphs in the Declaration of Steven Hirsch:

| PARAGRAPHS | OBJECTIONS |
| --- | --- |
| 10.<br>Since the mid- to late-1990s, Vivid, along with all leading producers of adult films, implemented strict requirements for each production to protect models and performers, and to prevent the spread of HIV and other STDs. Vivid joined with other members of the adult film industry to help fund the Adult Industry Medical Health Care Foundation ("AIM"), as a testing and screening facility, and Vivid contributed financially to AIM's ongoing efforts. AIM provided HIV and STD testing and treatment, as well as counseling services and support group programs, to individuals who work in the adult film industry, as well as to the general public. | Lack of personal knowledge as to what other producers do, and what AIM provided. (Fed. R. Evid. 602); Hearsay as to what AIM provided. (Fed. R. Evid. 801 *et seq.*). |
| 13.<br>APHSS-approved clinics provide | Lack of personal knowledge as to |

| | | |
|---|---|---|
| 1 2 3 4 5 6 7 8 | continually updated information to APHSS on adult film performers who have a current negative-test status, based on testing every 14-28 days, and who are thus available for work in adult films. Vivid relies on a database that APHSS keeps in turn, which identifies performers who have current negative-test results from APHSS-approved labs, and who are thus available for work in adult films. | what information APHSS actually provided. (Fed. R. Evid. 602); Hearsay as to the test results. (Fed. R. Evid. 801 *et seq.*). |
| 9 10 11 12 13 14 15 | 15. I have observed that compliance with this testing regime is universal across the adult film industry. No law-abiding adult film producer allows performers to appear without a current APHSS or equivalent negative-test confirmation, and no performer would agree to film without confirming his or her co-performers' negative-test status. | Lack of personal knowledge and speculation as to what other producers do, and what performers would and would not agree to do. (Fed. R. Evid. 602). |
| 16 17 18 19 20 21 22 23 24 25 26 27 | 16. The AIM and APHSS regimes, and the other steps Vivid and the adult industry have taken to prevent the transmission of HIV and other STDs, and to ensure safe and healthy work environments, have proved successful. Since 2004, over 300,000 sexually explicit scenes have been filmed by major producers of adult films in Los Angeles County, with zero cases of HIV transmission. | Lack of personal knowledge as to what steps AIM, APHSS and the "adult film industry" have taken to ensure "safe and healthy work environments." (Fed. R. Evid. 602); Lack of personal knowledge as to the amount of sexually explicit scenes filmed across the adult film industry. (Fed. R. Evid. 602); Lack of personal knowledge as to statistics related to HIV transmission in Los Angeles County |

INTERVENORS' OBJECTIONS TO EVIDENCE ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

2

| | |
|---|---|
| | since 2004 (Fed. R. Evid. 602). |
| 20.<br><br>Shortly after Measure B took effect, Vivid requested that the City of Los Angeles cancel an adult film shooting permit the City had previously issued, and that it refund the permit fee Vivid had paid. The City refused to do so. It claimed that producing adult films in the City of Los Angeles remained permissible notwithstanding the enactment of Measure B by Los Angeles County and the County's announcement that Measure B had taken effect. However, when Vivid consulted the City of Los Angeles Police Department, which has enforcement authority for film permits, the Police Department would not confirm that producing adult films in the City of Los Angeles is permissible without complying with Measure B. The Police Department indicated that Vivid's previously issued City permit should be canceled. | Hearsay as to what the City of Los Angeles and its Police Department did, said, and indicated, and the reasons thereof. (Fed. R. Evid. 801 *et seq.*). |
| 21.<br><br>Since Los Angeles County has announced that Measure B has taken effect, and given Vivid's experience with City of Los Angeles permitting and its police force, Vivid has stopped shooting adult films in Los Angeles County where Measure B applies. Measure B has thus served to chill Vivid's speech in which, prior to Measure B's enactment, Vivid was | Improper legal conclusion as to whether Vivid's speech was chilled. (Fed. R. Evid. 701). |

