# Exhibit A

COUNTY OF LOS ANGELES
# Public Health

JONATHAN E. FIELDING, M.D., M.P.H.
Director and Health Officer

JONATHAN E. FREEDMAN
Chief Deputy Director

313 North Figueroa Street, Room 708
Los Angeles, California 90012
TEL (213) 240-8156 • FAX (213) 481-2739

www.publichealth.lacounty.gov

BOARD OF SUPERVISORS

Gloria Molina
First District

Mark Ridley-Thomas
Second District

Zev Yaroslavsky
Third District

Don Knabe
Fourth District

Michael D. Antonovich
Fifth District

September 17, 2009

TO:        Each Supervisor

FROM:    Jonathan E. Fielding, M.D., M.P.H. *Jonathan E Fielding*
            Director and Health Officer

SUBJECT:    **ADULT FILM INDUSTRY**

This is to provide you with an update on the Department of Public Health's (DPH) activities to investigate and address sexually transmitted disease related to the adult film industry (AFI).   This is an update to our June 19, 2009 memo.

As outlined in this report, DPH has taken action to address sexually transmitted disease (STD) and HIV in the AFI, and continues to monitor and take action on AFI-related disease cases.  DPH, in conjunction with County Counsel, has also explored expanded local regulatory strategies, however these methods have substantial implementation and enforcement challenges, are likely to be only partially effective because the industry extends beyond the reach of Los Angeles County, and may possibly be subject to legal challenge. Consequently, DPH continues to recommend State legislation to increase surveillance of occupational exposures, enhanced penalties and enforcement of condom use in the AFI.

## Background

Working conditions in the AFI typically involve a worker having unprotected, prolonged and repeated sexual intercourse with multiple sexual partners over short periods of time, increasing the likelihood of transmission of sexually transmitted diseases including HIV.  Since 2003, DPH has monitored the AFI by: working with health-related organizations associated with the industry to enhance education and outreach in the adult film industry to prevent HIV and other STDs; collaborating with Cal/OSHA to develop guidelines to reduce disease exposure in the AFI and request workplace investigations; and working with County Counsel, the CEO and County legislative advocates to support State legislation to implement regulations to ensure protection of workers in this industry.

Each Supervisor
September 17, 2009
Page 2

### STD and HIV in the Adult Film Industry

The Adult Industry Medical (AIM) Healthcare Foundation and Talent Testing Services are organizations which provide STD and HIV screening and limited medical care to individuals working in the AFI and are required by law to report cases of HIV and STDs to DPH.

Since 2004 DPH received reports of 2,396 cases of Chlamydia (CT), 1389 cases of gonorrhea (GC), and five syphilis cases among AFI performers; 20.2% of performers diagnosed with STD had one or more repeat infections within a one year period. Between 2004 and 2008, repeat infections were reported for 25.5% of individuals. Due to the failure to routinely screen for rectal and oralpharyngeal infections, a sustained high level of endemic disease among AFI workers persists. Furthermore, these disease rates and reinfection rates are likely to be significantly underestimated as rectal and oral screening is not done routinely and these anatomic sites are likely to be a reservoir for repeat reinfection.

Analyses of 2008 data also indicated that AFI performers experience significantly higher rates of infection (20%) than the general public (2.4%) or in the area of the County (SPA 6) experiencing the highest rates of STDs (4.5%).

Data is less clear for HIV since occupation is not reported in HIV/AIDS reports. Since 2004, AIM has reported 25 cases of HIV. However, it is difficult to confirm the number of actual performers infected with HIV/AIDS as not all those tested are current performers and may have other roles in the AFI, or are partners of an AFI performer, or may otherwise be referred to AIM for testing. AIM claims that a minority of the 25 cases are performers, but even if this is accurate, it is reasonable to assume that some of the remaining 25 infected individuals were tested because they wished to work in the AFI in Los Angeles or were partners of AFI performers.

### DPH Activities in Addressing the STD and HIV in the AFI

In addition to its role in surveillance, DPH has taken several actions to address these public health issues in the AFI including:

- Worked with Cal/OSHA to develop a model Exposure Control Plan applicable to this industry based on existing standards, in Title 8, California Code of Regulations, specifically including the Injury and Illness Prevention Program standard (Section 3203), and the Bloodborne Pathogens standard (Section 5193).

- Following development of the model Exposure Control Plan, initiated discussion with the State Labor and Workforce Development Agency to develop educational outreach plans and materials for both producers and performers.

- In May 2004, secured technical assistance from the National Institute of Occupational Safety and Health (NIOSH), to investigate workplace hazards in this industry, and issue recommendations.

Each Supervisor
September 17, 2009
Page 3

- In June 2004, testified before a California Assembly Committee in support of legislation to regulate the AFI to (1) require condom use for all high risk sexual encounters; (2) have screening requirements for STDs set by the state with screening costs paid by the industry, and offer vaccinations for appropriate preventable conditions; (3) mandate education and training of all adult film industry performers; and (4) assure monitoring to ensure compliance by state and local health departments paid for by the industry.

- Conducted periodic dialogue with producers and performers in both straight and gay male roles of the industry, as well as with other relevant agencies, including the California Department of Health Services, STD Control Program and the State Office of AIDS to better understand health and safety issues in this industry, and develop appropriate screening recommendations and interventions. During these meetings, DPH has consistently asserted that it is the responsibility of the industry to require male performers to wear condoms to minimize risk of preventable serious illness.

- Requested Cal/OSHA conduct investigations of recent incidents of presumed workplace infection with STDs and HIV. Between April 2004 and June 2009 nine requests were made to Cal/OSHA for investigations of presumed workplace STD infections. Although two of these cases are pending, the completed investigations resulted in ten violations.

- Initiated investigations, as needed, seeking to determine the extent of potential exposure and actual disease transmission.

- DPH offered additional HIV and STD testing services to performers, provided counseling and medical referrals for those performers who were infected with HIV, and offered partner contact and referral services to their private sex partners.

It has been the consistent position of the Department that screening alone is insufficient to prevent STDs and HIV/AIDS. Screening can only detect infection and while it is vital for containing new or existing infections, there are other preventive measures that should be employed in the AFI such as condom use and hepatitis B vaccination.

**Additional Local Regulatory Measures to Address STD and HIV in the AFI**

DPH has explored whether expanded local regulation of the AFI can be used to reduce exposure to STD and HIV. Our consultations with County Counsel have yielded the following approaches that could be used.

Health Officer Order: County Counsel has determined that existing health officer authority may be used to set health protection requirements on adult film production companies to protect performer health. In order to utilize health officer authority, a detailed written order would need to be served on all necessary parties outlining the nexus between the behavior and spread of disease within the industry.

Each Supervisor
September 17, 2009
Page 4

DPH would then need to develop a mechanism to monitor compliance with the order, and enforcement of the order would require proof of service of the order on parties and evidence of an alleged violation. Violation of the order could be prosecuted by the District Attorney as a misdemeanor. A County health officer order would not apply to Long Beach and Pasadena, as they are separate public health jurisdictions.

County Code: County Counsel has also indicated that County Code could be amended to set requirements on the AFI. This approach could be similar to the County Code requirements on Commercial Sex Venues and require AFI production firms to secure a public health permit to operate.

The public health permit would be conditioned upon the entity's adherence to preventive measure requirements.

Similar to the health officer order approach, DPH would then need to develop a mechanism to monitor compliance with the order. Compliance time frames and penalties would need to be specified in the Code. This approach would be applicable in the unincorporated areas of the County and in those cities which adopt the County ordinance, and would not apply to Long Beach and Pasadena.

**Challenges with Local Regulatory Approaches**

Both the health officer order and the County Code amendment have inherent implementation challenges that would severely limit either approach in controlling STDs and HIV in the AFI. Under a health officer order approach the noticing requirements would be administratively challenging and resource intensive. There are an estimated 200 production companies in Los Angeles County, employing approximately 1,200 workers who engage in direct work-related sexual contact. Filming locations are difficult to ascertain, usually taking place at private homes or, to a lesser degree, in small film studios. Producers planning a film recruit performers independently or may use a talent agency to identify performers for their films. Performers are usually hired as independent contractors (not employees) for a specific film. Although there are regulations that require permits for filming, productions in homes or short term rental commercial space is often completed without permit. In addition, the fixed assets for filming in the AFI are limited and it is easy to change locations or move production to another county. Due to these factors, it is likely that there would be a high degree of non-compliance with a regulatory County Code approach.

Further, with either approach DPH would need to devote significant staff resources to identify sites of the production companies and to monitor compliance with performer protection requirements. This would likely also entail the viewing of commercial AFI video productions to ascertain compliance, assuming we could identify who produced each film, when it was produced and where it was shot. The staff resources that would be needed for this have not been determined, but would require significant new funding to accomplish.

In addition to these practical challenges, County Counsel indicates that an expanded local regulation of the AFI, would likely face constitutional challenge on freedom of speech grounds. The outcome of such a legal challenge could not be predicted with certainty.

Each Supervisor
September 17, 2009
Page 5

**Conclusion and Next Steps**

DPH has taken an active role in addressing STDs and HIV in the AFI including disease investigation, surveillance, and outreach and education efforts to reduce the risk of infection.  At present, DPH monitors AFI-related STDs and HIV cases, takes action to investigate cases of disease, and makes referral to Cal/OSHA, which has subpoena power and can impose penalties, for further investigation and action with respect to workplace safety violations.

A health officer order or a new requirement in County Code will be difficult to implement and resource intensive, possibly subject to legal challenge, and, overall, unlikely to be an effective approach to prevent AFI performers from acquiring preventable STDs including those that are life-altering.

The best scenario would entail expanded statutory requirements on the AFI.  The County has supported these efforts in the past, but none of the legislative proposals have been successful.  DPH recommends the Board sponsor or support measures to strengthen penalties and enforce condom use related to the AFI in the upcoming legislative session.

If you have any questions or need additional information, please let me know.

JEF:lm

c:      Chief Executive Officer
        Acting County Counsel
        Executive Officer, Board of Supervisors

Exhibit B

**MEASURE B**

## TEXT OF THE PROPOSED MEASURE
## COUNTY OF LOS ANGELES SAFER SEX IN THE
## ADULT FILM INDUSTRY ACT

The people of the County of Los Angeles ordain as follows:

## SECTION 1. TITLE

This ordinance shall be known and may be cited as the County of Los Angeles Safer Sex in the Adult Film Industry Act.

## SECTION 2. FINDINGS AND DECLARATION

The people of the County of Los Angeles hereby find and declare all of the following:

(a) The HIV/AIDS crisis, and the ongoing epidemic of sexually transmitted infections as a result of the making of adult films, has caused a negative impact on public health and the quality of life of citizens living in Los Angeles.

(b) Safer sex practices are a prime method of preventing and reducing the spread of HIV I AIDS and other sexually transmitted infections.

(c) The California Supreme Court has determined that the production of sexually explicit adult films is legal in the State of California.

(d) The Los Angeles County Department of Public Health has documented widespread transmission of sexually transmitted infections associated with the activities of the adult film industry within Los Angeles County.

(e) The Los Angeles County Department of Public Health has stated that the use of condoms is the best and most effective way to stem the spread of sexually transmitted infections within the adult film industry.

(f) Multiple organizations committed to protecting the public health have called for use of condoms in the production of adult films, including the American Medical Association, the American Public Health Association, the California Conference of Local AIDS Directors, the California STD Controllers Association, the National Coalition of STD Directors, the National Association of City and County Health Officials, AIDS Healthcare Foundation and the California Medical Association.

(g) Producers of adult films are required by California Code of Regulations Title 8, Section 5193 to use barrier protection, including condoms, to protect employees during the production of adult films.

(h) The Los Angeles County Department of Public Health has found that many producers of adult films in Los Angeles consistently violate the worker safety provisions of California Code of Regulations Title 8, section 5193.

## SECTION 3. PURPOSE AND INTENT

The people of the County of Los Angeles hereby declare their purpose and intent in enacting this ordinance is to minimize the spread of sexually transmitted infections resulting from the production of adult films in the County of Los Angeles, which have caused a negative impact on public health and the quality of life of citizens living in Los Angeles. This Act will require the producers of adult films to obtain a permit from the Los Angeles County Department of Public Health to ensure that producers comply with preexisting law requiring, among other things, that performers are protected from sexually transmitted infections by condoms. The Act further authorizes the Los Angeles County Department of Public Health to take appropriate measures to

## TEXT OF THE PROPOSED MEASURE
## COUNTY OF LOS ANGELES SAFER SEX IN THE
## ADULT FILM INDUSTRY ACT

**MEASURE B**

### SECTION 3. PURPOSE AND INTENT (Cont.)

enforce the Act, and conditions any film permit issued by the County for the production of an adult film on the use of condoms and other safety precautions.

### SECTION 4.

Chapter 11.39 is hereby added to Division 1 of Title 11 of the Los Angeles County Code to read:

*CHAPTER 11.39*

*ADULT FILMS*

*ADULT FILMS,· SHORT TITLE AND PUBLIC POLICY*

*Part 1 DEFINITIONS*

| | |
|---|---|
| 11.39.005 | *Definitions* |
| | *Unless the provision or the context otherwise requires, the definitions in this part shall govern the construction of this chapter.* |
| 11.39.010 | *Adult film* |
| | *An "adult film" is defined as any film, video, multimedia or other representation of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another performer,· and/or any other sexual activity that may result in the transmission of blood and/or any potentially infectious materials.* |
| 11.39.020 | *County.* |
| | *"County" means the County of Los Angeles.* |
| 11.39.030 | *Department.* |
| | *"Department" means the Los Angeles County Department of Public Health.* |
| 11.39.040 | *Departmental regulations.* |
| | *"Departmental regulations" means the regulations pertaining to filming of adult films promulgated by the department as currently written or as may from time to time be amended. When adopted by the department, these regulations are incorporated in and become part of this chapter.* |



**TEXT OF THE PROPOSED MEASURE
COUNTY OF LOS ANGELES SAFER SEX IN THE
ADULT FILM INDUSTRY ACT**

## SECTION 4. (Cont.)

11.39.050      *Exposure control plan.*

     *"Exposure control plan" means a written plan that meets all requirements of Title 8 California Code of Regulations sections 3203 and 5193, to minimize employees' risk of exposure to blood or potentially infectious material.*

11.39.060      *Filmed or filming.*

     *"Filmed" and "filming" means the recording or real-time broadcast of any adult film, regardless of the medium used.*

11.39.070      *Potentially infectious material.*

     *"Potentially infectious material" shall have the same meaning as defined in Title 8 California Code of Regulations Section 519 3 (b), or any successor regulation.*

11.39.075      *Producer of adult film*

     *"Producer of adult film" means any person or entity that produces, finances, or directs, adult films for commercial purposes.*

11.39.076      *Permittee*

     *"Permittee " means any person or entity issued an adult film production public health permit pursuant to this chapter.*

***Part 2 GENERAL REQUIREMENTS***

11.39.080      *Adult film production public health permit.*

     *A.*      *Producers of adult films shall obtain a public health permit by filing a completed application form with the department and paying the required fee. The fee shall be set by the Department in an amount sufficient to provide for the cost of any necessary enforcement.*

         *1.*      *During the twelve (12) months immediately following the effective date of this chapter, adult film production public health permits may be issued on a conditional basis. An individual issued a conditional permit shall have up to six months from the date of application to provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department. If permittee is a business entity rather than an individual, permittee shall have up to six months from the date of application to provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department for all principals and management-level employees of permittee, including, but not limited to, all film directors. Failure to provide such proof within the prescribed time shall cause the conditional adult film production public health permit to be revoked immediately.*

**TEXT OF THE PROPOSED MEASURE**
**COUNTY OF LOS ANGELES SAFER SEX IN THE**
**ADULT FILM INDUSTRY ACT**

(MEASURE B)

## SECTION 4. (Cont.)

2. *At all times after the twelve (12) months following the effective date of this chapter, each applicant who is an individual must also provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department. Each applicant who is a business entity rather than an individual must provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department for all principals and management-level employees of permittee, including but not limited to all film directors.*

B. *Upon successful completion of the permit application process described in subsection A of this section, the partment shall issue an adult film production public health permit to the applicant. The adult film production public health permit will be valid for two years from the date of issuance, unless revoked.*

C. *No producer of adult films may engage in the making of adult films in Los Angeles County for commercial purposes unless that producer of adult films has a valid adult film production public health permit issued by the department.*

D. *An adult film production public health permit is nontransferable.*

11.39.090 *Posting requirements.*

A. *The adult film production public health permit issued to the producer of adult films must be displayed at all times at the location where any adult film is filmed in an area that is visible to performers.*

B. *A legible sign shall be displayed at all times at the location where any adult film is filmed in any conventional typeface with a font size not smaller than 36 points, that provides the following notice so as to be clearly visible to performers in said films:*

> *The use of condoms is required for all acts of anal or vaginal sex during the production of adult films to protect performers from sexually tramsmitted infections.*

> *Any public health concerns regarding any activities occurring during the production of any adult films should be directed to the Los Angeles County Department of Public Health:*

_____

_____

*(the program office address and telephone number to be provided by the county health officer).*

11.39.100 *Permit --Reporting requirements.*

*Every person that possesses a valid adult film production public health permit or registration shall report to the department any changes in status to the business made reportable by departmental regulations within fifteen (1 5) days of the change.*

**MEASURE B**

**TEXT OF THE PROPOSED MEASURE**
**COUNTY OF LOS ANGELES SAFER SEX IN THE**
**ADULT FILM INDUSTRY ACT**

## SECTION 4. (Cont.)

11.39.100     *Permit --Reporting requirements.*

*Every person that possesses a valid adult film production public health permit or registration shall report to the department any changes in status to the business made reportable by departmental regulations within fifteen (15) days of the change.*

11.39.110     *Permit--Suspension and revocation and fines.*

A.     *Any permit issued pursuant to this chapter may be suspended or revoked by the department and fines consistent with the provisions of this chapter may be imposed by the department for a violation of this chapter or any other violation of law creating a risk of exposing performers to sexually transmitted infections, including any violation of applicable provisions of the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 519 3 or the exposure control plan of the producer of adult films, or any combination of such violations. The failure of a producer of adult films to require performers to use condoms during any acts of vaginal or anal sexual intercourse is a violation of this chapter.*

B.     *Whenever the department determines that a permittee has failed to comply with the requirements of this chapter, any other violation of law creating a risk of exposing performers to sexually transmitted infections, including any violation of applicable provisions of the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the producer of adult films, or any combination thereof a written notice to comply shall be issued to the permittee. The notice to comply shall include a statement of the deficiencies found, set forth the corrective measures necessary for the permittee to be in compliance with this chapter, and inform the permittee that failure to comply may result in the imposition of a fine or other penalty, including suspension and/or revocation of any and all permits. The notice to comply shall also advise the permittee of his or her right to an administrative review.*

C.     *A written request for an administrative review must be made by the noticed permittee within fifteen (15) calendar days of the issuance of the notice to comply. The failure to request an administrative review within the prescribed time shall be deemed a waiver of the right to an administrative review. The administrative review shall be held within fifteen (15) calendar days of the receipt of a written request for a review. Upon the written request of permittee or on its own motion, the department may advance or postpone the scheduled administrative review date, if permittee demonstrates good cause.*

D.     *The department shall issue a written notice of decision specifying any penalties imposed on permittee to the permittee within five (5) days of the administrative review or waiver, excluding weekends and holidays. For permits that have been suspended or revoked, the notice of decision shall specify the acts or omissions found to be in violation of this chapter, and, in the case of a suspended permit, shall state the extent of the suspension. The notice of decision shall also state the terms upon which the permit may be reinstated or reissued, if any.*

## TEXT OF THE PROPOSED MEASURE
## COUNTY OF LOS ANGELES SAFER SEX IN THE
## ADULT FILM INDUSTRY ACT

**MEASURE B**

### SECTION 4. (Cont.)

E.  Notwithstanding any other provision of this chapter, if any immediate danger to the public health or safety is found or is reasonably suspected, the department may immediately suspend the adult film production public health permit, initiate a criminal complaint and/or impose any fine permitted by this chapter, pending a determination of an administrative review, as provided herein. Immediate danger to the public health and/or safety shall include any condition, based upon inspection findings or other evidence, that can cause, or is reasonably suspected of causing, infection or disease transmission, or any known or reasonably suspected hazardous condition.

    1.  Whenever an adult film production public health permit issued is immediately suspended or a fine is imposed pursuant to this subdivision E of this section, the department shall issue to the permittee so suspended or fined, a written notice to comply setting forth the acts or omissions with which the permittee is charged, specifying the sections of the Los Angeles County Code, California Health and Safety Code, blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the producer of adult films, or the combination of alleged violations, and informing the permittee of the right to an administrative review.

    2.  At any time within fifteen (15) calendar days of service of such notice to comply, the permittee may request, in writing, an administrative review by the department to show cause why the imposed suspension or fine is unwarranted. The administrative review shall be held within fifteen (15) calendar days of the receipt of a request. A failure to request an administrative review within fifteen (15) calendar days shall be deemed a waiver of the right to such review.

    3.  At any time prior to an administrative review or waiver thereof the recipient of a notice to comply issued pursuant to this subsection F, may correct the deficiencies noted in the notice to comply and request a reinspection at any time when the producer of adult films is actually filming an adult film.

    4.  In the case of a request for reinspection as set forth in subsection E.3 above, the department shall reinspect as soon as practical. In the event the deficiencies noted in the notice to comply are corrected to the satisfaction of the health officer, the department has discretion to reinstate or modify any suspension of a permit and cancel or modify any fine imposed pursuant to this subsection F. If the department determines that the deficiencies identified in the notice to comply have been corrected, but the department elects not to reinstate the suspension or cancel the fine imposed pursuant to this subsection F, the department shall notify the permittee of this decision in writing. The permittee shall have fifteen (15) calendar days from receipt of said notification to seek an administrative review of this decision.

F.  The department may, after an administrative review or waiver thereof, modify, suspend, revoke or continue all such action previously imposed upon a permittee pursuant to this chapter or impose any fine imposed by law for violations of this chapter or any other laws or standards affecting public health and safety, including but not limited to the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the permittee, or any combination thereof, or for interference with a county health officer's performance of duty.

# TEXT OF THE PROPOSED MEASURE
## COUNTY OF LOS ANGELES SAFER SEX IN THE ADULT FILM INDUSTRY ACT

MEASURE B

## SECTION 4. (Cont.)

G.   *A permit issued pursuant to this chapter may be reissued or reinstated, if the department determines that the conditions which prompted the suspension or revocation no longer exist and any fine imposed pursuant to this chapter has been satisfied*

H.   *In the event a permit is suspended or revoked, the producer of adult films whose permit was revoked shall cease filming any adult film unless and until the permit is reinstated or reissued.*

**Part 3 COMPLIANCE AND ENFORCEMENT**

11.39.120   *Compliance with the provisions in this chapter shall be mandatory:*

A.   *The provisions of this chapter are in full force and effect in the county.*

B.   *Any producer of adult films filming any adult films within the county, including any person or entity owning or operating any business regulated by this chapter, must comply with the provisions of this chapter.*

C.   *In addition to any other penalty provided for under this chapter, consistent with the process set forth hereinafter notice and administrative review, the department may impose a fine on persons violating any provision of this chapter or any law, regulation or standard incorporated into this chapter. The department may impose a civil fine upon such violators in an amount not to exceed $500.00 per violation, as appropriate. The imposition of such fines shall, in no way, limit the authority or ability to impose other requirements of this chapter or seek other remedies against alleged violators.*

D.   *Any person or entity who produces or films adult films for commercial purposes within the county without a valid adult film production public health permit, or any person, who violates any law, ordinance or regulation governing any activity regulated by this chapter, or who, upon demand of the county health officer, refuses or neglects to conform to a lawful order or directive of a county health officer pertaining to conduct regulated by this chapter, is guilty of a misdemeanor, punishable by fine of $1,000.00, imprisonment in the county jail for a period not to exceed six months, or both. Each such act is punishable as a separate offense.*

11.39.130   *Health officer--Enforcement.*

*The county health officer may enter and inspect any location suspected of conducting any activity regulated by this chapter, and, for purposes of enforcing this chapter, the county health officer may issue notices and impose fines therein and take possession of any sample, photograph, record or other evidence, including any documents bearing upon adult film producer's compliance with the provision of the chapter. Such inspections may be conducted as often as necessary to ensure compliance with the provisions of this chapter.*

11.39.140   *Noncompliance with county health officer--Injunctive relief*

*Any act or failure to act which is a violation of this chapter may be the subject of a civil action to enjoin the person or entity so acting or failing to act to conform his or her conduct to the provisions of this chapter. A civil action to enforce the provisions of this section may be brought by the county counsel, the district attorney or any person directly affected by said failure to comply with the provisions of this chapter. The filing*

## TEXT OF THE PROPOSED MEASURE
## COUNTY OF LOS ANGELES SAFER SEX IN THE ADULT FILM INDUSTRY ACT

### SECTION 4. (Cont.)

*and prosecution of such an action shall, in no way, limit the authority or ability to impose other requirements of this chapter or remedies or penalties as permitted by law.*

**Part 4 OPERATIONS**

11.39.150     *Exposure control plan and reporting.*

*Every producer of adult films shall provide a written exposure control plan, approved by the department, describing how the requirements of this chapter will be implemented The exposure control plan shall meet requirements established in departmental regulations.*

### SECTION 5.

Chapter 22.56.1925 of the Division 1 of Title 22 of the Los Angeles County Code is amended as follows:

22.56.1925     Movie on-location filming.

A.     Notwithstanding the other provisions of this Part 14, applications for movie on-location filming permits shall be filed with the filming permit coordination office which shall approve such application for a time period not to exceed the time period specified in this Title 22 where it finds that the findings set forth in Section 22.56.1860 and subsection A 1 of Section 22.56.1880 have been met by the applicant. In addition, in lieu of subsection A2 of Section 22.56.1880, the filming permit office shall also find that such approval will not result in a frequency of usage likely to create incompatibility between such temporary use and the surrounding area. Where an application is denied due to frequency of usage, the filming permit office shall specify the minimum time period between approvals which, in its opinion, is necessary to prevent such incompatibility.

B.     In interpreting the other provisions of this Part 14 in relation to movie onlocation filming, the filming permit office shall be substituted for the director, and the provisions of Sections 22.56.1840 and 22.56.1870 shall not apply.

C.     *Any person or entity issued a permit for the filming of an adult film, as defined in section 11.39.010 ofthis Code, under this chapter or any other law authorizing the issuance of permits for commercial filming are required to maintain engineering and work practice controls sufficient to protect employees from exposure to blood and/or any other potentially infectious materials controls, in a manner consistent with California Code of Regulations, Title 8, Section 519 3. Any such permit shall contain the following language: "Permittee must abide by all applicable workplace health and safety regulations, including California Code of Regulations Title 8, Section 5193, which mandates barrier protection, including condoms, to shield performers from contact with blood or other potentially infectious m:aterial during the production of films. " The county shall charge, or shall direct any other person or entity contracting with the county to administer the film permitting process, to charge, entertainment industry customers seeking permits for the production of adult films a fee sufficient to allow periodic inspections to ensure compliance with the conditions set forth in Section 11.39.010.*

**MEASURE B**

## TEXT OF THE PROPOSED MEASURE
## COUNTY OF LOS ANGELES SAFER SEX IN THE ADULT FILM INDUSTRY ACT

### SECTION 6. COMPETING MEASURES

In the event that this measure and another measure or measures relating to the permit process for adult films shall appear on the same ballot, the provisions of the other measures shall be deemed to be in conflict with this measure. In the event that this measure shall receive a greater number of affirmative votes, the provisions of this measure shall prevail in their entirety, and the provisions of the other relating to the permit process for adult films shall be null and void.

### SECTION 7. AMENDMENT AND REPEAL

This chapter may be amended to further its purposes by an ordinance passed by a majority vote of the Board of Supervisors. This chapter may not be repealed, except by an ordinance proposed either by petition or by the Board of Supervisors at its own instance and adopted by a vote of the electors, or by an amendment of the charter superseding the ordinance.

### SECTION 8. SEVERABILITY

If any provision of this Act, or part thereof, is for any reason held to be invalid or unconstitutional, the remaining provisions shall not be affected, but shall remain in full force and effect, and to this end the provisions of the Act are severable.

Exhibit C

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

## *Part 14 - TEMPORARY USE PERMITS*
**Sections:**

22.56.1830 - Purpose.

22.56.1835 - List of Temporary Uses.

22.56.1840 - Application—Filing.

22.56.1850 - Application—Contents.

22.56.1860 - Burden of Proof.

22.56.1870 - Fees required.

22.56.1880 - Director's findings and determination.

22.56.1885 - Procedure for extended time periods.

22.56.1890 - Conditions of issuance.

22.56.1900 - Parking facilities—Conditions.

22.56.1910 - Notice service procedure.

22.56.1920 - Certain Uses on County Property—Board Authority.

22.56.1925 - Movie on-location filming.

## 22.56.1830 - Purpose.

The temporary use permit is established to recognize that certain temporary activities may be appropriate at specific locations but would be inappropriate on a permanent basis. The intent in establishing the temporary use permit procedure is to provide a mechanism to regulate specified short-term land use activities to avoid or mitigate adverse effects or incompatibility between such short-term land uses activities and the surrounding area where these temporary activities are proposed.

(Ord. 99-0071 § 7, 1999: Ord. 1494 Ch. 5 Art. 14 § 514.1, 1927.)

## 22.56.1835 - List of Temporary Uses.

The following temporary uses may be established with a valid temporary use permit:

Carnivals, exhibitions, fairs, short-term farmers' markets not otherwise governed by Part 25 of Chapter 22.52, festivals, pageants, and religious observances sponsored by a public agency or a religious, fraternal, educational, or service organization directly engaged in civic, charitable, or public service endeavors conducted for no more than six weekends or seven days during any 12-month period except where a longer time period is approved pursuant to Section 22.56.1885. "Weekend" means Saturday and Sunday, but national

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

holidays observed on a Friday or Monday may be included. This provision shall not include outdoor festivals and tent revival meetings.

—

Movie on-location filming for a period of time to be determined by the Director.

—

Outside display or sales of goods, equipment, merchandise or exhibits, in a commercial zone, conducted not more than once during any 30-day period nor more than four times during any 12-month period with each time not exceeding one weekend or three consecutive calendar days, provided that all goods, equipment and merchandise are the same as those sold or held for sale within the business on the lot or parcel of land where the outside display and sales are proposed. This provision shall not permit the outside storage of goods, equipment, merchandise or exhibits except as otherwise may be provided by this Title 22.

(Ord. 2013-0001 § 65, 2013; Ord. 99-0071 § 8, 1999: Ord. 88-0022 § 1, 1988: Ord. 83-0069 § 1, 1983; Ord. 83-0007 § 6, 1983.)

## 22.56.1840 - Application—Filing.

Any person desiring a temporary use permit as provided for in this Title 22 may file an application with the director, except that no application shall be filed or accepted if final action has been taken within six months prior thereto by either the director or the hearing officer to deny an application for the same or substantially the same permit.

(Ord. 1494 Ch. 5 Art. 14 § 514.2, 1927.)

## 22.56.1850 - Application—Contents.

A.   An application for a temporary use permit shall include the following information and documents:

1. The name and address of the applicant and the operator of the temporary use, if different, and of any persons designated by the applicant as his agents for service of process;

2. The name and address of all persons owning a possessory interest in any or all of the property to be used for the temporary use;

3. Evidence that the applicant of a temporary use permit:

   a.   Is the owner of the lot or parcel of land involved, or

   b.   Has written permission of the owner or owners to make such application;

4. The location of the subject property (address of vicinity);

5. The legal description of the property involved;

6. The legal name of the organization that is conducting or sponsoring such temporary use and such other material as may be necessary to determine eligibility to file;

7. The precise nature of the temporary use requested;

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

8.  A site plan of the proposed temporary use drawn to a scale satisfactory to, and in the number of copies prescribed by the director, indicating:

   a.  The area and dimensions of the proposed temporary use site,

   b.  The location, area and hours of operation for each activity associated with the temporary use permit,

   c.  The locations and dimensions of all existing and proposed temporary buildings and structures including roads, streets, highways, parking and loading facilities, and signs, on the site where the temporary use is requested,

   d.  The location of all existing roads intended to provide access to major or secondary highways and parkways,

   e.  The location and method of computation of the total sign area for all temporary signage proposed,

   f.  Where necessary to process an application, the location of alternative parking;

9.  The operating practices proposed to be used by the operator to mitigate noise, dust, air, contaminants, garbage, and vibration associated with and as a result of the proposed temporary use;

10.  Evidence that other permits and approvals required in compliance with the provisions of other applicable ordinances have been applied for or secured;

11.  Such other information as the director may require.

B.  An application for a temporary use permit filed pursuant to Section 22.56.1885 shall include, in addition to the information required by subsection A above, the following material:

   1.  A map showing all property ownership within a 500-foot radius from the boundaries of the parcel of land proposed to be used;

   2.  Two sets of mailing labels for all ownerships shown on the map required above and for all occupants, as necessary to comply with Section 22.56.1885 A1b;

   3.  A map showing all land uses within a 500-foot radius from the boundaries of the parcel of land proposed to be used.

C.  The director may waive the filing of one or more of the above items where unnecessary to process the application of a temporary use permit.

   (Ord. 99-0071 § 9, 1999; Ord. 90-0134 § 10, 1990; Ord. 83-0069 § 2, 1983; Ord. 1494 Ch. 5 Art. 15 § 514.3, 1927.)

## 22.56.1860 - Burden of Proof.

In addition to the information required in the application by Section 22.56.1850, the applicant of a temporary use permit shall substantiate to the satisfaction of the Director the following facts:

A.  That the operation of the requested use at the location proposed and within the time period specified will not jeopardize, endanger or otherwise constitute a menace to the public health, safety or general welfare; and

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

B.   That the proposed site is adequate in size and shape to accommodate such temporary use without material detriment to the use, enjoyment or valuation of the property of other persons located in the vicinity of the site; and

C.   That the proposed site is adequately served by bicycle facilities and/or streets or highways having sufficient width and improvements to accommodate the kind and quantity of vehicle and bicycle traffic that such temporary use will or could reasonably generate; and

D.   That, with respect to an application for outside display or sales, all goods, equipment and merchandise shall be the same as those sold or held for sale within the business on the lot or parcel of land where the outside display and sales are proposed.

(Ord. 2013-0001 § 66, 2013; Ord. 99-0071 § 10, 1999: Ord. 1494 Ch. 5 Art. 14 § 514.4, 1927.)

## 22.56.1870 - Fees required.

When a temporary use permit application is filed, it shall be accompanied by the filing fee as required in Section 22.60.100

(Ord. 1494 Ch. 5 Art. 14 § 514.5, 1927.)

## 22.56.1880 - Director's findings and determination.

A.   The director shall not approve an application for a temporary use permit unless he finds that the burden of proof set forth in Section 22.56.1860 has been met by the applicant. In addition, the director shall also find:

1.   That adequate temporary parking to accommodate vehicular traffic to be generated by such use will be available either on-site or at alternate locations acceptable to the director in any case where such temporary use is proposed for a period longer than one weekend or three consecutive days;

2.   That approval of a temporary use permit will not result in the use of a lot or parcel of land for a cumulative time period in excess of the maximum time period such temporary use may be authorized during any 12-month period, except where a longer period is specifically approved in accordance with the provisions of Section 22.56.1885

3.   That, with respect to an application for the outside display or sales of goods, equipment, merchandise or exhibits, not more than 20 percent of the area designated for parking required by Part 11 of Chapter 22.52 for the established business shall be used in connection with the outside display or sales.

B.   The director shall deny an application for a temporary use permit where the information submitted by the applicant and/or obtained by investigation of the staff fails to substantiate such findings.

(Ord. 99-0071 § 11, 1999: Ord. 83-0069 § 3, 1983; Ord. 1494 Ch. 5 Art. 14 § 514.6, 1927.)

## 22.56.1885 - Procedure for extended time periods.

Where an application for a temporary use permit for an extended time period is filed, these procedures shall be followed:

A.   Notification.

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

1. The director shall cause a notice indicating the applicant's request at the location specified to be forwarded to:

   a. The applicant by registered or certified mail, postage prepaid, return receipt requested;

   b. All persons whose names and addresses appear on the latest available assessment roll of the county of Los Angeles as owning property within a distance of 500 feet from the exterior boundaries of the parcel of land on which the permit is filed, by first class mail, postage prepaid. A notice shall also be sent in a similar manner to "occupant" at the site address in those cases where the mailing address of any owner of property required to be notified under the provisions of this subsection differs from the site address of such property; and

   c. Such other persons whose property might, in his judgment, be affected by such application or permit, by first class mail, postage prepaid.

2. Such notice shall also indicate that any individual opposed to the granting of such permit may file a written protest with the director within 15 days after receipt of such notice by the applicant.

B. Action.

   1. The director shall, without public hearing, approve an application for a temporary use permit for an extended time period when:

      a. The applicant has met the burden of proof set forth in Section 22.56.1860 and the director can make the findings required by Section 22.56.1880; and

      b. A written protest to the proposed temporary use permit has been received within 15 days after receipt of the notice by the applicant, and the director determines that the concerns raised in such protest are not of general community interest and can be adequately mitigated through the imposition of conditions.

   2. The director shall deny the application without public hearing where the information submitted by the applicant fails to substantiate the burden of proof and the required findings.

   3. In all cases where a written protest has been received and the director determines that the concerns raised are of general community interest, the applicant shall be notified in writing. Such notification will also inform the applicant that within 30 days after receipt of such notice he may request a public hearing before the director by filing any additional information that the director may require and by paying an additional fee, the amount of which shall be stated in the notice. At the expiration of the 30-day period:

      a. The director shall deny an application where the applicant has not requested a public hearing; or

      b. A public hearing shall be scheduled before the director. All procedures relative to notification, publication and conducting the public hearing shall be the same as for a conditional use permit. Following a public hearing the director shall approve or deny the proposed application, based on the findings required by this Part 14.

   4. The director shall send a notice of the action to the applicant, any person requesting notification, and anyone who has filed a written protest. Such notice shall:

      a. Indicate that an appeal may be filed with the commission pursuant to this section; and

      b. Be sent in accordance with the provisions of subsection A1 of this section.

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

5.    The decision of the director shall become final and effective as set forth in Part 5 of Chapter 22.60 unless an appeal is timely filed.

C.    Appeal. Any person dissatisfied with the action of the director, may file an appeal with the commission within the time period set forth in, and subject to all the other provisions of Part 5 of Chapter 22.60, except that the decision of the commission shall be final and shall not be subject to further administrative appeal.

D.    Date of Grant. Where an appeal is filed on a temporary use permit for an extended time period, and the permit is ultimately granted, the date of decision by the commission on such appeal shall be deemed the date of grant in determining said expiration date.

E.    Notwithstanding the above provisions, a temporary use permit for the outside display or sales of goods, equipment, merchandise or exhibits in commercial zones shall not be authorized for an extended time period.

(Ord. 2008-0026 § 18, 2008; Ord. 99-0071 § 12, 1999; Ord. 90-0134 § 11, 1990; Ord. 85-0009 § 17, 1985; Ord. 83-0069 § 4, 1983.)

## 22.56.1890 - Conditions of issuance.

A.    In approving an application for a temporary use permit, the director may impose such conditions as he deems necessary to insure that the permit will be in accord with the findings required by Sections 22.56.1860 and 22.56.1880. These conditions may involve any pertinent factors affecting the operation of such temporary event or use including but not limited to:

1.    Requirement of temporary parking facilities including vehicular access and egress;

2.    Regulation of nuisance factors such as but not limited to prevention of glare or direct illumination of adjacent properties, noise, vibrations, smoke, dust, dirt, odors, gases, garbage and heat;

3.    Regulation of temporary buildings, structures and facilities including placement, height and size, limitations on commercial rides or other equipment permitted, the location of open spaces including buffer areas and other yards, and signs;

4.    Regulation of operating hours and days including limitation of the duration of such temporary use to a shorter or longer time period than the maximum period authorized;

5.    Requirement of a performance bond or other surety device to assure that any temporary facilities or structures used for such proposed temporary use will be removed from the site within one week following such event and the property restored to a neat condition. The director may designate a different time period and/or require clean up of additional surrounding property at his discretion;

6.    Requirement of a site plan indicating all details and data as prescribed in this Title 22

7.    Requirement that the approval of the requested temporary use permit is contingent upon compliance with applicable provisions of other ordinances;

8.    Such other conditions as will make possible the operation of the proposed temporary use in an orderly and efficient manner and in accord with the intent and purpose of this title.

B.    In addition to such other conditions as the director may impose, it shall also be deemed a condition of every temporary use permit, whether such condition is set forth in the temporary use permit or not,

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

that such approval shall not authorize the construction, establishment, alteration, moving onto or enlargement of any permanent building, structure or facility.

C.  Notwithstanding provisions in this Title 22 to the contrary, the director in approving a temporary use permit for the outside display or sales of goods, equipment, merchandise or exhibits may permit a temporary banner limited in time for the duration granted in the permit at any location on the subject property deemed appropriate, but in no event shall the director authorize a banner that exceeds 40 square feet of total sign area.

(Ord. 99-0071 § 13, 1999; Ord. 83-0069 § 5, 1983; Ord. 1494 Ch. 5 Art. 14 § 514.7, 1927.)

## 22.56.1900 - Parking facilities—Conditions.

A.  In the granting of a temporary use permit, the director may authorize temporary use of parking and related facilities established to serve permanent uses as follows; provided, that such temporary usage is specifically recognized in the permit:

1.  Joint usage of required automobile parking facilities established to serve a permanent use, provided the owner or occupant of the permanent use or his authorized legal representative submits written consent, and it is determined by the director that such joint utilization will not have a substantially detrimental effect on the surrounding area;

2.  Temporary occupation by a temporary use of a portion of parking facilities or structures established to serve a permanent use provided the owner or occupant of such use or his authorized legal representative submits written consent, and it is determined that such joint utilization will not have a substantially detrimental effect on the surrounding area.

B.  The temporary reduction in required parking for such permanent use shall not be construed to require a variance with respect to parking requirements of this Title 22

(Ord. 1494 Ch. 5 Art. 14 § 514.8, 1927.)

## 22.56.1910 - Notice service procedure.

For applications other than those processed in accordance with Section 22.56.1885, the director shall serve notice of his action upon the applicant as required by law for the service of summons, or by registered or certified mail, postage prepaid, return receipt requested. Such notification may also be hand-delivered to the applicant, when appropriate, at the director's discretion.

(Ord. 83-0069 § 6, 1983: Ord. 1494 Ch. 5 Art. 14 § 514.9, 1927.)

## 22.56.1920 - Certain Uses on County Property—Board Authority.

Where the following temporary uses are proposed on property owned by or held under the control of the County, the department, district, or agency delegated authority to administer such activity by the Board of Supervisors may assume jurisdiction and approve the temporary use subject to limitations and conditions as are deemed appropriate by said department, district, or agency:

—

Carnivals, exhibitions, fairs, festivals, pageants, and religious observances.

Title 22 - PLANNING AND ZONING

Division 1 - PLANNING AND ZONING

Chapter 22.56 - CONDITIONAL USE PERMITS, VARIANCES, NONCONFORMING USES, TEMPORARY USES AND DIRECTOR'S REVIEW

Part 14 - TEMPORARY USE PERMITS

---

Farmers' markets.

---

Movie on-location filming.

(Ord. 2013-0001 § 67, 2013; Ord. 83-0007 § 7, 1983; Ord. 1494 Ch. 5 Art. 14 § 514.10, 1927.)

## 22.56.1925 - Movie on-location filming.

A.   Notwithstanding the other provisions of this Part 14, applications for movie on-location filming permits shall be filed with the filming permit coordination office which shall approve such application for a time period not to exceed the time period specified in this Title 22 where it finds that the findings set forth in Section 22.56.1860 and subsection Al of Section 22.56.1880 have been met by the applicant. In addition, in lieu of subsection A2 of Section 22.56.1880, the filming permit office shall also find that such approval will not result in a frequency of usage likely to create incompatibility between such temporary use and the surrounding area. Where an application is denied due to frequency of usage, the filming permit office shall specify the minimum time period between approvals which, in its opinion, is necessary to prevent such incompatibility.

B.   In interpreting the other provisions of this Part 14 in relation to movie on-location filming, the filming permit office shall be substituted for the director, and the provisions of Sections 22.56.1840 and 22.56.1870 shall not apply.

C.   Any person or entity issued a permit for the filming of an adult film, as defined in section 11.39.010 of this Code, under this chapter or any other law authorizing the issuance of permits for commercial filming are required to maintain engineering and work practice controls sufficient to protect employees from exposure to blood and/or any other potentially infectious materials controls, in a manner consistent with California Code of Regulations, Title 8, Section 5193. Any such permit shall contain the following language: "Permittee must abide by all applicable workplace health and safety regulations, including California Code of Regulations Title 8, Section 5193, which mandates barrier protection, including condoms, to shield performers from contact with blood or other potentially infectious material during the production of films." The county shall charge, or shall direct any other person or entity contracting with the county to administer the film permitting process, to charge, entertainment industry customers seeking permits for the production of adult films a fee sufficient to allow periodic inspections to ensure compliance with the conditions set forth in Section 11.39.010

(Measure B, approved by voters in Nov. 6, 2012 General Election: Ord. 90-0093 § 10, 1990: Ord. 83-0007 § 8, 1983.)

Exhibit D

# Title 32 - FIRE CODE*

\* For statutory provisions on the adoption of codes by reference, see Gov. Code §§ 50022.1—50022.8 and 50022.10.

Prior ordinance history: Ords. 86-0004, 89-0120, 90-0110, 90-0111, 90-0168, 93-0044 and 95-0037.

SECTION 100 - —CALIFORNIA FIRE CODE AND INTERNATIONAL FIRE CODE ADOPTION BY REFERENCE:

108 - APPEALS

202 - GENERAL DEFINITIONS

SECTIONS 318—323. - Reserved.

SECTION 324 - PARADE FLOATS

SECTION 325 - CLEARANCE OF BRUSH AND VEGETATIVE GROWTH

325.3.7 - Publication of notice.

326 - ACTIVITIES IN HAZARDOUS FIRE AREAS

327 - ADMINISTRATIVE FINES.

SECTION 328 - LAND DEVELOPMENT AND ENVIRONMENTAL REVIEW FEES

- Sections 1114 through 1116 of Title 32 of the Los Angeles County Code are reserved.

1910 - STORAGE OF COMBUSTIBLE IDLE PALLETS

2306.2 - GENERAL FIRE PROTECTION AND LIFE SAFETY REQUIREMENTS

4605 - Requirements for outdoor operations.

4908 - FUEL MODIFICATION

## SECTION 100 - —CALIFORNIA FIRE CODE AND INTERNATIONAL FIRE CODE ADOPTION BY REFERENCE:

Except as hereinafter changed and modified, Chapters 1 through 49, and Appendix B, and C of the 2010 Edition of the California Fire Code, published by the California Building Standards Commission, with errata, and Chapters 1 through 7, Chapters 9 through 32, Chapters 34 through 45, Chapter 47 and Appendix J of the 2009 Edition of the International Fire Code, published by the International Code Council, for sections that were not adopted as part of the 2010 California Fire Code are hereby adopted by reference and incorporated into this Title 32 of the Los Angeles County Code as if set forth fully below, and shall be known as Chapters 1 through 49, Appendix B, Appendix C, and Appendix J of Title 32 of the Los Angeles County Code.

A copy of the 2010 Edition of the California Fire Code, with errata, and a copy of the 2009 International Fire Code shall be at all times maintained by the Executive Office of the Board of Supervisors for use and examination by the public.

Title 32 - FIRE CODE*

Unless expressly repealed or amended herein, the previously enacted provisions of Title 32 of the Los Angeles County Code shall remain in full force and effect.

(Ord. 2010-0060 § 3, 2010; Ord. 2007-0112 § 2, 2007.)

**101.1 - Title.**

Title 32 of the Los Angeles County Code shall be known as the LOS ANGELES COUNTY FIRE CODE, hereinafter referred to as "this code."

(Ord. 2010-0060 § 4, 2010; Ord. 2002-0080 § 4, 2002.)

**101.2 - Scope.**

This code establishes regulations affecting or relating to structures, processes, premises, and safeguards regarding:

. . .

6.   Fire hydrant systems, water supply, fire equipment access, posting of fire equipment access, parking, lot identification, weed abatement, and combustible brush and vegetation that represents an imminent fire hazard, debris abatement, combustible storage abatement including flammable liquid storage, hazardous material storage and use, open-flame and open-burning, and burglar bars at State-regulated mobile home and special occupancy parks within the jurisdiction of the County of Los Angeles Fire Department as per California Health and Safety code sections 18691 and 18873.5.

(Ord. 2010-0060 § 5, 2010.)

**101.2.1 - Appendices.**

Provisions in the appendices shall not apply unless specifically adopted. Only Appendix B and Appendix C from the California State Fire Code have been adopted into this code. This code also adopts Appendix J of the 2009 Edition of the International Fire Code, adds Appendix K, and amends existing Appendix L and Appendix M.

(Ord. 2010-0060 § 6, 2010.)

**101.3 - Intent.**

The purpose of this code is to establish the minimum requirements consistent with nationally recognized good practice for providing a reasonable level of life safety and property protection from the hazards of fire, explosion, or dangerous conditions in new and existing building, structures, and premises and to provide safety to fire fighters and emergency responders during emergency operations. Consistent with this purpose, the provisions of this code are intended, and have always been intended, to confer a benefit on the community as a whole and are not intended to establish a duty of care toward any particular person.

This code shall not be construed to hold the County, the consolidated fire protection district, or any officer, employee, or agent thereof responsible for any damage to persons or property by reason of any inspection authorized herein or by reason of the issuance or non-issuance of any permit authorized herein, and/or for any action or omission in connection with the application and/or enforcement of this code. By adopting the provisions of this code, the County, or any consolidated fire protection district, does not intend to impose on itself, its employees, or agents any mandatory duties of care toward persons and property within its jurisdiction so as to provide a basis of civil liability for damages.

This section is declaratory of existing law and is not to be construed as suggesting that such was not the purpose and intent of previous code adoptions.

(Ord. 2010-0060 § 7, 2010.)

Title 32 - FIRE CODE*

### 105.6.34.1 - Private fire fighting resources.

An operational permit is required for any private firefighting resource to conduct firefighting operations, provide fire protection operations, or to apply fire resistive treatment to structures or vegetation in an emergency area.

(Ord. 2010-0060 § 22, 2010.)

. . .

### 105.6.36 - Pyrotechnic special effect material.

An operational permit is required for use and handling of pyrotechnic special effects material. For pyrotechnic and special effects used for motion picture, television, and commercial productions. See Section 105.6.47.2

(Ord. 2010-0060 § 22, 2010.)

. . .

### 105.6.37.1 - Recreational fire.

An operational permit is required for an outdoor fire burning materials other than rubbish, where the fuel is not contained as described in Chapter 3.

(Ord. 2010-0060 § 22, 2010.)

. . .

### 105.6.39.1 - Rifle range.

An operational permit is required to establish, maintain, or operate a rifle range.

(Ord. 2010-0060 § 22, 2010.)

. . .

### 105.6.43.1 - Temporary sales lots.

An operational permit is required prior to operating a Christmas tree or pumpkin sales lot.

(Ord. 2010-0060 § 22, 2010.)

. . .

### 105.6.47 - Additional permits.

In addition to the permits required by Section 105.6, the following permits shall be obtained from the fire prevention division prior to engaging in the following activities, operations, practices, or functions:

1.  Production facilities. To change use or occupancy, or allow the attendance of a live audience, or for wrap parties.

2.  Motion picture, television, commercial, and related production filming—Pyrotechnical and special effects. To use pyrotechnic special effects, open flame, hotwork, use of flammable or combustible liquids and gases, dust, welding, and the parking of motor vehicles in any building or location used for the purpose of motion picture, television, and commercial production. The applicant is required to pay the permit fee amount shown in Section 4803.4(3) prior to permit issuance.

3.  Live audiences. To install seating arrangements for live audiences in approved production facilities, production studios, and sound stages. See Chapter 48

Title 32 - FIRE CODE*

(Ord. 2010-0060 § 22, 2010.)

**105.6.47.1 - Motion picture, television, commercial, and related production filming.**

An operational permit is required to conduct motion picture, television, commercials, and related productions outside of an approved production facility. The applicant is required to pay the permit fee amount shown in Section 4803.4(1) prior to permit issuance.

(Ord. 2010-0060 § 22, 2010.)

**105.6.47.2 - Motion picture, television, commercial, and related production filming—Fuel-dispensing trucks and vehicles.**

An annual operational permit is required to dispense flammable or combustible liquids, liquefied petroleum gases, or compressed natural gas from trucks or vehicles to equipment and vehicles on motion picture, television, and commercial production locations. The applicant is required to pay the annual permit fee amount shown in Section 4803.4(2) prior to permit issuance.

(Ord. 2010-0060 § 22, 2010.)

**105.6.47.3 - Commercial still photography production with on-site cast and crew numbering fifteen (15) or more persons.**

An operational permit is required to take still photographs for commercial purposes outside of an approved production facility and where the on-site cast and crew numbers fifteen (15) or more persons. The applicant is required to pay the permit fee amount shown in Section 4803.4(4) prior to permit issuance.

(Ord. 2010-0060 § 22, 2010.)

**105.7.7.1 - Fuel modification plan review.**

When required by this code, by other laws, or by other regulating agencies, fire code official review is required prior to the installation of fire resistive landscaping.

(Ord. 2010-0060 § 23, 2010.)

**105.7.9.1 - Land development plan review.**

When required by law or other agencies, fire code official review and approval is required prior to final approval of the following applications: tract maps, parcel maps, final maps, planned unit developments, conditional use permits, design overlay reviews, environmental impact reviews, road vacations, zone changes, water plan reviews, and gate design review for land development projects.

(Ord. 2010-0060 § 24, 2010.)

**105.7.11.1 - Roof top obstructions.**

A construction permit is required for installation of a roof solar photovoltaic system, roof garden, or a landscaped roof when constructed on the roof of a building where the improvement covers more than 50 percent or 10,000 square feet of the total roof surface area of that building, whichever is less.

Exceptions:

1. Buildings that are four or more stories in height and protected with an approved automatic fire extinguishing system throughout.

2. Non-habitable structures as determined by the fire code official, including, but not limited to, shade structures, private carports, and solar trellises.

Title 32 - FIRE CODE*

(Ord. 2010-0060 § 25, 2010.)

**107.7 - Occupant count.**

When required by the fire code official, the permittee holding a place of assembly operational permit shall use an approved method to maintain an accurate count of the number of occupants present in a place of an assembly room including any accessory areas. If at any time the fire code official determines that an accurate count of occupants is not being maintained by the permittee, the assembly room and accessory areas shall be cleared of occupants until an accurate occupant count can be made.

(Ord. 2010-0060 § 26, 2010.)

## 108 - APPEALS

**108.1 - Appeals process.**

When an applicant seeking an approval from the fire code official disagrees with the decision of the fire code official regarding the conditions, methods of construction, equipment, or operations regulated by this code, the applicant may file a written appeal to the assistant fire chief of the fire prevention division (fire marshal) pursuant to Section 108.2 of this code. A written appeal must be submitted no later than thirty (30) days after the applicant has notice of the decision being appealed. The fire marshal, after considering all the facts presented, request in writing that the decision be reviewed by a fire code appeals review panel, a three-person panel consisting of the following individuals: the deputy chief of prevention, the deputy chief of operations, and the County's superintendant of building. The fire code appeals review panel shall transmit its written decision on the appeal to the applicant. The fire code appeals review panel shall be the final authority in the appeals process.

(Ord. 2010-0060 § 27, 2010.)

**108.2 - Limitations on authority.**

An applicant's appeal shall be based on a claim that the intent of this code or the regulations adopted hereunder have been incorrectly interpreted, that the provisions of this code do not apply, or that an equivalent method of protection or safety was proposed by the applicant and was denied by the fire code official. The appeals process shall not be used to waive requirements of this code.

For an appeal regarding fuel modification plan requirements, an applicant must use the appeals process as per Section 4908.2.

(Ord. 2010-0060 § 28, 2010.)

**108.3 - Qualifications.**

The fire code appeals review panel shall consist of the deputy chief of prevention, the deputy chief of operations, and the County's superintendant of building.

(Ord. 2010-0060 § 29, 2010.)

**109.3 - Violation penalties.**

Persons who shall violate a provision of this code or shall fail to comply with any of the requirements thereof, or who shall erect, install, alter, repair, or do work in violation of the approved construction documents or directive of the fire code official, or of a permit or certificate used under provisions of this code, shall be guilty of a misdemeanor unless such violation is declared to be an infraction by Chapter 51

of this code, punishable by a fine of not more than $1000 or by imprisonment not exceeding six months, or both such fine and imprisonment. Each day that a violation continues after due notice has been served shall be deemed a separate offense. For the purposes of this section, a forfeiture of bail shall be equivalent to a conviction.

(Ord. 2010-0060 § 30, 2010.)

### 109.3.1 - Abatement of violation.

In addition to the imposition of penalties herein described, the fire code official is authorized to institute appropriate action to prevent unlawful construction or to restrain, correct or abate a violation; or to prevent illegal occupancy of a structure or premises; or to stop an illegal act, conduct of business or occupancy of a structure on or about any premises.

The owner of any parcel upon which a nuisance is found to exist may, as provided for by state, County, and local law, be liable for all costs of abatement of the nuisance.

(Ord. 2010-0060 § 31, 2010.)

### 109.4 - Responsibility for fire suppression and related costs.

Any person: (1) who negligently, or in violation of the law, sets a fire, allows a fire to be set, or allows a fire kindled or attended by him to escape onto any public or private property, (2) other than a mortgagee, who, being in actual possession of a structure, fails or refuses to correct, within the time allotted for correction, despite having the right to do so, a fire hazard prohibited by law, for which a public agency properly has issued a notice of violation respecting the hazard, or (3) including a mortgagee, who, having an obligation under other provisions of law to correct a fire hazard prohibited by law, for which a public agency has properly issued a notice of violation respecting the hazard, fails or refuses to correct the hazard within the time allotted for correction, despite having the right to do so, is liable for the fire suppression costs incurred in fighting the fire, for the cost of providing rescue or emergency medical services, for the cost of investigating and making any reports with respect to the fire, and for the costs relating to accounting for that fire and the collection of any funds pursuant to state or local law, including, but not limited to administrative costs of operating a fire suppression cost recovery program to the fullest extent authorized by law. All of these costs shall be a charge against that person, shall constitute a debt of that person, and is collectible by the person, or by the federal, state, County, public, or private agency, incurring those costs in the same manner as in the case of an obligation under a contract, expressed or implied.

(Ord. 2010-0060 § 32, 2010.)

### 109.4.1 - Responsibility for costs for emergency response related to hazardous substances.

All expenses of an emergency response necessary to protect the public from a real and imminent threat to health and safety by a public agency to confine, prevent, or mitigate the release, escape, or burning of hazardous substances are a charge against any person whose negligence causes the incident to the fullest extent authorized by law, if either of the following occurs:

(a)  Evacuation beyond the property where the incident originates is necessary to prevent loss of life or injury.

(b)  The incident results in the spread of hazardous substances or fire posing a real and imminent threat to public health and safety beyond the property of origin.

Expenses reimbursable to the County or Fire District pursuant to this section are a debt of the person liable therefore, and shall be collectible in the same manner as in the case of an obligation under contract, express or implied. The charge created against the person related to hazardous substances by this section is also a charge against the person's employer if the negligence causing the incident occurs in the course of the person's employment.

**TRAINED CROWD MANAGER.** Standby personnel, usually security or usher personnel, who are trained in the proper procedure to exit people from a tent or other place of public assemblage in an orderly and calm fashion in the event of an emergency.

(Ord. 2010-0060 § 37, 2010.)

### 301.2 - Permits.

Permits shall be required as set forth in Section 105.6 for the activities or uses regulated by Sections 306, 307, 308, 315, 324, 326, and 328

(Ord. 2010-0060 § 38, 2010.)

### 304.1.1.1 - Waste material near ground-mounted photovoltaic array.

Accumulation of waste material shall not be permitted underneath nor within 10 feet from a ground-mounted photovoltaic array.

(Ord. 2010-0060 § 39, 2010.)

### 304.1.2 - Vegetation.

Weeds, grass, vines, or other growth that is capable of being ignited and endangering property, shall be cut down and removed by the owner or occupant of the premises. Vegetation clearance requirements in urban-wildland interface areas shall be in accordance with Section 325 and Chapter 49 of this code.

. . .

(Ord. 2010-0060 § 40, 2010.)

### 304.2.1 - Removal.

Combustible rubbish stored in containers outside of noncombustible vaults or rooms shall be removed from buildings at least once each working day or at intervals specified by the fire code official. The storage or accumulation of combustible waste matter within any building in such a quantity or location as to constitute a fire hazard is prohibited.

(Ord. 2007-0112 § 9, 2007.)

### 306.3 - Fire Extinguishers.

Two approved fire extinguishers with an approved water or water solution extinguisher with a minimum 10-B:C rating shall be installed and maintained ready for use in projection rooms, in accordance with NFPA 40.

(Ord. 2007-0112 § 10, 2007.)

### 306.4 - Smoking.

Smoking and other sources of ignition shall be prohibited within projection rooms in which cellulose nitrate film is allowed. Conspicuous NO SMOKING signs shall be posted in the room.

(Ord. 2007-0112 § 11, 2007.)

### 306.5 - Projection Equipment.

Projection equipment or film which is in a hazardous condition shall not be used.

(Ord. 2007-0112 § 12, 2007.)

Where one of these forms of protection is provided, the separation shall not be less than 25 feet (7620 mm) between container groups. At LP-gas multi-container installations, the aggregate capacity of the containers shall be used to determine minimum distances to the buildings or adjoining property lines.

(Ord. 2010-0060 § 134, 2010.)

**3804.5 - Tank car and tank vehicle stations.**

Tank car and tank vehicle bulk loading and unloading stations shall be located not less than one hundred feet from buildings, source of ignition, or adjoining property lines that may be built upon.

(Ord. 2007-0112 § 137, 2007: Ord. 95-0063 § 129, 1995.)

**3804.6 - Container orientation.**

Unless special protection is provided and approved by the fire code official, LP-gas containers shall be oriented so that the longitudinal axes do not point toward other LP-gas containers, vital process equipment, control rooms, loading stations, or flammable liquid storage tanks.

(Ord. 2010-0060 § 135, 2010; Ord. 2007-0112 § 138, 2007: Ord. 95-0063 § 130, 1995.)

**3806.1 - Attendants.**

Dispensing of LP-gases shall be performed by a qualified attendant. Self-service LP-Gas dispensing open to the public is prohibited.

(Ord. 2010-0060 § 136, 2010.)

**4603.4 - Permit fees.**

Permit fees for permits required by Section 4603.2 and Appendix Chapter 1 Section 105.6 shall be collected for the issuance of the following permits:

1. Motion picture, television, commercials and related production filming. The permit fee shall be two hundred eighty-two dollars ($282).

2. Motion picture, television, commercials, and related production filming—Fuel-dispensing trucks and vehicles. The annual permit fee shall be two hundred twenty-three dollars ($223).

3. Motion picture, television, commercials, and related production filming—Pyrotechnics and special effects. The permit fee shall be two hundred eighty-eight dollars ($288).

4. Commercial still photography production outside of an approved production facility and where the on-site cast and crew numbers fifteen (15) or more persons. The permit fee shall be two hundred seventy-seven dollars ($277).

(Ord. 2010-0047 § 2, 2010.)

**4604.17.7 - Maintenance.**

Fire escapes shall be kept clear and unobstructed at all times and shall be maintained in good working order.

(Ord. 2010-0060 § 137, 2010.)

**4605 - Requirements for outdoor operations.**

**4605.1 - Tire storage yards.**

Existing tire storage yards shall be provided with fire apparatus access roads in accordance with Sections 4605.1.1 and 4605.1.2

(Ord. 2010-0060 § 138, 2010.)

**4605.1.1 - Access to piles.**

Access roadways shall be within 150 feet (45 720 mm) of any point in the storage yard where storage piles are located, at least 20 feet (6096 mm) from any storage pile.

(Ord. 2010-0060 § 138, 2010.)

**4605.1.2 - Location within piles.**

Fire apparatus access roads shall be located within all pile clearances identified in Section 2505.4 and within all fire breaks required in Section 2505.5.

(Ord. 2010-0060 § 138, 2010.)

**4801.3 - Definitions.**

. . .

**COMMERCIAL STILL PHOTOGRAPHY PRODUCTION** includes all activity attendant to the staging or shooting of commercial still photography production to create single or multiple photographs for sale or use for a commercial purpose.

. . .

(Ord. 2010-0060 § 141, 2010.)

**4803.2 - Additional permits.**

A permit shall be required for:

1.  Use of pyrotechnic special effects
2.  Open flames
3.  Flammable or combustible liquids, gases, and dust
4.  Hot work
5.  Presence of motor vehicles within a building
6.  Any additional permits, including motion picture, commercial, and television productions, as required by the fire code official as determined in Section 105.6 of this code.

(Ord. 2010-0060 § 142, 2010.)

**4803.4 - Permit fees.**

Permit fees for permits required by Section 4803.2 and Section 105.6 shall be collected for the issuance of the following permits:

1.  Motion picture, television, commercial, and related productions filming. The permit fee shall be two hundred eighty-two dollars ($282.00).

Title 32 - FIRE CODE*

2.  Motion picture, television, commercial, and related production filming - Fuel-dispensing trucks and vehicles. The annual permit fee shall be two hundred twenty three dollars ($223.00) .

3.  Motion picture, television, commercials, and related production filming - Pyrotechnics and special effects. The permit fee shall be two hundred eighty-eight dollars ($288).

4.  Commercial still photography production outside of an approved production facility and where the on-site cast and crew numbers fifteen (15) or more persons. The permit fee shall be two hundred seventy seven dollars ($277).

    (Ord. 2010-0060 § 143, 2010.)

## 4807.1.1 - Fire safety officers/advisors.

When in the opinion of the fire code official, it is necessary for the preservation of life or property, due to the hazardous nature of an event, production, operation, or function, the fire official shall require the owner or lessee to employ or cause the employment of one or more approved fire safety officers or advisors to be on duty at such place during the hazardous activity.

    (Ord. 2010-0060 § 139, 2010; Ord. 2007-0112 § 143, 2007.)

## 4811.9 - Fire department access.

Required emergency vehicle access shall be maintained as per Section 503. Any deviations are subject to approval by the fire code official.

    (Ord. 2010-0060 § 140, 2010.)

## 4902.1 - General.

For the purpose of this chapter, certain terms are defined as follows:

    . . .

**FIRE PROTECTION PLAN** is a document prepared for a specific project or development proposed for a Wildland-Urban Interface Fire Area. It describes ways to minimize and mitigate potential for loss from wildfire exposure.

The Fire Protection Plan shall be in accordance with this Chapter. When required by the fire code official for the purposes of granting modifications, a fire protection plan shall be submitted.

    . . .

**FUEL MODIFICATION PLAN.** A fuel modification plan shall consist of a set of scaled plans that includes a plot plan showing fuel modification zones indicated with applicable assessment notes, a detailed landscape plan, and an irrigation plan. A fuel modification plan submitted for approval shall be prepared by a state licensed landscape architect, state licensed landscape contractor, a landscape designer, or an individual with expertise acceptable to the forestry division of the fire department.

    . . .

**FIRE HAZARD SEVERITY ZONES** are geographical areas designated pursuant to California Public Resources Codes sections 4201 through 4204 and classified as Very High, High, or Moderate in State Responsibility Areas or as Local Agency Very High Fire Hazard Severity Zones designated pursuant to California Government Code sections 51175 through 51189. See Appendix M for the designations within the County of Los Angeles.

The California Code of Regulations, Title 14, Section 1280 entitles the maps of these geographical areas as "Maps of the Fire Hazard Severity Zones in the State Responsibility Area of California.

**WILDLAND-URBAN INTERFACE FIRE AREA** is a geographical area identified by the state as a "Fire Hazard Severity Zone" in accordance with the Public Resources Code sections 4201 through 4204

Exhibit E

## CHAPTER 48

II

# MOTION PICTURE AND TELEVISION PRODUCTION STUDIO SOUND STAGES, APPROVED PRODUCTION FACILITIES AND PRODUCTION LOCATIONS

### SECTION 4801
### GENERAL

**4801.1 Scope.** *Production studios, sound stages, approved production facilities, and production locations used by the entertainment industry for the purpose of motion picture, television and commercial production shall be in accordance with the provisions of this article.*

**4801.2 Purpose.** *The purpose of this article is to establish minimum requirements that will provide a reasonable degree of safety from fire, panic and explosion. Buildings and structures defined herein shall be in accordance with this article.*

**4801.3 Definitions.**

**APPROVED FIRE WATCH** *are individuals provided with at least one approved means for notification of the fire department and their only duty shall be to perform constant patrols of the protected premises and keep watch for fires.*

**APPROVED PRODUCTION FACILITY** *is an existing building, or portion of a building, or a group of buildings altered for use by the entertainment industry for the purpose of motion picture, television and commercial production.*

**PLATFORM** *is part of a set, which is a floor or horizontal surface raised above stage floor level.*

**PRODUCTION LOCATION** *is any area or facility outside a production studio, approved production facility or sound stage used by the entertainment industry for the purpose of motion picture, television and commercial production.*

**PRODUCTION STUDIO** *is a building, portion of a building, or a group of buildings designed and constructed for use by the entertainment industry for the purpose of motion picture, television and commercial production.*

**SET** *is a structure built or assembled for the purpose of motion picture, television and commercial production.*

**SOUND STAGE** *is a building or portion of a building usually insulated from outside noise and natural light for use by the entertainment industry for the purpose of motion picture, television and commercial production.*

### SECTION 4802
### OCCUPANCY CLASSIFICATION

**4802.1 Live audience stages.** *Production facilities, sound stages and approved production studios with live audience stages shall be classified as Group A-1 occupancies in accordance with the California Building Code.*

**4802.2 All other stages.** *Production studios, sound stages and approved production facilities without live audience stages*

*shall be classified as Group F-1 occupancies in accordance with the California Building Code.*

*Note: Sections 4803 through 4810 apply only to studio sound stages and approved production facilities.*

### SECTION 4803
### REQUIRED PERMITS

**4803.1 Change in use.** *A permit from the fire code official shall be obtained any time a change in use or occupancy is intended by the owner (e.g., for live audience shows, wrap parties).*

**4803.2 Additional permits.** *A permit shall be required for:*

1. *Use of pyrotechnic special effects*
2. *Open flames*
3. *Flammable or combustible liquids, gases and dust*
4. *Hot work*
5. *Presence of motor vehicles within a building*
6. *Any additional permits as required by the fire code official*

**4803.3 Live audiences.** *A permit shall be required for seating arrangements of all live audience stages.*

### SECTION 4804
### GENERAL REQUIREMENTS

**4804.1 Housekeeping.** *Provisions of this part shall maintain proper housekeeping in accordance with Chapter 3.*

**4804.2 Aisles.** *Perimeter aisles within the sound stage and approved production facility shall be provided. Aisles required by this section shall have a minimum width of 4 feet (1219 mm). See Chapter 10 for maintenance requirements. Aisles required by this section shall have a minimum clear unobstructed height of 7 feet (2134 mm).*

**4804.3 Travel distance.** *The maximum travel distance to any exit within the sound stage and approved production facility shall be 150 feet (45 720 mm).*

**4804.4 Exit doors.** *Exit doors shall be equipped with panic hardware and swing in the direction of exit travel.*

**4804.5 Exit signs.** *Illuminated exit signs shall be installed in accordance with the California Building Code.*

**4804.6 Exit illumination.** *Exit illumination shall be provided in accordance with the California Building Code. In the event of power failure, exit path illumination shall be automatically provided by an approved emergency backup system.*

**4804.7 Exit obstructions.** All means of egress shall be maintained in accordance with the provisions of Chapter 10, Section 1005.1.

**4804.8 Foam plastics.** All foam plastics shall meet the requirements of Chapter 8, Sections 807.4.2.4 and 807.4.5.

**4804.9 Decorative materials.** Drapes, drops, cut greens, etc., shall meet the flame-retardant requirements of California Code of Regulations, Title 19, Division 1, Chapter 5, and Chapter 8, Sections 807.4.2.4 and 807.4.5.

## SECTION 4805
### FIRE-EXTINGUISHING SYSTEMS

**4805.1 Existing sound stages and approved production facilities.** All existing sound stages and approved production facilities equipped with an automatic fire sprinkler system shall be maintained in accordance with the provisions in Chapter 9.

**4805.2 New sound stages.** All new sound stages shall be equipped with an approved automatic fire sprinkler system. The system shall be installed in accordance with the provisions of Chapter 9 and shall meet the minimum design requirements of an Extra Hazard, Group 2 system.

**4805.3 Solid-ceiling sets and platforms.** All interior solid-ceiling sets over 600 square feet (55.7 m²) in area, and platforms (when provided) over 600 square feet (55.7 m²) in area and which exceed 3 feet (914 mm) in height shall be protected by one of the following:

1. An approved and listed heat detector system. Heat detectors shall be spaced 30 feet (9144 mm) on center or as required by the manufacturer's installation instructions. Detectors shall be connected to an approved and listed central, proprietary or remote station service or a local alarm, which will give an audible signal at a constantly attended location. Such system shall be installed in accordance with Chapter 9.

2. The ceiling shall be positioned to allow for the operation of the building's automatic fire sprinkler system after rehearsal, videotaping, filming or broadcasting of programs has been completed for the day.

3. An approved fire watch.

4. Special hazards shall be reviewed by the fire code official (see additional fire protection systems, Section 901.4.3).

## SECTION 4806
### FIRE-DETECTION EQUIPMENT

**4806.1 Fire alarm control units.** Fire alarm control units shall be California State Fire Marshal listed and shall be utilized in accordance with their listing. Control units may be temporarily supported by sets, platforms or pedestals.

**4806.2 Heat detectors.** Heat detection required by this article shall be defined as a portable system as it is intended to be reinstalled when platforms or sets are changed.

Heat detectors may be secured to standard outlet boxes which may be temporarily supported by sets, platforms or pedestals.

Heat detectors shall be provided for solid-ceiling sets and platforms where required by Sections 4805.3 and 4811.14.

## SECTION 4807
### FIRE SAFETY OFFICERS

**4807.1** Where permits are required by the fire code, a requirement for standby fire safety officers shall be determined by the fire code official on a case-by-case basis. Standby fire safety officers shall not be required when the provisions of this article are met.

## SECTION 4808
### ELECTRICAL REQUIREMENTS

**4808.1 General.** All electrical equipment including lighting, cabling and temporary power, such as portable generators, shall be maintained in good working order and shall comply with the provisions of the California Electrical Code.

**4808.2 Lighting and power requirements.** A studio sound stage and approved production facility shall be provided with a minimum of 35 watts per square foot of permanently installed power dedicated for the distribution of production lighting and power. Mobile generators may be utilized for auxiliary power.

**4808.3 Distribution.** Distribution equipment shall be designed for sound stage use. The wiring to such equipment shall be considered permanent and shall comply with applicable provisions of the California Electrical Code. Temporary feeders shall not be tapped from panelboards and switchboards where deadfront covers have to be removed.

**4808.4 Installations.** Permanent or temporary electrical installations shall be installed in accordance with the California Electrical Code and this code. Such equipment shall not obstruct exits, means of egress or fire department access, unless approved by the fire code official.

**4808.5 Generators.** Portable, mobile or stationary power-generating equipment may be used to supplement building electrical power for temporary use. Equipment shall be located at a predesignated location as approved by the fire code official.

Temporary auxiliary power cables supplied from mobile generators or adjacent buildings may pass through exterior walls and interior fire-resistive assemblies provided an approved through-penetration firestop system is utilized for protection of the opening.

## SECTION 4809
### MECHANICAL EQUIPMENT

**4809.1 Existing equipment.** All mechanical equipment used as part of the building ventilation system shall be maintained in good working order and shall comply with the provisions of the California Mechanical Code.

**4809.2 Auxiliary equipment.** All auxiliary heating, ventilation and air-conditioning equipment shall be approved and listed for the intended use. Flexible duct, if utilized, shall be noncombustible. Such auxiliary equipment shall not obstruct exits, means of egress or fire department access.

## SECTION 4810
## DESIGN REQUIREMENTS

***4810.1*** *The fire code official shall be provided with certification that approved production facilities and studio sound stages will sustain the anticipated loads of sets, props or other temporary modifications.*

*Where the anticipated loads exceed the design criteria for an approved production facility and studio sound stage, the building or portions thereof shall be modified for the additional loads.*

## SECTION 4811
## PRODUCTION LOCATIONS

***4811.1 General.*** *This chapter shall apply to production locations.*

***4811.2 Permits.*** *A permit shall be obtained, unless waived by the fire code official for any of the activities that follow:*

1. *Use of pyrotechnic special effects, see Section 3308.1.1 and California Code of Regulations, Title 19, Division 1, Chapter 6*

2. *Open flames*

3. *Flammable or combustible liquids, gases and dust*

4. *Hot work*

5. *Presence of motor vehicles within a building*

6. *Tents and canopies, see Chapter 24*

7. *Any additional permits as required by the AHJ*

***4811.3 Pyrotechnic special effects and open flames.*** *The use of pyrotechnic special effects and open flames shall be subject to the approval of the fire code official.*

***4811.4 Standby fire personnel.*** *A requirement for standby fire safety officers shall be determined by the fire code official on a case-by-case basis.*

***4811.5 Foamed plastic materials.*** *All foam plastics shall meet the requirements of Chapter 8, Sections 807.4.2.4 and 807.4.5.*

***4811.6 Smoking.*** *When the fire code official determines that hazardous conditions necessitate controlled use of smoking materials, smoking may be prohibited or limited to designated smoking areas.*

***4811.7 Structural loads.*** *Sets, scenery and other equipment shall not impact the structural integrity of a building or structure. Consultation with a building official or structural engineer may be required.*

***4811.8 Electrical requirements.***

***4811.8.1 General.*** *All electrical equipment including lighting, cabling and temporary power, such as portable generators, shall be maintained in good working order and shall comply with the provisions of the California Electrical Code.*

***4811.8.2 Distribution.*** *Temporary feeders shall not be tapped from panelboards and switchboards where deadfront covers have to be removed.*

***4811.8.3 Installations.*** *Electrical installations shall be installed in accordance with the California Electrical Code.*

*Such equipment shall not obstruct exits, means of egress or fire department access, unless approved by the fire code official.*

***4811.8.4 Generators.*** *Portable, mobile or stationary power-generating equipment may be used to supplement building electrical power for temporary use. Equipment shall be placed in a location acceptable to the fire code official.*

***4811.9 Fire department access.*** *Required emergency vehicle access shall be maintained. Any deviations are subject to approval by the fire code official.*

***4811.10 Means of egress.*** *The production location shall be provided with means of egress appropriate for the intended use as approved by the fire code official.*

***4811.11 Fire protection systems and equipment.*** *Functional fire protection systems and equipment shall be maintained in an operable condition, unless approved by the fire code official. Disconnecting or altering of fire protection systems and/or equipment shall be prohibited, unless otherwise approved by the fire code official with alternate means of protection provided.*

***4811.12 Fire hydrants and fire appliances.*** *Hydrants, standpipes and Fire Department Connections (FDC) shall not be obstructed, blocked or rendered inoperable in accordance with Chapter 9, unless approved by the fire code official.*

***4811.13 Fire extinguishers.*** *Approved fire extinguishers shall be provided as required by the fire code official.*

***4811.14 Solid-ceiling sets and platforms.*** *In buildings with existing fire protection systems and where production intends to construct solid-ceiling sets over 600 square feet (55.7 m²) in area, and platforms over 600 square feet (55.7 m²) in area and which exceed 3 feet (914 mm) in height shall be protected by one of the following:*

1. *An approved and listed heat detector system. Heat detectors shall be spaced 30 feet (9144 mm) on center or as required by the manufacturer's installation instructions. Detectors shall be connected to an approved and listed central, proprietary or remote station service or a local alarm, which will give an audible signal at a constantly attended location. Such system shall be installed in accordance with Chapter 9.*

2. *The ceiling shall be positioned to allow for the operation of the building's automatic fire sprinkler system after rehearsal, videotaping, filming, or broadcasting of programs has been completed for the day.*

3. *An approved fire watch.*

4. *Special hazards shall be reviewed by the enforcing agency (see additional fire protection systems, Section 901.4.3.).*

***4811.15 Buildings without fire protection systems.*** *Special hazards shall be reviewed by the fire code official (see special hazards Section 901.4.3).*

# Exhibit F

### SEC. 12.22.1.   SAFER SEX.

**(Added by Ord. No. 181,989, Eff. 3/5/12.)**

(A)      **Short Title.** This ordinance shall be known as the City of Los Angeles Safer Sex In The Adult Film Industry Act.

(B)      **Use of Condoms In The Making of Adult Films.**

(1)      An "**adult film**" is defined as any film, video, multimedia or other representation of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including but not limited to penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another performer; and/or any other activity that may result in the transmission of blood and/or any other potentially infectious materials as defined in California Code of Regulations, Title 8, Section 5193(b).

(2)      "**Producer of adult film**" is defined as any person or entity directly engaged in the creation of adult films.

(3)      "**Filmed**" and "**filming**" refer to the recording of any adult film, regardless of media.

(4)      All producers of adult films issued permits under the authority of the City of Los Angeles or the Los Angeles Police Department pursuant to Section 12.22 A.13. of this Code or any other law authorizing the issuance of permits for commercial filming are required to maintain engineering and work practice controls sufficient to protect employees from exposure to blood and/or any other potentially infectious materials controls consistent with California Code of Regulations, Title 8, Section 5193.  Engineering and work practice controls include, but are not limited to:

(a)      Simulation of sex acts using acting, production and post-production techniques;

(b)      Ejaculation outside workers' bodies;

(c)      Provision of and required use of condoms whenever acts of vaginal or anal sex are performed during the production of an adult film; and

(d)      The provision of condom-safe water-based or silicone-based lubricants to facilitate the use of condoms.

(5)      Any film permit issued under the authority of the City of Los Angeles or the Los Angeles Police Department pursuant to Section 12.22 A.13. of this Code or any other law authorizing the issuance of permits for commercial filming for the production of an adult film must expressly condition said permit on compliance with subsection (4) of this section.  Any such permit shall contain the following language: "Permittee must abide by all applicable workplace health and safety regulations, including California Code of Regulations Title 8, Section 5193, which mandates barrier protection, including condoms, to shield performers from contact with blood or other potentially infectious material during the production of films."

(6)      The City shall charge, or shall direct any other person or entity contracting with the City to administer the film permitting process, to charge, entertainment industry customers seeking permits for the production of adult films a fee sufficient to allow periodic inspections to ensure compliance with the conditions set forth in Section 12.22.1 (B)(4).

**Disclaimer:**
This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further legal information or a certified copy of this Codified Ordinance, as well as more detailed information about the Municipality's website, please contact the Municipality directly or contact American Legal Publishing toll-free at 800.445.5588.

© 2013 American Legal Publishing Corporation
techsupport@amlegal.com
1.800.445.5588.

Exhibit G

STATE OF CALIFORNIA                                          EDMUND G. BROWN, JR., GOVERNOR

DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH
LEGAL UNIT - SOUTHERN CALIFORNIA
320 WEST 4TH STREET, SUITE 400
LOS ANGELES, CA 90013
TELEPHONE: (213) 576-7492 FAX (213) 576-7498



July 20, 2011


The Honorable City Council
City of Los Angeles
Room 395, City Hall
200 North spring Street
Los Angeles, CA 90012

Re:   Position of the California Division of Occupational Safety and Health Concerning
      Possible Conditions on the City's Film Permits Issued to Adult Film Producers

Honorable Members:

The City of Los Angeles is considering film permit conditions that would protect public
health and safety.  The City Attorney has rendered an opinion that the City does not have the
power to adopt such conditions because they are preempted by State occupational safety and
health standards.  Such an opinion, if accepted, would impact any similar proposals in the
State.  Because of its potential effects, the Division, as the agency entrusted with enforcing
those standards, submits this opinion concerning this issue.

This communication is restricted to the legal position of the California Division of
Occupational Safety and Health ("Cal/OSHA" or the "Division," herein) in connection with
the legal argument that State law pre-empts occupational health and safety conditions the
City might impose on its film permitted process.

## CONCLUSION

It is the Division's position that State law does not preempt such action by the City because
the City does not seek to enact an occupational health and safety standard but rather a public
health standard applicable to any film activity (regardless of employment relationship) within
the City boundaries.

The Honorable City Council
City of Los Angeles
July 20, 2011
Page 2 of 5

## ANALYSIS

I.  THE PROPOSED ACTION AND APPLICABLE STATE LAW
  A.     Proposed City Action

We begin with the nature of the proposed action.  The City Attorney has stated that the
Council asks whether and how the City can "enable the City's film permit process to require
workplace safety in the production of all adult films."[1]  From other reports, we believe that
the specific proposal is a requirement for the use of condoms to protect actors who engage in
high-risk acts of a sexual nature for such films.

Although the City Attorney's report does not specify the action that the Council might take,
we understand from City sources that the action would be to add a condition to the permit
allowing the filming.

This permit is, in essence, an exception to, or variance from, existing zoning ordinances that
prohibit filming in the City except on a sound stage.  In that respect, the potential City action
would be zoning in nature.  The permit also acts as permission to use City property.  In this
respect, the action would be a condition for the use of that property.

In either case, the permit process would be based on the act of filming.  Thus, it would affect
all non-soundstage film workplaces regardless of the employment status of the individuals
doing the work.[2]

The City's remedy for violating any of the conditions would be revocation of the permit.
Any filming done without a permit would be a crime.  There is no proposal of which we are
aware that would allow the City to take action either in place of, or in the same way as
Cal/OSHA regulations (Title 8 California Code of Regulations ("CCR")).  The proposed
action would not implicate the Cal/OSHA Appeals Process.

  B.     Applicable State Law

The Division has jurisdiction over "places of employment."  (Labor Code § 6307)  It has no
jurisdiction unless an employer-employee relationship exists.  Once this relationship exists,

---

[1] We rely on the description of the proposal and other material in the City attorney's Report re:
Mechanisms Necessary to Enable the City's Film Permit Process to Require Workplace Safety in the
Production of All Adult Films, Report No. R11-0120, dated March 22, 2011.

[2] It is our understanding that films produced using one of the sound stages in the City do not require
a permit.

The Honorable City Council
City of Los Angeles
July 20, 2011
Page 3 of 5

the Division has "supervision over every employment and place of employment in this state . . . ."

The Labor Code and Title 8 CCR also set forth the means by which the Division is to exercise its authority to assure employee safety. The system for asserting its authority is, generally, by issuing citations that include administrative penalties for violating one or more of the Title's workplace safety standards. (See Labor Code § 6317) These penalties are not criminal in nature, nor are they contractual. They are appealable to the California Occupational Safety and Health Appeals Board. (Labor Code § 6319)

The California Occupational Safety and Health Standards Board has adopted a general purpose regulation which applies to adult film production as well as other places of employment. Title 8 CCR § 5193 requires the use of condoms on adult film locations that are within the Division's jurisdiction.

      C.    Comparison of the Proposed Action and State Law

The proposed City action and state law operate differently and for different purposes. The state law operates in the context of administrative regulations adopted by the Standards Board and appealable to the Appeals Board. The proposed City action operates as a condition on the granting of a permit.

The state law and the proposed action also do not affect all of the same people. Actors or volunteers who are independent contractors would not be within the Division's jurisdiction, for instance. The purpose of the Standards Board's regulation is to protect health of employees in places of employment and the purpose of the City's permit process is to protect public health and safety regardless of employment relationship.

  II.  THE CITY'S GENERAL AUTHORITY TO ADDRESS PUBLIC SAFETY AND HEALTH
      A.    The Police Power

The City's police power authority to adopt film conditions is assumed for the purposes of this opinion. The Division notes that the film permitting process has been traditionally a matter of local concern for cities in the State. Chapter 3 of Part 5.7 of Division 3, title 2 of the California Government Code (beginning with § 14999.20) does not impose a uniform permitting process, but establishes a "model" film permitting process that is advisory to localities, not mandatory. Further, we note that the use of City property is uniquely a matter of City concern. (See e.g., *Loska vs. Superior Court* (1986) 188 Cal. App. 3rd 569). Cities regulate places of employment, including film sets, in any number of ways. For example, building permits are issued and fire codes are enforced regardless of employment status even though that enforcement may affect occupational safety and may overlap with Cal OSHA

The Honorable City Council
City of Los Angeles
July 20, 2011
Page 4 of 5

jurisdiction.

      B.      Express Limitations in the Applicable State Law

The question is whether regulations enforceable by the Division act to limit this basic power.

The Legislature has expressly answered in the negative.  In Labor Code § 6316, it said:

> "Except as limited by Chapter 6 (commencing with Section 140) of Division 1, nothing in this part shall deprive the governing body of any county, city, or public corporation, board, or department, of any power or jurisdiction over or relative to any place of employment."

And in Chapter 6 of Division 1 of the Labor Code the Legislature adopted Section 144.  That section describes ways in which localities can assist the Division in enforcing its occupational safety and health regulations (i.e., those regulations that are adopted under Title 8 CCR and expressly made the subject of Division enforcement).

In § 144(e), the Legislature made clear that when not enforcing those regulations, localities have a free hand.

> "(e) Nothing in this section shall affect or limit the authority of any state or local agency as to any matter other than the enforcement of occupational safety and health standards adopted by the board; however, nothing herein shall limit or reduce the authority of local agencies to adopt and enforce higher standards relating to occupational safety and health for their own employees."  (Emphasis added.)

It is clear that the only matter that the Legislature has put in the hands solely of the Division is the "enforcement of occupational safety and health standards adopted by the [Standards] [B]oard."

By clear implication, localities may adopt and enforce their own standards as long as that adoption is within the localities' police powers.  This is true even if the local standards could be construed as "occupational safety and health standards."

    III. THE CITY'S AUTHORITY TO TAKE THE PROPOSED ACTION

The conclusion is clear.  The Legislature allows local safety action, other than explicit enforcement of the Division's own regulations.   It has done so in express and unambiguous terms.

The Honorable City Council
City of Los Angeles
July 20, 2011
Page 5 of 5

The City is not preempted from taking the proposed action.

Very truly yours,

James D. Clark
Staff Counsel

Exhibit H

**≋CNBC.com**

# Condoms in Porn? Just Another Day at Wicked Pictures

BUSINESS NEWS
CNBC.com | Tuesday, 15 Jan 2013 | 12:45 PM ET

Now that voters in Los Angeles have passed a resolution mandating condoms be worn in any adult films shot in the county, porn companies are scrambling to fight the law.

Among their arguments is that the presence of prophylactics ruins the fantasy elements of their films – and that using them will cause further declines in already slumping DVD sales. But that reasoning conveniently ignores **Wicked Pictures**. Since the late 1990s, the studio has been using condoms in all of its films, yet it is still one of the biggest filmmakers in the porn industry.

"We've never waved our flag about it; it's just something we do," says president and owner Steve Orenstein.

You might think that having learned how to make condom-mandatory films that appeal to adult video consumers, Wicked would see a competitive advantage in the new law. However, the company was quick to join ranks with other studios to **lobby against the measure** last November.

Among the reasons? The protective measures could go far beyond condoms.

*(Read more:* **The Dirty Dozen -- Porn's Most Popular Stars 2013***)*

"Even if it would put us in a better position than everyone else, we don't believe this should be mandated or dictated by the government," says Orenstein. "And we don't really know what it means. It could mean dental dams. It could mean people wearing masks on the set. It could mean things that make it impossible to exist as a company in this industry."

And as for that advantage? Wicked shrugs that off, noting that the competition will simply shoot elsewhere to avoid the law if it's unable to have it overturned in L.A.

When Wicked chose to adopt a condom-mandatory practice, the industry was in the midst of an AIDS scare after a male performer tested positive for the disease. Roughly 15 companies vowed to use condoms, but as the scare cleared up, the number of studios standing by that promise began to drop.Within 18 months, just three were left – **VCA** (which was later bought out by Hustler), **Vivid**, and Wicked.

Eventually, Wicked was all that remained.

While Orenstein won't discuss sales specifics, he acknowledges the company is feeling the effects of the slowdown in the DVD market. And while there are no plans to change the company's condom-mandatory rule, he admits that the thought has crossed his mind from time to time.

"Sometimes I question why I am still doing it," he says. "At the time, it was a decision I made and I said 'For the health and safety of the talent, here's what we're going to do.' So it's hard for me to back off of that. … We're surviving in a bad economy and a declining DVD economy. Could it be better? It's possible. But it hasn't caused me to change my mind yet."

One of the ways Wicked has managed to stay healthy is by putting a focus on high quality productions – many of which are female-friendly. And Orenstein works with retailers on in-store positioning, encouraging them to place movies alongside lingerie and sex toys that blend well with the film's theme.

The company has also expanded into new lines of adult films, launching a sex education series headed by one of its contract stars Jessica Drake and an "entry level" series of adult films called

Condoms in Porn? Just Another Day at Wicked Pictures
Page 2 of 2

Case 2:13-cv-00190-DDP-AGR   Document 58-1   Filed 06/10/13   Page 52 of 55   Page ID
#:853

"Wicked Passions" for couples who are just beginning to explore porn as a supplement to their own love life.

In terms of non-film expansion, though, Wicked has been a slow-mover. While other companies, such as New Sensations, have diversified into the adult novelty market and other fields, Wicked's chief non-film product is a line of lubricants, massage oils and related products that only launched last year.

*(Read more:* **Porn's Most Powerful Players***)*

Part of the reason for that slow roll-out is Orenstein's conservative business nature. But he also says he's extremely careful with the Wicked brand name.

"I'm absolutely late to market," he admitted."I wish it was a year earlier, but I am extremely happy with the products we put to market. ... When you start something from scratch and you build a brand and it turns into something that means something to people, it's important. I've said for years I want to be successful... but if I don't feel comfortable doing things and because of that I don't make money someone else is making, I have to be able to sleep at night."

Perhaps as a result, the focus will remain on movies at Wicked for the foreseeable future.

"At the core, Wicked is a movie studio, so we are going to continue to be a movie studio as long as it makes sense financially," says Orenstein.

© 2013 CNBC.com

URL: http://www.cnbc.com/100359796

Exhibit I

Case 2:13-cv-00190-DSF-AGR   Document 58-1   Filed 06/10/13   Page 54 of 55   Page ID #:855

June 5, 2013 11:56 AM

# Porn Star Syphilis Case: Jesse Spencer, aka 'Mr. Marcus,' sentenced to jail for knowingly exposing co-stars to disease

By **Crimesider Staff**



Porn star Jesse Spencer, aka "Mr. Marcus"

/ Facebook

(CBS/AP) LOS ANGELES - Prosecutors say a veteran porn actor known as "Mr. Marcus" has been sentenced in Los Angeles to 30 days in jail for knowingly exposing at least two co-stars to syphilis, CBS Los Angeles reports.

PICTURES: Porn star jailed in syphilis case

The 42-year-old actor, whose real name is Jesse Spencer, was sentenced Tuesday after pleading no contest to one count of exposing another to a communicable disease.

Prosecutors said he must also serve 15 days of community service and three years of probation. Spencer has been in police custody since May 22 following a separate DUI arrest, the District Attorney's Office said, reports CBS Los Angeles.

On July 13, 2012, Spencer received a penicillin shot after testing positive for syphilis during a routine industry screening before he was to make a film. Following a second screening July 21, prosecutors said Spencer continued to test positive for syphilis and altered the original form by obscuring the result on a photocopy, reports the station. They say he then returned to work, participating in two adult movie shoots.

Two actresses who worked with Spencer filed police reports after a producer discovered the altered form, CBS Los Angeles reports.

"The potential spread of syphilis and other communicable diseases is a serious threat to our entire community," said City Attorney Carmen Trutanich, reports the station. "My office will continue to hold accountable those who place the health and welfare of others in danger in such a reckless and thoughtless manner."

None of the actresses contracted the disease after being exposed, the District Attorney's Office said, reports the station.

**14 Photos**

**Porn star jailed in syphilis case**

**View the Full Gallery »**

