PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | ) Case No. **CV 13-00190 DDP (AGRx)** <br> ) <br> ) **PLAINTIFFS VIVID ENTER-** <br> ) **TAINMENT, LLC'S, CALIFA** <br> ) **PRODUCTIONS, INC.'S,** <br> ) **JANE DOE A/K/A KAYDEN** <br> ) **KROSS'S, AND JOHN DOE** <br> ) **A/K/A LOGAN PIERCE'S REPLY** <br> ) **IN SUPPORT OF MOTION FOR** <br> ) **PRELIMINARY INJUNCTION** <br> ) <br> ) Date:        July 1, 2013 <br> ) Time:        10:00 a.m. <br> ) Crt. Rm.:    3 <br> ) <br> ) |

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................ 1

II.     INTERVENORS' FACTUAL PREMISES ARE INCORRECT .................. 2

III.    MEASURE B IS CONTENT BASED .......................................... 5

IV.     PLAINTIFFS SATISFY THE CRITERIA FOR A  PRELIMINARY
        INJUNCTION ........................................................................ 8

        A.      Measure B Violates the First Amendment and Cannot Survive
                Constitutional Scrutiny .............................................. 8

        B.      The Complaint's Individual Causes of Action are Likely to
                Succeed on the Merits .............................................. 12

                1.      First Amendment Activity Cannot be Restricted by
                        Referendum ................................................. 12

                2.      Measure B Imposes an Unconstitutional System of
                        Prior Restraint in Violation of the First Amendment ............. 13

                3.      Measure B is Unconstitutionally Vague ................................. 14

                4.      Measure B is Both Under-inclusive and
                        Over-inclusive ................................................. 15

                5.      Measure B Imposes an Unconstitutional System that
                        Deprives Plaintiffs of Due Process ........................................... 16

                6.      Measure B is Preempted by State Law ................................... 19

        C.      Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary
                Injunction .......................................................... 21

        D.      The Balance of Harms Weigh in Plaintiffs' Favor ............................ 23

V.      CONCLUSION ......................................................................... 25

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arizona Right to Life PAC v. Bayless*,
   320 F.3d 1002 (9th Cir. 2003) .......................................................... 21

*Berger v. City of Seattle*,
   569 F.3d 1029 (9th Cir. 2009) .............................................................5

*Brown v. Entertainment Merchs. Ass'n*,
   131 S. Ct. 2729 (2011) ........................................................... 4, 8, 9

*Buckley v. American Const. Law Found.*,
   525 U.S. 182 (1999) ...................................................................... 12

*California Prolife Council PAC v. Scully*,
   989 F.Supp. 1282 (E.D. Cal. 1998),
   *aff'd*, 164 F.3d 1189 (9th Cir. 1999)...................................................9

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011),
   *cert. denied*, 132 S. Ct. 1566 (2012)...................................... 11, 12, 22

*Cox v. New Hampshire*,
   312 U.S. 569 (1941)...................................................................... 13

*Daggett v. Webster*,
   1999 WL 33117158 (D. Me. May 18, 1999)........................................9

*Elrod v. Burns*,
   427 U.S. 347 (1976)...................................................................... 21

*FCC v. Fox Television Stations, Inc.*,
   132 S. Ct. 2307 (2012)................................................................... 14

*Fort Wayne Books, Inc. v. Indiana*,
   489 U.S. 46 (1989)........................................................................ 18

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998) .......................................................... 12

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)............................................................................8

*G.K. Ltd. Travel v. City of Lake Oswego*,
    436 F.3d 1064 (9th Cir. 2006) ..................................................5, 9, 10

*Katz v. United States*,
    389 U.S. 347 (1967).........................................................................18

*Marshall v. Barlow's, Inc.*,
    436 U.S. 307 (1978).........................................................................18

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)............................................................................2

*Murdock v. Pennsylvania*,
    319 U.S. 105 (1943).........................................................................13

*New York v. Burger*,
    482 U.S. 691 (1987).....................................................................18, 19

*Perry v. Brown*,
    671 F.3d 1052 (9th Cir. 2012),
    *cert. granted, Hollingsworth v. Perry*, 133 S. Ct. 786 (2012)............................9

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995)............................................................................4

*Sammartano v. First Judicial Dist. Court*,
    303 F.3d 959 (9th Cir. 2002) .............................................................24

*Schneider v. New Jersey*,
    308 U.S. 147 (1939)......................................................................12, 22

*Sorrell v. IMS Health, Inc.*,
    131 S. Ct. 2653 (2011)........................................................................7

*Thompson v. Western States Med. Ctr.*,
    535 U.S. 357 (2002).........................................................................11

*Tollis, Inc. v. County of San Diego*,
    505 F.3d 935 (9th Cir. 2007) .............................................................12

*Topanga Press, Inc. v. City of Los Angeles*,
    409 F.Supp.2d 1188 (C.D. Cal. 2005) ..................................................8

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Turner Broad. Sys. v. FCC,*
   512 U.S. 622 (1994)..................................................................................8

*United States v. Playboy Entm't Grp., Inc.,*
   529 U.S. 803 (2000)...................................................................... 4, 12, 22

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)......................................................................................2

*Yniguez v. Arizonans for Official English,*
   69 F.3d 920 (9th Cir. 1995),
   *vacated on other grounds,* 520 U.S. 43 (1997)......................................9

**State Cases**

*Big Creek Lumber Co. v. County of Santa Cruz,*
   38 Cal. 4th 1139 (2006) .................................................... 19, 20, 21

**Constitutional Provisions**

U.S. Const. amend. I ...................................................... *passim*

**State Statutes**

Cal. Code Regs. Tit. 8, § 5193(b) .......................................... 20

Cal. Lab. Code § 144.7................................................................ 20

Cal. Lab. Code § 1173.................................................................. 20

Cal. Lab. Code § 6400.................................................................. 20

Los Angeles County Code § 11.39.010 ................................. 2, 6

Los Angeles County Code § 11.39.080.A.1 ............................. 16

Los Angeles County Code § 11.39.080.A.2 ............................. 16

Los Angeles County Code § 11.39.080.C................................. 17

Los Angeles County Code § 11.39.110.A ............................. 6, 17

Los Angeles County Code § 11.39.110.A.2 ............................. 16

Los Angeles County Code § 11.39.110.B................................. 17

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Los Angeles County Code § 11.39.110.C ................................................... 17

Los Angeles County Code § 11.39.110.D ........................................... 17, 18

Los Angeles County Code § 11.39.110.E ................................................. 18

Los Angeles County Code § 22.56.1830, *et seq.* ...................................... 2

**Other Authorities**

Cindy Ramirez, *El Paso City Hall Demolition: From Hollywood to
    Historic, Firm Topples Towers Nationwide*, El Paso Times,
    Apr. 7, 2013, 2013 WLNR 8461526 ................................................ 3

*Holy Fireballs, Batman! The Hospital Exploded*, Chi. Trib., Aug. 30, 2007,
    2007 WLNR 17035465 ......................................................... 3

http://ph.lacounty.gov/aids/docs/LAC_FiveYear_
    ComprehensiveHIVPlan2013-2017.pdf ........................................ 10

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.   INTRODUCTION

The Opposition filed by Intervenors to Plaintiffs' Motion for Preliminary Injunction misunderstands one of the fundamental issues raised in the Motion, and which is at the center of this lawsuit:  that Measure B is a content-based permitting regime that impermissibly restricts Plaintiffs' First Amendment rights.  Instead of directly addressing this issue, Intervenors confuse matters by, among other things, trying to cast Measure B as similar to general regulations that apply across all industries and to permitting regimes that apply to use of the public forum or to filmmaking generally.  The Opposition itself confirms the stark differences between Measure B and the general regulations to which Intervenors compare it, including state Cal/OSHA requirements.  For example, Intervenors explain that the State rules constitute "a wide-ranging regulatory scheme regarding blood borne pathogen exposure and control, set out across all industries," while:

> Measure B, by contrast, is local regulation of filmmaking … that targets a specific act in a specific industry, and directs specific persons not necessarily covered by Section 5193, to take specific steps that are not necessarily required by Section 5193.

Opp. at 21:20-24.  This explains why, despite State blood borne pathogen regulations (which are preemptive), Measure B violates Plaintiffs' First Amendment rights in unique and new ways.

Unlike State regulation in this area, Measure B is a permitting regime – and a content-based one, at that – that requires government permission *before* any adult filmmaker can undertake protected expression.  It also, unlike the other filmmaking permit regimes that Intervenors cite, targets specific content disfavored by Measure B's proponents, directly regulates what adult film producers can shoot and depict, incorporates vague terms and mandates, and in various ways affords County regulators too much discretion to impede or intermeddle with protected expression.  Intervenors' arguments do not address the multiple constitutional flaws that are apparent on the face of Measure B.  A preliminary injunction is needed to enjoin

1

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

enforcement and preserve the *status quo ante* while the Court addresses these issues on the merits in full.[1]

## II.   INTERVENORS' FACTUAL PREMISES ARE INCORRECT

It is manifestly incorrect both that Measure B is "analogous to other [] regulations applicable to filmmaking generally," such as Los Angeles County's general conditional use permit requirements, or the Los Angeles or California Fire Codes, *see* Opp. at 8:11-14, and that Measure B represents no new incursions on Plaintiffs' First Amendment rights. *E.g.*, Opp. at 1:8-11; 7:22-28.  First, none of the ordinances that are the subject of Intervenors' Request for Judicial Notice ("Intvrs RJN") (Dkt. 58), are directed at a particular genre or type of movie, but rather apply to all productions equally.  *See* Intvrs RJN Exs. C-E.[2]  Indeed, neither of the Los Angeles County codes even apply exclusively to film production.  *Id.* Exs. C, D. Instead, the conditional use permit requirements cover a wide variety of events like parades and farmers markets as well as location filming, and the Fire Code applies to recreational fires, rifle ranges, temporary sales lots, and tire storage yards, along with commercial film shoots.  *See id.*  By sharp contrast, Measure B targets a "specific industry" – adult films – and does not even encompass all commercial films where the activity depicted "may result in transmissions of blood and/or any other potentially infectious materials."  L.A. Cnty. Code § 11.39.010.

Nor do any of the cited ordinances directly affect the *content* of productions they regulate.  *See* Intvrs RJN Exs. C-E.  For example, there is no limit on a film-

---

[1] Intervenors attempt to confuse the preliminary injunction standard by contending that "substantial proof" is required for a preliminary injunction to be granted. Opp. at 6:5-11.  Instead, as the authorities Intervenors cite make clear, a movant must only make a "clear showing" of entitlement to preliminary injunctive relief.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

[2] The obvious exception is the portion of Los Angeles County Code § 22.56.1830, *et seq.* (Intvrs RJN Ex. C) that incorporates provisions from Measure B.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

maker's ability depict all sorts of fire and explosions, as long as fire safety require-ments are met. *See* Intvrs RJN Exs. D, E.[3]  Conversely, in order to maintain the permit required by Measure B, adult film producers and performers must limit the content in their films, insofar as they absolutely may not film an act of anal or vaginal penetration without barrier protection.  Intervenors effectively admit this content-based restriction when they claim condom-less sex could be simulated or digitally depicted instead.   Motion to Dismiss (Dkt. 49) ("MTD") at 11:16-18.  The cited ordinances also do not contain anything similar in scope or breadth to Measure B's permitting, inspection, search-and-seizure, permit suspension and revocation, or civil- and criminal-punishment provisions.  Nor do they suffer Measure B's numer-ous facial infirmities, including vagueness, over- and under-inclusiveness, and constitutional violations discussed in the Motion and herein.[4]

Intervenors cannot avoid Measure B's constitutional and other infirmities by arguing that it imposes no new restrictions on Plaintiffs.  They make much of the argument that Cal/OSHA regulations may already require the use of condoms, claiming repeatedly and in italics, that there can thus be no First Amendment harm to this county-wide redundancy.  *E.g.*, Opp. at 1:8-11; 7:22-28.  But Intervenors' own efforts to distinguish Measure B from Cal/OSHA regulations show the fallacy of this position.  Intervenors explain that "Measure B [is] not coextensive with" Cal/OSHA, because "Measure B applies to all persons, regardless of employment relationship,"

[3] Filmmakers can even blow up whole, actual buildings, which negates Inter-venors' reliance on pyrotechnic regulations (Opp. at 5:11-6:2).  *See, e.g.*, Cindy Ramirez, *El Paso City Hall Demolition: From Hollywood to Historic, Firm Topples Towers Nationwide*, El Paso Times, Apr. 7, 2013, 2013 WLNR 8461526; *Holy Fireballs, Batman! The Hospital Exploded*, Chi. Trib., Aug. 30, 2007, at 8, 2007 WLNR 17035465.

[4] Intervenors' reference to "undefined" terms in Los Angeles County's condi-tional use permit regulations is unavailing.  Opp. at 4:27-5:1.  If those "undefined" requirements are imposed in a content-based manner and/or restrict impermissibly what may be filmed, an as-applied constitutional challenge would lie at that time; here, Measure B does that in <u>all</u> applications, and is thus invalid on its face.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Opp. at 20:18, and claim (incorrectly) that "Cal OSHA jurisdiction only extends to a relationship between employee and employer," while "independent contractors are not subject to Cal OSHA jurisdiction." *Id.* at 19:12-15.[5] They also explain that "Measure B's training encompasses owners … and management-level employees, regardless whether … they are exposed to blood-borne pathogens," yet recognize that, "most if not all owners and mid-level employees [of adult-film producers] are not performers, and therefore will not be exposed." *Id.* at 20:20-25. Intervenors further explain that Measure B's exposure control plan requirement is broader than Cal/OSHA's, (*id.* at 20:26-21:2), and admit that Measure B's "permit and posting requirements . . . have no analog in the Cal OSHA regulations." *Id.* at 20:25-26.

In short, the existence of the Cal/OSHA regulations defeats both Intervenors' asserted justification for Measure B and its constitutional defense. Intervenors cannot show a significant governmental interest where an existing, less restrictive measure is in place. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). Moreover, Intervenors actively undermine their assertion that Measure B would have any positive health benefit whatsoever by repeatedly stating that filmmakers need only cross the county line to film all the condom-less sex they want. *Brown v. Entertainment Merchs. Ass'n*, 131 S. Ct. 2729, 2740 (2011) (invalidating regulation as under-inclusive); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995) (speech regulation is invalid even under intermediate scrutiny where it has numerous exemptions and inconsistencies). And, despite such a weak justification for the ordinance, Intervenors ask this Court to affirm a far more draconian regulatory scheme that – by their own admission – is far different from Cal/OSHA rules, because Measure B applies more broadly (albeit only locally) and

---

[5] As discussed *infra*, at 20, this is an incorrect statement of the extent of Cal/OSHA's applicability, as the regulations do apply to independent contractors.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

requires advance permission to engage in activity protected by the First Amendment. It may well be that Cal/OSHA requirements also raise some First Amendment problems as applied, *see infra* note 15, but Measure B's prior restraint scheme is unconstitutional on its face.

All of this, along with the above block-quoted concession how Measure B uniquely targets a specific industry based on its speech, not only illustrates vividly how Measure B regulates protected expression, in ways far exceeding any regulation of general application, including Cal/OSHA, it explains Plaintiffs' First Amendment concerns, and their right to injunctive relief notwithstanding Cal/OSHA regulations that operate in some of the same areas.

### III. MEASURE B IS CONTENT BASED

The language of Measure B itself belies any claim that "Measure B is not a content-based restriction" and "does not restrict speech," Opp. § III.B, as do Intervenors' admissions on how adult filmmakers "may still create films," provided they do so as Measure B requires. *Id.* at 22:12-14. At the outset, as noted in one case on which Intervenors rely heavily, "[w]hether a statute is content neutral or content based … can be determined on the face of it; if the statute describes speech by content then it is content based." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1071 (9th Cir. 2006) (internal quotation marks and citation omitted) (cited Opp. at 7:4-7, 9:22-25, 10:3-6, 15:10-12); *see also Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) ("A regulation is content-based if … by its very terms, [it] singles out particular content for differential treatment.").[6] Here, Measure B describes speech – specifically, "adult film" – in terms of content, *i.e.*, that in which

---

[6] Even to the extent one test of whether a law is content based is whether it "was adopted out of disagreement with a message sought to be conveyed" (Opp. at 7:4-7), the Motion offers evidence that just such a disagreement exists (*see* Mot. at 15 n.13 & accompanying text). In any event, this is but one way to tell if a regulation is content based – the fact that it targets specific content on its face, as in *G.K. Ltd. Travel* and *Berger*, cited above, is far more telling.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"performers actually engage in" specified sex acts "and/or any other sexual activity that may result in the transmission of blood and/or potentially infections materials." L.A. Cnty. Code § 11.39.010. It is irrelevant that some staples of "'adult themed' content … are not covered," because Measure B targets "performers actually engaged in [] defined activities during filming." Opp. at 3:10-21. There is no escaping that a specific subset of adult-themed content – specified penetrative sex acts performed without barrier protection – simply cannot be undertaken, and thus cannot be filmed, which translates into direct regulation of protected expression.[7]

Intervenors' claim that Measure B "is not concerned with what is shown" and "makes no preference or disapproval regarding the content of any film" is both wrong and beside the point. Opp. at 3:6-7; 6:25-26. For example, Plaintiffs cannot film, and thus could not explicitly "show," a condom-less act of "actual[ ] … vaginal or anal penetration." *See* L.A. Cnty. Code §§ 11.39.010, 11.39.110.A. Intervenors claim there is "no evidence whatsoever that Measure B regulates the final content of any film." Opp. at 8:1-2. But the terms of Measure B itself are "evidence" enough, as it simply forbids filming depictions of specified actual sex acts in specific conditions (*i.e.*, without barrier protection).

In addition, Measure B does *not* apply to *all* commercial "film, video, multi-media or other representation" where the activity depicted "may result in transmissions of blood and/or any other potentially infectious materials." L.A. Cnty. Code § 11.39.010. Instead, Measure B applies only to films "of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration … and/or any other sexual activity." L.A. Cnty. Code § 11.39.010. Indeed, Intervenors admit that

---

[7] Indeed, Intervenors state that, were a permit suspended, "the permittee is not banned from **all** filmmaking – just those [] activities where performers actually engage" in committing certain sex acts to film, which is precisely what is protected by the First Amendment. Opp. at 12:14-16.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Measure B, "targets a specific act in a specific industry," and "specific persons." Opp. at 21:21-22.

Intervenors also have admitted that Measure B restricts Plaintiffs to depicting sex without condoms only "digitally or through simulation," which by definition limits how actors' performances must be staged, and thus limits content.  MTD at 11:16-18.  Accordingly, Measure B's requirement for condoms in all filmed acts of vaginal or anal penetration means that, in order to comply, adult film producers must either show the sex act with the condom in view, shoot it in such a way that the condom is not visible, or use after-the-fact digital trickery or other editing to make the condom "disappear."  Dictating these mechanics directly impacts the resulting content.  Framing a film permit requirement as a health or safety measure (Opp. § II.B at 8:11-12, 20-21) does not make it content-neutral or preclude a conflict with the First Amendment.  Mot. at 6 n.4 (citing, *inter alia, Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011)).

It is irrelevant that Measure B does not "regulate[] what films may be shown in Los Angeles County."  Opp. at 1:7-8, 7:8-10.  Impeding distribution is only one way to regulate speech; a regulation can also target speech, as does Measure B, by limiting what speech may be uttered in the first place and by requiring a government permit to engage in expressive activities.  The declarations provided in support of the Motion show the various ways Measure B affects the "final content" of film both directly (*e.g.*, Plaintiff Kross cannot film for her website) and in ways resulting from having to work around Measure B (*e.g.*, Plaintiff Vivid completely loses access to facilities located only in Los Angeles County, and must shoot films in multiple, geographically remote locations).  *See* Declaration of Kayden Kross ("Kross Decl.") ¶ 15; Declaration of Steven Hirsch ("Hirsch Decl.") ¶¶ 26-32.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## IV.  PLAINTIFFS SATISFY THE CRITERIA FOR A PRELIMINARY INJUNCTION

**A.    Measure B Violates the First Amendment and Cannot Survive Constitutional Scrutiny**

The fact that Measure B is content based renders it subject to strict scrutiny that it is "rare" for any regulation to survive, *Brown*, 131 S. Ct. at 2738, and Intervenors make no attempt to satisfy this standard.  That Measure B is a permitting regime does not change that outcome – rather, it simply adds another basis for Plaintiffs' facial challenge.  Nor can Intervenors evade constitutional scrutiny by comparing this targeted regime to "general" business regulations or health and safety permits.  The Supreme Court rejected just such an argument in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990):

> [E]ven assuming the correctness of the city's representation of its "general" inspection scheme, the scheme involved here is more onerous with respect to sexually oriented businesses than with respect to the vast majority of other businesses. For example, inspections are required whenever ownership of a sexually oriented business changes, and when the business applies for the annual renewal of its permit. **We, therefore, hold, as a threshold matter, that petitioners may raise a facial challenge to the licensing scheme, and that as the suit comes to us, the businesses challenging the scheme have a valid First Amendment interest.**

*Id.* at 225 (emphasis added).  The Court in *FW/PBS* held that the fact that the licensor had unbridled discretion by having no time limit for granting a permit rendered the prior restraint scheme unconstitutional.  *Id.* at 225-29.  Likewise, this Court has held that greater scrutiny applies when the government specifically targets adult businesses as distinguished from general permit requirements.  *Topanga Press, Inc. v. City of Los Angeles*, 409 F.Supp.2d 1188 (C.D. Cal. 2005) (applying *FW/PBS*).  In any event, regardless whether strict scrutiny applies, Measure B is unconstitutional as it does not advance any government interest, regardless whether that interest is "compelling" or "important," and because it regulates more broadly than necessary.  *Brown*, 131 S. Ct. at 2738; *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994).

8

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

Nothing Intervenors offer in the Opposition can save Measure B from failing First Amendment review.  At the outset, Intervenors cannot carry their burden by citing Measure B's findings (which Intervenors wrote in the first place).  *See* Opp. at 1:26-2:10 (citing Intvrs RJN, Ex. B (Measure B § 2)).  As a ballot measure, Measure B lacks a legislative or factual record for its findings, and there is thus no basis for evaluating the government interest in enforcing Measure B, identifying an "actual problem in need of solving," or establishing a "direct causal link" between adult film and the spread of STDs.  *Brown*, 131 S. Ct. at 2738.  Measure B's "Findings and Declaration" statements about the adult film industry and about the spread of STDs in Los Angeles County are not supported by any references or facts, and none of the "findings" were directly considered or adopted by the County, and thus remain unsubstantiated claims.  Accordingly, no deference may be given to these unsub-stantiated "findings."  *See Perry v. Brown*, 671 F.3d 1052, 1075 (9th Cir. 2012), *cert. granted*, *Hollingsworth v. Perry*, 133 S. Ct. 786 (2012).

As one court put it, "no court has accorded legislative deference to ballot drafters."  *Daggett v. Webster*, 1999 WL 33117158, at *1 (D. Me. May 18, 1999) (citing, *inter alia*, *Yniguez v. Arizonans for Official English*, 69 F.3d 920, 945 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 43 (1997) (deference normally accorded legislative findings does not apply with same force when First Amendment rights are at stake; in addition, because the measure was a ballot initiative, it was not subject to extensive hearings or considered legislative analysis)).  Courts decline to accord legislative deference to statutes that are the product of the initiative process, because their adoption does not enjoy any fact-gathering or evaluation process that in part justifies deference to legislative enactments, and/or because no systematic study is undertaken in conjunction with ballot measures.  *California Prolife Council PAC v. Scully,* 989 F.Supp. 1282, 1299 & n.42 (E.D. Cal. 1998), *aff'd*, 164 F.3d 1189 (9th Cir. 1999).  Even *G.K. Travel*, cited repeatedly by Intervenors (Opp. at 7:4-7, 9:22-25, 10:3-6, 15:10-12), confirms that deference requires steps such as "legislative

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

deliberation, [] dynamic dialog with the City's residents and businesses[,] extensive hearings," and "reliance on the experience of other cities."  436 F.3d at 1073.  None of these occurred with respect to Measure B.

Intervenors offer a letter from the Los Angeles County Department of Public Health to support the interests underlying Measure B, on the asserted grounds that the rate of STD infection for performers in adult films depicting actual sex acts is higher than among the general population, and that "STDs contracted during the making of adult films can be and are transmitted to other residents of Los Angeles County."  Opp. at 1:16-25 (citing Intvrs RJN, Ex. A).  But Intervenors offer no explanation for their claim that the rate of STD infection of adult film performers is higher than that in the general population.  This assertion is hardly surprising given that adult film performers are the most consistently tested and reported population when it comes to STD testing, and it may simply reflect that reporting is more complete in this part of the population.  And – tellingly – the risk to the general population that Intervenors claim appears nowhere in the portions of the County letter to which Intervenors cite (or elsewhere therein).

Most importantly, Intervenors do not demonstrate how the small segment of the population they seek to regulate affects public health generally in any meaningful way.  Los Angeles County recently posted a "Five-Year Comprehensive HIV Plan" that does not even mention "adult films," "pornography," or any other activity that Measure B targets.  *See* http://ph.lacounty.gov/aids/docs/LAC_FiveYear_Compre-hensiveHIVPlan2013-2017.pdf.  If the spread of STDs among and/or by adult film performers played *any* significant role in the incidence of HIV in the County, one would think it would warrant at least a mention in the Plan.  Rather, the goal of the Plan appears to be more testing and screening of the general population.  In other words, exactly what the adult film industry already does for its participants.  *See* Hirsch Decl. ¶¶ 8-17; Kross Decl. ¶¶ 5-6.  Significantly, though Intervenors raise

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

certain evidentiary objections regarding the proffer of information on this point,[8]

they do not dispute the underlying facts relating to the industry's testing protocols.

Intervenors undercut their own position regarding the STD-prevention interests underlying Measure B, *see* Opp. at 1:16-19, by claiming Plaintiffs can avoid First Amendment injury by simply creating adult films in a place other than Los Angeles County. *Id.* at 11:3-6, 22:22-23, 24:9-11. This argument makes clear that Measure B has ***no*** public health benefit, even accepting Intervenors' (incorrect) claims about transmission of STDs in adult films. Simply forcing adult film producers to transport any supposedly infected performer(s) to another county, and film them there, after which they return to Los Angeles County to intermingle with those in the general population – just as they would have had they shot in Los Angeles County – produces no tangible health benefits. Thus, Measure B serves no governmental interest. Though they try to have it both ways, it seems Intervenors are more correct in their claim that Measure B is *not* a safety and health standard. Opp. at 19 n.8. *Compare id.*, *passim*. In any event, Measure B cannot withstand either strict or intermediate scrutiny, and Intervenors do not even attempt to show that it does.

Even assuming that Measure B is not content-based, it is not a narrowly tailored time, place and manner regulation. Opp. § III.C. Even if, for purposes of argument, Measure B need not be the least restrictive alternative, it still may not "unnecessarily impose[] significant burdens on First Amendment-protected speech." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 950 (9th Cir. 2011) (citing *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 373 (2002) ("If the First Amendment means anything, it means that regulating speech must be a last – not first – resort.")), *cert. denied*, 132 S. Ct. 1566 (2012). Putting aside that the "secondary effects" analysis Intervenors appear to rely on (Opp. at

---

[8]   *See* Intervenors' Objections to Evidence Supported in Support of Plaintiffs' Motion for Preliminary Injunction, Dkt. 57-1. *But see also infra* note 19.

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

9:21-22), is "irrelevant" to the present case because it does not involve zoning adult entertainment, *see*, *e.g.*, *Playboy Entm't Grp.*, 529 U.S. at 815, Measure B does not provide ample alternative channels for communication, as Intervenors claim.

In *Foti v. City of Menlo Park*, cited in the Opposition, a municipal ordinance restricted, among other things, the size and number of signs a protester may have while picketing.  146 F.3d 629, 634 (9th Cir. 1998).  The court found ample alternatives for communication because protestors could still "convey their message through leafleting or sidewalk speeches" and continue picketing "which offers unique advantages to other forms of communication." *Id.* at 641.  Here, conversely, the "alternatives" that Intervenors propose do not allow Plaintiffs to convey their message and cannot be considered "ample."  Instead, Measure B prohibits Plaintiffs from expressing themselves in their desired way anywhere in Los Angeles County, where each works or is located, so that compliance would require leaving the County entirely.  *See, e.g.*, Compl. ¶¶ 2, 8-11; *see also* Hirsch Decl. ¶¶ 21-32.  It is hornbook law that a speaker may not be silenced in one place, on the argument that he may speak in some other place.  *See, e.g.*, *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939); *Redondo Beach*, 657 F.3d at 957 (Smith, J., concurring).  Even under a secondary effects analysis, it is not permissible to close all venues within a jurisdiction, on the theory that nearby locales offer "alternative" opportunities.  *See*, *e.g.*, *Tollis, Inc. v. County of San Diego*, 505 F.3d 935, 941-42 (9th Cir. 2007).

**B.      The Complaint's Individual Causes of Action Are Likely to Succeed on the Merits**

      **1.      First Amendment Activity Cannot be Restricted by Referendum**

The fact that "ballot initiatives related to political speech are [] subject to judicial scrutiny" does not change the fact that Constitutional rights cannot be limited via public vote.  Opp. § H (citing *Buckley v. American Const. Law Found.*, 525 U.S. 182, 194 (1999)).  If anything, it only reinforces that close "judicial scrutiny" is re-

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

quired, primarily because regulating by public vote is inherently content-based, Mot. at 6 & n.4 (citing cases), a point on which Intervenors offer no response.[9] Far from being a "red herring," Opp. at 15:20, the protection of individual speakers from oppression by the majority is precisely why the First Amendment exists.

### 2. Measure B Imposes an Unconstitutional System of Prior Restraint in Violation of the First Amendment

Intervenors fail to carry their burden of showing that Measure B is not an unconstitutional prior restraint on First Amendment rights.  The main argument is that Plaintiffs may *show* any films they like, Opp. at 14:26-15:1, but that is entirely irrelevant to the point that Measure B prevents adult film producers from *shooting* films unless they first get a permit from the County.  *See also supra* at 7.  Intervenors argue over whether Measure B confers unbridled discretion on the County.  But this only confirms that Measure B requires government permission to speak – and is thus a prior restraint – with the only question being whether administrators have too much latitude to deny permission (which, in turn, triggers vagueness and due process issues, which are addressed *infra*).

Intervenors' defense of Measure B's permitting fees fails as well, as it simply quotes Measure B and faults Plaintiffs for not putting forth evidence that the interim fees the County has set are not "proportionally representative."  Opp. at 15:17.  First, this misses the point that it is the government's burden to prove the permitting fees under Measure B do no more than recoup costs of administering the law.  *See Cox v. New Hampshire*, 312 U.S. 569, 577 (1941); *Murdock v. Pennsylvania*, 319 U.S. 105, 113-14 (1943).  Even as to the interim fees, contrary to Intervenors' argument, the *government* bears the burden of showing that the fees satisfy *Cox*, *Murdock*, and their progeny.  There remains nothing in the record, or elsewhere, to show how the interim

---

[9]   Intervenors similarly choose not to respond to the fact that proceeding by popular vote means that an initiative generally, and Measure B specifically, lacks a legislative record that is necessary to satisfy the standards to which regulations of speech are subject.  *See also supra* at 9-10; Mot. at 6.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fees of $2,000 - $2,500 were calculated or how the Department will determine how much a particular applicant will be charged.[10]  This is particularly egregious insofar as the fees for the "comparable" ordinances that Intervenors cite fall in a range that is a tenth of Measure B's interim fee.[11]  The County, therefore, has a lot of explaining to do to justify the Measure B permit fee.

### 3.     Measure B is Unconstitutionally Vague

As detailed in the Motion, Measure B contains numerous undefined terms and discretionary mandates that lack the specificity required to inform a person as to what is permissive and prohibited under Measure B.  *See* Mot. at 13:1-14:22 (describing specific terms and mandates that lack specificity) (citing, *inter alia*, *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012)).  In response, Intervenors assert, without explanation, that "[n]o provisions or terms in Measure B are such that a person of common intelligence must guess at their meaning," and that the challenged terms and mandates are "capable of general understanding."  *See* Opp. at 14:1-17.  This *ipse dixit* cannot satisfy Intervenors' burden.  The fact that similar mandates are found in regulations that do <u>not</u> target protected speech, such as the Los Angeles County Code and Fire Code, *id*. at 14, does not mean that Measure B's identified provisions are sufficiently tailored to the "sensitive task of regulating constitutionally protected speech."  Mot. at 12.

---

[10]   Significantly, the County's December 14, 2012, letter setting the interim fees stated that the process for adopting an ordinance setting final fees would commence "[w]ithin the next 90 days."  Plaintiffs' Request for Judicial Notice, Dkt. 56, Ex. A.  Plaintiffs are unaware of any action toward that end, and Intervenors cite none, even though seven months have passed.  Nor are Plaintiffs aware of any effort to justify the basis for the interim fees.

[11]   *See, e.g.*, Intvrs RJN Ex. C § 22.56.1870 (temporary use permit application must be accompanied by fee required in § 22.60.100 (setting temporary use permit fees at $196); *Id*. Ex. D §§ 105.6.47.1- 05.6.47.3 & 4803.4 (imposing permit fees ranging from $223 - $288).

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 4.    Measure B is Both Under-inclusive and Over-inclusive

The fact that "Measure B only regulates the activities that create the problems it seeks to resolve" is not only circular but rests on an incorrect factual premise, and in either case cannot avoid an under-inclusiveness finding.  Opp. at 13:11-12.  First, that fact that an ordinance seeks to regulate only that which it seeks to regulate, which is all Intervenors' defense really says, does not suffice.  It speaks only to how the regulation is targeted, and not whether that targeting is legitimate or sufficiently precise.  Here, Plaintiffs showed that there are non-commercial adult films that may contain all the acts that Measure B targets when they appear in commercial productions, yet Measure B leaves them unregulated.  The Opposition is silent on that point.  In this way, the Opposition is also factually incorrect in arguing that Measure B targets the activities that create "risk of STD infections by performers."  This is the essence of under-inclusion.  All Intervenors' argument here does is reinforce that Measure B specifically targets the commercial adult film industry.

The only other argument offered against under-inclusiveness is a claim that the adult film industry "has a markedly different effect on the community in terms of STD exposure and ultimately, public health, than do other businesses and the population at large."  Opp. at 13:15-17.  It is telling that Intervenors cite no authority to support this proposition, not even Measure B's "findings" that are just its proponents' say-so unsupported by a factual or legislative record, and which are entitled to no deference for reasons already explained.  *See supra* at 9-10.  As also already noted, the factual premises that apparently underlie this claim are not credible, *i.e.*, the September 17, 2009, letter from the Department of Public Health about STDs in the adult film industry, Intvrs RJN Ex. A, does not even address the general public impact.  *See supra* at 10.  Moreover, the County's Five-Year HIV Plan does not even mention the adult film industry.  *Id*.

On over-inclusiveness, Intervenors' argument about the "regulatory scope" of Measure B does not justify its sweeping breadth.  *Compare* Mot. at 16:6-16, n.14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*with* Opp. at 13:18-27.  Faced with the fact that there is "risk of STD exposure and transmission … in a number of acts, in addition to actual sex," and that Measure B imposes barrier protection requirements for only a subset of them, Opp. at 13:19-21; *see also* Mot. at 16, Intervenors suggest that permitting and training suffice for prac-tices that pose risks of STD transmission but do not require condoms under Measure B.  Opp. at 13:21-23.  This, Intervenors claim, means that Measure B is "calibrated." *Id*. at 13:26.  But another – and proper – way of viewing it is that Measure B requires training, permitting, and paying fees for anyone wishing to include any actual sexual act in an adult film, while requiring barrier protection for only those that actually pose concerns that implicate Measure B' objectives.  This makes Measure B over-inclusive to the extent it regulates protected expression that does not involve sex acts that lie at heart of the ordinance's concern.

### 5.  Measure B Imposes an Unconstitutional System that Deprives Plaintiffs of Due Process

Intervenors claim Plaintiffs have "misread" Measure B to find due process infirmities that do not exist,[12] but cherry-picking among provisions that govern initial permitting and that set deadlines in the suspension and revocation process cannot allay these concerns.  First, Measure B requires showing completion of County-approved blood borne pathogen training.  L.A. Cnty. Code § 11.39.110.A.2.  No criteria are provided on how or whether the County must approve any training program.  As this is a condition precedent to obtaining a permit,[13] this is just one

---

[12]   Opp. at 11:14-12:4.  Brushing aside due process failings by claiming they reflect a "complete misreading" of Measure B, *id*. at 12:2, only underscores how Measure B is constitutionally vague, and how that, in turn, gives regulators too much latitude.

[13]  Intervenors' claim that conditional permits are available is disingenuous, along with having no bearing on whether Measure B satisfies due process.  Opp. at 11 n.3.  The cited provision allows for conditional permits only during the first 12 months after Measure B's effective date.  L.A. Cnty. Code § 11.39.080.A.1.  After that, permits must be obtained before any filming may occur.  *Id.* § 11.39.080.A.2.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

way in which Plaintiffs could be denied a permit necessary to engage in protected speech, and is thus one type of due process violation that Intervenors ignore.

Further, Measure B allows the Department to suspend or revoke, without prior hearing or any procedural safeguards whatsoever, the required permit for *any* alleged violation of Measure B *or* any alleged violation of *any other law* that may create a risk for performers of exposure to STDs. L.A. Cnty. Code § 11.39.110.A.  Intervenors do not dispute this.  They claim that "sanctions" can be imposed only after written notice, Opp. at 12:18-19, but these written notice provisions come after, and do not clearly limit, this broad suspension and revocation provision.  Opp. at 12:10-13 (citing L.A. Cnty. Code § 11.39.110.B, C, D).  In addition, Intervenors speak only in terms of the "penalties" that may be imposed under Measure B, and completely overlook the impact of not being able to film.  As a result, Measure B's notice, opportunity to cure, and hearing "protections," while perhaps forestalling punishment, still do not safeguard against Plaintiffs being prevented from engaging in protected expression pending resolution if a permit is suspended or revoked.  And Intervenors do not dispute that a permit suspension/revocation resulting from something that happens (or fails to happen) on one particular production bars a producer from engaging in *any other* production for which Measure B makes a permit necessary.  *Id.* § 11.39.080.C.

Intervenors' claim that other kinds of filmmaking activity could continue is disingenuous, given the nature of the adult film industry.  The argument ignores that all other filming would be barred *even if* every requirement of Measure B was satisfied.[14]  Moreover, while specific time frames are given for review, the Department has complete discretion whether or not to reinstate, even if all corrective measures

---

[14]  Opp. at 12:13-17.  Intervenors' citation to the Los Angeles County Fire Code is misleading, Opp. at 12 n.4, as issues with or the revocation of one permit under those requirements do not bar operating under or obtaining permits for other activities.  *See generally* Intvrs RJN, Ex. D.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

are taken in response to a notice, and/or all terms for reinstatement/reissuance are met. *See* L.A. Cnty. Code § 11.39.110.D.  Intervenors also ignore another section of Measure B that gives the Department virtually *carte blanche* to suspend a permit without any review, on grounds of "immediate danger." *Id.* § 11.39.110.E.  Here, too, there is no guarantee that a permit will be reissued or reinstated even if any and all corrective measures or terms are met.  *See id.*

Intervenors' defense of Measure B's search and seizure provisions, which essentially suggests the County enjoys total discretion is this area simply because a permitting regime has been imposed, similarly fails to demonstrate that Measure B is constitutional.  Opp. at 12:21-13:8.  As held by the Supreme Court in *New York v. Burger*, 482 U.S. 691 (1987), which Intervenors cite, an "owner or operator of a business [] has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." *Id.* at 699 (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring)).  "This expectation exists not only with respect to traditional police searches … *but also with respect to administrative inspections designed to enforce regulatory statutes*." *Id.* at 699-700 (emphasis added) (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312-13 (1978)).  While it is the case, as Intervenors' note, that the privacy expectation is lesser in certain "well-regulated" industries, Opp. at 12:25-26 (citing *Burger*, 482 U.S. at 710-11), film-making is far removed from the liquor dealers and pawnshop operators that *Burger* offers as examples.  *See* 482 U.S. at 700.

Nowhere in *Burger* does the Court identify the film industry as being "closely regulated" or "well-regulated," as Intervenors suggest.  Opp. at 12:25-26.  Nor do Intervenors offer any other case standing for that proposition.  The Fire Code that Intervenors cite, Opp. at 13:2-4, which as explained elsewhere is a regulation of general application, cannot serve to establish that film-making is "closely regulated." And even if it were, searches of First Amendment-protected materials require greater scrutiny.  *See*, *e.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63 (1989).  A

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

publishing shop may be required to adhere to fire code requirements, but that would not empower inspectors to rifle editors' drawers.

Moreover, Intervenors fail to carry their burden of showing that Measure B satisfies the three requirements that *Burger* established for warrantless inspections of commercial properties:  (1) a substantial government interest in the regulatory scheme; (2) the warrantless inspections must be "necessary to further [the] regulatory scheme"; and (3) the inspection program must "advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of inspecting officers."  *Burger*, 482 U.S. at 702-03 (alteration in original).  Intervenors failure to even address these criteria concedes the argument.  But in any event, as already discussed, Measure B fails to satisfy all of these criteria for multiple reasons.  There is no defined governmental interest (and thus no way to determine if warrantless searches are necessary to support it), and Measure B affords inspectors unfettered discretion in inspections, enforcement, and punishment.[15]

### 6.    Measure B is Preempted by State Law

Intervenors' focus on  general authorities and case law at the expense of the Motion's specific citations showing how the Cal/OSHA regime preempts Measure B is fatal to the Opposition on this point.[16]  At the outset, Intervenors' reliance on *Big*

---

[15]    Intervenors agree that probable cause is required before items may be seized.  Opp. at 13:6-8.  However, there is no attempt to show that the "suspicion" standard used in Measure B even comes close to meeting this standard.  *See* Mot. at 17:27-19:3.  Intervenors also fail to address the difference between general "evidence of crime or violation of law" that may be seized, Opp. at 13:7, and the persons of adult film performers and/or actual works of expressive speech in which particularized liberty and property interests inhere.  *See* Mot. at 17.

[16]    *See* Mot. at 19-22.  The footnote in the Opposition arguing that Plaintiffs' preemption claim undercuts their constitutional claims is rebutted by the Opposition itself.  Opp. at 16 n.5.  Aside from preempting Measure B, Cal/OSHA law in fact *highlights* how Measure B differs from not only the Cal/OSHA regime, but also from the other permitting and zoning regulations Intervenors cite.  *See supra* 2-5.  Cal/OSHA's regime is a regulation of general application that generically governs a variety of businesses in the State where risks may exist for transmission of blood borne pathogens.  Unlike Measure B, it does not target expressive conduct, let alone

*Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139 (2006), is misplaced. In that case, the California Supreme Court limited its analysis to situations where "general state law" is the basis for a claim that a local ordinance is preempted.  *Id.* at 1149.  That is *not* the situation in this case.  Plaintiffs do not argue general California law preempts Measure B; instead Plaintiffs cite specific provisions of the Labor Code and supporting regulations that expressly occupy the field of workplace safety with respect to exposure to blood borne pathogens.  *See* Mot. at 19-22 (citing, *inter alia*, Cal. Lab. Code §§ 144.7 and 1173, Cal. Code Regs. tit. 8, § 5193(b), and numerous decisions affirming the State's occupation of the field of workplace safety).  As a result, the general discussion in *Big Creek Lumber* is inapplicable in this instance.

Second, Intervenors repeatedly state incorrectly that Cal/OSHA applies only to employer-employee working relationships, and not to independent contractors.[17] California Labor Code section 6400 specifically applies the Cal/OSHA standards to all places of employment, including those where independent contractors and others work.  Cal. Lab. Code § 6400(a).  It includes "multiemployer worksites," that encompass any "employer who was responsible by contract or through actual practice, for safety and health conditions on the worksite," who must ensure non-hazardous work-sites to *all* individuals, "regardless of whether their own employees [a]re exposed to [a] hazard."  *Id.* § 6400(b).  Thus, Intervenors' arguments based on this point, including that Plaintiffs lack standing to argue preemption, fail.  Opp. at 16:9-11, n.6.

---

any specific type of content, such as adult film, or any other genre.  Nor does it establish a system of prior restraint, or an unconstitutional fee.  Because of these differences with Measure B, the Cal/OSHA regime is not subject to obvious facial challenge.  To the extent the State applies Cal/OSHA law to adult film, an "as applied" First Amendment challenge might lie to particular enforcement actions. None of this, however, negates the extent to which Measure B overlaps with, and in many respects replicates Cal/OSHA regulations, which thus preempt Measure B. That Plaintiffs are not yet challenging the Cal/OSHA regulations is irrelevant.

[17] *See* Opp. at 16 n.6, 19:12-14, 20:19-20.  Intervenors rely on their Exhibit G on this issue, which also contains an incorrect statement regarding the applicability of Cal/OSHA standards to independent contractors.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Third, Intervenors' arguments against preemption also rely on their claim that Measure B serves a "significant local interest." *See, e.g.*, Opp. at 17:10-21. However, as discussed above, Measure B in reality has no impact on public health in Los Angeles County, based on Intervenors own logic. To recap in short, the adult film industry can continue to create films in other locations, but its allegedly infected actors and performers may still reside in and commingle with the population of Los Angeles County. *See supra* at 4, 11.

Fourth, Intervenors fail to support their contention that county governments have traditionally exercised "control over regulation of films (sic) sets and of public health and safety." Opp. at 17:17-19. Whereas the court in *Big Creek Lumber* cited cases detailing the historical function of local government to regulate land use, 38 Cal. 4th at 1151, Intervenors cite nothing more than California's state constitutional provision and generic regulations that grant counties the power generally to enact ordinances and regulations. Opp. at 4:1-10, 17:10-15. When these foundational premises upon which Intervenors' arguments are based are removed, their entire argument against preemption crumbles.

## C.    Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction

Intervenors do not dispute that violations of Plaintiffs' constitutional rights comprise irreparable injury, Mot. 5, 22 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)), but rather only whether Measure B is unconstitutional, and as such their argument here fails for the reasons provided above that the Plaintiffs are likely to succeed on the merits of their claims.[18] Plaintiffs' ability to "conduct filmmaking

---

[18] Intervenors' argument that Plaintiffs must first apply for a permit under Measure B or be issued for a citation for violating Measure B before they can suffer any harm is spurious. Opp. at 22:15-21. As explained in Plaintiffs' opposition to Intervenors' motion to dismiss, pre-enforcement challenges to an ordinance on First Amendment grounds are expressly allowed. Dkt. 53, at 2:10-3:18 (citing, *inter alia*, *Arizona Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)). Plaintiffs do not have to await enforcement before bringing an action to vindicate their First Amendment rights or to seek a preliminary injunction against violations.

outside of Los Angeles County" does not avoid this outcome, but rather only under-scores the First Amendment violation and thus the irreparable harm.  Opp. at 22:23.  Completely shutting a jurisdiction's doors to particular speakers or categories of protected speech is plainly unconstitutional.  *See, e.g.*, *Schneider*, 308 U.S. at 163; *Redondo Beach*, 657 F.3d at 957 (Smith, J., concurring).

Intervenors' argument that Plaintiffs' harms are merely monetary is misplaced.  Opp. at 23:6-19, 24:9-11.  The harm from training, permitting, and permit fees is not the cost, but rather that these requirements are conditions precedent to engaging in protected expression.  These requirements are thus an impediment to the exercise of First Amendment rights, and suffice to demonstrate irreparable harm.  *Playboy Entm't Grp.*, 529 U.S. at 812 ("The distinction between laws burdening and laws banning speech is but a matter of degree.").  Intervenors' argument also ignores the discussions in the Motion and the Hirsch Declaration that describe how Measure B's requirements directly affect the quantum and quality of Plaintiffs' speech.  Mot. at 22:23-23:8; Hirsh Decl. ¶¶ 26-32.  Similarly, the harm in making the end-product less attractive to audiences, *see* Opp. at 23:14-19, is also not "monetary."  *Cf.* Hirsch Decl. ¶ 25.  Compelling a speaker to alter its message to make it less appealing to its intended audience necessarily violates the speaker's First Amendment rights.

Finally, that Intervenors are "unclear" how Measure B forces Plaintiffs to cur-tail or alter their production of films that include explicitly shot depictions of actual sex without the use of barrier protection (Opp. at 23:11-14) is no response to the con-stitutional claims.  Plainly, Measure B requires adult film producers and performers to take various steps before and during the creation of protected expression, and sub-jects them to civil and criminal penalties if they fail to do so.  Thus, Plaintiffs must either resign themselves to limiting their production in the manner that Measure B dictates, or must produce their films outside Los Angeles County, which results in diminished output, both quantitatively and qualitatively.  Neither the qualitative im-pact nor the reduction in how many films a company can produce or in which a per-

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

former can appear are harms that are merely "monetary" in nature.  Opp. at 23:6-8.
Intervenors' lack of comprehension does not change the fact that Measure B simply
prohibits certain types of protected expression in Los Angeles County in violation of
the First Amendment.

## D.     The Balance of Harms Weigh in Plaintiffs' Favor

For the reasons discussed in the preceding section, Intervenors' proffered
balancing of harms is flawed from the outset.  The argument that adult film perfor-
mers can film without condoms as much as they want so long as they work outside
Los Angeles County is a frank admission that Measure B will have no positive health
impact at all.  Thus, there is no risk that "an effective method of preventing STD
infection [] will be enjoined."  Opp. at 24:13-14.  Intervenors also ignore the fact that
the adult film industry already follows numerous safeguards to protect the health of
actors and the public.  Mot. at 24:3-10.  Thus, it is specious to suggest that prelimi-
narily enjoining Measure B would "have a negative impact on the public interest in
its own health and public health in general."  *Id*. at 24:26-27.

At the same time, allowing Measure B to be implemented while its constitu-
tionality is being determined would impose a complex prior restraint scheme that
would restrict filmmaking in Los Angeles County, and create great uncertainty.
Where, as here, the purported public benefits are nonexistent and the constitutional
burdens are manifest, an injunction should issue.  It is no answer to suggest that the
Plaintiffs can avoid any constitutional burdens simply by leaving the jurisdiction.
Under this theory, no court could ever enjoin a purely local speech regulation.

Intervenors' argument that issuing a preliminary injunction would cause
"tremendous harm" to voter participation and to "the initiative process itself," is
speculative at best and entirely amorphous.  Opp. at 25:13-19.  The issuance of a
preliminary injunction would not overturn Measure B (that issue will be addressed
later in this case), so the claimed harm is not even implicated at this juncture.  In any
event, the voters have a legitimate interest only in seeing that constitutional measures

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

are allowed to go into effect.  It is always in the public interest to prevent the violation of constitutional rights, especially where the incursion is on activity that the First Amendment is designed to protect against "majority rule."  *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).  As the violation of Plaintiffs' First Amendment rights is the only readily apparent harm, the balance of equities clearly tips in Plaintiffs' favor.[19]

///

///

///

_____

[19] Regarding Intervenors' evidentiary objections (Dkt. 57-1), it is significant that Intervenors offer no objections to the declarations' discussions of Measure B's impact on Plaintiffs' free speech rights (including no objections whatsoever to the Kross and Pierce declarations).  Accordingly, whatever objections might lie – if any – irreparable harm still is presumed, and the public interest thus favors preliminary injunctive relief.  As to the objections to Mr. Hirsch's declaration, Mr. Hirsch stated therein that he has personal knowledge of the facts recited.  Hirsch Decl. ¶ 1.  If the Intervenors would like to cross-examine Mr. Hirsch regarding the extent of his knowledge, they have the right to do so.  Any objection to Exhibit D of Mr. London's declaration seems disingenuous, as Intervenors cite that exhibit themselves, *see* Opp. at 11 n.1, and Intervenors include their own online articles in their Request for Judicial Notice, to which any evidentiary objections they raise would apply equally.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# V.   CONCLUSION

For the reasons discussed above and more fully in the Motion, Plaintiffs respectfully request that the Court grant the Motion for a Preliminary Injunction and enjoin Defendants from enforcing Measure B pending a final determination of its constitutionality.


DATED: June 17, 2013                    LIPSITZ GREEN SCIME CAMBRIA LLP
                                        PAUL J. CAMBRIA, JR.


                                        SANTEN & HUGHES LPA
                                        H. LOUIS SIRKIN

                                        DAVIS WRIGHT TREMAINE LLP
                                        ROBERT CORN-REVERE
                                        RONALD G. LONDON
                                        JANET L. GRUMER
                                        MATTHEW D. PETERSON


                                        By:_____/S/_____
                                                    Matthew D. Peterson

                                        Attorneys for Plaintiffs
                                        VIVID ENTERTAINMENT, LLC;
                                        CALIFA PRODUCTIONS, INC.;
                                        JANE DOE a/k/a Kayden Kross; and
                                        JOHN DOE a/k/a Logan Pierce

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DWT 22112732v11 0097322-000001