Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450
*Attorneys for Intervenors*

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>                Plaintiffs,<br><br>        vs.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES,<br><br>                Defendants, and<br><br>MICHAEL WEINSTEIN, MARIJANE JACKSON, ARLETTE DE LA CRUZ, MARK MCGRATH, WHITNEY ENGERAN, and the CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION<br><br>                Defendants-Intervenors. | Case No.:  13-CV-00190-DDP-AGR<br><br>**INTERVENORS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:          July 1, 2013<br>Time:         10:00 a.m.<br>Judge:        Dean D. Pregerson<br>Location:    Courtroom 3 |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................ 1

    A.    Intervenors' Motion To Dismiss Is Procedurally Proper. .................... 1

    B.    Plaintiffs Fail To Allege Facts to Support Article III Standing. .......... 3

    C.    Plaintiffs Fail To Allege Sufficient Facts To Show Measure B Is Content-Based. .................................................................................... 3

    D.    If Measure B Affects Speech At All, It Constitutes A Valid Content-Neutral Time, Place and Manner Restriction. ........................ 4

    E.    Plaintiffs Fail To Allege That Measure B Violates Their Due Process Rights. ...................................................................................... 7

    F.    Plaintiffs Fail To Allege That Measure B Is Underinclusive Or Overinclusive. ..................................................................................... 8

    G.    Plaintiffs Fail To Allege Measure B Is Unconstitutionally Vague. ................................................................................................... 9

    H.    Plaintiffs Fail To Allege That Measure B Is A Prior Restraint. ......... 10

    I.    Measure B May Be Adopted Via Referendum. .................................. 11

    J.    Plaintiffs Fail to Allege Sufficient Facts To Support Their Preemption Claim ............................................................................... 11

        1.    Local Regulation Of Traditional Local Interests Are Presumptively Valid And Preemption Is Disfavored ............... 11

        2.    Public Health And Safety, and Filmmaking Are Traditional Local Interests; Their Regulation Is Presumptively Valid ............................................................... 12

        3.    There Is No Express or Implied Preemption ............................ 13

        4.    Measure B Does Not Duplicate Or Contradict State Laws. ........................................................................................ 14

1

IV. CONCLUSION ................................................................................. 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Beckman Industries, Inc. v. International Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ........................................................................ 2

*Boos v. Barry,*
    485 U.S. 312 (1988) ...................................................................................... 3

*Brown v. Demco, Inc.*
    792 F2d 478 (5th Cir. 1986) ......................................................................... 1

*Cal. Teachers Ass'n v. State Bd. of Educ.,*
    271 F.3d 1141 (9th Cir. 2001) ...................................................................... 9

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986) .................................................................................... 7, 8

*Clark v. Community for Creative Non-Violence,*
    468 U.S. 288 (1984) ...................................................................................... 5

*Connally v. General Constr. Co.,*
    269 U.S. 385 (1926) ...................................................................................... 9

*Davidovich v. City of San Diego,*
    2011 U.S. Dist. LEXIS 138319 (S.D. Cal. Dec. 1, 2011) ............................ 6

*Farina v. Mission Inv. Trust,*
    615 F.2d 1068 (5th Cir. 1980) ...................................................................... 2

*Fireman's Fund Ins. Co. v. City of Lodi,*
    2002 U.S. App. LEXIS 20999 (9th Cir. Aug. 6, 2002) .............................. 14

*G.K. Ltd Travel v. City of Lake Oswego,*
    436 F.3d 1064 (9th Cir. 2006) .............................................................. 5, 9, 10

*Gammoh v. City of La Habra,*
    395 F.3d 1114 (9th Cir. 2005) ...................................................................... 9

*Members of the City Council v. Taxpayers for Vincent,*
    466 U.S. 789 (1984) ...................................................................................... 6

*New York v. Burger,*
    482 U.S. 691 (1987) ...................................................................................... 8

*Northeast Clackamas County Elec. Cooperative, Inc. v. Continental Cas. Co.*
    221 F. 2d 329 (9th Cir. 1955) ....................................................................... 1

*Providence Baptist Church v. Hillandale Committee, Ltd.,*
    425 F.3d 309 (6th Cir. 2005) ........................................................................ 2

*S.D. Myers Inc. v San Francisco,*
    336 F. 3d 1174 (9th Cir. 2003) ..................................................... 12-13

*Thomas v. Chicago Park District,*
    534 U.S. 316 (2002) ..................................................................... 10

*Turner Broad. Sys. v. FCC,*
    512 U.S. 622 (1994) ....................................................................... 5

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ..................................................................... 10

### STATE CASES

*Big Creek Lumber Co. v. County of Santa Cruz,*
    38 Cal. 4th 1139 (2006) ................................................ 11, 13, 14, 15

*Deluxe Theater & Bookstore v. City of San Diego,*
    175 Cal. App. 3d 980 (1985) .......................................................... 5

*Hughes v. Lincoln,*
    232 Cal. App. 2d 741 (1965) .......................................................... 6

*Iversen v. California Village Homeowners Assn.,*
    193 Cal App 4th 951 (2011) ......................................................... 14

*Krontz v. City of San Diego,*
    136 Cal. App. 4th 1126 (2006) ..................................................... 10

*People v. White,*
    259 Cal. App. 2d Supp. 936 (1968) ................................................ 8

*Perry v. Brown,*
    52 Cal. 4th 1116 (2011) .............................................................. 1-2

*Sherwin-Williams Co. v. City of Los Angeles,*
    4 Cal. 4th 893 (1993) ................................................................... 15

### CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

Cal. Code Regs. § 5193 ..................................................................... 15

Cal. Const. art. XI, § 7 ....................................................................... 6

Cal. Fire Code § 4801 ......................................................................... 8

Cal. Health & Safety Code § 120175 ............................................... 6, 12

Cal. Health & Safety Code § 120575 ............................................... 6, 12

Cal. Lab. Code § 144(e) .................................................................... 13

Cal. Lab. Code § 5193 ................................................................. 6

Cal. Lab. Code § 6300 ............................................................... 14

Cal. Lab. Code § 6304 ............................................................... 14

Cal. Lab. Code § 6304.1 ............................................................ 14

Cal. Lab. Code § 6304.5 ............................................................ 14

Cal. Lab. Code § 6307 ............................................................... 14

Cal. Lab. Code § 6316 ......................................................... 13, 14

Cal. Lab. Code § 6400 ............................................................... 14

Cal. Lab. Code §142.3 ............................................................... 11

Federal Rule of Civil Procedure 8 ............................................... 1

Los Angeles County Code § 11.39 *et seq.* ....................................... *passim*

Los Angeles County Code § 22.56.1860(A) ..................................... 10

Los Angeles Fire Code § 32.108.1 ................................................. 7

Los Angeles Fire Code § 32.109.3 ................................................. 7

Los Angeles Fire Code § 32.109.3.1 .............................................. 7

Los Angeles Fire Code § 32.4807.1.1 ........................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

Plaintiffs fail to overcome the fatal pleading deficiencies in their Complaint. Instead, they attempt to conflate the process of making a film with the actual contents of a film, and rely on a misreading of Measure B, in order to claim that they have properly alleged that a law designed to protect the public health by preventing disease transmission is actually an impermissible content-based regulation of speech.  Federal Rule of Civil Procedure 8 requires more than conclusory allegations that their speech has been chilled as a result of Measure B's "intolerable burden."  Further, Plaintiffs make these allegations despite the fact that (1) the law at issue makes no reference to the content of any film, nor regulates what films may be shown in Los Angeles County, and (2) Plaintiffs state that the most objectionable feature of the law to them – requiring condoms when engaging in certain sexual acts during the making of films – *is already required under California State law.* (Compl.¶¶ 5, 32-35, 101.)

# II. ARGUMENT

## A.    Intervenors' Motion To Dismiss Is Procedurally Proper.

Plaintiffs' contention that Intervenors' Motion to Dismiss is procedurally improper and that Intervenors are subject to the Answer already filed by Defendants, is legally and pragmatically absurd.  First, when a motion to intervene is granted, the intervenor is generally treated "as if it were an original party and has equal standing with the original parties."  *See Brown v. Demco, Inc.* 792 F2d 478, 480 (5th Cir. 1986); *Ne. Clackamas Cnty Elec. Coop., Inc. v. Cont'l Cas. Co.* 221 F. 2d 329, 332–33 (9th Cir. 1955).  Therefore, Intervenors have the right to choose how they wish to respond to the Complaint, including the filing of a 12(b)(6) motion.  To find otherwise, and to require that Intervenors adopt Defendants' Answer in this case as Plaintiffs suggest, would not make any sense and would undermine the very purpose of intervention in this case—to defend a ballot initiative when the government entity refuses to put up a defense.  *See Perry v.*

*Brown*, 52 Cal. 4th 1116, 1126 (2011).  Indeed, in granting Intervenors' Motion to Intervene, the Court found that:

> Defendants' clear statement that it does not intend to defend Measure B in this litigation is sufficient to indicate that they are not adequately representing Proposed Intervenors' interests. . . . Because Defendants decline to defend the Measure substantively, Proposed Intervenors will offer an element to the proceedings that would otherwise be neglected, namely, a full defense of the constitutionality and validity of the Measure.

Court Order Granting Motion to Intervene, Dkt. No. 44, at p. 2-3.  For Intervenors to add an element to the proceedings, clearly they must be allowed to file their own response to the Complaint, one that offers a defense to Measure B.

Also contrary to Plaintiffs' contention, Intervenors complied with Rule 24(c) by stating their proposed defenses in their intervention briefs.  *See, e.g.,* Reply Memorandum, Dkt. No. 36, at pp. 8:28-9:6.  In any event, Courts construe Rule 24(c) liberally and do not always require that a proposed intervenor attach a responsive pleading to the motion to intervene.  *See, e.g., Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 474 (9th Cir. 1992) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion."); *see also Providence Baptist Church v. Hillandale Comm., Ltd.,* 425 F.3d 309, 314–315 (6th Cir. 2005); *Farina v. Mission Inv. Trust,* 615 F.2d 1068, 1074 (5th Cir. 1980).   Further, there is no law to support Plaintiffs' theory that a party who does not attach a responsive pleading to its motion to intervene then loses its right to fully participate in the case.  Finally, Plaintiffs waived any argument as to the procedural impropriety of a motion to dismiss because they stipulated to a briefing schedule and hearing on the motion to dismiss.  Stipulation, Dkt. No. 45 at p. 3.

**B.     Plaintiffs Fail To Allege Facts to Support Article III Standing.**

Plaintiffs do not dispute that they failed to allege that the County is actually enforcing Measure B against anyone in the film industry.  Plaintiffs instead ignore this fact and list various cases for the proposition that harm may be realized even where there has not been enforcement of the ordinance against *that Plaintiff.* Opposition to Motion to Dismiss ("Opp."), at pp. 2-3.  But since Plaintiffs do not even allege that the County is actually enforcing Measure B against anyone, Plaintiffs have not alleged a cognizable injury.  What is more, the Complaint fails to include facts that would give Plaintiffs standing to assert their claim for preemption with respect to condom use, in that there are no allegations that they are employees, or employ people, and are thus covered by California Labor Code and regulations ("State Laws").[1]

**C.     Plaintiffs Fail To Allege Sufficient Facts To Show Measure B Is Content-Based.**

Plaintiffs attempt to argue that Measure B is a content-based restriction on speech, and therefore subject to strict constitutional scrutiny. However, Measure B makes no preference or disapproval regarding the content of any film, does not restrict what films may be shown in Los Angeles County, and is unconcerned with the impact upon the viewer of any film.

It is well-settled that a content-based restriction on speech is one where the justification for the restriction is "focuse[d] only on the *content of the speech* and *the direct impact that speech has on its listeners.*"  *Boos v. Barry*, 485 U.S. 312, 320 (1988) (emphasis added).  With this in mind, Measure B clearly does not fit the definition of a content-based restriction on speech as alleged in the Complaint.

---

[1] As discussed in Section J below, the State Laws only protect employees, not independent contractors, and the Complaint does not allege that producers employ people who engage in sexual intercourse in their films.

There is nothing in Measure B limiting, restricting, or indeed even commenting on the content of any film shown in Los Angeles County.  Likewise, Measure B is similarly silent on the impacts of any film on the viewer.  The residents of Los Angeles County are free to view whatever films they like.  Also, Measure B is silent as to, and unconcerned with, the message conveyed in any film.  Plaintiffs are still free to convey any message they wish concerning any subject matter, including unprotected sexual intercourse.

In an effort to save the Complaint, Plaintiffs appear to try to latch onto the definition of "adult film" in the Measure (§ 11.39.010) to argue that Measure B seeks to regulate a certain type of film based on its content – commonly known as "adult films."  (Opp. at 4:4-22).  However, the term "adult films" in Measure B refers to specific activities engaged in during the making of a film (activities which pose a risk of STD infection), and *not* to the content or viewpoint contained in any particular film or category of films.  Under Measure B, *any* film, even a "Disney" film, would be defined as an "adult film" for Measure B purposes if the performers actually engaged in the defined activities during filming.  Moreover, much of what is commonly understood as "adult themed" content – nudity, simulated intercourse, etc. – are not covered by Measure B, because of the low risk of STD infection from those activities during filming.

Finally, Plaintiffs' primary objection to Measure B is that it requires the use of condoms during filming when performers actually engage in sexual intercourse during filming.  However, Plaintiffs state that *they are already required under existing state law to use barrier protection when filming actual sexual intercourse or other sexual acts.* (Compl. ¶¶ 5, 32-35, 101.)  As such, it is unclear exactly what free speech violations they are complaining about, and what content Measure B restricts that is not already subject to an unchallenged regulation.

     **D.**     **If Measure B Affects Speech At All, It Constitutes A Valid Content-Neutral Time, Place and Manner Restriction.**

Even if Plaintiffs properly allege that Measure B has some effect on speech, their allegations would only support a finding that Measure B is a content-neutral "secondary effects" regulation, because any alleged burden that it places on speech is without reference to the ideas or views expressed.  *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642-43 (1994).  As stated above, Measure B says nothing regarding the content of any film, and Plaintiffs allege no facts whatsoever that Measure B regulates the final content of any film.[2]

To be a valid time, place, and manner restriction, the restrictions must be "narrowly tailored to serve a significant governmental interest and . . . leave open ample alternative channels for communication of the information."  *See G.K. Ltd Travel v. City of Lake Oswego*, 436 F.3d 1064, 1071 (9th Cir. 2006).  Measure B satisfies all of these elements on its face.

As discussed at length in Intervenors' Motion to Dismiss, Measure B promotes a significant governmental interest in protecting the public health.  The face of Measure B states that it is being enacted to protect the public health of Los Angeles County residents.[3]  It is well-settled that public health and safety are

---

[2] Plaintiffs' claim that a "secondary effects" analysis is only applicable to zoning (Opp., at 10 n.7) is wrong.  Courts routinely apply time, place and manner analysis to non-zoning cases. *See, e.g., Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288 (1984); *Deluxe Theater & Bookstore v. City of San Diego*, 175 Cal. App. 3d 980 (1985).

[3] Plaintiffs make much of the fact that because Measure B was a people's initiative, there are no legislative findings to support its purpose.  However, if legislative findings were required for a ballot initiative to withstand constitutional scrutiny, then ballot initiatives would never hold up, and California law allowing such lawmaking by the people, would be meaningless.  In addition, such an argument by Plaintiffs fails because it is well-established that local governments may enact laws to protect public health and safety.  Plaintiffs have not alleged any facts to show that Measure B is any different from other public health and safety regulations, which all filmmakers – including Plaintiffs – must abide by in Los Angeles County.  Finally, Plaintiffs' argument that there are no legislative findings to support a government interest in regulating filmmaking that includes sexual

significant governmental interests justifying some time, place and manner regulations. *See, e.g., Davidovich v. City of San Diego*, 2011 U.S. Dist. LEXIS 138319, at *9-10 (S.D. Cal. Dec. 1, 2011); Cal. Health & Safety Code §§ 120575, 120175.  Further, it is also well-known that local governments may, under the powers granted to them by the California Constitution, make and enforce regulations to protect the health and safety of its residents.  Cal. Const. art. XI, § 7; *see, e.g.*, *Hughes v. Lincoln*, 232 Cal. App. 2d 741, 746-47 (1965).  Moreover, state law requires counties to take steps to identify and prevent the spread of sexually transmitted diseases.  Cal. Health & Safety Code § 120575 ("It is the duty of the local health officers to use every available means to ascertain the existence of cases of [STDs]. . . and to take all measures reasonably necessary to prevent the transmission of infection."), § 120175 ("Each health officer . . . shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases.").

Measure B's provisions are also narrowly tailored to serve this interest in public health and safety.  Measure B *only* regulates conduct that could result in transmitting a disease; it is precisely aimed at the source of the problem – STD exposure and infection in the making of films. *See Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 807-08 (1984) (upholding ordinance banning posted signs on public property as "the city did no more than eliminate the exact source of the evil it sought to remedy," *i.e.*, accumulation of these signs posted on public property, constituting a "visual assault").

Finally, Plaintiffs have not pled they will have no alternative means of communication if Measure B is enforced.  Plaintiffs fail to plausibly show that, by not being able to produce films in exactly the manner they deem most appropriate

---

intercourse, is further belied by the fact that section 5193 of the California Labor Code was based upon legislative findings that addressed the risks of transmitting bloodborne pathogens in places of employment.

in Los Angeles County, they cannot express the viewpoints they want to express in their final product.  Like films that depict death without actually killing performers, Plaintiffs are free to make and sell a final product that depicts unprotected sex, if that is the message they seek to express.  Further, because these films are viewed virtually everywhere, and the performance (unlike a play or concert) is not location-specific, filmmakers who want to film sexual intercourse without using condoms can simply make their films in another place, **and then show those films in Los Angeles County.**  These alternative modes of communication are "ample."  The First Amendment only requires that the government refrain from effectively denying operation of a business as a whole. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986).

> ### E.    Plaintiffs Fail To Allege That Measure B Violates Their Due Process Rights.

Plaintiffs' due process argument – that training must occur before permits are issued,[4] and permits may be revoked for any alleged violation *prior to any notice or opportunity to be heard,* and that once a permit is suspended, Plaintiffs may engage in no filming *whatsoever* (Opp., at 19-20) – appears to be based on a complete misreading of Measure B.  The plain language of Measure B puts Plaintiffs on sufficient notice of what constitutes prohibited activity, and what Plaintiffs can do prior to the imposition of penalties to avoid those penalties. Measure B also gives adequate notice of how Plaintiffs may cure or contest any alleged deficiencies in complying with the regulation *prior to the imposition of a penalty*.  In fact, The Los Angeles Fire Code has a similar penalty and administrative review provision for permits.  *See, e.g.*, §§ 32.108.1, 32.109.3, 109.3.1 (RJN in support of Opposition to Preliminary Injunction ("PI RJN"), Dkt.

---

[4] This is a misreading of the plain language of Measure B – Section 11.39.080 expressly allows conditional permits, pending completion of training.

No. 58, Ex. D).  The notice, notice to cure, opportunity to be heard *prior to the imposition of any penalty*, and level of penalty contained in Measure B are more than sufficiently protective of Plaintiffs' due process rights.

Plaintiffs also fail to demonstrate that Measure B subjects them to any unreasonable search or seizure.  First, inspections on property that are subject to regulation, *for purposes of ensuring compliance with the regulation*, are not considered *per se* unconstitutional.  *People v. White*, 259 Cal. App. 2d Supp. 936, 942 (1968).  And warrantless administrative inspections are permissible in well-regulated industries, such as filmmaking.  *See New York v. Burger*, 482 U.S. 691, 710-11 (1987) ("if inspection is to be effective . . . , unannounced, even *frequent*, inspections are essential") (internal citation omitted) (emphasis in original).  Other film regulations *already* allow for government employees to be present during working hours to ensure compliance.  *See, e.g.,* Cal. Fire Code § 4801 *et seq.* (RJN in support of Motion to Dismiss ("MTD RJN"), Dkt. No. 50, Ex. 2).  Finally, Measure B provides adequate notice of potential inspections.

## F.    Plaintiffs Fail To Allege That Measure B Is Underinclusive Or Overinclusive.

First, Measure B is not underinclusive even though it does not apply to the general population, or to "non-commercial" films.  Measure B only regulates the activities that create the problems it seeks to resolve – risk of STD infection by performers actually engaging in sexual intercourse and other sexual acts during commercial filmmaking.  *See Renton*, 475 U.S. at 52-53.  Measure B targets this activity because it has a markedly different effect on the community in terms of STD exposure and ultimately, public health, than do other businesses and the population at large.

Second, Plaintiffs' assertion that Measure B is "overinclusive" relies on a misreading of the Measure.  There is a risk of STD exposure and transmission when performers actually engage in a number of acts, in addition to actual sexual

intercourse during filming.  When these acts occur, principals and management level employees are required to undergo bloodborne pathogen training to help minimize those risks.  §§ 11.39.010 and 11.39.080(A).  However, when performers specifically engage in sexual intercourse, condoms are required.  § 11.39.110(A).  The regulatory scope is calibrated, and Measure B merely treats two different risks of exposure in two different ways. It is not overinclusive.

### G.     Plaintiffs Fail To Allege Measure B Is Unconstitutionally Vague.

A law is unconstitutionally vague only if people "of common intelligence must guess at its meaning and differ as to its application." *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).  Plaintiffs fail to allege that any provisions or terms in Measure B are such that a person of common intelligence must guess at their meaning.[5]  Further, the Constitution allows a certain amount of vagueness. Even where there is an element of subjectivity in a law, this does not render the law unconstitutionally vague.  *See G.K. Ltd. Travel,* 436 F.3d at 1085.  The "[v]agueness doctrine cannot be understood in a manner that prohibits governments from addressing problems that are difficult to define in objective terms." *Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005); *see also Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1151 (9th Cir. 2001) ("Even when a law implicates *First Amendment* rights, the constitution must tolerate a certain amount of vagueness.").

Plaintiffs also allege that Measure B contains numerous "discretionary mandates" that are vague.  These "mandates" are commonly found in statutes, and are capable of general understanding.  For example, the County general film permit law requires substantiation of certain things "to the satisfaction of the [County]."

---

[5] While affidavits are typically not considered in 12(b)(6) motions, it is noteworthy that Plaintiffs still insist that "exposure control plan" is a vague "term and mandate" (Opp. at 16:13-15) when Steven Hirsch attests in his affidavit that Vivid Entertainment does in fact have an exposure control plan. (Hirsch Decl. ¶ 19).

1    Los Angeles County Code § 22.56.1860(A) (MTD RJN, Ex. 3).  Likewise, the Fire

2    Code mandates that, at the discretion of the County, in order to preserve "life or

3    property," the County shall require fire safety officers or advisors on duty when

4    certain hazardous activities take place during filming.  § 32.4807.1.1.  (MTD RJN,

5    Ex. 1).  Plaintiffs have failed to allege that Measure B's conditions are susceptible

6    to multiple meanings or create a real threat of discriminatory enforcement.  Count

7    IV should also be dismissed.

8            **H.    Plaintiffs Fail To Allege That Measure B Is A Prior Restraint.**

9            For Plaintiffs to meet their burden in alleging that Measure B is a prior

10   restraint, Plaintiffs must allege facts to show that it (1) restrains speech, (2) puts

11   unbridled discretion in the hands of government officials, and (3) allows the

12   decisionmaker unlimited time to render a decision on the matter affecting the

13   permit.  *See, e.g., Krontz v. City of San Diego*, 136 Cal.App.4th 1126, 1133 (2006).

14            Again, Measure B in no way prohibits or restricts the contents or depictions

15   of any films shown in Los Angeles County.  Plaintiffs are free to broadcast or

16   disseminate whatever films they want.  Measure B also does not give the County

17   unbridled discretion to enforce it.  *See Thomas v. Chicago Park Dist.*, 534 U.S.

18   316, 323 (2002).  Because Measure B contains objective standards for its

19   permitting scheme (*i.e.*, pay for a permit, conduct bloodborne pathogen training,

20   post the permit on the work site, and use condoms during vaginal and anal sex),

21   there is no "unbridled discretion" placed in the hands of County officials.  Measure

22   B also limits the time that a decisionmaker has to act.  § 11.39.110(D) (written

23   notice of decision shall be issued within five days of the administrative review).

24   Any discretion allowed by Measure B is well within constitutional norms.  *See*

25   *G.K. Ltd. Travel*, 436 F.3d at 1084; *see also Ward v. Rock Against Racism*, 491

26   U.S. 781, 794 (1989).  Finally, Plaintiffs fail to allege facts to plausibly

27   demonstrate that the $2,000-$2,500 permitting fee is not proportionally

28   representative of the costs incurred by the County in enforcing Measure B.

### I.    Measure B May Be Adopted Via Referendum.

Plaintiffs' referendum argument is a red herring.  An otherwise valid law that may have some impact on speech is not suddenly rendered invalid solely because it was adopted via initiative.  Plaintiffs fail to cite to any additional authority to support their argument.  Count I should accordingly be dismissed.

### J.    Plaintiffs Fail to Allege Sufficient Facts To Support Their Preemption Claim.

Plaintiffs' conclusory assertions that Measure B is preempted by State Laws are insufficient to withstand dismissal.[6]  The preemptive reach of the State Laws is expressly limited only to explicit enforcement of Cal/OSHA's own regulations and standards.  Plaintiffs' assertion that only Cal/OSHA may adopt occupational safety and health standards (Cal. Lab. Code §142.3) is beside the point, as Measure B is not such a standard.  Plaintiffs have not pled that Measure B seeks to enforce Cal/OSHA's regulatory standards; they merely allege that both laws require condoms for certain acts.  (Compl. ¶¶ 34, 101).

#### 1.    Local Regulation Of Traditional Local Interests Are Presumptively Valid And Preemption Is Disfavored.

In *Big Creek Lumber Co. v. Cnty of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006), the California Supreme Court upheld local laws regarding timber cutting in the face of a state regulatory scheme, and set out the following principles of analysis regarding preemption challenges:

---

[6] Again, Plaintiffs admit that the State Laws already require them to use barrier protection when filming acts of sexual intercourse or other sexual acts, and suggest that they do not typically use condoms when filming these acts. (Compl. ¶¶ 5, 32-35, 101.)  This undercuts all of their First Amendment claims.  Further, by admitting they do not abide by the State Laws, they plead themselves into a corner on many of their arguments by stating that "no law-abiding adult film producer" would allow performers to film without current negative test results.

We have been particularly 'reluctant to infer legislative intent to preempt a field covered by municipal regulation *when there is a significant local interest to be served that may differ from one locality to another*.' 'The common thread of the cases is that if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against an attack of state preemption.' Thus, when local government regulates in an area over which it traditionally has exercised control . . . courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. . . . '[I]t is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' (citations omitted) (emphasis added).

## 2. Public Health And Safety, and Filmmaking Are Traditional Local Interests; Their Regulation Is Presumptively Valid.

As shown above, it is well-established that local governments, under their police power, can and do regulate film sets to protect public health and safety. They are allowed to do so even if those regulations affect the occupational safety of employees on those sets. Moreover, local governments have a statutory duty to detect and prevent STD infections. This duty is not limited to non-workplace settings. Cal. Health and Safety Code §§ 120175, 120575.

It is thus clear that that local governments traditionally have exercised control over films sets and of public health and safety, and that these matters are of significant local interest. Indeed, in this case, Los Angeles County has an exceedingly local, exceedingly significant interest, in that it is the primary locality where certain types of filmwork, involving actual sexual intercourse, occurs. Thus, California state law has a general policy against finding preemption, and the Ninth Circuit has recognized that it should not be found unless "the purported conflict (between two laws) is in fact a genuine one, *unresolvable short of choosing between one enactment and the other*." *S.D. Myers Inc. v. San Francisco*, 336 F.

3d 1174, 1177 (9th Cir. 2003) (citation omitted; emphasis added).  Further, "when interpreting statutory provisions 'intended to further two separate objectives,' [California courts] have 'stressed the importance of attempting to harmonize these goals.'" *Big Creek Lumber*, 38 Cal.4th at 1161 n.16.

Plaintiffs' Complaint fails to allege a valid preemption claim because they fail to allege facts to show not only that the legislature intended to occupy the entire field of occupational safety and health, but that such occupation is so extensive that it cannot tolerate any local ordinance that may impact occupational safety and health, even ordinances regulating traditional local interests.

### 3.     There Is No Express or Implied Preemption.

In construing the scope of possible preemptive language in statutes, "'*[E]ach phrase* within [an express preemption provision] *limits* the universe of [local action] pre-empted by the statute.'" *Big Creek Lumber*, 38 Cal. 4th at 1155 (citation omitted; emphasis added and in original).  In the process of establishing occupational safety and health standards, the California Legislature expressly validated and maintained the ability of local governments to regulate workplaces pursuant to their police power:

> Except as limited . . ., nothing in this part shall deprive the governing body of any county, city, or public corporation, board, or department, of any power or jurisdiction over or relative to any place of employment.

Cal. Lab. Code § 6316.  The limitation reserved above is codified in Labor Code Section 144(e), which states that the preemptive reach of these laws is expressly limited only to explicit enforcement of Cal/OSHA's own regulations.  Finally, Cal/OSHA jurisdiction only extends to a relationship between employee and employer; independent contractors are not subject to Cal/OSHA jurisdiction,

despite Plaintiffs' contentions.[7]  By these express limitations on the scope of Cal/OSHA's jurisdiction, the legislature has made it clear that local regulation of local interests, even if they may have some impact on occupational health and safety, has not been preempted.

Cal/OSHA regulations also do not imply occupation of the field. "Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations." *Big Creek Lumber*, 38 Cal.4th at 1157.  As in *Big Creek Lumber*, both bars to implied preemption exist here.  The Labor Code limits Cal/OSHA jurisdiction to employees and to enforcement of Cal/OSHA standards.  Likewise, the Labor Code expressly allows for local regulation of workplaces.  Cal. Lab. Code §6316.

### 4.    Measure B Does Not Duplicate Or Contradict State Laws.

As a threshold matter, the doctrine of preemption by duplication does not apply to Measure B, as the doctrine is largely confined to state penal ordinances, due to double jeopardy concerns.  *See Fireman's Fund Ins. Co. v. City of Lodi*, 2002 U.S. App. LEXIS 20999, at *71-72 (9th Cir. Aug. 6, 2002) (citing *Cohen v. Bd. of Supervisors*, 40 Cal. 3d 277, 475 n.12 (1985)).

---

[7] Plaintiffs claim that Cal/OSHA's reference to "multiemployers" somehow extend the reach of Cal/OSHA's regulations to independent contractors.  (Opp. at 24:6-13).  Plaintiffs misunderstand the law.  The Labor Code's reference to "multiemployers" merely means that multiple employers that operate in the same place of employment may each have liability under the Labor Code; such liability is not extinguished just because an independent contractor may also work on the site.  See Cal. Lab. Code §6400.  The Labor Code is clear that Cal/OSHA regulations only apply to employment relationships in the workplace, and do not protect independent contractors.  *See Iversen v. Cal. Vill. Homeowners Assn.*, 193 Cal. App. 4th 951 (2011); Cal. Lab. Code §§ 6300, 6304, 6304.1, 6304.5, 6307, 6400.

Moreover, "[l]ocal legislation is 'duplicative' of general law when it is coextensive therewith." *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993).  There is not sufficient duplication; any requirements in Measure B are not coextensive with the requirements in 8 Cal. Code Regs. § 5193.  Again, unlike Section 5193, Measure B applies to all persons, regardless of employment relationship.  Further, the training requirements of Section 5193 apply *only* to employees who are exposed to bloodborne pathogens (§ 5193(g)(2)(A)), while Measure B's training encompasses owners (who, by definition, are not employees) and management-level employees, regardless of whether or not they are exposed to bloodborne pathogens.  Measure B, § 11.39.080(A)(1).  Furthermore, the permit and permit posting requirements of Measure B (§§ 11.39.080, 11.39.090) have no analog in the Cal/OSHA regulations, and Measure B's exposure control plan requirement (§ 11.39.150), requires producers to set out and describe how the plan will comply with the requirements of Measure B itself.

To the extent there may be overlap between Cal/OSHA standards to protect employee health, and Measure B's protection of public health and safety during filmmaking, such overlap is allowable.  *See Big Creek Lumber,* 38 Cal. 4th at 1159,1160 (localities may regulate impacts of logging, even when state has regulated general conditions of logging).  Finally, there is nothing contradictory about the two laws.  A law is not contradictory to another if it is not "inimical" to it – in other words, "the ordinance does not prohibit what the statute commands or command what it prohibits."  *See Sherwin-Williams*, 4 Cal. 4th at 902.  None of the requirements of Measure B are inimical to, or contradict, Cal/OSHA standards.  Accordingly, Plaintiffs fail to allege sufficient facts to support a preemption claim.  Count VII should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Counts I through VII of the Complaint should be granted with prejudice.

Respectfully Submitted,

DATED:  June 17, 2013

INTERVENORS

By:/s/ Samantha R. Azulay
     TOM MYERS
     SAMANTHA R. AZULAY
     CHRISTINA YANG
     *Attorneys for Intervenors*