PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>                Plaintiffs,<br><br>      vs.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES<br><br>                Defendants. | Case No. **CV13-00190 DDP (AGRx)**<br><br>Assigned to the Hon. Dean D. Pregerson<br><br>**PLAINTIFFS VIVID ENTER-TAINMENT, LLC'S, CALIFA PRODUCTIONS, INC.'S, JANE DOE A/K/A KAYDEN KROSS'S, AND JOHN DOE A/K/A LOGAN PIERCE'S *REINSTATED* NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; DECLARATION OF JANET L. GRUMER**<br><br>Date:  August 12, 2013<br>Time:  10:00 a.m.<br><br>Courtroom 3<br><br>Action Filed:  January 10, 2012 |

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, August 12, 2013, at 10:00 a.m. or as soon thereafter as counsel may be heard before the Honorable Dean Pregerson, in Courtroom 3, 2nd Floor, located at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiffs Vivid Entertainment Group, Califa Productions, Inc., and Jane Doe and John Doe, also known professionally as, respectively, Kayden Kross and Logan Pierce, will and hereby do move this Court, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings in their challenge to the County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B").  Plaintiffs' Motion is based on the pleadings, this Notice, and the accompanying memorandum of points and authorities.

This Motion was originally filed on April 5, 2013.  (Docket No. 37.)  On May 1, 2013, the Court vacated the motion *sua sponte* (Docket No. 46) upon granting a motion to intervene by AIDS Healthcare Foundation, *et al.*  (Docket No. 44.)  Given that the Intervenors no longer have standing under Article III, as discussed in the concurrently filed Motion for Reconsideration, and in expectation of their dismissal from this action, and given that Defendants filed an Answer on February 27, 2013 (Docket No. 21), the pleadings are again closed and the case is again at issue. Accordingly, this previously filed Motion is properly reinstated.  The instant Motion is identical to the pleading filed on April 5, 2013, except for the updated caption, hearing date and this paragraph.

Plaintiffs seek judgment on the pleadings in this civil rights action challenging Measure B's constitutionality, because among other things Measure B imposes an intolerable burden on the exercise of rights under the First Amendment.  Judgment on the pleadings is proper, and should be granted, insofar as any party may so move "[a]fter the pleadings are closed[,] but early enough not to delay trial," Fed. R. Civ. P. 12(c), and Plaintiffs here can readily "establish[] on the face of the pleadings that no material issue of fact remains to be resolved and that [they are] entitled

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  In this regard, while Measure B suffers from fatal flaws that would be plain with further factual development in this case, it also is unconstitutional on several grounds based solely on the undisputed facts arising from the initial pleadings.

Measure B inflicts constitutional harm by forcing adult film producers to pay fees and obtain permits from the Los Angeles County Department of Public Health, before any production occurs.  The permitting and fee regime requires all principals and management-level employees – including film directors – to complete blood borne pathogen training, and allows immediate and potentially permanent permit revocation without prior notice.  Measure B also requires the use of condoms during the production of adult films, even though the performers are – as are all performers in adult films – consenting adults engaged in constitutionally protected expression. Measure B is backed by draconian penalties that the County Department of Public Health enjoys total discretion to enforce against the adult film industry under broad, vague, and unlimited enforcement powers.

Given these contours, and the manner in which they necessarily intrude on adult films' expressive elements, Measure B facially violates numerous First Amendment and other protections, as shown in the accompanying memorandum. First, Measure B curtails freedom of expression via a county ballot initiative, while also purporting to impose restrictions on protected speech based on "findings" that lack any legislative record.  In addition, Measure B serves as a prior restraint by preemptively prohibiting the production of any adult film if its director (among others) has not completed blood borne pathogen training, if the production has not secured a permit (or its producer had a permit suspended or revoked, even if the new production has nothing to do with the suspension/revocation), and/or if the performers do not use condoms, even if in their sound discretion and artistic judg-ment they wish to forgo doing so.  Measure B also gives the Department of Public

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
(213) 633-6800
Fax: (213) 633-6899

Health unlimited, standardless discretion to suspend and revoke permits, and empowers it to seize "any evidence" that "bears on" compliance – without limit or cause – including, conceivably, sole copies of expressive works.  The permit-fee also acts as a prior restraint in its own right, and is not limited to the expense incident of implementing and enforcing Measure B.

Moreover, Measure B incorporates several key terms without definition, and imposes without explanation discretionary mandates relating to permit suspension and revocation, as well as to forfeitures and enforcement.  This leaves persons of common intelligence unsure as to what actions and/or characteristics are prohibited, required, and/or subject to regulation.  The vagueness and subjective definitions of these terms and mandates also provide inadequate guidance to law enforcement and health department officials, who themselves must guess at their meanings, creating the prospect of differential application of the law.  Measure B is also unconstitutionally under-inclusive because it fails to reach adult films not made for commercial purposes but that pose the same health risks that Measure B purports to address.

The enforcement of Measure B also presents serious due process problems.  Its permit suspension/revocation regime operates without prior hearing and lacks procedural safeguards.  It also allows searches of any location "suspected" of being subject to Measure B, and seizures of all manner of personal property, including "samples," without any warrant or probable cause requirement.  Thus, if enforced, Measure B would violate Plaintiffs' liberty and property interests in the expressive works they create through the exercise of First Amendment rights, in documents and other personal property used to create those works, and in the ongoing freedom to create such works.

For all these reasons, Plaintiffs are entitled to a judgment on the pleadings that invalidates Measure B on any, some, or all of these grounds.

REINSTATED MOTION FOR JUDGMENT ON THE PLEADINGS

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 26, 2013.  *See* Declaration of Janet L. Grumer ¶ 2.


DATED: July 5, 2013                    LIPSITZ GREEN SCIME CAMBRIA LLP
                                        PAUL J. CAMBRIA, JR.

                                        SANTEN & HUGHES LPA
                                        H. LOUIS SIRKIN

                                        DAVIS WRIGHT TREMAINE LLP
                                        ROBERT CORN-REVERE
                                        RONALD G. LONDON
                                        JANET L. GRUMER
                                        MATTHEW D. PETERSON

                                        By:   /s/ Matthew D. Peterson
                                              Matthew D. Peterson

                                        Attorneys for Plaintiffs
                                        VIVID ENTERTAINMENT, LLC;
                                        CALIFA PRODUCTIONS, INC.;
                                        JANE DOE a/k/a Kayden Kross; and
                                        JOHN DOE a/k/a Logan Pierce

4

REINSTATED MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................... 1

II.   FACTUAL BACKGROUND.................................................... 3

III.  PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW............................................................... 7

    A.    The Government Cannot Constitutionally Restrict First Amendment Activity by Referendum. ................................. 8

    B.    Measure B Imposes an Unconstitutional System of Prior Restraint in Violation of The First Amendment................................. 10

    C.    Measure B's Permitting Fees Violate the First Amendment ............ 12

    D.    Measure B is Unconstitutionally Vague............................................... 14

    E.    Measure B is Underinclusive. ............................................................. 17

    F.    Measure B Imposes An Unconstitutional System That Deprives Plaintiffs of Due Process. ..................................................................... 18

    G.    Measure B Is Preempted By State Law............................................. 20

         1.    The State Has Exclusive Jurisdiction Over Workplace Safety..................................................................... 21

         2.    Measure B is Preempted........................................................... 23

IV.   CONCLUSION........................................................................ 25

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**CASES**

*Alexander v. United States*,
    509 U.S. 544 (1993) ............................................................ 2, 11

*Armstrong v. Manzo*,
    380 U.S. 545 (1965) .............................................................. 18

*Baggett v. Bullitt*,
    377 U.S. 360 (1964) .............................................................. 15

*Board of Regents of Univ. of Wis. Sys. v. Southworth*,
    529 U.S. 217 (2000) ................................................................8

*Brown v. Entm't Merchs. Ass'n*,
    131 S. Ct. 2729 (2011) .................................................. 3, 9, 10, 17

*Buckley v. American Const'l Law Found.*,
    525 U.S. 182 (1999) ............................................................. 2, 8

*California Fed. Savings & Loan Ass'n v. City of Los Angeles*,
    54 Cal. 3d 1 (1991) ............................................................... 21

*People v. Freeman*,
    46 Cal. 3d 419 (1988) .............................................................4

*Carroll v. United States*,
    267 U.S. 132 (1925) .............................................................. 19

*CBS v. District Court*,
    729 F.2d 1174 (9th Cir. 1983) ................................................ 11

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) .............................................................. 17

*City of Houston v. Hill*,
    482 U.S. 451 (1987) .............................................................. 15

*City of Lakewood v. Plain Dealer Publ'g Co.*,
    486 U.S. 750 (1988) .............................................................. 15

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*City of Rancho Palos Verdes v. Abrams,*
   101 Cal. App. 4th 367 (2002) ........................................................................ 24

*City of Renton v. Playtime Theatres, Inc.,*
   475 U.S. 41 (1986) .......................................................................................... 1

*Conley v. Dauer,*
   463 F.2d 63 (3d Cir. 1972) .......................................................................... 25

*Cox v. New Hampshire,*
   312 U.S. 569 (1941) ................................................................................ 13, 14

*Dailey v. Superior Court,*
   112 Cal. 94 (1896) ....................................................................................... 10

*Everlasting Dev. Corp. v. Sol Luis Descartes,*
   95 F.Supp. 954 (D.P.R.), *aff'd*, 192 F.2d 1 (1st Cir. 1951) ......................... 25

*FCC v. Fox Television Stations, Inc.,*
   132 S. Ct. 2307 (2012) ................................................................................ 15

*FCC v. League of Women Voters,*
   468 U.S. 364 (1984) ..................................................................................... 18

*Flack v. Municipal Court,*
   66 Cal. 2d 981 (1967) ................................................................................. 10

*Fly Fish, Inc. v. City of Cocoa Beach,*
   337 F.3d 1301 (11th Cir. 2003) .................................................................. 13

*Forsyth County v. Nationalist Movement,*
   505 U.S. 123 (1992) ..................................................................................... 15

*Freedman v. Maryland,*
   380 U.S. 51 (1965) ....................................................................................... 11

*Friedman v. Rogers,*
   440 U.S. 1 (1979) ......................................................................................... 18

*Gentile v. State Bar,*
   501 U.S. 1030 (1991) ................................................................................... 14

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ..................................................................................... 14

REINSTATED MOTION FOR JUDGMENT ON THE PLEADINGS

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Greater Balt. Ctr. for Pregnancy Concerns, Inc.*
   *v. Mayor & City Council of Balt.,*
   683 F.3d 539 (4th Cir. 2012) ........................................................8

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
   896 F.2d 1542 (9th Cir. 1990) ................................................ 3, 7

*In re JS Brower & Assocs., Inc.*
   Cal/OSHA App. 77-1315 (1980) ...................................... 22

*In re Marriage of Candiotti,*
   34 Cal. App. 4th 718 (1995) ............................................ 10

*In re National Security Letter,*
   2013 WL 1095417 (N.D. Cal. Mar. 14, 2013).................... 11

*In re Portnoy,*
   21 Cal. 2d 237 (1942) ...................................................... 21

*In re Sacramento Mun. Util. Dist.,*
   Cal/OSHA App. 00-1136, 2001 WL 427621 (2001).......................... 23

*In re SAIC,*
   Cal/OSHA App. 03-2201, 2009 WL 1204886 (2009)................................ 22, 23

*Johnson v. United States,*
   333 U.S. 10 (1948)..................................................... 19

*Katz v. United States,*
   389 U.S. 347 (1967) ................................................ 19, 20

*Kolender v. Lawson,*
   461 U.S. 352 (1983) ................................................ 14, 15

*Long Beach Area Peace Network v. City of Long Beach,*
   574 F.3d 1011 (9th Cir. 2009) ................................... 2, 11

*Marshall v. Barlow's, Inc.,*
   436 U.S. 307 (1978) ................................................ 19

*Mathews v. Eldridge,*
   424 U.S. 319 (1976).................................................. 18

*Minnesota v. Dickerson,*
   508 U.S. 366 (1993) ................................................ 20

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Murdock v. Pennsylvania*,
    319 U.S. 105 (1943)............................................................ 12, 13, 14

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)................................................................ 10, 11

*O'Connell v. City of Stockton*,
    41 Cal. 4th 1061 (2007) ................................................................ 21

*O'Rourke v. Hayes*,
    378 F.3d 1201 (11th Cir. 2004) ................................................... 19

*People ex rel. Sneddon  v. Torch Energy Servs., Inc.*,
    102 Cal. App.4th 181 (2002) ...................................................... 24

*Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012),
    *cert. granted, Hollingsworth v. Perry*, 133 S. Ct. 786 (2012)............9

*Reich v. Malcolm Pirnie, Inc.*,
    821 F.Supp. 905 (S.D.N.Y. 1993).................................................. 25

*Reno v. ACLU*,
    521 U.S. 844 (1997)......................................................................... 14

*Rental Housing Ass'n of N. Alameda County v. City of Oakland*,
    171 Cal. App. 4th 741 (2009) .................................................... 21

*Roth v. United States*,
    354 U.S. 476 (1957)............................................................................1

*Schad v. Borough of Mount Ephraim*,
    452 U.S. 61 (1981)...................................................................... 1, 9

*Sherwin-Williams Co. v. City of Los Angeles*,
    4 Cal. 4th 893 (1993) .................................................................. 21

*Skinner v. Railway Labor Executives' Ass'n*,
    489 U.S. 602 (1989)....................................................................... 19

*Sorrell v. IMS Health, Inc.*,
    131 S. Ct. 2653 (2011)....................................................................8

*Speiser v. Randall*,
    357 U.S. 513 (1958).................................................................... 14

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Terry v. Ohio*,
   392 U.S. 1 (1968) ............................................................................ 20

*Thomas v. Chicago Parks Dist.*, 534 U.S. 316 (2002) ............................................ 11

*Thornhill v. Alabama*,
   310 U.S. 88 (1940) ............................................................................ 15

*Torbet v. United Airlines, Inc.*,
   298 F.3d 1087 (9th Cir. 2002), *overruled on other grounds*,
   *United States v. Aukai*, 497 F.3d 955 (9th Cir. 2007) ............................. 7

*Traverso v. People ex rel. Dep't of Transp.*,
   6 Cal. 4th 1152 (1993) ..................................................................... 18

*Trinity United Methodist Parish v. Board of Educ.*,
   907 F.Supp. 707 (S.D.N.Y. 1995) ...................................................... 14

*Turner Broad. Sys. v. FCC*,
   512 U.S. 622 (1994) ............................................................................ 9

*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*,
   32 Cal. 3d 762 (1982) ...................................................................... 22

*United States v. Aukai*,
   497 F.3d 955 (9th Cir. 2007) ............................................................... 7

*United States v. Caronia*,
   703 F.3d 149 (2d Cir. 2012) ................................................................. 8

*United States v. O'Brien*,
   391 U.S. 367 (1968) ............................................................................ 9

*United States v. Playboy Entm't Group, Inc.*,
   529 U.S. 803 (2000) ............................................................................ 2

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982) .......................................................................... 14

*Wearly v. FTC*,
   462 F.Supp. 589 (D.N.J. 1978), *vacated on other grounds*, 616 F.2d 662
   (3d Cir. 1980) .................................................................................. 25

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F.Supp.2d 1072 (C.D. Cal. 2012) ............................................... 25

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Wendling v. City of Duluth*,
    495 F.Supp. 1380 (D. Minn. 1980)...................................................... 13

*West Va. State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943)........................................................................... 2, 8

*Younger v. Board of Supervisors*,
    93 Cal. App. 3d 864 (1979) .............................................................. 21

**STATUTES**

California Elections Code § 9100 *et seq.* .............................................8

California Labor Code
    § 140 *et seq.* ................................................................................... 24
    § 142 ............................................................................................... 22
    § 142.3 ............................................................................................ 23
    § 142.3(a)(l) ................................................................................... 22
    § 144 ............................................................................................... 23
    § 144.5 ............................................................................................ 23
    § 144.7 ....................................................................................... passim
    § 1173 ............................................................................................. 22
    § 3003 ............................................................................................. 23
    § 6300 ............................................................................................. 23
    § 6304 ............................................................................................. 23
    § 6304.1 .......................................................................................... 23
    § 6307 ......................................................................................... 22, 23
    § 6360 ............................................................................................. 23
    § 6700 ............................................................................................. 23

REINSTATED MOTION FOR JUDGMENT ON THE PLEADINGS

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Los Angeles County Code

Chapter 11-39...............................................................................................1

Chapter 11-39, pt. 2....................................................................................5

§ 11.39.010 ............................................................................... 6, 9

§ 11.39.080 ............................................................................. 6, 17

§ 11.39.080.A ................................................................................7

§ 11.39.080.B ................................................................................6

§ 11.39.080.C ............................................................................. 19

§ 11.39.090 ....................................................................................6

§ 11.39.110 ............................................................................... 6, 7

§ 11.39.110.A ..................................................................... passim

§ 11.39.110.C ..................................................................... 11, 19

§ 11.39.110.D ............................................................. 15, 16, 19

§ 11.39.110.D-H...........................................................................7

§ 11.39.110.E ...................................................................... 11, 16

§ 11.39.110.F .............................................................................. 16

§ 11.39.110.H ............................................................................. 11

§ 11.39.120 ............................................................................. 6, 7

§ 11.39.120.C ............................................................................. 16

§ 11.39.120.D ............................................................................. 16

§ 11.39.130 ................................................................. 6, 16, 19, 20

§ 11.39.140 ........................................................................... 7, 16

§ 22.56.1925(C) ....................................................................... 24

**REGULATIONS**

California Code of Regulations, Title 8, § 5193 ............................................. passim

California Code of Regulations, Title 8, § 5193(b) ........................................... 5, 22

**CONSTITUTIONAL PROVISIONS**

California Constitution, art. I, § 2(a) ...................................................... 10

California Constitution, art. I, § 7 ........................................................ 18

United States Constitution, First Amendment ................................................ passim

United States Constitution, Fourth Amendment ....................................... 1, 3, 19, 20

United States Constitution, Fourteenth Amendment ................................... 1, 18, 19

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**OTHER AUTHORITIES**

43 Ops. Cal. Atty. Gen. 261 (1964) ........................................................ 23

60 Ops. Cal. Atty. Gen. 44 (1977) .......................................................... 24

77 Ops. Cal. Atty. Gen. 147 (1994) ........................................................ 21

REINSTATED MOTION FOR JUDGMENT ON THE PLEADINGS

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs Vivid Entertainment Group, Califa Productions, Inc., and Jane Doe and John Doe, also known professionally as, respectively, Kayden Kross and Logan Pierce, are among the many producers, distributors, and performers of works that explore and portray the "great and mysterious motive force in human life" that "has indisputably been a subject of absorbing interest … through the ages," *i.e.*, sexuality and sexual relations. *Roth v. United States*, 354 U.S. 476, 487 (1957). It is beyond dispute that such works – including erotic adult films – are protected by the First Amendment, which applies to the States and their subdivisions under the Fourteenth Amendment. *See*, *e.g.*, *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). Despite this long-standing recognition, virtually no effort was made to ensure that the recently enacted County of Los Angeles Safer Sex in the Adult Film Industry Act, also known and referred to as "Measure B,"[1] avoided running roughshod over the constitutional rights of those subject to it. This action and Motion accordingly seek to protect the First, Fourth, and Fourteenth Amendment rights of producers of sexually oriented films and of those who perform in them, and to uphold the supremacy of the law of the State of California, from encroachment by Measure B.

Measure B was drafted, proposed and introduced by putative Intervenors AIDS Health Care Foundation, *et al*., and was adopted by referendum. It establishes an onerous licensing and fee regimen as a multi-level system of prior restraint before shooting may commence. It also requires condoms for all filmed vaginal or anal sex acts, even if the performers – who are consenting adults, as are all adult film performers – prefer in their sound discretion and artistic judgment to forgo on-camera

---

[1]    A copy of Measure B is attached to the Complaint (Docket No. 1) (hereinafter "Measure B") and is codified at Los Angeles County Code of Ordinances, Chapter 11-39.

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

condom use.  Measure B thus constitutes a significant barrier to producing adult films in Los Angeles County, and necessarily intrudes on the expressive elements of the films as works of creative speech.

Measure B's constitutional flaws are apparent on its face and from the initial submissions in this case.  Defendants admit that "Plaintiffs' Complaint presents important constitutional questions that require and warrant judicial determination." Answer at 1 (Docket No. 21).  Some constitutional failings result from Measure B's genesis as a referendum.  While referenda may be useful to address a variety of issues, the First Amendment prohibits subjecting the exercise of the rights to freedom of speech and expression to popular vote.  *See, e.g., Buckley v. American Const'l Law Found.*, 525 U.S. 182, 194 (1999); *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).  In addition, Measure B contains various findings that purport to justify its enactment, Measure B § 2, but its adoption via referendum means those findings lack a legislative record or similar evidentiary support, which is fatal to the County's burden to justify Measure B as a regulation of speech.  *E.g., United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000).  *Infra* § III.A.

The provisions of Measure B that require pre-production blood pathogen training, permitting, and the payment of permit-fees, and its condom-use mandate, both individually and together, are prior restraints on producing adult films in Los Angeles County, *infra* §§ III.B-C, that render Measure B presumptively invalid.  *E.g., Alexander v. United States*, 509 U.S. 544, 550 (1993); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009).  Various of Measure B's mandates are unconstitutionally vague, *infra* § III.D, and its sponsors and the County Defendants charged with implementing and enforcing it cannot even agree on its scope.  *E.g.*, Mot. to Intervene at 18 (Docket No. 24).  In addition, as explained more fully below, Measure B is a content-based regulation that cannot satisfy either strict or intermediate First Amendment scrutiny.  *Infra* § III.E.  Not least among the reasons for which is that Measure B is unconstitutionally underinclusive, *id.*, which

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

raises serious doubts about whether it targets the interests it invokes, or simply disfavors adult film.  *See Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2740 (2011).

Nor are Measure B's failings limited to violating the First Amendment.  It also violates the Fourth Amendment by conferring upon the County Department of Public Health ("Department") broad authority to suspend or revoke production permits for adult films – without prior hearing or procedural safeguards – and by allowing unannounced access to production facilities coupled with authority to seize expressive works that adult film producers and performers create, along with documents and other personal property used to create them.  *Infra* § III.F.  Measure B also is preempted by California Labor Code Section 144.7 and California Code of Regulations Title 8, Section 5193 insofar as it intrudes on the exclusive jurisdiction of the California Occupational Safety and Health Standards Board ("Standards Board") and the Division of Occupational Safety and Health ("Cal-OSHA").  *Infra* § III.G.

Each of these infirmities is clearly established on the face of the pleadings, and no material issue of fact need be resolved to invalidate Measure B on any, or all, of the grounds advanced herein.  Although other fatal constitutional flaws would be apparent with factual development at later stages of this case,[2] Plaintiffs are entitled to judgment as a matter of law on the pleadings, for the reasons that follow.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

## II.   FACTUAL BACKGROUND

Measure B targets constitutionally protected expressive enterprises that have longstanding roots in Los Angeles County, and that make significant contributions to

---

[2]   For example, some of Measure B's "findings" are demonstrably false, *see, e.g.*, Measure B §§ 2(a), (d), while others are highly disputable.  The insufficiency of such findings would preclude showing that Measure B identifies an "actual problem in need of solving," *e.g.*, *Brown*, 131 S. Ct. at 2738, and that there is either a compelling or important government interest, or that Measure B actually furthers or justifies that interest.  Additionally, factual development would show Measure B to be overinclusive given the strict requirements the adult film industry already imposes to protect its performers, and to prevent the spread of HIV and other sexually transmitted diseases.  *See infra* 4.

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

its economy.  Since the California Supreme Court held in *People v. Freeman*, 46 Cal. 3d 419 (1988), that the creation of non-obscene adult films are protected by the First Amendment and do not violate California's criminal prostitution statutes, Los Angeles County has become one of the world's leading locations for the production of adult films.  Given the nature of the expressive efforts that animate the industry, adult film producers are especially aware of the potential health risks to performers from exchanges of bodily fluids and/or exposure to blood borne pathogens.  Indeed, as the public was first becoming aware of diseases like HIV/AIDS and hepatitis, the adult film industry provided information about the diseases, their transmission, and how to prevent exposure.  Between that time and present, the leading creators and producers of adult films implemented strict requirements for each production, in order to protect performers, and to prevent the spread of HIV and other sexually transmitted diseases.  *See generally* Compl. ¶¶ 20-31.

Adult film industry members and their trade associations established testing and reporting regimes to assist adult film producers and performers to ensure safe and healthy work environments.  This led to the availability of databases that provide continually updated information on adult film performers who have a negative-test status, based on monthly (or more frequent) testing.  Adult film producers and performers can access the database to confirm the negative-test status of any performer on any given production date.  No law-abiding adult film producer would allow a performer to participate in the production of an adult film without a current negative-test confirmation, and no performer would agree to film without confirming his or her co-performers' negative test status.  *Id.*

At the same time, the State of California enacted its own laws and regulations regarding exposure to blood borne pathogens, which confer jurisdiction over the field of occupational safety and health in California workplaces – including those in Los Angeles County – to the Standards Board and Cal-OSHA.  California Labor Code section 144.7 required the Standards Board to adopt a blood borne pathogen standard

REINSTATED MOTION FOR JUDGMENT ON THE PLEADINGS

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that mandates that employees exposed to blood borne pathogens in the workplace receive barrier protection.  Title 8, Section 5193 of the California Code of Regulations contains the prescribed standards, and requires all employees exposed to blood borne pathogens, including semen and vaginal secretions, be provided with "personal protective equipment" by their employers.  8 Cal. Code Regs. tit. 8, § 5193(b).  It is against this backdrop that Measure B was proposed and enacted.

With respect to Measure B and this challenge to it, the following undisputed facts are established by the pleadings.[3]  Measure B sets forth restrictions and requirements for the adult film industry.  Compl. ¶ 40; Ans. ¶ 40.  The Defendants allowed Measure B to be placed on the ballot for the November 2012 election, upon which it was approved.  Compl. ¶ 36; Ans. ¶ 36.  Measure B acknowledges that "the production of sexually explicit adult films is legal in … California," and that Regulation 5193 provides requirements to protect adult film performers and models.  Compl. ¶ 37; Ans. ¶ 37.  *See also* Measure B § 2(c), (g)-(h).

Nonetheless, Measure B requires producers of adult films to pay a fee and to obtain a permit from the Los Angeles County Department of Public Health under a regime that requires all principals and management-level employees – including film directors – to complete blood borne pathogen training, and that allows immediate and potentially permanent permit revocation without prior notice.  Compl. ¶ 3; Ans. ¶ 3; L.A. Cty. Code Ch. 11-39, Part 2.  It also requires condom use during production of adult films, *id*., and subjects the adult film industry to penalties that the Department has broad discretion to apply.  Compl. ¶ 6; Ans. ¶ 6; L.A. Cty. Code § 11.39.110.A.

More specifically, Measure B requires producers of adult films to obtain a permit from the Department **before** any production can take place, which requires producers to pay fees and file applications that demonstrate successful completion of

---

[3]   The above discussion regarding the State of California's laws and regulations regarding exposure to blood borne pathogens is also undisputed. *See* Compl. ¶¶ 32, 34; Ans. ¶¶ 32, 34.

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

blood borne pathogen training approved by the Department.  Compl. ¶ 41; Ans. ¶ 41; L.A. Cty. Code § 11.39.080.  If the producer is a business entity, *all* of its "principals and management-level employees" (which are undefined terms), including any and all film directors, must complete the required course.  *Id*.  Once an application is approved and the Department issues a permit, which is valid for two years, it must be displayed at all times where any adult film is shot.  Compl. ¶ 41; Ans. ¶ 41; L.A. Cty. Code §§ 11.39.080.B, 11.39.090.  Measure B further requires the use of condoms by performers for all acts of anal or vaginal sex during the production of adult films.  Compl. ¶ 42; Ans. ¶ 42.  L.A. Cty. Code § 11.39.110.A.  For these purposes, "adult films" are "any film, video, multimedia or other representation of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another performer; and/or any other sexual activity that may result in the transmission of blood and/or any other potentially infectious materials."  L.A. Cty. Code § 11.39.010.

Department inspectors are granted access to "any location suspected of conducting any activity regulated by" Measure B, without notice.  Compl. ¶ 44; Ans. ¶ 44; L.A. Cty. Code § 11.39.120.  Department inspectors may thereupon take possession of "any sample, photograph, record or other evidence, including any documents *bearing on*" compliance with Measure B.  Compl. ¶ 44; Ans. ¶ 44; L.A. Cty. Code § 11.39.130.  The Department may, at any time and without prior notice, suspend or revoke permits for *any* violation of Measure B's provisions, or of *any other laws* – which are not identified or limited – if the violation may create a risk to performers of exposure to sexually transmitted diseases, which "risks" also are undefined.  Compl. ¶ 45; Ans. ¶ 45; L.A. Cty. Code § 11.39.110.

If a permit is suspended or revoked, work must not only stop on a given production, its producer cannot engage in *any* other filming, thus prohibiting the creation of other works as well.  *Id*.  The Department may reinstate a permit, or issue a new

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

permit, to a given producer whose permit was revoked, Compl. ¶ 46; Ans. ¶ 46; L.A. Cty. Code § 11.39.110.D-H, but nothing in Measure B specifies that the Department must do so, or when it should do so.  To effectuate its permitting (and enforcement) regime, Measure B imposes a fee structure, but only states that the fee "shall be set … in an amount sufficient to provide for the cost of any necessary enforcement." Compl. ¶ 48; Ans. ¶ 48; L.A. Cty. Code § 11.39.080.A.[4]  Any person determined to have violated Measure B is subject to fines, civil actions, and jail time.  Compl. ¶ 47; Ans. ¶ 47; L.A. Cty. Code §§ 11.39.120, 11.39.140.

## III.    PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

The undisputed facts derived from Plaintiffs' Complaint and the Defendants' Answer demonstrate that Plaintiffs are entitled to judgment in full as a matter of law on Counts I-IV and VI-VII of the Compliant, and partial judgment on Count V.  *See Hal Roach Studios*, 896 F.2d at 1550.  Judgment for the Plaintiffs is warranted even accepting as well-founded all denials of fact stated in the Answer and treating as false all of the allegations in the Complaint that Defendants have not admitted.  *See*, *e.g.*, *Torbet v. United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir. 2002), *overruled on other grounds*, *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007). Accordingly, this Court should declare Measure B is unconstitutional and unenforceable, and grant such other relief as is appropriate given Measure B's invalidity.

---

[4]    Though the Department has stated that Measure B has become effective, it has not conducted any proceedings, conducted any analyses, or otherwise taken steps to establish the proper amount of permitting fees.  Instead, it has set a "provisional fee" ranging from $2,000 to $2,500 per year, without any findings or factual basis for the amount, or any explanation how it will determine where within that range to set the fee for any specific applicant or permittee.  Letter from Jonathan E. Fielding to "Producers of Adult Films in Los Angeles County," dated Dec. 14, 2012.  Request for Judicial Notice, Exhibit A (Docket No. 38).

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## A.     The Government Cannot Constitutionally Restrict First Amendment Activity by Referendum

The provisions of Measure B violate the First Amendment by curtailing freedom of expression via a county ballot initiative.  The exercise of First Amendment freedoms cannot be limited by referendum.  *Buckley v. American Const'l Law Found.*, 525 U.S. 182, 194 (1999) ("The voters may no more violate the United States Constitution by enacting a ballot issue than the general assembly may by enacting legislation."); *Barnette*, 319 U.S. at 638 ("One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.").  Imposing regulation in this way is inherently content-based.  *Board of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235-36 (2000).  The fact that Measure B purported to be a "public health" ballot measure does not immunize it from First Amendment scrutiny.  *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011).  *See United States v. Caronia*, 703 F.3d 149, 166 (2d Cir. 2012);  *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 683 F.3d 539, 556 (4th Cir. 2012).

Here, Measure B was placed on the November 2012 ballot under California's initiative process, whereby if an initiative's proponent collects sufficient signatures and a county clerk certifies them, the measure is put to a public vote.  *See* Cal. Elec. Code § 9100 *et seq.*  The Los Angeles County Registrar-Recorder/County Clerk certified the signatures in support of Measure B on July 3, 2012.  Though given the opportunity, the County, through its Board, declined to implement Measure B and instead put it to a public vote.  Measure B passed by a 57-43% margin.  Limiting First Amendment rights in this manner is simply impermissible.

In addition, as Measure B was enacted by referendum, its findings are not backed by any legislative record.  *See* Measure B § 2.  Specifically, its drafters included a section entitled "Findings and Declaration," that makes various statements

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

about the adult film industry and about the spread of sexually transmitted infections in Los Angeles County.  Measure B at 1.  These "findings" are not supported by any references or facts, and none of these "findings" were directly considered or adopted by the County, and thus remain unsubstantiated claims.[5]  Accordingly, there is no legislative record to support the "findings" in Measure B.  *See Perry v. Brown*, 671 F.3d 1052, 1075 (9th Cir. 2012) (messages in support of ballot measure are given deference only as adjudicative facts, not legislative findings), *cert. granted*, *Hollingsworth v. Perry*, 133 S. Ct. 786 (2012).

Yet as a content-based restriction on protected speech, Measure B is subject to strict scrutiny, which requires demonstrating a compelling government interest that Measure B is narrowly drawn to serve, *Brown v. Entm't Merchs.*, 131 S. Ct. at 2738, or at a minimum, to intermediate scrutiny that requires furtherance of important governmental interests through regulation that is no greater than necessary to achieve those objectives.  *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).  Measure B is clearly content-based in that its requirements and restrictions target a category of speech – non-obscene sexual expression – that is protected by the First Amendment.  *See*, *e.g.*, *Schad*, 452 U.S. at 65.  Measure B does *not* apply to *all* commercial "film, video, multimedia or other representation" where the activity depicted may result in transmissions of blood and/or any other potentially infectious materials."  Rather, it applies only to films "of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration … and/or any other sexual activity."  L.A. Cty. Code § 11.39.010.  This renders Measure B subject to strict scrutiny that it is "rare" for a regulation to survive.  *Brown*, 131 S. Ct. at 2738.

---

[5]   Though a determination to such effect is not necessary to granting judgment on the pleadings, Measure B's claims about purported links between the adult film industry and sexually transmitted disease are misleading and incorrect.

**Davis Wright Tremaine** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Measure B is particularly subject to invalidation under strict scrutiny because it became law via the initiative process, such that there is no legislative record or other factual support for its "findings."  This means there is no legislative record to demonstrate the government's interest – there is nothing upon which to evaluate the County's interest in enforcing Measure B.  Measure B thus fails to properly identify an "actual problem in need of solving." *Id*. at 2738.  In addition, without legislative history or a factual record, Measure B cannot demonstrate a "direct causal link" between the adult film industry and the spread of sexually transmitted infections in Los Angeles County. *Id.*  Accordingly, Measure B necessarily fails strict scrutiny.  The same outcome arises even under intermediate scrutiny.  Lack of any legislative record precludes establishing an important government interest in support of Measure B, and similarly prevents any showing that it will achieve whatever objectives it may be surmised that Measure B hopes to achieve.  Measure B is invalid based on these referendum-related grounds alone.

## B.  Measure B Imposes an Unconstitutional System of Prior Restraint in Violation of The First Amendment

Regardless of any legislative record – or lack thereof – the mechanism dictated by the Measure's drafters is constitutionally defective.  Measure B violates the First Amendment because it imposes a prior restraint on producing constitutionally pro-tected films.  As the Supreme Court has made clear, "prior restraints … are the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976),[6] and they accordingly carry a heavy

---

[6]  California courts have also universally rejected prior restraints.  As the guar-antees of free speech and press in article I, section 2(a) of the California Constitution are "more definitive and inclusive than the First Amendment," the burden on a party seeking a prior restraint is more onerous, and potentially insurmountable. *In re Mar-riage of Candiotti*, 34 Cal. App. 4th 718, 724 (1995).  For over a century, California courts have relied on this guarantee, *see Dailey v. Superior Court*, 112 Cal. 94, 97 (1896) , as well as on the First Amendment, to reject prior restraints, which the California Supreme Court has denounced as perhaps "the most severe method of intellectual suppression known in modern times." *Flack v. Municipal Court*, 66 Cal. 2d 981, 988 n.5 (1967).

---

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

presumption against their validity.  *E.g.*, *Long Beach Area Peace Network*, 574 F.3d at 1023.  A prior restraint is any government action or order that restricts or forbids speech in advance of the time it is to be made or disseminated.  *Alexander*, 509 U.S. at 550.  That a restraint imposed may only be temporary is of no moment.  *Nebraska Press Ass'n*, 427 U.S. at 559 ("A prior restraint … has an immediate and irreversible sanction."); *id.* at 609 (Brennan, J., concurring).  *See also Freedman v. Maryland*, 380 U.S. 51, 59 (1965) (determination of validity of a prior restraint "must [ ] be limited to … the shortest fixed period compatible with sound judicial resolution"); *CBS v. District Court*, 729 F.2d 1174, 1177 (9th Cir. 1983) ("The first amendment informs us that the damage resulting from a prior restraint – even a prior restraint of the shortest duration – is extraordinarily grave.").

A "provision [that] clearly restrains speech of a particular content … must [] meet the heightened justifications for sustaining prior-restraints [] in *Freedman v. Maryland* and must be narrowly tailored to serve a compelling governmental interest."  *In re National Security Letter*, 2013 WL 1095417, at *6 (N.D. Cal. Mar. 14, 2013).  This means "that (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court."  *Id.* at *8 (quoting *Thomas v. Chicago Parks Dist.*, 534 U.S. 316 (2002)).  Measure B does not conform to most of these requirements, and in some respects runs directly counter to some of them.  *See*, *e.g.*, L.A. Cty. Code § 11.39.110.C, E, H.

Measure B represents a classic example of a prior restraint.  *See Nebraska Press Ass'n*, 427 U.S. at 549.  It preemptively prohibits the production of any adult film if its director (among others) has not completed a blood borne pathogen training course affirmatively approved by the Department, if the production has not secured a permit issued by the Department, and/or if the performers do not use condoms for all

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

acts of anal or vaginal sex, even if in their sound discretion and artistic judgment they wish to forgo doing so.  The permit and condom requirements are preconditions to producing adult films that serve as prior restraints on protected speech.

Measure B also prohibits the production of adult films by any entity that has had a permit suspended or revoked, including even creating other works having nothing to do with the suspension/revocation.  The Department is granted unlimited, standardless discretion to impose such suspensions and/or revocations.  Accordingly, Measure B grants the Department the ability to institute a lengthy or potentially permanent restriction on protected speech.

Measure B further empowers Department inspectors to take possession of "any evidence" that "bears on" compliance with Measure B, without limitation or a cause requirement, which could conceivably include sole copies of adult films produced in alleged violation of Measure B.  In addition, Measure B permits the suppression of expression and speech by imposing serious civil and criminal penalties for noncompliance with its permitting and/or barrier-protection requirements.  The threat of these unbounded investigation and enforcement measures are further preconditions to producing adult films that serve as prior restraints on protected speech.  On all these grounds, Measure B must be invalidated as an unconstitutional prior restraint upon protected expression and the creation and dissemination of protected speech.

## C.    Measure B's Permitting Fees Violate the First Amendment

Measure B further violates the First Amendment by requiring the payment of a permitting fee as a precondition to producing any adult film, thus imposing another form of prior restraint.  Just as with a licensing regime, conditioning the ability to produce expressive works on the payment of a fee to the government is presumptively unconstitutional.  *See* § III.B, *supra*.  In this regard, Measure B's fee regime is utterly at odds with well-established case law through which the Supreme Court has shown its aversion to special taxes or fees on expressive activities.

It is bedrock law that no one may be "compelled to purchase, through a license fee or a license tax, the privilege freely granted by the constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 114 (1943) (internal quote omitted).  Although the government may constitutionally impose a fee limited to the "expense incident to the administration" of a speech regulation, *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941), such fees must be narrowly tailored to match actual administrative costs. *Murdock*, 319 U.S. at 113-14.  Excessive fees are "viewed as a tax on the exercise of the fundamental rights guaranteed by the First Amendment and hence [as] prior restraint[s]." *Wendling v. City of Duluth*, 495 F.Supp. 1380, 1385 (D. Minn. 1980). The government bears the burden of demonstrating that a license fee is reasonably related to the recoupment of the costs in administering the program for which the fee is collected. *See Murdock*, 319 U.S. at 113-114; *Cox*, 312 U.S. at 577.  And multiple courts have held that *Cox* and *Murdock* apply fully even to expression considered at the "outer perimeter" of the First Amendment's protection. *See*, *e.g.*, *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1314 (11th Cir. 2003).

Here, in order to secure a filming permit, producers of adult films must pay a permitting fee to the Department.  The Department has set a "provisional fee" that ranges from $2,000 to $2,500 per year, and indicated that payment will be required immediately. *See supra* note 4.  Plaintiffs may not exercise their First Amendment rights to create adult films without first paying the required fee.  Accordingly, the fee regime under Measure B is a precondition to producing adult films that serves as a prior restraint on protected speech.

In addition, Measure B's permitting fee is an unlawful tax on speech, rather than a fee incident to legitimate regulatory costs.  Measure B itself does not provide the Department any guidance on how to set the fee, other than by stating it "shall be … an amount sufficient to provide for the cost of any necessary enforcement."  The Department set the "provisional fee" range in a December 14, 2012, letter that was devoid of analysis, findings or factual basis, or explanation how the Department will

determine where within the range to set the fee for any particular permittee.  And the Department gave *no* information about the administrative costs associated with the implementation or enforcement of Measure B, *or* the amount of money it proposes to collect through the fees.  Due to the Department's failure to obtain reliable evidence supporting the provisional fee, and due to Measure B's failure to limit the fee to that which suffices to provide for the cost of enforcement, or to provide parameters for setting fees in an amount sufficient to provide for enforcement, Defendants cannot satisfy their burden of demonstrating the permitting fees are reasonably related to the recoupment of the costs in administering Measure B.  *See Murdock*, 319 U.S. at 113-14; *Cox*, 312 U.S. at 577.

**D.      Measure B is Unconstitutionally Vague**

        Measure B's provisions and mandates are unconstitutionally vague.  It is basic First Amendment doctrine that the government cannot use a vague standard for the sensitive task of regulating constitutionally protected speech.  *E.g., Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) (if law threatens to inhibit exercise of constitutionally protected rights, like free speech, "a more stringent vagueness test should apply").  Imprecise speech restrictions are invalid for a number of reasons.  First, without clear guidelines, those subject to the restriction cannot understand what is forbidden and what is not.[7]  Second, a vague standard impermissibly chills speech, causing speakers to "steer far wider of the unlawful zone," *Speiser v. Randall*, 357 U.S. 513, 526 (1958), and to restrict their expression "to that which is unquestionably safe."

---

        [7] *See, e.g., Reno*, 521 U.S. at 871; *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *Gentile v. State Bar*, 501 U.S. 1030, 1048 (1991) (regulation of speech is unconstitutional when those subject to it can do no more than "guess at its contours"); *Trinity United Methodist Parish v. Board of Educ.*, 907 F.Supp. 707, 718 (S.D.N.Y. 1995) ("To avoid chilling the exercise of vital First Amendment rights, restriction of expression must be expressed in terms which clearly inform citizens of prohibited conduct and in terms susceptible of objective measurement.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Baggett v. Bullitt*, 377 U.S. 360, 372 (1964).  Third, restrictions on speech that lack clear limits afford government officials too much discretion to curb disfavored expression.[8]

Here, Measure B incorporates the use of several terms without definition and in many instances defines terms in language that would leave persons of common intelligence unsure as to their specific meaning, forcing them to necessarily guess as to what specific actions and/or characteristics would be subject to regulation.  *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012).  These terms include, but are not limited to "adult film," "exposure control plan," "producer of adult film," "principals, "management-level employees," "commercial purposes," "reasonably suspected," "hazardous condition," "interference," and other terms.

Measure B also incorporates several mandates without explanation, that are discretionary in nature, such that a person of common intelligence would be unsure as to their specific meaning, forcing them to necessarily guess as to what specific actions are required and/or prohibited under the regulation.  These mandates include, but are not limited to, the following (all emphases added):

i.   "Any permit issued pursuant to this chapter *may* be suspended or revoked . . . and fines . . . *may* be imposed . . . for a violation of this chapter *or any other violation of law* creating a risk" of sexually transmitted disease exposure   L.A. Cty. Code § 11.39.110.A.

ii.  "For permits that have been suspended or revoked, the notice of decision shall specify . . . the terms upon which the permit may be reinstated or reissued, *if any*."  *Id.* § 11.39.110.D.

---

[8] *See, e.g., Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988); *City of Houston v. Hill*, 482 U.S. 451, 468-69 n.18 (1987); *Kolender*, 461 U.S. at 358, 360; *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

   iii.   "Notwithstanding any other provision of this chapter, if any *immediate danger to the public health or safety* is found or is *reasonably suspected*, the department *may* immediately suspend the adult film production public health permit, initiate a criminal complaint *and/or* impose *any* fine permitted by this chapter ….  Immediate danger to the public health and/or safety shall include *any* condition, based upon inspection findings *or other evidence*, that *can* cause, or is *reasonably suspected* of causing, infection or disease transmission, or *any* known or *reasonably suspected hazardous condition*." *Id.* § 11.39.110.E.

   iv.   "The department may … modify, suspend, revoke *or* continue all such actions previously imposed upon a permittee … for violations of this chapter *or any other laws or standards affecting public health and safety* … or the exposure control plan of the permittee, *or any combination thereof*, or for *interference* with a county health officer[] …." *Id.* § 11.39.110.F.

   v.   "[T]he department may impose a fine on persons violating *any* provision of this chapter or *any law, regulation or standard incorporated into this chapter*." *Id.* § 11.39.120.C.

   vi.   "Any person or entity who … violates *any* law, ordinance or regulation governing *any activity regulated by this chapter* … is guilty of a misdemeanor." *Id.* at § 11.39.120.D.

   vii.   "The county health inspector may enter and inspect any location *suspected* of conducting *any activity regulated by this chapter* … and take possession of *any* sample . . . or other evidence, including any documents *bearing on* adult film producer's compliance with the provisions of the chapter." *Id.* § 11.39.130.

   viii.   "A civil action to enforce the provisions of this section may be brought by the county counsel, the district attorney or *any person directly affected* by said failure to comply …." *Id.* § 11.39.140.

The vagueness and subjective definitions of the above terms and mandates do not provide adequate guidance to those subject to Measure B, and do not make clear

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

what is forbidden and what is permissible.  This uncertainty, coupled in particular with the potential civil and criminal punishments for violation, necessarily will chill protected speech and expression.

In addition, the vagueness and subjective definitions of the above terms and mandates do not provide adequate guidance to law enforcement officers and Department officials, who themselves would have to necessarily guess as to the meaning of these terms and mandates and differ as to their application, thus giving government officials too much discretion in enforcement and potentially leading to differential application of the law.

## E.     Measure B is Underinclusive

Measure B cannot withstand either strict or even intermediate scrutiny to the extent it is unconstitutionally underinclusive.  Even if the government can demonstrate legitimate ends (which it does not here, as shown above), "when they affect First Amendment rights they must be pursued by means that are [not] seriously underinclusive[.]"  *Brown*, 131 S. Ct. at 2741-42 (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).  "Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  *Id*. at 2740.

Measure B claims to address the spread of HIV/AIDS and other sexually transmitted diseases in Los Angeles County.  *See generally* Measure B, §§ 2-3.  However, it applies only to adult films produced for a commercial purpose, to the exclusion of non-commercial films whose performers are exposed to risks (accepting *arguendo* the Measure's assumptions) that are the same as those for performers in commercial adult films.  L.A. Cty. Code § 11.39.080.  More importantly, Measure B fails to address the risks of sexually transmitted diseases to the overall population of Los Angeles County, of which the adult film industry is only a tiny percentage.  This drastic underinclusiveness suggests that Measure B is actually intended to disfavor and restrict constitutionally protected speech and expression involved in the creation

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of adult films, and to target and harm the adult film industry.  Accordingly, Measure B fails for multiple reasons under a strict scrutiny analysis.  Underinclusiveness is equally fatal under intermediate scrutiny, *see*, *e.g.*, *FCC v. League of Women Voters*, 468 U.S. 364, 396-98 (1984), and Measure B accordingly would be invalid even if that somewhat more forgiving standard were to apply.

## F.  Measure B Imposes An Unconstitutional System That Deprives Plaintiffs of Due Process

The Due Process Clause of the Fourteenth Amendment, guarantees that no person shall be deprived of life, liberty or property without due process of law.  U.S. Const. amend. XIV; *see also* Cal. Const. art. I, § 7.  To ensure this right, the Fourteenth Amendment requires "some form of hearing before an individual is finally deprived of a property interest."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Here, Plaintiffs have liberty and property interests in the expressive works they create through the exercise of their First Amendment rights, in the documents and other personal property used to create those works, and in their ongoing freedom to continue to create such works.  *See, e.g., Friedman v. Rogers*, 440 U.S. 1, 12 n.11 (1979) (protected property interests in means of communication); *Traverso v. People ex rel. Dep't of Transp.*, 6 Cal. 4th 1152, 1160-61 (1993) (broad due process protections for personal property under Federal and California law). Yet Measure B allows deprivation of those rights without prior notice or hearing.

More specifically, Measure B allows the Department to suspend or revoke, without prior hearing or any procedural safeguards whatsoever, the required permit for *any* alleged violation of Measure B's provisions *or* any alleged violation of *any other law* that may create a risk for performers of exposure to sexually transmitted infections.  L.A. Cty. Code § 11.39.110.A.  If a Measure B permit is suspended or revoked, work not only must stop on the production giving rise to the suspension or

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

revocation, but the producer cannot engage in *any* filming, thus prohibiting creation of other works. *Id.* § 11.39.080.C.  Any such producer whose permit is suspended or revoked has no recourse until *after* they lose the ability to work and exercise their First Amendment rights. *Id*. § 11.39.110.C.  In addition, if a permit is suspended, the Department may refuse, with unfettered discretion, to reinstate the permit, or to issue a new permit to a given producer. *Id.* § 11.39.110.D.  Thus, the Department has the ability – potentially for a single technical violation – to destroy, almost overnight, a producer's entire business, and to eliminate the jobs of its employees and contractors, without due process protections.  This is untenable under the Fourteenth Amendment.

In addition, under the Fourth Amendment, Plaintiffs have a liberty interest to be free from unreasonable searches and seizures of their persons, including their bodily fluids and other aspects of their physical persons, as well as a property interest to be secure from unreasonable searches and seizures within the private spaces where Plaintiffs engage in conduct that is filmed to create expressive works protected by the First Amendment. *See*, *e.g.*, *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989) (where the "Government seeks to obtain physical evidence from a person, the Fourth Amendment may be relevant at several levels"); *O'Rourke v. Hayes*, 378 F.3d 1201, 1207-08 (11th Cir. 2004) (workers have reasonable expectation of privacy under Fourth Amendment in area of place of business that is off-limits to the public, such that government officers must have a search warrant to enter those areas) (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978)).

The Fourth Amendment also contains a presumptive warrant requirement for government searches and seizures, *see Katz v. United States*, 389 U.S. 347, 357 (1967); *see also Johnson v. United States*, 333 U.S. 10, 14-15 (1948), and allows a warrantless search or seizure only if there is probable cause.  *See Carroll v. United States*, 267 U.S. 132, 155-56 (1925) (probable cause is a "reasonableness" standard for warrantless searches and seizures).  Yet Measure B allows Department inspectors to access, without notice, "any location" that is merely "*suspected* of conducting any

**Davis Wright Tremaine** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

activity [that is] regulated by" Measure B.  L.A. Cty. Code § 11.39.130 (emphasis

added).  Inspectors may then take possession of "any sample, photograph, record or

other evidence, including any documents" that "bears on" compliance with Measure

B, without any limitation or cause requirement.  *Id.*  This includes the authority to

seize personal property, private documents, and "samples" from any person present

at a location where an inspector "suspects" that activity regulated by Measure B is

occurring.  *Id.*

By not including a warrant requirement, the search and seizure provisions

of Measure B are presumptively invalid.  *See Katz*, 389 U.S. at 357.  In addition,

Measure B does not require an inspector to have probable cause before searching

a location or seizing items.  Instead, the inspector must only "suspect" activity

regulated by Measure B is occurring.  However, "suspicion" (or even "reasonable

suspicion," which is *not* the language used by Measure B), is a lesser standard than

probable cause, and therefore cannot satisfy the Fourth Amendment.[9]  Accordingly,

Measure B's provisions for searching individuals at locations suspected of being

regulated by Measure B, and for the seizure of all manner of personal items, fail

to satisfy the Fourth Amendment, and therefore are invalid.

## G.     Measure B Is Preempted By State Law

Plaintiffs are entitled to judgment as a matter of law independent of Measure

B's constitutional flaws because Measure B also is preempted by provisions of the

California Labor Code and related regulations, and as such is unenforceable and

void.  Charter counties have only such legislative authority as is expressly conferred

by the California Constitution and the laws of the state, such that if those sources do

not delegate particular authority, the authority remains with the Legislature.  *Younger*

---

[9]    *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("reasonable suspicion" is the standard applied to protective searches under *Terry v. Ohio*, 392 U.S. 1 (1968), but is a standard "less than probable cause" that does not authorize a constitutional search beyond that necessary to determine if a suspect is armed).

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*v. Board of Supervisors*, 93 Cal. App. 3d 864, 870 (1979).  Generally, a local ordinance is preempted by state law if the issue is deemed one of "statewide concern," or where the state's interest is deemed to be "more substantial" than that of the county. *California Fed. Savs. & Loan Ass'n v. City of Los Angeles*, 54 Cal. 3d 1, 18 (1991). Preemption also occurs when "local legislation duplicates, contradicts, or enters an area fully occupied by general [state] law, either expressly or by legislative implication."  *Rental Housing Ass'n of N. Alameda County v. City of Oakland,* 171 Cal. App. 4th 741, 752 (2009) (citation omitted).  *See also In re Portnoy*, 21 Cal. 2d 237 (1942) (supplemental regulations that conflict with state statutes preempted); *O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1067 (2007).  Moreover, "[i]f otherwise valid local legislation conflicts with state law, it is preempted by such law and is void." *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993).

In addition to being duplicative, a local ordinance can also be preempted "if it enters an area that is 'fully occupied' by general law" when the Legislature has expressly or impliedly manifested its intent to "fully occupy" via one of the following indicia of intent:  "1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; 2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or 3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality."  77 Ops. Cal. Atty. Gen. 147 (1994) (citation omitted).

### 1.    The State Has Exclusive Jurisdiction Over Workplace Safety

Measure B is preempted because it empowers the County to regulate employee workplace safety, even though State law preempts the field of employee workplace safety.  Cal-OSHA and the Standards Board have exclusive jurisdiction over the field of Occupational Safety and Health in the workplace, and state law specifically pre-

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

empts counties from regulating workplace health and safety standards related to transmission of blood borne pathogens.  In this regard, Cal-OSHA is the sole entity empowered to set blood borne pathogen regulations, and Labor Code section 142.3, subsection (a)(l) mandates that the Standards Board "shall be the only agency in the state authorized to adopt occupational safety and health standards."

This is reinforced by the regulations adopted by the Standards Board found in California Code of Regulations Title 8.  Labor Code section 142 provides that the Division of Occupational Safety and Health "shall enforce all occupational safety and health standards adopted pursuant to this chapter[.]"  *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal. 3d 762, 766-67 (1982).  Labor Code section 6307 adds that the Division "has the power, jurisdiction, and super-vision over every employment and place of employment in this state."

The state has exercised this exclusive authority to specifically regulate work-place transmission of blood borne pathogens.  Labor Code section 144.7 requires the Standards Board to adopt a blood borne pathogen standard.  Regulation 5193 is that standard, and requires all employees exposed to blood borne pathogens, including semen and vaginal secretions, be provided with "personal protective equipment" by employers.  Cal. Code of Regs. tit. 8, § 5193(b).  Regulation 5193 and Labor Code section 144.7 apply to adult film performers and include the required use of condoms in the adult film industry.  The State legislature has stated that the Standards Board has exclusive jurisdictions over conflicting occupational health and safety standards.  *See* Cal. Lab. Code § 1173.

In view of this detailed regulatory framework, the State of California expressly intends to occupy the field with regard to workplace safety.  "California has actively asserted jurisdiction over all places of employment with California since 1917.  Ex-ceptions to the broad claims of jurisdiction have been narrowly construed."  *In re SAIC*, Cal/OSHA App. 03-2201, 2009 WL 1204886  (2009); *United Air Lines*, 32 Cal. 3d 762; *In re JS Brower & Assocs., Inc.* Cal/OSHA App. 77-1315 (1980); *In*

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*re Sacramento Mun. Util. Dist.*, Cal/OSHA App. 00-1136, 2001 WL 427621 (2001) (employer has burden to prove exception to jurisdiction exists).  Moreover, "[u]nder the Labor Code, the Division (referring to Cal-OSHA) has jurisdiction over every employment and place of employment of California. (Labor Code section 6307.)" *In re SAIC*, Cal/OSHA App. 03-2201.  *See also* Lab. Code §§ 6307, 6304.1, 6304/3003, 144.5, 144, 144.7, 142.3.

In addition to expressly occupying the field, the state can impliedly occupy the field of a particular area.  "[I]n determining whether the State has preempted the field, the courts will look to the 'whole purpose and scope of the legislative scheme' and will determine whether the field is one which requires uniform regulation throughout the state."  43 Ops. Cal. Atty. Gen. 261, 262 (1964) (citations omitted).  Regarding workplace safety, the Legislature has enacted a comprehensive statutory scheme that covers multiple areas, including Hazardous Substances Information and Training (Section 6360).  *See also* Sections 6300-6700.

Regarding workplace safety, the legislative scheme is lengthy and thorough – implying that the Legislature intended to occupy the field, in addition to expressing its intent.  Moreover, it can reasonably be implied that the Legislature intended the State retain jurisdiction over occupational safety and health regulations adopted by the Standards Board, as the Legislature requires all agencies other than the Department of Industrial Relations (which oversees the Occupational Safety and Health Standard Board) to enter written agreements with the State before assisting with implementation of any of the Standard Board's statutes, including Labor Code § 144.7.

## 2. Measure B is Preempted

Measure B is clearly preempted in view of the detailed web of state-level legislation and regulation outlined above, as Measure B duplicates Regulation 5193 and/or Labor Code § 144.7.  Measure B provides that "Any person or entity issued a permit for the filming of an adult film" must "maintain engineering and work practice controls sufficient to protect **employees** from exposure to blood and/or any

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

other potentially infectious materials controls, in a matter consistent with **California Code of Regulations, Title 8, Section 5193.**" L.A. Cty. Code § 22.56.1925(C). Measure B is thus premised on a regulation adopted by the Standards Board and is enforceable to protect employees. Thus, Measure B requires the County to enforce the Standard Board's blood borne pathogen regulation with regard to employees, which the Legislature gave Cal-OSHA exclusive jurisdiction over.

Moreover, California has expressly demonstrated an intent to fully occupy the field of workplace exposure to blood borne pathogen with respect to the regulations adopted by the Standards Board, codified in Labor Code § 140, *et seq*. The Legislature also has implied its intent through its comprehensive statutory scheme and by requiring cooperative agreements to enforce regulations adopted by the Standards Board. For this additional, independent reason, Measure B is preempted.

The County cannot evade preemption by imposing local permit conditions. Measure B grants the County the ability to condition film permits on occupational safety and health standards adopted by the Standards Board, against employees, for which the County is preempted from regulating. But when a county is preempted from regulating a certain area of law, courts have held, a permit condition that duplicates state law cannot be used as a vehicle to avoid or circumvent preemption. *See e.g. City of Rancho Palos Verdes v. Abrams*, 101 Cal. App. 4th 367 (2002) (FCC has exclusive jurisdiction over radio communication so city could not require permits for ham radio operators). *See also People ex rel. Sneddon v. Torch Energy Servs., Inc.*, 102 Cal. App.4th 181 (2002). The California Attorney General has reached similar conclusions. *See* 60 Ops. Cal. Atty. Gen. 44 (1977) (Health & Safety Code occupies field of housing discrimination so county could not require anti-discrimination marketing as part of issuing building permits).

Together, by imposing workplace safety measures regarding blood borne pathogens, Measure B intrudes on an area where Cal-OSHA has exclusive jurisdiction, and where California has expressly occupied the field, via Labor Code § 144.7 and

California Code of Regulations Title 8, § 5193.  Accordingly, Measure B is pre-empted, and judgment should be entered on that basis as well.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiff judgment on the pleadings, by issuing a declaration that Measure B is unconstitutional and/or preempted by California state law.[10]

DATED: July 5, 2013             DAVIS WRIGHT TREMAINE LLP
                                By:   /s/ Matthew D. Peterson
                                       Matthew D. Peterson

                                Attorneys for Plaintiffs
                                VIVID ENTERTAINMENT, LLC; CALIFA
                                PRODUCTIONS, INC.; JANE DOE a/k/a Kayden
                                Kross; and JOHN DOE a/k/a Logan Pierce

---

[10]   With such a declaration, permanent injunctive relief should not be necessary.  *See*, *e.g.*, *Conley v. Dauer*, 463 F.2d 63, 67 n.14 (3d Cir. 1972); *Reich v. Malcolm Pirnie, Inc.*, 821 F.Supp. 905, 910 (S.D.N.Y. 1993); *Wearly v. FTC*, 462 F.Supp. 589, 604 (D.N.J. 1978), *vacated on other grounds*, 616 F.2d 662 (3d Cir. 1980); *Everlasting Dev. Corp. v. Sol Luis Descartes*, 95 F.Supp. 954, 957 (D.P.R.), *aff'd*, 192 F.2d 1 (1st Cir. 1951).  However, in view of the showing in this Motion, Plaintiffs would be able to satisfy the traditional test for injunctive relief, *i.e.*, actually succeeding on the merits, a likelihood of irreparable harm, a balance of hardships that favors them, and advancement of the public interest.  *E.g.*, *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1084 (C.D. Cal. 2012).  *See also generally* Plaintiffs' Motion for Preliminary Injunction, filed concurrently herewith.

25

REINSTATED MOTION FOR JUDGMENT ON THE PLEADINGS          DAVIS WRIGHT TREMAINE LLP
                                                         865 S  FIGUEROA ST, SUITE 2400
                                                         LOS ANGELES, CALIFORNIA 90017-2566
                                                         (213) 633-6800
                                                         Fax: (213) 633-6899

# DECLARATION OF JANET L. GRUMER

I, Janet L. Grumer, declare and state as follows:

1.     I am an attorney licensed to practice law before all the courts of the State of California and before this Court.  I am an attorney in the law firm of Davis Wright Tremaine LLP, and one of the attorneys for Plaintiffs VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE A/K/A KAYDEN KROSS; AND JOHN DOE A/K/A LOGAN PIERCE, in this action .  The matters stated below are true of my own personal knowledge.

2.     On March 26, 2013 at approximately 11:00 a.m., Robert Corn-Revere and I spoke with John Ly, counsel for Defendants JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES (together, "Defendants") regarding Plaintiffs' intention to file a Motion for Judgment on the Pleadings under Rule 12(c).  We discussed the issues to be addressed in the motion and potential resolution.  Mr. Ly indicated that Defendants planned to remain neutral on the issue of the constitutionality of Measure B, but that Defendants would not agree to the relief requested by Plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed at Los Angeles, California on April 3, 2013.


                        ___/s/ Janet L. Grumer_____
                            Janet L. Grumer

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899