1   Tom Myers (SBN 176008)
    E-Mail: tom.myers@aidshealth.org
2   Samantha R. Azulay (SBN 283424)
    E-Mail: samantha.azulay@aidshealth.org
3   Christina Yang (SBN 266363)
    E-Mail: christina.yang@aidshealth.org
4
5   AIDS Healthcare Foundation
    6255 W. Sunset Blvd., 21st FL
6   Los Angeles, CA 90028
7   Phone: 323-860-5200
    Fax: 323-467-8450
8   *Attorneys for Intervenors*

9
## UNITED STATES DISTRICT COURT
10
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11  VIVID ENTERTAINMENT, LLC;             )   Case No.:  13-CV-00190-DDP-AGR
12  CALIFA PRODUCTIONS, INC.;             )
    JANE DOE a/k/a Kayden Kross; and      )   **INTERVENORS' MEMORANDUM**
13  JOHN DOE a/k/a Logan Pierce,          )   **OF POINTS AND AUTHORITIES**
                                          )   **IN OPPOSITION TO PLAINTIFFS'**
14                                        )   **MOTION FOR**
                                          )   **RECONSIDERATION OF**
15              Plaintiffs,               )   **COURT'S ORDER OF APRIL 16,**
                                          )   **2013, GRANTING INTERVENORS'**
16         vs.                            )   **MOTION TO INTERVENE**
                                          )
17  JONATHAN FIELDING, Director of        )   Date:,      August 12, 2013
18  Los Angeles County Department of      )   Time:       10:00 a.m.
    Public Health, JACKIE LACEY, Los      )   Judge:      Dean D. Pregerson
19  Angeles County District Attorney, and )   Location:   Courtroom 3
    COUNTY OF LOS ANGELES,                )
20                                        )
21              Defendants, and           )
                                          )
22                                        )
    MICHAEL WEINSTEIN, MARIJANE           )
23  JACKSON, ARLETTE DE LA CRUZ,          )
    MARK MCGRATH, WHITNEY                 )
24  ENGERAN, and the CAMPAIGN             )
25  COMMITTEE YES ON B, MAJOR             )
    FUNDING BY THE AIDS                   )
26  HEALTHCARE FOUNDATION                 )
                                          )
27                                        )
28              Defendants-Intervenors.   )

---

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

I.      LEGAL STANDARD ............................................................................ 2

II.     *HOLLINGSWORTH* DID NOT ADDRESS INTERVENOR
STANDING AT THE DISTRICT COURT LEVEL; AND TO
ANY EXTENT IT DID, IT VALIDATED BALLOT
INITIATIVE SPONSORS' STANDING AT THE DISTRICT
COURT LEVEL ................................................................................... 3

       A.    The Analysis In Hollingsworth Only Reaches Appellate
Standing ................................................................................... 3

       B.    Applying Hollingsworth Beyond Its Narrow Ruling
Would Result In Poor Policy And Improper
Policymaking By The Courts ..................................................... 5

III.    THE NINTH CIRCUIT DOES NOT REQUIRE
INTERVENORS TO MAKE A SEPARATE SHOWING OF
ARTICLE III STANDING ..................................................................... 7

       A.    The Ninth Circuit Does Not Require That Proposed
Intervenors Make An Independent Showing Of Article III
Standing At This Stage Of The Proceedings ............................. 7

IV.    INTERVENORS NEED NOT MAKE AN INDEPENDENT
SHOWING OF STANDING BECAUSE THEY MAY
PIGGYBACK ON PLAINTIFFS' AND DEFENDANTS'
JURISDICTIONAL SHOWING ........................................................... 9

V.     INTERVENORS HAVE IN FACT MET ARTICLE III
STANDING REQUIREMENTS ......................................................... 11

       A.    Intervenors Have A Concrete And Particularized Interest
To Support Their Standing With Regard To All Seven
Causes Of Action. ................................................................. 11

            1.    It Is Indisputable That Intervenors Have Standing
To Defend Against The State Preemption Claim .......... 13

       B.    Proposed Intervenors Satisfy Article III Standing
Implicitly, Because They Show A "Significantly
Protectable Interest" Under Rule 24(a)(2) .............................. 14

VI.    WITHOUT INTERVENORS, THERE IS NO CASE AND CONTROVERSY TO CONFER JURISDICTION IN THIS MATTER ........................................................................... 15

VII.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THIS MATTER ......................................... 17

     A.    Considerations of Discretionary Abstention............................ 18

         1.    The Court Should Abstain Under the Doctrine of *Burford* Abstention ......................................................... 18

            a.    Issues Of State Law That Are Of Importance Exist Here ....................................................... 19

            b.    Other Factors Support Abstention In This Case .................................................................... 21

         2.    The Court Should Abstain Under the Doctrine of *Pullman* Abstention ......................................................... 22

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acosta v. City of Costa Mesa*,
No. 10-56854, 2013 U.S. App. LEXIS 9066 (9th Cir. May 3, 2013) .................. 20

*Allen v. Wright*,
468 U.S. 737 (1984) ........................................................................................ 7

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
843 F.2d 1253 (9th Cir. 1988) ................................................................... 21-22

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) .......................................................................................... 4

*Associated Builders & Contractors v. Perry*,
16 F.3d 688 (6th Cir. 1994) ............................................................................ 9

*Baker v. Carr*,
369 U.S. 186 (1962) ...................................................................................... 16

*Bartemeyer v. Iowa*,
85 U.S. 129 (1973) ........................................................................................ 16

*Baur v. Veneman*,
352 F.3d 625 (2nd Cir. 2003) ........................................................................ 12

*Bryant v. Yellen*,
447 U.S. 352 (1980) ..................................................................................... 1, 8

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) ................................................................................. 19, 20

*Cal. Dep't of Soc. Servs. v. Thompson*,
321 F.3d 835 (9th Cir. 2003) .......................................................................... 8

*California ex rel. Lockyer v. USDA*,
No. C05-03508 EDL (consolidated with No. C05-04038 EDL), 2006 U.S. Dist.
LEXIS 20149 (N.D. Cal. Mar. 31, 2006) ....................................................... 11

*Carroll v. Nakatani,*
  342 F.3d 934 (9th Cir. 2003)................................................................ 3

*Citizens United v. FEC,*
  130 S. Ct 876 (2010) ......................................................................... 9

*City of Lakewood v. Plain Dealer Publishing Co.,*
  486 U.S. 750 (1988) ......................................................................... 20

*Clapper v. Amnesty Int'l USA,*
  568 U.S. __ (2013) ............................................................................ 7

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976) ......................................................................... 18

*Commack Self-Service Kosher Meats v. Rubin,*
  170 F.R.D. 93 (E.D.N.Y. 1996) ...................................................... 11

*Diamond v. Charles,*
  476 U.S. 54 (1986) ............................................................................ 4

*Doe v. Harris,*
  No.C12-5713, 2013 U.S. Dist. LEXIS 4215 (N.D. Cal. Jan. 10, 2013) ............... 8

*Don't Bankrupt Washington Committee v. Continental Ill. Nat. Bank & Trust Co.*
  *of Chicago,*
  460 U.S. 1077 (1983) ........................................................................ 4

*Erie v. Pap's A.M.,*
  529 U.S. 277 (2000) ......................................................................... 21

*Essex v. Kobach,*
  No. 12-4046-KHV-JWL, 2012 U.S. Dist. LEXIS 72799 (D. Kan. May 25, 2012)
  .......................................................................................................... 11

*Flast v. Cohen,*
  392 U.S. 83 ...................................................................................... 16

*Flores v. Arizona,*
  516 F.3d 1140 (9th Cir. 2008) ........................................................... 8

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

*Freedom From Religion Foundation, Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011)...................................................................... 9
*Harvest v. Castro*,
  531 F.3d 737 (9th Cir. 2008)...................................................................... 2
*Hollingsworth v. Perry,* No. 12-144, 2013 U.S. LEXIS 4919 (June 26, 2013), 570
  U.S. __, No. 12-144 ........................................................................*passim*
*Horne v. Flores*,
  557 U.S. 433 (2009)................................................................................... 8
*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995).................................................................... 15
*Karcher v. May*,
  484 U.S. 72 (1987)..................................................................................... 4
*Kinetics Noise Control, Inc. v. ECORE Int'l, Inc.*,
  No. CV 10-7902 PSG (JEMx), 2011 U.S. Dist. LEXIS 32294 (C.D. Cal. Mar. 14,
  2011) .......................................................................................................... 3
*Kootenai Tribe of Idaho v. Veneman*,
  313 F.3d 1094 (9th Cir. 2002).................................................................. 10
*Lord v. Veazie*,
  49 U.S. 251 (1850)................................................................................... 16
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1991)............................................................................ 11, 12
*McConnell v. FEC*,
  540 U.S. 93 (2003)..................................................................................... 9
*Mills v. Green*,
  159 U.S. 651 (1895).................................................................................. 15
*Mullens v. Harrington*,
  No. CV 09-9118-RSWL (DTB), 2013 U.S. Dist. LEXIS 16219 (9th Cir. Feb. 5,
  2013) .......................................................................................................... 2

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

*Nakash v. Marciano*,

  882 F.2d 1411 (9th Cir. 1989)................................................................. 21

*Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory*

  *Com.*, 578 F.2d 1341 (10th Cir.1978) ................................................ 11

*Perry v. Schwarzenegger*,

  704 F. Supp. 2d 921 (N.D. Cal. 2012) ........................................... 4, 5

*Pickup v. Brown*,

  No. 2:12-CV-02497, 2012 U.S. Dist. LEXIS 172027 (E.D. Cal. Dec. 4, 2012) ... 7

*Portland Audubon Soc. v. Hodel*,

  866 F.2d 302 (9th Cir. 1989)................................................................. 14

*Prete v. Bradbury*,

  438 F.3d 949 (9th Cir. 2006)................................................................. 15

*Quackenbush v. Allstate*,

  517 U.S. 706 (1996) ............................................................................. 18

*Railroad Commission v. Pullman Co.*,

  312 U.S. 496 (1941) ..................................................................... 22, 23

*Ruiz v. Estelle*,

  161 F.3d 814 (5th Cir. 1998).................................................................. 9

*Sierra Club v. U. S. EPA*,

  995 F.2d 1478 (9th Cir. 1993).............................................................. 10

*Southwest Ctr. for Biological Diversity v. Berg*,

  268 F.3d 810 (9th Cir. 2001)................................................................ 14

*Stockton Firefighters' Local 456, Int'l Ass'n of Firefighters v. City of Stockton*,

  No. 10-cv-01828 FCD GGH, 2010 U.S. Dist. LEXIS 102286 (E.D. Cal. Sept. 28,

  2010) .................................................................................................... 22

*Trbovich v. United Mine Workers of America*,

  404 U.S. 528 (1972) ............................................................................... 8

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

*Tucker v. First Md. Sav. & Loan, Inc.,*
  942 F.2d 1401 (9th Cir. 1991).................................................................. 19

*Tucson Women's Ctr. v. Ariz. Med. Bd.,*
  No. CV-09-1909, 2009 U.S. Dist. LEXIS 113948, at *3-4 (D. Ariz. Nov. 24,
  2009) ......................................................................................................... 15

*U.S. v. Freuhauf,*
  365 U.S. 146 (1961) .................................................................................. 16

*U.S. v. Johnson,*
  319 U.S. 302 (1943) .................................................................................. 16

*U.S. v. Windsor,*
  No. 12-307, 2013 U.S. LEXIS 4921 (June 26, 2013) .................................. 15, 16

*United States v. Imperial Irrigation Dist.,*
  559 F.2d 509 (9th Cir. 1977).................................................................... 1, 7-8

*Wilderness Soc'y v. United States Forest Serv.,*
  630 F.3d 1173 (9th Cir. 2011).................................................................. 10

*Yniguez,*
  939 F.2d at 731 ......................................................................................... 8

**STATE CASES**

*Common Cause v. Board of Supervisors,*
  49 Cal.3d 432 (1989)................................................................................ 13

*Urban Habitat Program v. City of Pleasanton,*
  164 Cal. App. 4th 1561 (2008).................................................................. 13

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

Cal. Elec. Code § 9100 *et seq* ...................................................................... 6

Federal Rule of Civil Procedure 60(b)(6)...................................................... 2

Federal Rule of Civil Procedure Rule 24(a) ................................................. 5

Federal Rules of Civil Procedure Rule 24 .................................................... 4, 8

Local Rule 7-18 ............................................................................................... 3
U.S. Const. art. III, §2, cl. 1 ........................................................................... 15

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

The official proponents and campaign committee for Measure B, Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Intervenors"), submit the following Memorandum in Opposition to Plaintiffs' Motion for Reconsideration of Court's Order of April 16, 2013.

## INTRODUCTION

Plaintiffs' Motion for Reconsideration makes one simple argument—that the United States Supreme Court's decision in *Hollingsworth v. Perry,* No. 12-144, 2013 U.S. LEXIS 4919 (June 26, 2013), 570 U.S. __, No. 12-144 (slip op.) (hereafter "*Hollingsworth*")[1] to deny Proposition 8 intervenors the right to appeal the District Court's decision based upon a lack of Article III standing, necessarily means that Intervenors in this case lack Article III standing here in the District Court.  Plaintiffs are wrong.  *Hollingsworth* does not change the status or propriety of Intervenors' right to intervene in this matter as it decided a much more narrow issue–that is, the authority of a particular intervenor to appeal a judgment that did not order relief from that intervenor, and where no other parties sought to appeal. Such is not the case here.

Further, the Ninth Circuit has expressly held that intervenors need not demonstrate Article III standing in order to intervene in the lower courts.  *See*, *e.g.*, *United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 521 (9th Cir. 1977), *rev'd sub nom. and vacated on other grounds*, *Bryant v. Yellen*, 447 U.S. 352 (1980). This long-established precedent remains law within the Ninth Circuit.

In addition, Intervenors have shown that they do possess Article III standing in that they have a personal stake in the enforcement of the Safer Sex in the Adult

---

[1] Page numbers referenced in this Opposition coincide with the 2013 U.S. LEXIS 4919 citation rather than the Slip Opinion.

1   Film Industry Act, Title 11, Division 1, Chapter 11.39 of the Los Angeles County

2   Code ("Measure B") because of their own risk of contracting a disease.  Further,

3   Intervenors' demonstration of a "significantly protectable interest" under Rule 24

4   implicitly satisfies Article III.  Accordingly, this Court should deny Plaintiffs'

5   Motion for Reconsideration of the Court's April 16, 2013 Order.

6       In any event, and especially if Intervenors are denied the full opportunity to

7   participate in this matter, the Court should dismiss this case in its entirety, based

8   upon: (1) lack of jurisdiction for failure to satisfy the "case" and "controversy"

9   requirement of Article III; and (2) principles of abstention dictating that the

10   appropriate forum for these constitutional questions is a State court of California.

11       This is no ordinary case.  The law at issue is the result of direct democracy; a

12   ballot initiative passed by a majority of Los Angeles County voters.  Undeniably, it

13   expresses the will of the people.  Without Intervenors, there is no one in this case

14   to defend that will.  Further, even if the Court affirms its decision to allow

15   Intervenors in the case, since Intervenors potentially could not appeal an adverse

16   decision, the more appropriate forum is a California State court.  Because

17   Intervenors and/or the citizens of Los Angeles County would have full rights in the

18   California State courts to defend Measure B, and because uniquely Californian

19   issues are a predominant part of this case, the Court should abstain from exercising

20   jurisdiction over this matter.

21                           **ARGUMENT**

22   **I.    LEGAL STANDARD**

23       Federal Rule of Civil Procedure 60(b)(6) is a catch-all provision that allows

24   relief from a court order for "any other reason that justifies relief."

25   Reconsideration of a decision, however, is to be "used sparingly as an equitable

26   remedy to prevent manifest injustice."  *See Mullens v. Harrington*, No. CV 09-

27   9118-RSWL (DTB), 2013 U.S. Dist. LEXIS 16219, at **6-7 (9th Cir. Feb. 5,

28   2013) (citing *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (internal

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

quotation marks omitted)).  Motions for reconsideration are a "tightly guarded remedy" and should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."  *See Kinetics Noise Control, Inc. v. ECORE Int'l, Inc.*, No. CV 10-7902 PSG (JEMx), 2011 U.S. Dist. LEXIS 32294, at *4 (C.D. Cal. Mar. 14, 2011) (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)).

Similarly, Local Rule 7-18 provides that a motion for reconsideration of the decision on any motion may be made only on three grounds, including "a *material* difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision."  L.R. 7-18 (emphasis added).

Here, Plaintiffs do not present the Court with "highly unusual circumstances" nor do they present the Court with a material change in controlling law.  The Court in *Hollingsworth* did not address intervenor standing at the lower court level, and therefore did not change well-established Ninth Circuit precedent.

## II.  *HOLLINGSWORTH* DID NOT ADDRESS INTERVENOR STANDING AT THE DISTRICT COURT LEVEL; AND TO ANY EXTENT IT DID, IT VALIDATED BALLOT INITIATIVE SPONSORS' STANDING AT THE DISTRICT COURT LEVEL

### A.  The Analysis In Hollingsworth Only Reaches Appellate Standing

The precise issue presented to the Supreme Court in *Hollingsworth* was whether petitioners/intervenors there had standing to appeal the District Court's judgment when no other parties appealed.  *See Hollingsworth* at *16.  The exact ruling of the case was that the proponents did not have standing to appeal the decision of the District Court because they had not been ordered by the Court to do or refrain from doing anything.  *Hollingsworth* at *34.

The case in no way directly touched upon whether the District Court's grant of intervention, and whether the presence of the proponents in the District Court, was proper. Thus, this Court's statement that the United States Supreme Court has not explicitly addressed the issue of whether proposed intervenors must independently fulfill the requirements of Article III standing, remains true. (April 16, 2013 Order at 4, Dkt. 44).

It is no coincidence that every single case on which the *Hollingsworth* Court based its opinion regarding Proposition 8 proponents' standing, involved an intervenor who wished to appeal a lower court decision.[2] In none of these cases did the Supreme Court opine about the propriety of intervenor standing at the District Court level. In fact, there is no mention in the *Hollingsworth* opinion of the District Court's analysis under Rule 24 of the Federal Rules of Civil Procedure, nor was there even any mention of Rule 24 itself. Thus, *Hollingsworth* drew no conclusions regarding an intervenor proponent's right to participate in a case at the District Court level under Rule 24.

If there is any conclusion to be drawn from *Hollingsworth* regarding standing at the District Court level, it is that the Proposition 8 intervenors were appropriately allowed to intervene in the case —*Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2012). The Supreme Court left that decision by the lower

---

[2] *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997) (dismissing proponents/intervenors who sought to appeal the lower court's decision that a law restricting abortion was unconstitutional); *Diamond v. Charles,* 476 U.S. 54, 62 (1986) ("Standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess 'a direct stake in the outcome.'")*; Karcher v. May,* 484 U.S. 72 (1987) (after District Court and Court of Appeals decisions, legislators lost their standing to appeal to the United States Supreme Court because they lost the leadership positions that conferred them standing in the first place); *Don't Bankrupt Washington Committee v. Continental Ill. Nat. Bank & Trust Co. of Chicago,* 460 U.S. 1077 (1983) (dismissing initiative proponent's appeal from a decision holding the initiative unconstitutional).

court in *Perry* intact, and therefore indirectly affirmed that their participation in the underlying trial court was proper.  Specifically, the District Court in *Perry* did not require the Proposition 8 intervenors to demonstrate Article III standing.  *See* Order Granting Motion to Intervene at 2-3, *Perry*, 704 F. Supp. 2d 921 (attached hereto as Exhibit A).  The District Court analyzed intervention under Federal Rule of Civil Procedure Rule 24(a), and did not discuss the Article III "Case or Controversy" requirement.  *See id.*   Again, *Hollingsworth* did nothing to change this decision.

Plaintiffs dispute that the *Hollingsworth* decision is limited to parties at the appellate stage of litigation by pointing out that the Justices in *Hollingsworth* affirmed the principle that "Article III demands that an actual 'controversy' persist throughout all stages of litigation" and "must be met by persons appearing in courts of the first instance."  (Reconsideration Motion at 7:10-13) (citing *Hollingsworth* at *16).  But Plaintiffs' deduction from these legal principles fails; the requirement of a controversy at each stage of the litigation does not mean that Intervenors need to make an independent showing of standing.  As explained below in Section IV, once another party confers jurisdiction upon a court, an intervenor may piggyback on that party's standing.

### B.    Applying Hollingsworth Beyond Its Narrow Ruling Would Result In Poor Policy And Improper Policymaking By The Courts

To interpret *Hollingsworth* any more broadly would essentially gut direct citizen lawmaking through the ballot initiative process, and render it empty and meaningless.  It would mean that government officials would now have the power to nullify any voter-approved ballot measure they disagree with simply by declining to defend the measure in court.   This is particularly damaging to basic democratic principles because, as was the case here, ballot measures are raised and passed precisely because the government has failed to act to address the perceived

issue.[3]  Specifically, when citizens are frustrated that their elected officials are not passing necessary legislation, they may initiate a ballot measure.  The same government officials who would not enact this legislation will almost certainly refuse to adopt the measure once the proponents of the measure present it to them after the requisite signatures are gathered, thus causing the measure to be placed on a ballot.  Once the ballot measure is passed by a majority of the voters, all a plaintiff must do to invalidate this people's initiative, is to challenge the initiative, making sure to shop for a federal forum.  And there, the same government officials that refused to enact the legislation and refused to adopt the ballot initiative, need only decline to defend the new law.  If these officials do not defend the law, and as Plaintiffs submit, proponents are not authorized to participate in this case, then most likely the law will not receive a defense.  The validity of the new law would be left in the hands of one Honorable District Court Judge who, because there would be no party in Court to defend the law and paint a full picture for the Court to make an informed decision, would only have a limited sense of what the law is, and why it came to pass.

To take such a holding from *Hollingsworth* would diminish the rights of all Californians and essentially eviscerate the California Elections Code.  *See* Cal. Elec. Code § 9100 *et seq*.  In fact, this broad interpretation of *Hollingsworth* would have widespread effects on all 27 states that have elections codes allowing ballot initiatives by the people.  Not only is this poor policy, but it runs against the very principles set forth by the *Hollingsworth* Court: "The doctrine of standing we

---

[3]   In the case of Measure B, prior to its enactment, two branches of government - the courts and the Los Angeles County government - rejected citizen efforts to address STD infection during filmmaking.  *See AIDS Healthcare Foundation v. Los Angeles County Dep't of Public Health*, Verified Petition for Writ of Mandate, LASC Case No. BS121665 (filed July 16, 2009) (attached as Exhibit B to Request for Judicial Notice in support of Intervenors' Opposition to Plaintiffs' Motion for Judgment on the Pleadings).

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

recently explained, 'serves to prevent the judicial process from being used to usurp the powers of the political branches.'" *See Hollingsworth* at **15-16 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. __ (2013)). The Court explained that the requirement of cases or controversies "is an essential limit on our power: It ensures that we act *as judges*, and do not engage in policymaking properly left to elected representatives." *Id.* at *9 (emphasis in the original); *see also Allen v. Wright*, 468 U.S. 737 (1984) ("The law of Art. III standing is built on a single basic idea - the idea of separation of powers.") (internal citations omitted). To prohibit ballot initiative proponents access to the trial court through the intervention procedures of Rule 24 would do just that—allow a federal court to make policy regarding a state law.

The Supreme Court Justices certainly did not intend for their narrow court ruling in *Hollingsworth* to have this kind of sweeping effect.

**III.  THE NINTH CIRCUIT DOES NOT REQUIRE INTERVENORS TO MAKE A SEPARATE SHOWING OF ARTICLE III STANDING**

*A.  The Ninth Circuit Does Not Require That Proposed Intervenors Make An Independent Showing Of Article III Standing At This Stage Of The Proceedings*

Under well-established Ninth Circuit law, Article III standing requirements are not applicable to Intervenors in District Court proceedings. The reason for this is that the Ninth Circuit has not required that proposed intervenors independently demonstrate Article III standing where they seek to intervene at the outset of the litigation. *See Pickup v. Brown*, No. 2:12-CV-02497, 2012 U.S. Dist. LEXIS 172027, at *3-4 n.1 (E.D. Cal. Dec. 4, 2012).

Though a circuit court split exists as to whether a proposed intervenor must establish Article III standing independently of other parties, and the United States Supreme Court has not yet explicitly resolved this issue, courts within the Ninth Circuit do not require proposed intervenors to demonstrate Article III standing. *See, e.g.*, *United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 521 (9th Cir.

1977), *rev'd sub nom. and vacated on other grounds*, *Bryant v. Yellen*, 447 U.S. 352 (1980) ("A party seeking to intervene pursuant to Rule 24, Federal Rules of Civil Procedure, need not possess the standing necessary to initiate the lawsuit.") (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972)); *Yniguez*, 939 F.2d at 731 ("In order for an individual to intervene in ongoing litigation between other parties, he need only meet the *Sagebrush Rebellion* [Rule 24(a)(2)] criteria."); *Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 845-46 (9th Cir. 2003) (noting that intervenor "did not need to meet Article III standing requirements to intervene") (internal citations omitted); *Flores v. Arizona*, 516 F.3d 1140, 1165 (9th Cir. 2008), *rev'd and remanded on other grounds*, *Horne v. Flores*, 557 U.S. 433 (2009) ("Parties need not have standing to intervene in our circuit . . .") (internal citations omitted).

Moreover, where, as here, intervenors are the official backers of a ballot initiative being challenged by a lawsuit, the Ninth Circuit does not require that these proposed intervenors demonstrate the requirements of Article III standing. *See, e.g.*, *Sagebrush Rebellion*, 713 F.2d at 527 (without requiring that proposed intervenors demonstrate Article III standing, holding that a "public interest group [is] entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported"); *Doe v. Harris*, No. C12-5713, 2013 U.S. Dist. LEXIS 4215, at *5-6 (N.D. Cal. Jan. 10, 2013) (proponents of ballot proposition "are not required to demonstrate that they have independent Article III standing in order to be permitted to intervene in this action") (internal citations omitted). Accordingly, Intervenors – as the official proponents and campaign committee of Measure B – need not show Article III standing in order to intervene in the District Court case.

Again, the Supreme Court in *Hollingsworth* did not address an official proponent's right to intervene under Rule 24, and thus it remains long-established

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

precedent within the Ninth Circuit to allow proponents of ballot initiatives to intervene.

## IV.   INTERVENORS NEED NOT MAKE AN INDEPENDENT SHOWING OF STANDING BECAUSE THEY MAY PIGGYBACK ON PLAINTIFFS' AND DEFENDANTS' JURISDICTIONAL SHOWING

Courts have almost always held that where a case or controversy exists between the original parties, Article III's jurisdictional requirement is satisfied, and intervenors need not independently establish Article III standing. *See, e.g., McConnell v. FEC*, 540 U.S. 93, 233 (2003), *overruled in part by Citizens United v. FEC*, 130 S. Ct 876 (2010) (affirming grant of intervention because the original defendant had standing); *Ruiz v. Estelle,* 161 F.3d 814, 830 (5th Cir. 1998) (agreeing with cases that held that the Article III standing doctrine serves primarily to guarantee the existence of a "case" or "controversy" appropriate for judicial determination, and does not require each and every party in a case to have such standing.); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) ("An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing.).   "Once a valid case-or-controversy under U.S. Const. art. III is present, a court's jurisdiction vests." *Ruiz,* 161 F.3d at 832.

For example, plaintiffs in *McConnell* argued that intervenors should be dismissed for lack of standing to appeal the lower court's decision. *See McConnell*, 540 U.S. at 233. The Supreme Court rejected the plaintiffs' argument, finding that because the other defendant had standing sufficient to establish jurisdiction with the Court, the Court need not address intervenors' standing. *See id.* And even more recently, in *Freedom From Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th Cir. 2011), the Ninth Circuit held that proposed intervenors in federal-question cases are not required to demonstrate "independent jurisdictional grounds" to support an application for intervention

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

where the intervenor does not seek to bring any counterclaims or cross-claims. The Ninth Circuit explained that where a proposed intervenor in a federal question case does not seek to bring new claims, there is no concern over improperly enlarging federal jurisdiction. *See id.*

*Hollingsworth* did not alter this line of precedent. The point of the Supreme Court's decision in *Hollingsworth* is that in order for the appellate court to hear a case, a party must have standing to confer jurisdiction upon the Court. In *Hollingsworth*, the original parties did not appeal, and the District Court's judgment did not order Proposition 8 intervenors to do anything or refrain from doing anything, so intervenors could not appeal. *See Hollingsworth* at *34. Put another way, there was no case or controversy to piggyback on, so those intervenors had to demonstrate their own independent jurisdiction or standing.

The circumstances of the present case are different. Here, there are two parties that ostensibly have standing,[4] therefore satisfying the purposes of Article III. Intervenors serve a *different* purpose or role in the matter – to present arguments and defenses that would not be presented without their participation, and thus to assist in informing the Court. *See, e.g.*, *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *overruled in part on other grounds by Wilderness Soc'y v. U. S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (where "government declined to defend fully from the outset," the court recognized that the "presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case, which impacted large and varied interests"); *Sierra Club v. U. S. EPA*, 995 F.2d 1478, 1483 (9th Cir. 1993), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (holding that the intervenors'

---

[4] Intervenors still maintain that Plaintiffs do not have standing in this matter for the reasons set forth in their Motion to Dismiss memoranda. However, for purposes of this argument, Intervenors will assume that both Plaintiffs and Defendants have standing in this matter.

1  "interests are assuredly not those protected by the statutes at issue in those cases,

2  but the adversary process can function only if both sides are heard. . . . Our

3  adversary process requires that we hear from both sides before the interests of one

4  side are impaired by a judgment"); *California ex rel. Lockyer v. USDA*, No. C05-

5  03508 EDL (consolidated with No. C05-04038 EDL), 2006 U.S. Dist. LEXIS

6  20149, at *14 (N.D. Cal. Mar. 31, 2006) (intervention allowed where "the input of

7  the Proposed Intervenors could assist the Court in fashioning relief"); *Natural*

8  *Resources Defense Council, Inc. v. United States Nuclear Regulatory Com.,* 578

9  F.2d 1341, 1346 (10th Cir.1978) (intervention as of right allowed because

10  intervenors represented a "wide variety of interests" and would "provide a useful

11  supplement to the defense of this case"); *Commack Self-Service Kosher Meats v.*

12  *Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996) (permissive intervention allowed

13  because "intervenors will bring a different perspective to the case and will

14  contribute relevant factual variations that may assist the court in addressing the

15  constitutional issue raised"); *Essex v. Kobach*, No. 12-4046-KHV-JWL, 2012 U.S.

16  Dist. LEXIS 72799, at *7-8 (D. Kan. May 25, 2012) (permitting intervention

17  because "hearing the intervenors' views will assist the Court in reaching its

18  decision").

19      Intervenors should remain in the case.

20  **V.    INTERVENORS HAVE IN FACT MET ARTICLE III STANDING
        REQUIREMENTS**

21

22      *A.    Intervenors Have A Concrete And Particularized Interest To Support
              Their Standing With Regard To All Seven Causes Of Action.*

23

24      Even assuming that Article III standing is required, Intervenors satisfy it by

25  demonstrating a personal stake in the outcome of this matter.[5]  Unlike the

26  _____

27  [5] Article III standing requires that a party show they have suffered an "injury in
     fact – an invasion of a legally protected interest" that is "concrete and

28  particularized, and actual or imminent."  *See Lujan v. Defenders of Wildlife,* 504
     U.S. 555, 560 (1992).

Proposition 8 intervenors, Intervenors here do in fact have a personal stake in the enforcement of Measure B.  Measure B is a public health law designed to protect against the spread of sexually transmitted diseases ("STDs").  Diseases are real tangible things that are being contracted and spread here in the Los Angeles community.  Specifically, STDs are being transmitted during the production of films at an approximate rate of 10 times that of the ordinary population.  (MJOP Opp. RJN Ex. A)  The real threat of diseases being spread is not just some generalized moral grievance or "mere ideological interest"[6] that Intervenors possess.  There is no moral debate on whether spreading diseases is good or bad for public health.

Individual Intervenors are themselves at risk of contracting STDs from these performers who engaged in sexual intercourse during the making of a film or someone who contracted one from of these performers, as they all reside in Los Angeles County.  The "relevant 'injury' for [Article III] standing purposes may be exposure to a sufficiently serious risk of medical harm."  *See, e.g., Baur v. Veneman*, 352 F.3d 625, 640-42 (2nd Cir. 2003) (holding that consumer seeking to protect public health, who challenged regulations permitting human consumption of downed livestock, satisfied Article III standing by alleging "present exposure to a credible threat of harm" posed by meat products, the consumption of which could lead to mad cow disease).  Similarly, without Measure B's enforcement, Intervenors are at an increased risk of contracting an STD.  These are serious consequences, in particular when some STDs are lifelong and/or fatal, and/or may lead to fatal diseases or illnesses.

This actual and potential harm to one's health is what distinguishes Intervenors from the Proposition 8 proponents.  In *Hollingsworth,* the Court found that those Intervenors' only interest in appealing the District Court decision was to

---

[6] *See Lujan,* 504 U.S. at 573 (rejecting standing based on ideological interest).

"vindicate the validity of a generally applicable California law." *See Hollingsworth,* at \*18.  Proposition 8 intervenors wanted to vindicate Proposition 8 based upon their personal moral beliefs about the rights of other third parties. They could not make the requisite nexus to same-sex marriage to establish standing, because they were not seeking to enter into a same-sex marriage nor were they being enjoined from doing so; they did not have a personal stake in that controversy.

Certainly Intervenors' interests are concrete and particularized; they are not merely "concerned bystanders" who will use standing as a "vehicle for the vindication of value interests." (Reconsideration Motion at 3:17-18, quoting *Hollingsworth* slip op., at 8).  Proponents do not seek to impart "values" or "morals," either on those who perform in films, or those that view them; they merely wish to defend a statute that diminishes the risk of STDs being spread throughout Los Angeles County, and potentially to them individually.

### 1.   It Is Indisputable That Intervenors Have Standing To Defend Against The State Preemption Claim

Finally, it must be recognized that Plaintiffs have alleged one state claim over which the District Court is exercising supplemental jurisdiction—Count VII regarding preemption.  There is no doubt that Intervenors have standing to defend the state law claim and should at the very least remain in the case for this purpose. See *Hollingsworth* at \*33.  "[I]n a 'citizen's action' to enforce a public duty, 'it is sufficient that the plaintiff be interested as a citizen in having the laws executed and the public duty enforced.'  So long as the 'public duty is sharp and the public need weighty' a citizen has a sufficient interest to confer standing."  See *Urban Habitat Program v. City of Pleasanton*, 164 Cal. App. 4th 1561, 1580-81 (2008) (citing *Common Cause v. Board of Supervisors*, 49 Cal.3d 432 (1989) ("[Where] the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or

special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced . . . . The question in this case involves a public right to voter outreach programs, and plaintiffs have standing as citizens to seek its vindication.") (other internal citations omitted)).

Intervenors have demonstrated a personal stake in all seven claims in this matter and should remain in the case.

  B. *Proposed Intervenors Satisfy Article III Standing Implicitly, Because They Show A "Significantly Protectable Interest" Under Rule 24(a)(2)*

Intervenors also satisfy any Article III standing requirement by demonstrating a "significantly protectable interest" as required under Ninth Circuit standards for intervention as of right under Rule 24(a)(2).  The Ninth Circuit has long held that the requirement for Article III standing is "implicitly addressed" by the Rule 24(a)(2) requirement of asserting a "significant protectable interest."  *See Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989), *overruled on other grounds*, *Wilderness Soc'y.*, 630 F.3d at 1177 (internal citations omitted) ("declin[ing] to incorporate an independent standing inquiry into [Ninth] [C]ircuit's intervention test.  However, the standing requirement is at least implicitly addressed by our requirement that the applicant must 'assert [] an interest relating to the property or transaction which is the subject of the action.");  *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing *Portland*).  This is still the controlling law in the Ninth Circuit; *Hollingsworth* did not address intervention in the trial court under Rule 24.

As the official Measure B Proponents and Campaign Committee, Intervenors have demonstrated such a "significantly protectable interest."  The Ninth Circuit and District Courts within it have long found that proponents of legislation or regulations sufficiently demonstrate a "significantly protectable

interest" for purposes of Rule 24(a)(2) intervention as of right.  *See, e.g., Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (permitting intervention after finding that conservation groups had an interest in challenge to listing of a snail under the Endangered Species Act, where they were active in getting the snail listed) (internal citations omitted); *Prete v. Bradbury*, 438 F.3d 949, 954-55 (9th Cir. 2006) (concluding that chief petitioner for measure, and public interest group, as "main supporter of the measure," had a "significant protectable interest" and therefore could intervene); *Tucson Women's Ctr. v. Ariz. Med. Bd.*, No. CV-09-1909, 2009 U.S. Dist. LEXIS 113948, at *10-11, 16 (D. Ariz. Nov. 24, 2009) (permitting intervention by public interest group that had actively supported legislation at issue).

For all of the reasons set forth above, Intervenors need not demonstrate Article III standing in order to intervene in this action.  Such a jurisdictional showing is not required in the Ninth Circuit, and Intervenors may also piggyback on the standing of the original parties assuming these parties have such standing. In any event, Intervenors have met any such standing requirements by showing a personal stake in the outcome in addition to a "significantly protectable interest" under Rule 24(a)(2).

## VI.   WITHOUT INTERVENORS, THERE IS NO CASE AND CONTROVERSY TO CONFER JURISDICTION IN THIS MATTER

The Case and Controversies Clause of the United States Constitution requires a "case" or "controversy" before the court.  *See* U.S. Const. art. III, §2, cl. 1.  This plainly means that there must be interested parties on both sides of the case.  A one-sided "case" or "controversy" does not exist.  *See Mills v. Green,* 159 U.S. 651, 653 (1895) (dismissing where there was "no actual controversy involving real and substantial rights between the parties of record.").   Indeed, just recently in *U.S. v. Windsor,* No. 12-307, 2013 U.S. LEXIS 4921, at *22 (June 26, 2013), the Supreme Court underscored the prudential standing doctrine's

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR RECONSIDERATION**

1   embodiment of judicially self-imposed limits on the exercise of federal

2   jurisdiction.  Specifically, the Supreme Court pronounced: "[e]ven when Article III

3   permits the exercise of federal jurisdiction, prudential considerations demand that

4   the Court insist upon 'that concrete adverseness which sharpens the presentation of

5   issues upon which the court so largely depends for illumination of difficult

6   constitutional questions.'"  *See id.* at *22 (quoting *Baker v. Carr*, 369 U.S. 186

7   (1962)).

8       The purpose of the Cases and Controversies Clause of Article III's

9   requirement of such adversarial interests is so that federal courts only resolve

10  issues that "emerge[] precisely framed and necessary for decision from a clash of

11  adversary argument exploring every aspect of a multifaced situation embracing

12  conflicting and demanding interests."  *See Flast v. Cohen*, 392 U.S. 83, 96-97

13  (quoting *U.S. v. Freuhauf*, 365 U.S. 146, 157 (1961) (cautioning against courts

14  giving advisory opinions)).

15      In fact, courts may dismiss a case where there are no adverse parties.  *See*

16  *U.S. v. Johnson,* 319 U.S. 302 (1943) (dismissing case where parties appeared to

17  be collusive rather than genuinely adverse); *Bartemeyer v. Iowa,* 85 U.S. 129, 134-

18  35 (1973) (dismissing case where the parties plotted to bring the case "for the

19  purpose of obtaining the opinion of th[e] court on important constitutional

20  questions"); *Lord v. Veazie*, 49 U.S. 251, 255 (1850) (dismissing case because

21  "any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a

22  question of law which party desires to know for his own interest or his own

23  purposes, when there is no real and substantial controversy between those who

24  appear as adverse parties to the suit, is an abuse which courts of justice have

25  always reprehended, and treated as a punishable contempt of court.").

26      Here, no concrete case exists without Intervenors' participation in the

27  matter.  Plaintiffs seek to invalidate Measure B based upon seven constitutional

28  theories.  Defendants have made clear in their Supplemental Statement of Non-

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

Opposition to Proposed Intervenors' Motion to Intervene (Dkt. 35) that they will not defend the constitutionality of Measure B. In Defendants' Answer to the Complaint, they fail to include any defenses to the merits of Plaintiffs' seven constitutional claims. (Supplemental Statement, Dkt. 35 at p. 1; Answer to Complaint, Dkt. 21 at pp. 13-15.) Rather, Defendants suggest that Intervenors are necessary parties to litigate the constitutionality of Measure B. (Supplemental Statement, Dkt. 35 at p. 1; Answer to Complaint, Dkt. 21 at pp. 13-14). Quite simply, Defendants and Plaintiffs are essentially on the same side. Defendants refuse to defend against Plaintiffs' lawsuit on the merits, and therefore without Intervenors, there would be no party to defend the constitutionality of Measure B, and hence no true case or controversy.

The justiciability doctrine serves the purpose of ensuring the presentation of issues in a real factual setting between adverse and motivated parties. Without Intervenors presenting a defense to Plaintiffs' claims to invalidate Measure B, there is no case and controversy, and thus no jurisdiction under Article III. Intervenors must remain in the case in order for the Court to maintain prudential limits on the Court's exercise of jurisdiction.

## VII.   THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THIS MATTER

Intervenors respectfully submit to the Court that it should decline to exercise jurisdiction over this matter. As set out above, vital electoral, legislative, public health, and Constitutional issues, including the viability of the ballot initiative process itself, are presented in this case. While Intervenors assert that *Hollingsworth* does not prevent them from intervening at the District Court level, it is apparent that, unlike in California State courts, *Hollingsworth* does potentially limit Intervenors' ability to participate in this matter throughout the entire federal court system. Given the County's refusal to defend this matter, it is unclear that

the normal federal court process will provide a full and fair resolution of this matter.

The federal courts' duty to exercise the jurisdiction that Congress confers on them is not absolute.  The United States Supreme Court has held that federal courts may decline to exercise their jurisdiction in certain circumstances in which denying a federal forum would clearly serve an important countervailing interest.  *See Quackenbush v. Allstate,* 517 U.S. 706, 716 (1996).  Federal courts have developed certain common-law rules that apply to situations in which a federal court should, because of equity, state sovereignty, comity, policy, "proper constitutional adjudication," or "wise judicial administration," choose not to address issues within its jurisdiction.  *See id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

*Hollingsworth* confirmed that Intervenors would have standing in California State Court and that California State Courts could determine these issues:  "[W]e [do not] question California's sovereign right to maintain an initiative process, or the right of initiative proponents to defend their initiatives in California courts, where Article III does not apply."  *Hollingsworth* at *33.  Thus, if the Court is inclined to dismiss Intervenors, given the vital electoral, legislative and public health issues at stake in this matter, the Court should dismiss this suit so that it may be heard in California State court.  Even if the Court is not inclined to dismiss Intervenors, the Court should still dismiss, given the potentially limited range of participation that Intervenors may have in the federal court system. As discussed above in Section V.A.1, Intervenors would have standing to bring a suit to enforce Measure B in California State court.

A.   *Considerations of Discretionary Abstention.*

1.   **The Court Should Abstain Under the Doctrine of *Burford* Abstention.**

The abstention doctrine created by *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), allows a federal court to dismiss a case, in favor of adjudication in a state forum, if the case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if adjudication of the case in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.  If the suit involves issues of state law that are of "great public importance" to the state, the federal court should abstain.  *See id.*

The *Burford* abstention doctrine arose from a case challenging actions of the Texas Railroad Commission during the late 1930s. The Sun Oil Company sued in federal court, challenging the Railroad Commission's grant of certain new oil drilling permits, or, in the alternative, seeking an injunction against operation of the new oil wells.  *See generally Burford,* 319 U.S. 315.  The Supreme Court approved the District Court's dismissal of the case as properly belonging in Texas state court. The Court found crucial the extent to which "Texas courts . . . alone have the power to give definite answers to the questions of state law posed in these proceedings." *Id.* at 325.  Citing the "confusion" that had resulted from the simultaneous exercise of federal equity jurisdiction and state-court jurisdiction over the propriety of the Railroad Commission's orders, the Court concluded that "these questions of regulation of the industry by the state administrative agency . . . so clearly involve[] basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them." *Id.* at 332.  As the Ninth Circuit in *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir. 1991) concluded, "*Burford* abstention is designed to limit federal interference with the development of state policy.  It is justified where the issues sought to be adjudicated in federal court are primarily questions regarding that state's laws."

       a.     *Issues Of State Law That Are Of Importance Exist Here*

1    Applying *Burford* to this case, it is undisputed that state laws are at issue

2  (Measure B, California Code of Regulations Title 8, Section 5193, California

3  Labor Code, and the viability of the California Elections Code).  The Court here is

4  called upon to determine the constitutionality of Measure B, and whether Section

5  5193 preempts Measure B.  Specifically with regard to the First Amendment

6  questions, regardless of the level of scrutiny applied by the Court, the Court will

7  have to decide whether local interests in protecting against the spread of diseases

8  balance out any potential imfringement on speech.  Clearly, the State of California

9  and specifically Los Angeles County residents are interested in creating a policy to

10  diminish the risk of STDs in the community.  Indeed, 57% of Los Angeles County

11  voted for Measure B.  Adjudicating Measure B in federal court would be disruptive

12  of County residents' "efforts to establish a coherent policy with respect to a matter

13  of substantial public concern"—that is, the public health of their community.

14  Their interests should be fully and fairly represented, and they may be—in the

15  State courts of California.

16    In addition, for a federal court to determine whether Cal/OSHA regulations

17  preempt local statutes in the way Plaintiffs contend they do in this case, is an

18  important issue of "state law bearing on policy problems of substantial public

19  import whose importance transcends the result in the case then at bar."  The

20  decision of whether Section 5193 preempts Measure B will affect a multitude of

21  local laws, and thus a variety of local governments that are trying to serve

22  significant local interests or solve local problems.

23    Finally, in determining the constitutionality of Measure B, the Court may

24  have to decide issues of severability.  As severability is an issue of state law, it

25  may be more appropriate for a state court to decide.  *See Acosta v. City of Costa*

26  *Mesa*, No. 10-56854, 2013 U.S. App. LEXIS 9066, at *34 (9th Cir. May 3, 2013)

27  (quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 772

28  (1988) ("Severability of a local ordinance is a question of state law . . . ."))  This is

especially important, because the inability of Intervenors to fully participate in
federal proceedings when a government charged with enforcing a ballot measure
declines to defend it, seriously undermines the credibility and viability of
California's over 100-year-old practice of legislation via direct democracy (and
that of 26 other states, as well).  The citizen's initiative process is at stake, and a
decision here in federal court will have a bearing on all future ballot measures.
California state courts are competent to decide any constitutional question that
arises in this matter.  Given California's unique and specialized interest in its laws
relating to preemption, severability, public health, and its ballot initiative process,
its courts – where Intervenors will have full standing to defend Measure B – are
uniquely situated to hear this matter.

In sum, to protect principles of federalism and comity, this Court should
decline jurisdiction over the matter.

> b.    *Other Factors Support Abstention In This Case*

Further, the court should abstain from hearing this case because of the
important policy considerations discussed above in Section II.B.  In particular, the
refusal to allow Intervenors to participate in this case on federal standing grounds,
encourages forum-shopping and allows parties and the California government to
end-round the ballot initiative process carefully set out by the California Elections
Code.  The Supreme Court in *Erie v. Pap's A.M.,* 529 U.S. 277, 288-89 (2000)*,*
counseled about the Court's "interest in preventing litigants from attempting to
manipulate the Court's jurisdiction to insulate a favorable decision from review."
Further, Courts have specifically abstained from exercising federal jurisdiction
based in part on a desire to discourage forum-shopping.  *See, e.g., Nakash v.
Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (stating that the Court had no
interest in encouraging a party's attempt to forum shop or avoid adverse rulings by
the state court); *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843
F.2d 1253, 1259 (9th Cir. 1988) (affirming the District Court's decision, stating

that the prevention of forum shopping is appropriate to consider given the "flexible and pragmatic way in which abstention is to be applied"); *Stockton Firefighters' Local 456, Int'l Ass'n of Firefighters v. City of Stockton*, No. 10-cv-01828 FCD GGH, 2010 U.S. Dist. LEXIS 102286, at *17-18 (E.D. Cal. Sept. 28, 2010) (abstaining from exercising jurisdiction because the action implicated "important state questions" and the court determined that forum-shopping tactics were employed).  The Court should abstain from exercising jurisdiction to prevent such opportunistic forum-shopping.

### 2.   The Court Should Abstain Under the Doctrine of *Pullman* Abstention.

The abstention doctrine created by *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), allows cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law.  Concisely, the doctrine holds that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass on them.  *See id.* at 500-501.  This doctrine permits a federal court to decline to hear a plaintiff's claim that a state law violates the Constitution until the state's judiciary has had an opportunity to apply the law to the plaintiff's particular case.  The hope is to avoid a federal constitutional ruling by allowing the state courts to construct the law in a way that eliminates the constitutional problem or to rule it void under the state's own constitution.  *See id*.

For *Pullman* abstention to be invoked, three conditions must be apparent:
- The case presents both state grounds and federal constitutional grounds for relief;
- The proper resolution of the state ground for the decision is unclear; and
- The disposition of the state ground could obviate the need for adjudication of the federal constitutional ground.

1   In this case, the Plaintiff brought both state and federal claims.  The state

2   claim involves complex issues of state and local governance, and is currently in

3   dispute, and so is arguably unclear.  If the Court finds that Measure B is preempted

4   by Section 5193, then it would obviate the need to adjudicate Plaintiffs' other

5   constitutional grounds for relief.  In addition, as Measure B contains a severability

6   clause, severing of Measure B by state courts, applying state law, may also obviate

7   the need to determine constitutional questions.  Finally, as Intervenors would have

8   full standing to defend Measure B in California courts, those courts are in a better

9   position to hear and receive all facts and arguments concerning the Measure, and

10  are in a better position to fairly and justly adjudicate these state law issues.

11  *Pullman* abstention, therefore, applies to the facts of this case.

12      Under either of the abstention doctrines cited above, the requisite

13  exceptional circumstances justify dismissal of this action.

## CONCLUSION

15      Intervenors are properly before the Court.  The Supreme Court's decision in

16  *Hollingsworth* did not change this.  Plaintiffs have failed to satisfy their burden

17  that the court should exercise the extraordinary remedy of granting Plaintiffs'

18  Motion for Reconsideration.  While a separate showing of Article III standing is

19  not required under the circumstances of this case, Intervenors have demonstrated

20  that they meet those standards as well.  For these reasons, the Court's decision

21  granting Intervenors' Motion to Intervene should be affirmed.

22      If the Court is compelled to dismiss Intervenors from the case, Intervenors

23  submit that the Court should dismiss the entire case before it because there would

24  no longer be a case or controversy, and the Court would then lack jurisdiction

25  under Article III.  Finally, regardless of whether Intervenors are permitted to

26  participate in this matter and defend Measure B, Intervenors submit that the Court

27  should exercise its discretionary powers of abstention, and dismiss the case entirely

28  or remand it to a state court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  July 22, 2013

Respectfully Submitted,


INTERVENORS



By:  /s/ Samantha R. Azulay
     TOM MYERS
     SAMANTHA R. AZULAY
     CHRISTINA YANG
     *Attorneys for Intervenors*

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**