PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | Case No. **CV 13-00190 DDP (AGRx)** <br><br> Assigned to the Hon. Dean D. Pregerson <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S ORDER OF APRIL 16, 2013 (DOCKET NO. 44)** <br><br> Date:  August 12, 2013 <br> Time:  10:00 a.m. <br><br> Courtroom 3 <br><br> Action Filed:  January 10, 2013 |

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
   janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
   matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
   HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
   bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
   ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

REPLY ISO MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

Page

I.      RECONSIDERATION OF THE APRIL ORDER IS PROPER .................... 2

II.     *HOLLINGSWORTH* IS DISPOSITIVE ......................................................... 3

        A.      AHF *Et Al.* Lack Article III Standing Required for Intervenors
                at All Stages of Federal Litigation ........................................................ 3

                1.      *Hollingsworth* Addressed Article III Standing at the
                        District Court Level, Making Clear it is Required for
                        Intervenors ...................................................................................... 3

                2.      AHF Cannot "Piggyback" Their Way to Article III
                        Standing ............................................................................................ 6

        B.      Intervenors' Policy Concerns Cannot Overcome *Hollingsworth* ......... 8

III.    INTERVENORS DO NOT MEET THE ARTICLE III
        STANDING REQUIREMENTS ................................................................. 10

IV.     THIS CASE STILL HAS THE REQUISITE CASE AND
        CONTROVERSY WITHOUT INTERVENORS ....................................... 12

V.      INTERVENORS' BELATED REQUEST THAT THE DISTRICT
        COURT ABSTAIN FROM EXERCISING JURISDICTION SHOULD
        BE DENIED.............................................................................................. 14

        A.      *Burford* Abstention is Inappropriate in this Context .......................... 15

        B.      *Pullman* Abstention is Also Inappropriate in this Context ................ 17

VI.     CONCLUSION ......................................................................................... 19

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

Page

**Cases**

*Arizona Right to Life PAC v. Bayless,*
  320 F.3d 1002 (9th Cir. 2003) .......................................................... 13

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997)......................................................................4

*Associated Builders & Contractors v. Perry,*
  16 F.3d 688 (6th Cir. 1994) ..................................................8

*Bowsher v. Synar,*
  478 U.S. 714 (1986)..................................................................7

*Burford v. Sun Oil Co.,*
  319 U.S. 315 (1943).......................................................... 15, 16, 17

*C-Y Dev. Co. v. City of Redlands,*
  703 F.2d 375 (9th Cir. 1983) .......................................................... 14

*California Department of Social Services v. Thompson,*
  321 F.3d 835 (9th Cir. 2003) ...................................................5

*California ex rel. Lockyer v. USDA,*
  2006 WL 889327 (N.D. Cal. Mar. 31, 2006)......................................8

*Canton v. Spokane Sch. Dist. No. 81,*
  498 F.2d 840 (9th Cir. 1974), *overruled on other grounds as recognized by*
  *Heath v. Cleary*, 708 F.2d 1376 (9th Cir. 1985)................................. 17

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) .......................................................... 11

*City of Houston, Texas v. Hill,*
  482 U.S. 451 (1987).................................................................... 18

*City of Tucson v. United States W. Communs.,*
  284 F.3d 1128 (9th Cir. 2002) .......................................................... 17

*Clinton v. City of New York,*
  524 U.S. 417 (1998).................................................................7

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Commack Self-Service Kosher Meats v. Rubin*,
  170 F.R.D. 93 (E.D.N.Y. 1996) ....................................................................8

*Diamond v. Charles*,
  476 U.S. 54 (1986) ................................................................................. 4, 7

*Doe v. Harris*,
  2013 WL 140053 (N.D. Cal. Jan. 10, 2013) ..............................................5

*Don't Bankrupt Wash. Comm. v. Continental Ill. Nat. Bank & Trust Co. of Chicago*,
  460 U.S. 1077 (1983) ..................................................................................4

*Essex v. Kobach*,
  2012 WL 1901284 (D. Kan. May 25, 2012) ...............................................8

*Flores v. Arizona*,
  516 F.3d 1140 (9th Cir. 2008) ....................................................................5

*Freedom From Religion Foundation, Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ......................................................................7

*Harman v. Forssenius*,
  380 U.S. 528 (1965) .................................................................................. 18

*Hawaii Housing Auth. v. Midkiff*,
  467 U.S. 229 (1984) .................................................................................. 18

*Hollingsworth v. Perry*,
  132 S. Ct. 2652 (2013) ...................................................................... *passim*

*Karcher v. May*,
  484 U.S. 72 (1987) ......................................................................................4

*Kern-Tulare Water Dist. v. Bakersfield*,
  828 F.2d 514 (9th Cir. 1987) .................................................................... 15

*Kootenai Tribe of Idaho v. Veneman*,
  313 F.3d 1094 (9th Cir. 2002) ....................................................................8

*Matson Navigation Co., Inc. v. Hawaii PUC*,
  742 F.Supp. 1468 (D. Haw. 1990) ............................................................ 16

*McConnell v. FEC*,
  540 U.S. 93 (2003) ......................................................................................7

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Natural Resources Defense Council, Inc. v. NRC,*
  578 F.2d 1341 (10th Cir.1978) ........................................................8

*Northwest Acceptance Corp. v. Lynnwood Equip., Inc.,*
  841 F.2d 918 (9th Cir.1988) ............................................... 11, 12, 14

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,*
  477 U.S. 619 (1986) .......................................................... 14

*Perry v. Brown,*
  52 Cal. 4th 1116 (2011) .................................................. 6, 10

*Perry v. Brown,*
  671 F.3d 1052 (9th Cir. 2012) ...........................................6

*Perry v. Proposition 8 Official Proponents,*
  587 F.3d 947 (9th Cir. 2009) .......................................... 5, 6

*Pickup v. Brown,*
  2012 WL 6024387 (E.D. Cal. Dec. 4, 2012) .........................6

*Porter v. Jones,*
  319 F.3d 483 (9th Cir. 2003) ........................................... 15

*Poulos v. Caesars World, Inc.,*
  379 F.3d 654 (9th Cir. 2004) ........................................... 15

*Prete v. Bradbury,*
  438 F.3d 949 (9th Cir. 2006) ...........................................5

*Railroad Commission v. Pullman Co.,*
  312 U.S. 496 (1941)..................................... 16, 17, 18, 19

*Ripplinger v. Collins,*
  868 F.2d 1043 (9th Cir. 1989) ..................................... 16, 17

*Ruiz v. Estelle,*
  161 F.3d 814 (5th Cir. 1998) ...........................................7

*Sagebrush Rebellion, Inc. v. Watt,*
  713 F.2d 525 (9th Cir. 1983) ...........................................5

*Sierra Club v. United States EPA,*
  995 F.2d 1478 (9th Cir. 1993) ..........................................8

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION

*Southern Cal. Edison Co. v. Lynch*,
    307 F.3d 794 (9th Cir. 2002) ........................................................................ 14

*Southwest Center for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ..........................................................................5

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) .........................................................................................8

*Tucker v. First Md. Savs. & Loan, Inc.*,
    942 F.2d 1401 (9th Cir. 1991) ..................................................................... 16

*United States v. Stevens*,
    130 S. Ct. 1577 (2010) ................................................................................. 13

*Virginia v. American Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988) ..................................................................................... 13

*Zwickler v. Koota*,
    389 U.S. 241 (1967) ..................................................................................... 18

**Statutes**

42 U.S.C. § 1983 ................................................................................................ 16

**Rules**

Federal Rule of Civil Procedure 24 ............................................................ 1, 5, 6

Federal Rule of Civil Procedure 24(a)(2) ........................................................ 10

Federal Rule of Civil Procedure 24(b) ........................................................... 5, 7

Federal Rule of Civil Procedure 60(b)(6) ..........................................................2

Local Rule 7-18 ...................................................................................................2

**Constitutional Provisions**

United States Constitution, Article III ................................................... *passim*

United States Constitution, First Amendment .............................................. *passim*

United States Constitution, Fourth Amendment ........................................ 15, 17

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## REPLY

The U.S. Supreme Court's decision in *Hollingsworth v. Perry*, 132 S. Ct. 2652 (2013), is dispositive on the status of ballot initiative proponents in federal court, such as that of AIDS Healthcare Foundation *et al.* here ("AHF"), once the measure they have sponsored is enacted:  they "have no role—special or otherwise—in [its] enforcement," and "no 'personal stake' in defending" it that is "distinguishable from the general interest of every citizen." [1]  As such, ballot initiative proponents lack Article III standing to intervene in challenges to the law (or ordinance) brought in federal court, and cannot satisfy Federal Rule of Civil Procedure 24.  And, contrary to Intervenors' claims in the Opposition to Motion for Reconsideration ("Opp."), § II, *Hollingsworth* specifically cites that requirement as one that applies in the district court.  *See* Motion for Reconsideration ("Mot."), 5 (citing *Hollingsworth*, 132 S. Ct. at 2661 (the requirements established and clarified in *Hollingsworth* apply at "all stages of litigation")).

The blunderbuss arguments AHF offers in a desperate but ultimately futile attempt to cling to party status in this case – or to derail it from proceeding without them – cannot change the fact that *Hollingsworth* is a game-changer fatal to AHF's position.  That inexorable conclusion is not avoided by citing pre-*Hollingsworth* cases involving Article III standing of intervenors in district courts that deemed such intervention permissible as *ipse dixits* lacking meaningful analysis.  *See* Opp. § III. Nor may Intervenors, after *Hollingsworth*, "piggyback" on Plaintiffs' or the County Defendants' standing.  *Id*. § 4.  *Hollingsworth* is clear that Measure B's proponents have no standing to remain parties in this challenge to its constitutionality, in that, post-enactment, they have no "interest" different from the public at large.

---

[1]   *Id*. at 2663; *see also id.* at 2662 (post-enactment, ballot measure proponents can "rais[e] only a generally available grievance," "claim[] only harm to [their] and every citizen's interest in proper application of the … law[]," and can only "seek[] relief that no more directly and tangibly benefits [them] than … the public at large").

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION

Intervenors' hand-wringing over *Hollingsworth*'s impact on state policies that underlie California's ballot initiative process is irrelevant, as *Hollingsworth* made clear. Putting aside that such concerns about *Hollingsworth* "gutting" state ballot initiative laws are overblown and incorrect, they cannot in any event "trump" the supremacy of federal law, including Article III standing requirements, as *Hollingsworth* confirmed. *See* 132 S. Ct. at 2667. Similarly, Intervenors' last-ditch case-and-controversy and abstention arguments should be summarily rejected. Opp. §§ VI-VII. Despite this effort to recast the instant Motion, and this action as a whole, this case not only is *not* about California's initiative process, it also is not about the efficacy of any State law. Rather, it is, and always has been, about an ordinance that impermissibly infringes Plaintiffs' rights protected under the federal Constitution. Those rights are violated by actions the Defendants have taken, and by actions the County can take, and has committed to take, with respect to Measure B.

The Supreme Court in *Hollingsworth* said it all when it summarized that, "We have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to." The Court did <u>not</u> say it had never upheld standing of a private party to *appeal* a finding of unconstitutionality – it said such private parties may not *defend*, even when the government refuses to do so. That determination controls here. Accordingly, Plaintiffs respectfully ask that the Court reconsider its order granting AHF's Motion to Intervene (Docket No. 44, "April Order") with regard to whether Intervenors have Article III standing, that it dismiss Intervenors from the case, that it vacate their pleadings and motions, and that it reinstate Plaintiffs' Motion for Judgment on the Pleadings and decide the Motion for Preliminary Injunction.

## I.   RECONSIDERATION OF THE APRIL ORDER IS PROPER

Contrary to Intervenors' claims (Opp. § 1), Federal Rule of Civil Procedure Rule 60(b)(6) and Local Rule 7-18 are satisfied here, where the decision in *Hollingsworth* constitutes an intervening change in controlling law regarding Article III

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

standing requirements for ballot measure proponents.  Indeed, the Supreme Court's opinion expressly overruled Ninth Circuit authority upon which Intervenors heavily relied in moving to intervene.  *See* Mot. 6-7.  Intervenors' claim that there has been no material change, because *Hollingsworth* did not address Article III standing for intervenors at the trial-court level (Opp. 3), is simply incorrect, as explained in the reconsideration motion and below.  *See infra* § II.A.1.  Indeed, the entirety of Opposition Section II.B bemoans what *Hollingsworth* portends for ballot initiative proponents in California and its potential impact on the ballot initiative process overall.  *Hollingsworth* is a material change in law post-dating this Court's April Order, and reconsideration is thus proper under the rules.  (*See* Mot. 4:3-19.)

## II.   *HOLLINGSWORTH* IS DISPOSITIVE

### A.   AHF *Et Al.* Lack Article III Standing Required for Intervenors at All Stages of Federal Litigation

#### 1.   *Hollingsworth* Addressed Article III Standing at the District Court Level, Making Clear it is Required for Intervenors

Most of the Opposition's arguments for why *Hollingsworth* does not require removing AHF's intervenor status turn on erroneous suppositions that *Hollingsworth* has no impact at the district court level.  But the Supreme Court was clear that intervening parties must meet Article III requirements at <u>all</u> stages of litigation.  As *Hollingsworth* explains, an "essential aspect" of Article III's requirements "is that ***any person*** invoking the power of a federal court must demonstrate standing to do so."  *Hollingsworth*, 132 S. Ct. at 2661 (emphasis added).  To qualify as a party with standing, those seeking to litigate must show, first and foremost, that they are affected by the matter in a "personal and individual way," and thus "possess a direct stake in the outcome" of a case.  *Id.* at 2662 (internal citations, punctuation omitted).

These requirements, arising under Article III, apply "throughout ***all stages*** of litigation," such that "standing must be met … ***[upon] appearing in courts of first instance***," just as they "must be met by persons seeking appellate review."  *Id.* at

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2661 (emphases added; citations omitted).  That "first instance" means, among other things, qualifying as a party at the trial (district) court level.  Intervenors do not – and cannot – explain how this plain language from *Hollingsworth* does not require them to satisfy Article III, even though this very language is advanced as the ground on which the Plaintiffs contend Intervenors must be dismissed.  (*See generally*, Mot. 4:20-8:23.)

Intervenors effectively concede they would not have standing were this action appealed to the Ninth Circuit (Opp. 2:15-16),[2] yet maintain that despite *Hollingsworth*'s clear language, they need not satisfy Article III.  But the language quoted and emphasized above demonstrates that Intervenors are wrong in claiming the Supreme Court did not "opine about … intervenor standing at the District Court level." (Opp. 4:7-15.)  The above-quoted language undermines any claim that *Hollingsworth* "indirectly affirmed" the intervenors' status in the district court in the Prop. 8 case, as Intervenors claim.  (Opp. 5.)  Indeed, the fact that Intervenors must resort to "indirect affirmation" is itself telling, especially where the above passages from *Hollingsworth* plainly point in the opposite direction. [3]

---

[2]   Intervenors are thus further undone by the absurd outcomes that would result if their view is followed to its "logical" conclusion.  Under Intervenors' theory, ballot initiative proponents have standing in the district courts to defend initiatives like Measure B, but they would have no standing to participate in any appeal if they lost.  Opp. 2:15-16.  Clearly this argument is not supported by the express language in *Hollingsworth*, and is not an outcome the Court could have intended.

[3]   Intervenors also ignore *Hollingsworth*'s procedural posture, where only the Ninth Circuit's decision was on appeal and the parties did not contest the ballot proponents' standing in the district court.  The Supreme Court thus considered only "whether petitioners had standing to appeal the District Court's order." *Hollingsworth*, 132 S. Ct. at 2661.  Similarly, in the cases cited by Intervenors, (Opp. 4 n.2), no district court orders were before the Court.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 49 (1997) (vacating Ninth Circuit's judgment); *Diamond v. Charles*, 476 U.S. 54, 61, 71 (1986) (dismissing appeal of ruling by Seventh Circuit); *Karcher v. May*, 484 U.S. 72, 83 (1987) (dismissing appeal of ruling by Third Circuit); *Don't Bankrupt Wash. Comm. v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, 460 U.S. 1077 (1983) (dismissing appeal of Ninth Circuit ruling).

REPLY ISO MOTION FOR RECONSIDERATION

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Nor can Intervenors find support for retaining party status here in Ninth Circuit and other decisions pre-dating *Hollingsworth*. (Opp. 7:14-9:2.) As Intervenors admit, even before *Hollingsworth*, the Circuits split over whether intervenors must have Article III standing and, in addition, even within the Ninth Circuit the law was unsettled. (Opp. 7:24-26.) *See also* Opposition to Motion to Intervene, Dkt. 35, 15:24-16:3 (citing, *inter alia*, *Prete v. Bradbury*, 438 F.3d 949, 956 n. 8 (9th Cir. 2006) (noting Ninth Circuit "has not definitively ruled on" Article III standing for intervenors); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 n.2 (9th Cir. 2009) ("We have yet to decide whether putative intervenors must satisfy [Article III] standing independently of the parties to the case.")). The decision in *Hollingsworth* conclusively settles the matter (and resolves the Circuit split).

Consistent with the language quoted above, it is now clear that parties intervening under Rule 24, including ballot measure proponents, must have Article III standing. *Hollingsworth*, 132 S. Ct. at 2661-62. Intervenors thus cannot prevail in attempts to argue that *Hollingsworth* somehow left intact Ninth Circuit precedent holding that intervenors need not demonstrate Article III standing in lower courts. (Opp. 7:14-9:2.) As far as the Ninth Circuit being on the other side of that split, its stance is no longer tenable. [4]

---

[4] It is not even clear the cases Intervenors cite would have offered support pre-*Hollingsworth*. For example, in *California Department of Social Services v. Thompson*, 321 F.3d 835, 846 (9th Cir. 2003) (cited Opp. 8), the court noted that the intervenor *did* need to meet Article III standing requirements. *Id.* at 846. The footnote Intervenors quote from in *Thompson* rested on a Ninth Circuit case, *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001), that expressly noted "the Supreme Court has declined to decide whether a would-be intervenor … must satisfy Article III." *Id.* at 822 n.3. *Flores v. Arizona*, 516 F.3d 1140 (9th Cir. 2008), relies on the same faulty reasoning as *Thompson*. And Intervenors admit there is no discussion of Article III standing in *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (cited Opp. 8:16-17). Meanwhile, the discussion of jurisdiction in *Doe v. Harris*, 2013 WL 140053, at *2 (N.D. Cal. Jan. 10, 2013) (cited Opp. 8:19-22), involves only permissive intervention under Rule 24(b), not the fundamental standing requirements of Article III.

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION

The Opposition cites several cases as purportedly establishing that intervenors need not satisfy Article III standing in lower courts, but those decisions cannot bear the weight of Intervenors' reliance.  (Opp. § III.)  <u>None</u> of the cases conducted any analysis on the critical point, unlike the Ninth Circuit in *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), and the California Supreme Court in *Perry v. Brown*, 52 Cal. 4th 1116 (2011), which the U.S. Supreme Court overturned.  Rather, the cases Intervenors cite baldly concluded Article III standing was not required (to the extent they addressed the issue at all).  For example, in *Pickup v. Brown*, 2012 WL 6024387, at *1 n.1 (E.D. Cal. Dec. 4, 2012) (cited Opp. 7), the court merely noted that while "some circuits require that intervenors satisfy [Article III] standing requirements, the Ninth Circuit has not yet incorporated this factor into its test for intervention as of right."  *Pickup* relied on *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. Cal. 2009), which only noted "circuits are split on th[e] issue," and did not decide Article III standing.  *Id.* at 950 n.2.  All of Intervenors' authorities involve such bare statements that lack analysis of Article III standing.  Such *ipse dixits* can hardly stand in the face of the Supreme Court's clear guidance in *Hollingsworth*.

## 2.    AHF Cannot "Piggyback" Their Way to Article III Standing

The belief espoused by AHF that Intervenor status can be salvaged through "piggybacking" also relies on the misplaced notion that *Hollingsworth* only requires standing at the appellate level, *e.g.*, Opp. 10:5-12, and is incorrect for that and related reasons.  This argument misunderstands the central thrust of *Hollingsworth* – that ballot initiative proponents have, upon enactment, no interest distinct from any other member of the general public.  132 S. Ct. at 2262-63.  As a threshold matter, if Intervenors' view prevailed, every member of the public could intervene by "piggyback-ing," which is inconsistent with *Hollingsworth* and Rule 24, which Intervenors admit "implicitly addresses" the standing requirement.  (Opp. 14:13-15.)  In any event, Intervenors fail to provide any valid basis in the law for being able to "piggyback" on Plaintiffs and Defendants to avoid complying with Article III's requirements.

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Intervenors' reliance on *McConnell v. FEC*, 540 U.S. 93 (2003), is misplaced. At the outset, *McConnell* did not hold, as AHF posits, that intervenors "need not independently establish Article III standing." Opp. 9. Rather, *McConnell* expressly stated that the Court need not – and thus did not – address the issue at all. 540 U.S. at 233. Moreover, in determining it need not address independent Article III standing, the Court found that the intervenor-defendant's position was "identical" to that of defendants, *id.*, while here, Intervenors have repeatedly insisted their interests and positions are "different" from Defendants, and that they will "present arguments and defenses not presented" by other parties. Opp. 10:15-17. Similarly, two of the cases cited by *McConnell* also involved parties who were suffering from identical injuries. *See Clinton v. City of New York*, 524 U.S. 417, 431-32, n.19, (1998); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (cited in *McConnell*, 540 U.S. at 233). And more importantly for present purposes, the final principal case *McConnell* cited in this vein, *Diamond v. Charles*, 476 U.S. 54 (1986), was expressly distinguished in *Hollingsworth*. 132 S. Ct. at 2663-64.

Intervenors fare no better turning to Ninth Circuit law. In *Freedom From Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th Cir. 2011) (cited Opp. 9-10), the court considered whether an intervenor had to meet the "independent ground for jurisdiction" requirement for permissive intervention under Rule 24(b). This inquiry addressed "concern that [permissive] intervention might be used to en-large inappropriately the jurisdiction of the district courts," or to "destroy complete diversity in state-law actions." These concerns are not present here and are entirely separate from the issue – which *Geithner* did <u>not</u> address – of whether intervenors must satisfy Article III jurisdiction. *Id.* at 843. [5]

---

[5]   The authority cited outside the Supreme Court and Ninth Circuit also fails to support the position that AHF can remain party to this case despite lacking Article III standing. *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998) (cited Opp. 9:11-15, 9:18-19), a Fifth Circuit decision Intervenors cite, expressly acknowledged a split in authority, with some Circuits holding, even before *Hollingsworth*, that intervenors must have independent Article III standing in the district court. *Id.* at 828-32. As

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

There is also no basis for continuing AHF's intervenor status based on further citation to Ninth Circuit authority relating to Intervenors' desire "present arguments and defenses that would not be presented without their participation," to purportedly "assist in informing the Court." (Opp. 10:15-17.) As a threshold matter, the role AHF describes is that of *amici*, not of a party. In any event, the cases cited to support this desire of AHF's not only predate *Hollingsworth*, they cannot support continuing intervenor status. *See* Opp. 10-11. Indeed, one of the cases, *Sierra Club v. United States EPA*, 995 F.2d 1478 (9th Cir. 1993), does not even address Article III standing, while another, *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002), held – properly – that Article III standing *was* required for the proposed intervenors. *Id.* at 1109. The other cited cases are similarly inapposite. *See California ex rel. Lockyer v. USDA*, 2006 WL 889327, at *4 (N.D. Cal. Mar. 31, 2006) (no reference to or discussion of Article III standing); *Natural Resources Defense Council, Inc. v. NRC*, 578 F.2d 1341, 1346 (10th Cir.1978) (same); *Commack Self-Service Kosher Meats v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996) (same); *Essex v. Kobach*, 2012 WL 1901284, at *2 (D. Kan. May 25, 2012) (same).

**B.     Intervenors' Policy Concerns Cannot Overcome *Hollingsworth***

Intervenors' concerns that *Hollingsworth* is "poor policy" and might "gut" California's ballot initiative process are irrelevant. (Opp. 5:19-21.) First, there is the obvious point that state policy determinations cannot trump federal law: "standing in

---

noted, *Hollingsworth* addresses that split in its discussion of the need for Article III standing at "all stages of litigation," including "in courts of first instance." *Supra* § II.A.1. (citing 132 S. Ct. at 2661). Holdings to the contrary in, *e.g.*, the Fifth Circuit (and, of course, Ninth Circuit), have thus been undermined.

Reliance on the Sixth Circuit case *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994), also is unavailing. There, the putative intervenor *lacked* standing to prosecute an appeal. *Id.* at 692. It is unclear in the quote Intervenors cite what form of "standing" the court is discussing, *id.* at 690, but it does not appear to involve Article III standing, which is not discussed until later in the opinion. *Id.* The case cited in *Associated Builders* in support of the quoted proposition, *Trbovich v. United Mine Workers*, 404 U.S. 528, 536-39 (1972), does not discuss Article III standing.

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

federal court is a question of federal law … [a]nd no matter its reasons, the fact that a State thinks a private party should have standing to seek relief … cannot override [] settled law to the contrary." *Hollingsworth*, 132 S. Ct. at 2667.  Moreover, Intervenors' entreaties in this vein are exactly the kinds of concerns that animated the dissent in *Hollingsworth*, *id*. at 2669-74 (Kennedy, J., dissenting), *i.e.*, the view that did <u>not</u> win out and that thus decidedly is not the law, as the majority decision makes clear.  *Id*. at 2667 ("States cannot alter th[e] role [of federal courts] simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse.").

Intervenors' claim that *Hollingsworth* "eviscerates" California's initiative process also is not true as a factual matter.  *Hollingsworth* expressly does not "question California's sovereign right to maintain an initiative process, or the right of initiative proponents to defend their initiatives in California courts, where Article III does not apply."  *Id*. at 2667.  Thus, initiatives can still be placed on the ballot, and passed. Many will likely garner a defense by government bodies charged with enforcement or implementation.

Even if relevant, the Intervenors' "democratic process" concerns (Opp. 5:25-27) are not wholly unaddressed.  Such concerns arise only if government officials charged with implementing a popularly enacted initiative do not defend it against a challenge.  Putting aside that such officials have a duty, first and foremost, to uphold the federal Constitution, even if that means declining to defend a law they view as unconstitutional or constitutionally suspect, *any* determination not to defend, for *any* reason, represents the judgment of politically elected and appointed officials subject to electoral processes.  The same voters who pass an initiative that goes undefended are welcome to vote to replace the elected officials who opted not to defend (or who appointed those who declined to defend).  At the same time, even if the government declines to defend, an initiative's supporters and proponents, if they lack Article III standing, may still participate in a legal challenge as *amici*.  Efforts to twist this case into a referendum on California's initiative process, and hypothetical concerns about

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

possible future laws, cannot avoid the plain language of *Hollingsworth*, or the fact that Intervenors cannot meet Article III's requirements and must be dismissed.

## III. INTERVENORS DO NOT MEET THE ARTICLE III STANDING REQUIREMENTS

AHF, *et al.*, cannot salvage intervenor status by newly claiming Article III standing based on concrete and particularized interests beyond their role in drafting Measure B, getting it on the ballot, and persuading voters to enact it, *i.e.* the interests that *Hollingsworth* makes clear do not distinguish Intervenors from members of the general public who lack standing to intervene. As a threshold matter, the fact that AHF now seek to establish Article III standing based on something other than those interests reveals misgivings in their position (however ardently stated) that they can remain Intervenors if they lack Article III standing. [6] But as the Motion for Reconsideration shows, in any case, Intervenors failed to claim independent Article III standing in their Motion to Intervene (Docket No. 24). And on Reply (Docket No. 36) to Opposition (Docket No. 34), claimed only a "significantly protectable interest" as the "official Measure B proponents and campaign committee." Mot. 5-6 (citing pleadings). *Hollingsworth* extinguishes those as grounds for standing to intervene. [7]

So Intervenors attempt to show something different, but those efforts fail. At the outset, it is improper to offer, for the first time, in opposition to reconsideration,

---

[6] Significantly, this Court's April Order allowing intervention relied, for its finding of AHF's "significant protectable interest," on the interests of ballot measure proponents as espoused by the California Supreme Court in *Perry v. Brown*. April Order 6-7 (quoting 52 Cal. 4th at 1125-26). But *Hollingsworth* rejected both that California Supreme Court decision, and the interests of ballot initiative proponents, as grounds for finding Article III standing or for allowing an entity to proceed as a party in a particular case. *See* 132 S. Ct. at 2662.

[7] *Hollingsworth* also defeats Intervenors' claim that they have a "significantly protectable interest" that confers Article III standing. (*See* Mot. 6:1-7:7; Opp. 14:8-15:11.) The cases Intervenors cite are no longer controlling law in light of *Hollingsworth*, which, again, clearly requires intervenors to demonstrate independent Article III standing "at all stages of litigation." Therefore, *Hollingsworth* undermines earlier cases holding that satisfaction of Rule 24(a)(2)'s "significantly protectable interest" requirement was adequate for purposes of Article III.

REPLY ISO MOTION FOR RECONSIDERATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

new arguments claiming Article III's requirements are satisfied, based on new factual averments.  Motions for reconsideration are not the place for parties to make new arguments not raised in their original briefs.  *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir.1988).

In any event, Intervenors bear the burden of demonstrating Article III standing, *see, e.g., Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011), and their new arguments fail to do so.  Intervenors claim "they all reside in Los Angeles County" and are thus "themselves at risk of contracting STDs" from individuals working in the adult film industry.  (Opp. 12:11-14.)  This claim fails as a factual matter because, as Plaintiffs have shown repeatedly, any notion that Measure B will protect the population of Los Angeles County is unfounded, given Intervenors' position that adult films can simply shoot just outside the County without complying with Measure B, then return to intermingle with County residents. [8]

Even more importantly for present purposes, these claims of residence in Los Angeles County and purported risk of STD exposure from sex with adult film performers means Intervenors face the same purported risks as every other resident of Los Angeles County.  In other words, their "concrete and particularized interest" is exactly the same as that of every member of the general public – Measure B itself says as much.  *See* Measure B, § 3 (the purported "purpose and intent in enacting this ordinance is to minimize the … negative impact on public health and the quality of life of citizens living in Los Angeles").  As *Hollingsworth* makes clear, interests that Intervenors share in kind with every other member of the "public" does not suffice to create Article III standing necessary to intervene.  132 S. Ct. at 2662 (holding "a generalized grievance, no matter how sincere, is insufficient to confer standing" and

---

[8]   *See e.g.*, Reply in Support of Motion for Preliminary Injunction, Dkt. 59, 9:2-11:16, 23:7-11.  Even Intervenors admit the ephemeral nature of this supposed injury in their admission that the harms against which Measure B assertedly protects would only "potentially" reach them.  (Opp. 13:14.)

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that "claiming only harm to … every citizen's interest … and seeking relief that no more directly and tangibly benefits [a person] than it does the public at large … does not state an Article III case or controversy").

Finally, Intervenors' suggestion that they could have standing just for purposes of Count VII of the Complaint (Preemption by State Law) is unavailing. [9]  Article III standing is an absolute requirement for "any person invoking the power of a federal court." *Hollingsworth*, 132 S. Ct. at 2661.  There is no exception for a person or entity that is party to only a single cause of action, and Intervenors cite no authority suggesting the contrary.  (Opp. 13:17-18:5.)  Intervenors also cite no authority to support a claim that they have standing to defend Count VII, and fail to explain how Article III would not apply.  (*Id.*)  Because Intervenors lack Article III standing, they are not proper parties to this action for any purpose.

## IV.  THIS CASE STILL HAS THE REQUISITE CASE AND CONTROVERSY WITHOUT INTERVENORS

AHF cannot hedge their bets by arguing that if (because) they lack Article III standing and thus cannot remain Intervenors, the case cannot continue without them. Intervenors' entire argument in this vein, based on supposed lack of a case and controversy in their absence, rests on the fallacious claim that "Defendants and Plaintiffs are essentially on the same side."  (Opp. 17:7-8.)[10]  To the contrary, from the beginning of this case, the County has steadfastly refused to stay enforcement of Measure B while this matter is pending.  (Opposition to Motion to Intervene, Dkt. 34, 9:15-

---

[9]   The fact that a claim sounds in state rather than federal law has no bearing on whether someone has Article III standing, unless the nature of the claim (rather than its federal or state nature) creates a concrete and particularized interest that other claims may not.  Here, Intervenors' interests under Count VII are still (a) as Measure B's proponents, and (b) as beneficiaries of the (purported) protection it affords the general public, both of which interests are insufficient under *Hollingsworth*.

[10]   Again, an opposition to a motion for reconsideration is not the appropriate forum to raise this type of jurisdictional challenge for the first time, and therefore this argument should be summarily rejected.  *Northwest Acceptance Corp.*, 841 F.2d at 925-26.

**Davis Wright Tremaine** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION

10:5.)  Rather, shortly after Measure B's enactment the County indicated Measure B will be enforced, set a provisional permit fee, and promised a permanent fee schedule would be forthcoming. [11]  All the while, Plaintiffs remained subject to Measure B's mandates, and must either risk enforcement by the County and penalties for filming without complying, or must take onerous steps to avoid running afoul of the law. [12] And the County has taken these steps despite acknowledging the importantly con-stitutional issued Measure B raises. [13]

Critically, Defendants have ***not*** conceded Measure B is unconstitutional (*see* Dkt. 35).  The County instead hired outside counsel to defend this litigation, filed an Answer denying Plaintiffs' allegations, and asserted affirmative defenses.  Plaintiffs need not await enforcement before bringing suit to vindicate First Amendment rights. *Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 392-93 (1988); *Arizona Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).  This is especially so where, as here, there is no explicit suggestion that a newly enacted law will not be enforced, *American Booksellers*, 484 U.S. 393, and in any case, those raising First Amendment claims need not "leave [themselves] at the mercy of *noblesse oblige*" in seeking to secure their rights.  *United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010).

Insofar as Defendants suggested Intervenors were proper parties, that was before *Hollingsworth* clarified Article III requirements for standing, which require Intervenors' dismissal from this action.  If reconsideration is granted and Intervenors are dismissed, it is unknown if Defendants' position and strategy will change. But bottom line, Measure B remains the law in Los Angeles County, Defendants are

---

[11]    *See* Declaration of Robert Corn-Revere In Support of Plaintiffs' Opposition to Motion to Intervene, Dkt, 34-1, ¶ 2, Ex. A.

[12]    *See* Declaration of Steven Hirsch In Support of Plaintiffs' Motion for Preliminary Injunction, Dkt. 55-1, ¶¶ 18, 21-26.

[13]    *See* Defendants' Response to Plaintiffs' Motion for Judgment on the Pleadings and Motion for Preliminary Injunction, Dkt. 43, 1:10-12.

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

charged with implementing and enforcing it, and they have refused to stay their discharge of those responsibilities, all of which absolutely places Plaintiffs and Defendants in an adversarial position. Accordingly, even without Intervenors as parties, there will still be adverse parties in this action, and the Court will continue to have jurisdiction. [14]

## V. INTERVENORS' BELATED REQUEST THAT THE DISTRICT COURT ABSTAIN FROM EXERCISING JURISDICTION SHOULD BE DENIED

No valid grounds exist for this Court to abstain from exercising jurisdiction over this matter, notwithstanding Intervenors' invitation to do so.[15] It is well-settled that "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983). Rather, "discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Id*. Abstention is particularly inappropriate here as the belated abstention defenses were waived when Defendants failed to raise them in the Answer or in any subsequent pleading. (*See, e.g.*, Answer 13-15.) As the Ninth Circuit has made clear, if the defendant waives abstention defenses, a third-party intervenor cannot raise them after the fact.[16] For

---

[14]   In addition, the fallacy of Intervenors' argument is demonstrated by following their intimations to their "logical" conclusion. Under Intervenors' reasoning, if the government declines to defend a law and, accepting *Hollingsworth*'s premise, no one among the general public has a particularized interest that creates Article III standing to defend it, no challenge to defend it in federal court could ever lie due to lack of a case and controversy. In such a circumstance, all the government would ever have to do to "win" a challenge to a popularly enacted ballot initiative is refuse to defend, even as enforcement proceeds.

[15]   Once again, this argument is improperly raised by Intervenors in their Opposition. *Northwest Acceptance Corp.*, 841 F.2d at 925-6.

[16]   *See, e.g.*, *Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794, 806 (9th Cir. 2002); *see also Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 626 (1986). The grounds for finding waiver are even stronger where, as here, a third-party intervenor raises abstention defenses for the first time in opposing a motion for reconsideration. Moreover, by filing their Motion to Dismiss without raising abstention, Intervenors have also arguably themselves submitted to this Court's jurisdiction and waived any abstention defenses.

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

this reason alone, abstention is improper.  In any event, because the facts underlying this action militate strongly against abstention, the Court should deny Intervenors' requests.

## A.   *Burford* Abstention is Inappropriate in this Context

There is no ground for the Court to invoke in this case the abstention doctrine established by *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).  (Opp. § VII.A.1.)  "The purpose of *Burford* abstention is [] avoidance of federal intrusion into matters which are largely of local concern and … within the special competence of local courts." *Kern-Tulare Water Dist. v. Bakersfield*, 828 F.2d 514, 516 (9th Cir. 1987).  Three factors must be present to justify *Burford* abstention:

> (1) … the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which state courts may have special competence; and (3) federal review might disrupt state efforts to establish a coherent policy.

*Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004) (quotation omitted). Intervenors have not shown that these requirements are satisfied here.

For instance, Intervenors emphasize that this case raises First Amendment questions requiring inquiry into the level of scrutiny to apply, the nature of the State interest proffered, and whether it is advanced and if so whether the means of doing so avoid undue intrusion on free expression.  (Opp. 20:3-8.)  But all of that only augurs *against* preemption.  As the Ninth Circuit has held, "constitutional challenges based on the first amendment … are the kind of cases that the federal courts are particularly well-suited to hear," making "abstention [] generally inappropriate when first amend-ment rights are at stake."  *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003).  The fact that First (and Fourth) Amendment analysis here requires some examination of

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"local interests," as Intervenors posit (Opp. 20:22), does not make the constitutional challenge a question of state law. [17]

While Los Angeles County has a regulatory scheme in the form of Measure B, the issues here are "pure constitutional challenge[s]" that do not require the Court to intrude into proceedings involving Measure B's implementation or enforcement. Rather, the federal constitutional issues are "easily separable from" "complicated state law issues," if any even exist, and they raise matters in which California state courts have no "special competence" as compared to federal courts. *Tucker v. First Md. Savs. & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir. 1991). 42 U.S.C. § 1983

The presence of a single count in the Complaint based on the preemption of a County ordinance by state law does not change this result. [18] Though the preemption claim involves the ability to implement and enforce Measure B, it does not threaten the Los Angeles County Department of Public Health's ability to follow a coherent health and safety policy for residents of Los Angeles County. If anything, raising the fact that a County ordinance interferes with or is otherwise impermissible in the face of state law seeks to *preserve* coherent policy. To the extent state law preemption requires factual inquiry, this Court is fully equipped to undertake that analysis. *See*

---

[17]   *See id.*; *see also Ripplinger v. Collins*, 868 F.2d 1043, 1049 n.5 (9th Cir. 1989) (finding *Burford* abstention inappropriate in First Amendment challenge in that it was "unlikely to implicate purely local issues that the state courts may be especially competent to deal with"); *Matson Navigation Co., Inc. v. Hawaii PUC*, 742 F.Supp. 1468, 1476 (D. Haw. 1990) (where "question presented is a pure constitutional challenge … [a] determination with respect to [] facial validity … does not interfere with the processes of state government" or require "local [] expertise").

[18]   Intervenors in their push for *Burford* abstention belabor the fallacy that California's "initiative process is at stake." (Opp. 21:5.) Plaintiffs do not challenge the initiative process, and to whatever extent their claims implicate ballot initiative proponent rights as putative federal court intervenors, that is a matter of federal law, which *Hollingsworth* both demonstrates and decides. Intervenors' suggestions of forum-shopping go even further beyond the pale. (Opp. 21:23-24.) Plaintiffs have raised typical § 1983 challenges to an unconstitutional ordinance, the likes of which are routinely brought in federal courts. If any "forum-shopping" is occurring here, it comes in the form of Intervenors' *Pullman* abstention arguments, which transparently are raised solely in a desperate attempt to ensure AHF intervenor status somewhere, on some issue, in this case.

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION

*City of Tucson v. United States W. Communs.*, 284 F.3d 1128, 1134 (9th Cir. 2002) (abstention not appropriate where attack is not an "attack on public policy" and where "question presented is highly factual, and [] can be decided by the federal district court")  Accordingly, *Burford* abstention is inappropriate.

**B.    *Pullman* Abstention is Also Inappropriate in this Context**

Intervenors also fail to establish that abstention is warranted under the doctrine created by *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941).  Like *Burford* abstention, *Pullman* abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy."  *Canton v. Spokane Sch. Dist. No. 81*, 498 F.2d 840, 845 (9th Cir. 1974) (internal quotation marks omitted), *overruled on other grounds as recognized by Heath v. Cleary*, 708 F.2d 1376, 1378-79 n.2 (9th Cir. 1985).  *Pullman* abstention is appropriate only where (1) there are sensitive issues of social policy "upon which the federal courts ought not to enter unless no alternative to its adjudication is open," (2) constitutional adjudication could be avoided by a state ruling, and (3) resolution of the state law issue is uncertain. *Id.* (internal quotation marks omitted).

In First Amendment cases, the first *Pullman* element "will almost never be present because the guarantee of free expression is always an area of particular federal concern."  *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989).  Here, Plaintiffs' constitutional challenges do not depend on ambiguities in Measure B that are "fairly open to interpretation."  (Opp. 22:15-16.)  Rather, Plaintiffs have brought facial challenges based on Measure B's clearly content-based nature and inability to withstand First and Fourth Amendment scrutiny.  As facial challenges, Plaintiffs' claims are not subject to vagaries of how Measure B may be interpretively applied.[19] The first *Pullman* element is not present and *Pullman* abstention is inappropriate.

---

[19]    That is true even for Plaintiffs' vagueness challenge, the point of which is not that the provisions of Measure B are "open to interpretation," but rather that they are so unclear that a person of common intelligence must guess at their meaning, and

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION

Nor are the second or third *Pullman* elements met. "In cases involving a facial challenge to a statute, the pivotal question … is whether the statute is 'fairly subject to interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *City of Houston, Texas v. Hill*, 482 U.S. 451, 468 (1987). If the statute is not obviously susceptible to a limiting construction, then even if it has "never [been] interpreted by a state tribunal … it is the duty of the federal court to exercise its … jurisdiction." *Harman v. Forssenius*, 380 U.S. 528, 535 (1965).

Here again, the fact that Plaintiffs' facial constitutional challenges demonstrate Measure B's clearly content-based nature and inability to withstand constitutional scrutiny weigh against abstention. Plaintiffs are not seeking court intervention for clarification of Measure B, and it is unlikely any limiting construction could resolve Plaintiffs' constitutional challenges. It follows, therefore, that *Pullman* abstention is inappropriate. *See Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 237 (1984) (quoting *Zwickler v. Koota*, 389 U.S. 241, 251 n.14 (1967) ("[T]he relevant inquiry is not whether there is a bare, though unlikely, possibility that the state court *might* render adjudication of the federal question unnecessary.")).

The constitutional questions predominate this case. Any attempt to leverage the presence of a single state claim into *Pullman* abstention is a transparent attempt to delay federal court proceedings by forcing that isolated issue into a forum where Intervenors might have a role as a party. Moreover, there is no merit to the notion that Intervenors are "in a better position to fairly and justly adjudicate" preemption issues than are the County Defendants, whose authority is at stake vis-à-vis the State law that it is alleged preempts Measure B. AHF has already unduly delayed consideration of Plaintiffs' constitutional (and other) claims by gaining Intervenor status that was, with the benefit of hindsight through the prism of *Hollingsworth*, incorrectly bestowed. Plaintiffs meanwhile have suffered diminution of their First Amend-

government officials are afforded overly broad discretion in enforcement. *See* Plaintiffs' Motion for Preliminary Injunction, Dkt. 55, 12:6-15:3.

REPLY ISO MOTION FOR RECONSIDERATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ment rights for more than half a year, and counting.  This Court should not countenance Intervenors' attempt to extend the constitutional injury Plaintiffs are suffering, though *Pullman* or any other kind of abstention.

## VI.  CONCLUSION

For the foregoing reasons, and those presented in the Motion, Plaintiffs respectfully request that the Court reconsider its April 16, 2013, order granting the Motion to Intervene, and dismiss Intervenors from this action for lack of standing under Article III of the United States Constitution.  Plaintiffs further respectfully request that the motions and other submissions filed by Intervenors be vacated, that Plaintiffs' Motion for Judgment on the Pleadings (Docket No. 37) be reinstated, and that the Court rule on Plaintiffs' Motion for Preliminary Injunction.

DATED: July 29, 2013             LIPSITZ GREEN SCIME CAMBRIA LLP
                                 PAUL J. CAMBRIA, JR.


                                 SANTEN & HUGHES LPA
                                 H. LOUIS SIRKIN

                                 DAVIS WRIGHT TREMAINE LLP
                                 ROBERT CORN-REVERE
                                 RONALD G. LONDON
                                 JANET L. GRUMER
                                 MATTHEW D. PETERSON


                                 By:_____/s/ Matthew D. Peterson_____
                                          Matthew D. Peterson

                                 Attorneys for Plaintiffs
                                 VIVID ENTERTAINMENT, LLC;
                                 CALIFA PRODUCTIONS, INC.;
                                 JANE DOE a/k/a Kayden Kross; and
                                 JOHN DOE a/k/a Logan Pierce

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

REPLY ISO MOTION FOR RECONSIDERATION