O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VIVID ENTERTAINMENT, LLC;          )   Case No. CV 13-00190 DDP (AGRx)
CALIFA PRODUCTIONS, INC.;          )
JANE DOE a/k/a KAYDEN KROSS,        )   ORDER DENYING PLAINTIFFS' MOTION
                                   )   FOR RECONSIDERATION
                Plaintiffs,         )
                                   )   [Docket No. 63]
        v.                          )
                                   )
JONATHAN FIELDING, DIRECTOR         )
OF LOS ANGELES COUNTY               )
DEPARTMENT OF PUBLIC HEALTH;        )
JACKIE LACEY, LOS ANGELES           )
COUNTY DISTRICT ATTORNEY,           )
and COUNTY OF LOS ANGELES,          )
                                   )
                Defendants.         )
_____ )

I. **Introduction**

    On November 6, 2012, Los Angeles County approved Measure B,
which requires producers of adult films to obtain a permit from the
Los Angeles County Department of Public Health before production
can take place.  (Compl. ¶¶ 36, 41.)  Measure B also requires the
use of condoms by performers for all acts of anal or vaginal sex
during the production of adult films. (*Id.* ¶ 42.)  Plaintiffs Vivid
Entertainment, LLC ("Vivid"), Califa Productions, Inc., Jane Doe,

1  and John Doe are in the adult film industry.  (<u>Id.</u> ¶¶ 10-11.)

2  Plaintiffs have sued Jonathan Fielding, Director of Los Angeles

3  County Department of Public Health; Jackie Lacie, Los Angeles

4  County District Attorney; and County of Los Angeles (the "County

5  Defendants") for Declaratory and Injunctive Relief, claiming that

6  Measure B is unconstitutional.  (<u>See generally</u> <u>id.</u>)  The County

7  Defendants have declined to defend Measure B's constitutionality.

8  (Order at 9.)  The County, however, has taken steps to begin

9  enforcing Measure B.  (Docket No. 56 Ex. 1.)

10      On April 16, 2013 this Court granted Michael Weinstein,

11  Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney

12  Engeran, the Campaign Committee Yes on B, and Major Funding by the

13  AIDS Healthcare Foundation's ("Interveners") Motion to Intervene.

14  (<u>See generally</u> Order Granting Motion to Intervene ("Order"), Docket

15  No. 44.)  "Interveners were the official proponents of Measure B;"

16  they "drafted the language that would become Measure B, collected

17  signatures to qualify the Measure for the November 2012 ballot,

18  submitted the signatures for verification, raised funds, and

19  drafted an argument for the appearance of the Measure on the

20  ballot."  (Order at 2.)

21      In light of the recent Supreme Court decision in

22  <u>Hollingsworth v. Perry</u>, 133 S.Ct. 2652 (2013), Plaintiffs have

23  filed a Motion to Reconsider ("Motion") this Court's Order.

24  (Docket No. 63)

25  **II. <u>Legal Standard</u>**

26      Local Rule 7-18 provides the framework under which non-final

27  judgments may be reconsidered.  In relevant part, it states that

28  reconsideration is appropriate when there is a "material difference

1  in fact or law from that presented to the Court before such
2  decision that in the exercise of reasonable diligence could not
3  have been known to the party moving for reconsideration at the time
4  of such decision."

5  **III.  Analysis**

6  In Perry the Supreme Court held that the interveners, who were
7  also Proposition 8's proponents, did not have standing to appeal
8  the district court's judgment.  Perry, 133 S. Ct. at 2668.
9  Plaintiffs claim that Perry requires Interveners to show they have
10  standing independent of the County Defendants.  The Court
11  disagrees.

12  In Perry, as here, the government officials, who were named as
13  defendants enforced but "refused to defend the law."  Id. at 2660.
14  The district court allowed Proposition 8's proponents to intervene.
15  Id.  When the district court declared Proposition 8
16  unconstitutional, the defendants elected not to appeal to the Ninth
17  Circuit, but the Interveners did.  Id.  The Supreme Court later
18  vacated the Ninth Circuit's ruling because the Interveners did not
19  have standing to appeal the district court.  Id. at 2668.  The
20  Supreme Court made clear that initiative proponents do not have
21  standing to defend their ballot measures after those measures
22  become law.  Id. at 2663 ("[O]nce Proposition 8 was approved by the
23  voters, the measure became a duly enacted constitutional amendment
24  or statute.  Petitioners have no role—special or otherwise—in the
25  enforcement of Proposition 8.") (internal quotation marks and
26  citations omitted).  However, the Supreme Court, left the district
27  court's judgment intact.  Id. at 2668.  In so doing, it implicitly
28  approved of the framework currently at issue: at the district court

3

1   level, intervention by initiative proponents is proper when the
2   government is enforcing the initiative but refuses to defend it,
3   regardless of whether the interveners have standing independent of
4   the government defendants.

5       Additionally, as the Order recognized, Ninth Circuit
6   precedent, though somewhat ambiguous, generally indicates that
7   interveners are not required to demonstrate Article III standing
8   independent of the defendants.  (Order at 4-5); see State of
9   California Dep't of Soc. Servs. v. Thompson, 321 F.3d 835, 846 (9th
10  Cir. 2003) ("Ms. Rosales did not need to meet Article III standing
11  requirements to intervene.")  Thus, unless Perry "undercut the
12  theory or reasoning underlying the prior circuit precedent in such
13  a way that the cases are clearly irreconcilable," the Court must
14  follow the Ninth Circuit precedent.  Miller v. Gammie, 335 F.3d
15  889, 900 (9th Cir. 2003).  Because Perry only held that interveners
16  must have independent standing to bring an appeal that the
17  government defendants decline to, it did not undercut prior
18  authority indicating that interveners do not need to establish
19  independent standing at the district court level.

20      Finally, denying intervention in this case would upend one of
21  the key purposes of standing doctrine.  One reason standing is
22  required is to "sharpen[ ] the presentation of issues upon which
23  the court so largely depends for illumination of difficult ...
24  questions."  Baker v. Carr, 369 U.S. 186, 204 (1992).  Even without
25  Interveners, there would still be standing to resolve this case
26  because the County is enforcing Measure B.  See United States v.
27  Windsor, 133 S. Ct. 2675, 2685 (2013) ("Even though the Executive's
28  current position was announced before the District Court entered

4

1   its judgment, the Government's agreement with Windsor's position

2   would not have deprived the District Court of jurisdiction to

3   entertain and resolve the refund suit; for her injury (failure to

4   obtain a refund allegedly required by law) was concrete,

5   persisting, and unredressed.")  Because the Defendants refuse to

6   defend Measure B's constitutionality, Interveners are needed to

7   sharpen the issues this Court will be required to answer.

8   **III. <u>Conclusion</u>**

9        For the reasons stated herein, the Motion is DENIED.

10  IT IS SO ORDERED.

11

12

13  Dated: August 2, 2013

14                                      DEAN D. PREGERSON
                                        United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28