| | |
|---|---|
| able to engage freely. | |
| 22. It is also my understanding that Measure B requires the use of condoms by performers for all acts of anal or vaginal sex during the production of adult films. In Vivid's experience, performers in adult films do not want to use condoms during shooting, for a variety of reasons. Among these is the fact that shooting sexually explicit scenes takes much longer than the depicted sexual activity would take in the "real world." As a result, female performers find condom use over such an extended period to be painful - so much so, that they often cannot work two consecutive days if condoms are used. Similarly, condoms reduce physical sensation for male performers, which makes it more difficult to maintain sexual readiness over the extended period necessary to shoot adult films. In addition, condoms can break, especially during such prolonged use. When that happens, re-shooting and even longer periods of production/sexual activity are required. | Lack of personal knowledge and speculation as to what performers want and the reasons thereof. (Fed. R. Evid. 602). |
| 23. The respective effects that condoms have on female and male performers in adult films affect the creative process and thus the expressive work of adult film performers and the producers who depend on them. Thus, notwithstanding that Vivid makes condoms available on all adult film shoots as stated above, | Lack of personal knowledge as to the effects of condoms on performers, what other producers do, and how reliable test results are. (Fed. R. Evid. 602); Hearsay as to the reliability of test results. (Fed. |

INTERVENORS' OBJECTIONS TO EVIDENCE ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

4

| | |
|---|---|
| performers rarely use them, opting instead to rely on highly reliable and fastidiously followed HIV and STD testing. | R. Evid. 801 *et seq.*). |
| 25. Adult films audiences react negatively to the use of condoms by performers. In Vivid's experience, adult films that use condoms experience 35 percent lower sales than those that forgo condoms in reliance on APHSS testing and related measures. Vivid's experience is also that its audiences expect to explicitly see that the performers in our films actually engage in the sex acts depicted; consequently, editing or otherwise manipulating the works to avoid showing genital-to-genital or genital-to-anal contact because a condom was used, to disguise the use of condoms, or to otherwise manipulate the image would not be accepted by adult film audiences. | Lack of personal knowledge as to adult film audiences' reactions to condoms, expectations as to the authenticity of the filming, and what final image would be acceptable to these audiences. (Fed. R. Evid. 602); Hearsay as to adult film audiences' negative reactions to condoms. (Fed. R. Evid. 801 *et seq.*); Lack of foundation as to the 35% lower sales, in that there is no indication as to how Mr. Hirsch calculated this number (Fed. R. Evid. 602). |

**Objections to the Declaration of Ronald G. London**

Intervenors object to the following paragraph and attached exhibit to the Declaration of Ronald G. London:

| PARAGRAPH/EXHIBIT | OBJECTIONS |
|---|---|
| 14. Attached hereto as Exhibit D is a true and correct copy of an article cited in the Motion for Preliminary Injunction, by Jacob Weis published on May 9, 2013, entitled *No condoms in Porn* | Lack of personal knowledge as to the authenticity of the article (Fed. R. Evid. 602); Failure to authenticate in that the article and |

INTERVENORS' OBJECTIONS TO EVIDENCE ISO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

5

| | |
|---|---|
| *Country,* and available at: http://projectwordsworth.com/no-condoms-in-porn-country. | its author do not appear to come from a known or reliable source or one whose accuracy cannot be reasonably questioned, and the article is incapable of being identified as the document Mr. London purports it to be.  (Fed. R. Evid.  201, and 901 *et seq*.); Hearsay including multiple hearsay within the article, and improper use of hearsay statements for the truth of the matter asserted in Plaintiffs' Motion for Preliminary Injunction.  (Fed. R. Evid.  801 *et seq*.). |

For these reasons, Intervenors Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, respectfully request that the Court refuse to admit Exhibit D to the Declaration of Ronald G. London, and strike and disregard paragraphs 10, 13, 15, 16, 20, 21, 22, 23 and 25 of the Declaration of Steven Hirsch as evidence in support of Plaintiffs' Motion for Preliminary Injunction.

Respectfully Submitted,

DATED:  June 10, 2013                           INTERVENORS

INTERVENORS' OBJECTIONS TO EVIDENCE ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

6

```
                              By: /s/ Samantha R. Azulay
                                  TOM MYERS
                                  SAMANTHA R. AZULAY
                                  CHRISTINA YANG
                                  Attorneys for Intervenors
```

INTERVENORS' OBJECTIONS TO EVIDENCE ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION