Tom Myers (SBN 176008)
E-Mail: Tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: Samantha.azulay@aidshealth.org
Liza M. Brereton (SBN 261380)
E-Mail:  Liza.brereton@aidshealth.org
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450

*Attorneys for Intervenor*
*Michael Weinstein*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES, <br><br> Defendants. <br><br> MICHAEL WEINSTEIN, MARIJANE JACKSON, ARLETTE DE LA CRUZ, MARK MCGRATH, WHITNEY ENGERAN, and the CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION <br><br> Defendants-Intervenors. | Case No.:  13-CV-00190-DDP-AGR <br><br> **NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL DEPOSITIONS AND FURTHER RESPONSES AND DOCUMENTS FROM CUTTING EDGE TESTING LLC TO INTERVENOR'S SUBPOENA** <br><br> Date:        January 26, 2016 <br> Time:        10:00 a.m. <br> Judge:       Hon. Alicia G. Rosenberg <br> Location: 312 N. Spring Street, Courtroom B. 8th Floor Los Angeles, California 90012 <br><br> Discovery Cut-Off Date: May 31, 2016 <br> Trial Date: December 13, 2016 |

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that January 26, 2016, at 10 a.m., or as soon thereafter as the matter may be heard, before the Honorable Alicia G. Rosenberg in Courtroom B, 8th Floor of the United States District Court for the Central District of California, 312 N. Spring Street, Los Angeles, California 90012, Michael Weinstein  "Intervenor), will move for an order requiring Non-Party Cutting Edge Testing, LLC  to provide further responses and documents to Intervenor Michael Weinstein's Subpoena, and to compel the deposition of Cutting Edge Testing, LLC and for the imposition of sanctions against Cutting Edge Testing, LLC and their counsel.

This motion is based on this Notice of Motion, the attached Joint Stipulation For Intervenor's Notice of Motion and Joint Stipulation For Intervenor's Motion To Compel Deposition And Further Responses And Documents From Cutting Edge Testing, LLC To Intervenor's Subpoena and attached exhibits, declaration of Samantha Azulay, all of the pleadings, files, and records in this proceeding, all matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This motion is made following the conference of counsel pursuant to L.R. 37-1 which took place on at least October 20, 2015 regarding issues relating to the motion, and further communications between counsel.

Respectfully Submitted,

DATED:  January 5, 2016          AIDS HEALTHCARE FOUNDATION

By: /s/ Samantha R. Azulay
    TOM MYERS
    SAMANTHA R. AZULAY
    LIZA M. BRERETON
    *Attorneys for  Intervenor*
    *Michael Weinstein*

---

**1**
**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.  INTRODUCTORY STATEMENTS ...........................................................1

  A.  Intervenor's Introductory Statement ...............................................1

    1.  Factual Background...............................................................1

    2.  Discovery Topics Sought By Intervenor's Subpoenas ........................2

  B.  CET's Introductory Statement.......................................................5

II.  DEPOSITION SUBPOENA OF CUTTING EDGE TESTING LLC.............8

  A.  Deposition Subpoena ................................................................8

  B.  Intervenor's Contentions Regarding the Deposition Subpoena At Issue.......10

    1.  Discovery Into the Pass System, CET's Testing Protocols And Test Results/Data Are Relevant..............................................................10

    2.  CET's Objections And Insistence On A Protective Order Before Agreeing To A Deposition Is Improper............................................................11

  C.  CET's Contentions Regarding the Deposition Subpoena At Issue...............13

    1.  BACKGROUND..................................................................13

    2.  Mr. Weinstein Refused to Agree to a Protective Order or to Refrain from Using CET's Information for Purposes Unrelated to this Lawsuit. ...................14

    3.  ARGUMENT ......................................................................16

III.  THE DOCUMENT SUBPOENA ON CET .................................................21

  A.  Requests for Production At Issue ..................................................21

  B.  Intervenor's Contentions Regarding the Requests At Issue..........................25

    1.  Requiring Intervenor To Obtain Or Agree To A Protective Order Prior to Producing Documents Is improper .....................................................25

    2.  CET's Objections Lack Merit ..................................................26

C.  CET's Contentions Regarding the Requests At Issue ....................................28

  1.   BACKGROUND ..............................................................28

  2.   ARGUMENT .....................................................................30

IV.  THE COURT SHOULD IMPOSE MONETARY SANCTIONS ON CET ..34

  A.  Intervenor's Contentions Regarding Sanctions ..............................................34

  B.  CET's Contentions Regarding Sanctions .......................................................35

**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

# TABLE OF AUTHORITIES

**Cases**

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 ............................................................................... 32, 33

*Fahmy v. Jay-Z*,
    2:07-cv-05715 (Dkt. No. 644) .................................................................20

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 ............................................................................... 12, 17

*Haworth, Inc. v. Herman Miller, Inc.*,
 998 F.2d 975 .................................................................................33

*Herbert v. Lando*,
441 U.S. 153.................................................................................11

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 ............................................................................ 11, 33

*Murphy v. Cont'l Tire N. Am., Inc.*,
    No. CV 09-3004 GHK FMO, 2010 WL 3260183, at *1-2 ........................... 12, 18

*Nestle Foods Corp. v. Aetna Casualty & Surety Co.*,
    135 F.R.D. 101 ..............................................................................11

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 ..............................................................................32

*Oakes v. Halvorsen Marine Ltd.*,
    179 F.R.D 281 ............................................................................ 11, 26

*San Jose Mercury News, Inc. v. United States District Court—Northern District*,
    187 F.3d 1096 ...............................................................................12

*Skellerup Indus. Ltd. v. City of Los Angeles*,
    163 F.R.D. 598 ............................................................................ 12, 17

*Sullivan v. Prudential Ins. Co. of Am.*,
    233 F.R.D. 573 ............................................................................ 12, 17

*United States of America v. AHF*

(0:14-cv-61301-KMW) (S.D. Fl.) (Dkt. No. 50 ¶ 3) ..............................................17

*Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.,*

214 F.R.D. 583 ...................................................................................................12

**Statutes**

45 C.F.R. § 160.200 et seq...........................................................................................22

45 C.F.R. § 164.501 ......................................................................................................22

45 C.F.R. § 164.502 ......................................................................................................22

45 C.F.R. § 164.512 ......................................................................................................22

45 C.F.R. § 164.514 ......................................................................................................27

**Rules**

Fed. R. Civ. P. 26 ...................................................................................... 10, 11, 12

Fed. R. Civ. P. 37 ........................................................................................................34

**Regulations**

California Health and Safety Code Section 120975 .................................................23

California Health and Safety Code Section 120980 .................................................23

California Health and Safety Code Section 120985 .................................................23

17 Cal. Code of Regulations § 2500 ........................................................................33

**JOINT STIPULATION**

I.    **INTRODUCTORY STATEMENTS**

    A.    **Intervenor's Introductory Statement**

        1.    **Factual Background**

Plaintiffs Vivid Entertainment, LLC and Califa Productions, Inc. ("Plaintiffs") are adult film production and distribution companies who allege six claims under 42 U.S.C. § 1983 and one state preemption claim in their Complaint seeking to invalidate the Safer Sex in the Adult Film Industry Act, Title 11, Division 1, Chapter 11.39 of the Los Angeles County Code ("Measure B").  On August 13, 2013, the Court dismissed Plaintiffs' due process claim, state preemption claim, and their first amendment claim related to subjecting freedom of expression to a referendum.  Dkt. 79.  On October 30, 2015, the individual plaintiffs dismissed their claims against Defendants with prejudice.   Dkt. 95.  The remaining Plaintiffs bring claims for violations of their first and fourth amendment rights.

Measure B sets forth workplace safety measures for the adult film industry that must be followed prior to and during the actual production of adult films. Measure B defines an "adult film" as any film, video, multimedia or other representation of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger; or inanimate object; oral contact with the anus or genitals of another performer; and/ or any other sexual activity that may result in the transmission of blood and/or any other potentially infectious materials.  Judge Pregerson, in his August 16, 2013 Order, struck some of the language and redefined "adult film" as "as any film, video, multimedia or other representation of sexual intercourse in which performers actually engage in vaginal or anal penetration by a penis." Intervenor's discovery requests have defined "adult film" in accordance with Judge

Pregerson's Order.

Measure B requires producers of adult films to take safety measures such as: (1) get a public health permit; (2) obtain health training; (3) post the public health permit on sets; and (4) use condoms for vaginal and anal sex.

Plaintiffs' theories on how Measure B infringes on their First Amendment rights are that: (1) Measure B inhibits their desire to freely express unprotected sex in the actual making of the film in order to realize their artistic vision; (2) performers are consenting adults and may choose to have sex in the workplace in the manner in which they please; and, more relevant to the present motion, (3) the adult film industry takes adequate steps to protect its performers so no one else should protect them.

## 2.     Discovery Topics Sought By Intervenor's Subpoenas

Plaintiffs claim that the adult industry already takes adequate steps to protect its performers from sexually transmitted infections ("STIs"), making Measure B unnecessary.  Complaint, Dkt. 1 at ¶¶ 80, 85.   Intervenor is entitled to discovery on the tests, test protocols used by testing facilities, test results, test reporting and screening, and treatment for STIs, to properly evaluate the legitimacy of this claim. To support this claim, Plaintiffs have cited to screening services called Adult Industry Medical Health Care Foundation ("AIM"), Performer Availability Scheduling Service and formerly Adult Performer Health and Safety Services ("APHSS") and more recently Performer Availability Screening Services ("PASS")[1] operated by the Free Speech Coalition, Inc. ("FSC").  Complaint ¶¶ 22-29; (Declaration of Samantha L. Azulay ("Azulay Decl."), ¶ 2, Exh. A (blog announcement).

---

[1] PASS is the current screening service used by FSC and the adult film industry.  APHSS officially changed its name to PASS on August 23, 2015.  Azulay Decl., ¶ 2, Exh. A.  AIM is no longer in operation

**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

As explained by FSC's website, PASS provides guidelines and services for the adult production industry designed to ensure a safe and healthy work environment of performers and adult film professionals.  Azulay Decl., ¶ 3, Exh. B (webpages from FSC website).  The program allegedly includes:

- A series of nationwide testing sites providing low cost, high-quality testing in a timely manner
- Performers have electronic access to testing results directly from labs
- Variety of medical providers for treatment of performers in need of medical follow-up
- Consistent standards and guidelines for testing and treatment of adult performers
- A secure database that ensures performer privacy and protects producer liability
- Protocol for performer support in the event of a positive HIV test result, including funding for testing of 1st and 2nd generation partners.

*Id.*

Cutting Edge Testing, LLC ("CET"), is one of the approved testing facilities accepted by the adult film industry and that has access to the PASS system. Declaration of Samantha L. Azulay ("Azulay Decl."), ¶ 2, Exh. B (PASS database webpages).   This means that a performer may go to CET and get tested for a number of STIs.  The results of the test will prompt CET to then transmit information to the PASS website reflecting whether that performer is "available" or "unavailable" for work.  A positive test result will result in the performer being indicated as "unavailable" for work until they submit a clean test result.

To obtain discovery on Plaintiffs' claim that the PASS system is not adequately effective at reducing the risk of STI transmission on set, Intervenor

served a document subpoena pursuant to FRCP Rule 45 on CET.  Declaration of "Azulay Decl.", ¶ 4, Exh. C (Subpoena To CET).  On October 23, 2015, Intervenor also issued a subpoena for the deposition of CET on a variety of topics including, without limitation, its interaction with Plaintiffs, the PASS system and test protocols and criteria to determine a performer's availability to work.  *See* Azulay Declaration, ¶ 5, Exh. D.

On August 28, 2015, CET served its objections and responses to Intervenor's document subpoena.  Azulay Decl., ¶ 6, Exhibit E.  Although Intervenor did not seek personal health information or any patient-identifiable information, CET asserted a litany of objections based on the right to privacy under the California and federal constitutions, Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), that the subpoena requested protected health information, that the requests seek confidential information, is overly broad, is unduly burdensome and expensive, and requests irrelevant information.  CET refused to produce <u>any</u> documents.  CET indicated it would not produce documents in response to the Request until a court order was entered or a stipulation concerning the scope of the request was reached by the parties.  Azulay Decl., ¶ 6, Exhibit E.

On September 11, 2015, Intervenor sent a letter to CET requesting a conference of counsel under Local Rule 37-1.  Azulay Decl., ¶ 7, Exhibit F.  On September 22, 2015, CET served a revised objection to Intervenor's subpoena indicating that its duly authorized representative Dr. Peter Miao was not available to participate in the Rule 37-1 Conference until October 1, 2015.  The revised objection also asserted additional practical objections to the subpoena.  Azulay Decl., ¶ 8, Exh. G.  Intervenor followed up with CET by letters October 7 and 14, 2015 to confer on the issues raised by CET's objections to Intervenors Subpoena.  Azulay Decl., ¶ 9, Exhs.H-I.

**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

On November 12 and December 1, 2015, CET's counsel sent letters indicating that it would not produce documents or allow the deposition to go forward until a protective order was entered in this matter.  Azulay Decl., ¶ 10, Exhs. J-K (11-12-15 and 12-1-15 letter form Gottfried).

From October through December 2015, Intervenor and CET continued to meet and confer with little success regarding the issues in CET's response and objection and the issues with the deposition subpoena.  See Azulay Decl., ¶ 11.

Unable to resolve its differences with CET, Intervenor respectfully requests that the Court compel the depositions of CET on all topics, and compel CET to provide further responses and production of documents immediately.

### B.      CET's Introductory Statement

Cutting Edge Testing, LLC ("CET") is a small health clinic in Sherman Oaks that tests individuals for sexually transmitted infections.  It has three employees and is led by Dr. Peter Miao, an infection disease specialist who was the Chairman of the Infection Control Committee at Sherman Oaks Hospital and was part of the team of physicians who first encountered HIV infections in 1981.

Since 2012, CET has offered testing services to over five thousand patients, including adult performers.  CET does not keep records on the occupations of its patients.  A patient will sometimes ask CET to indicate in an online system (the "Performer Availability Screening Services" or "PASS") whether he/she is "available" or "unavailable" to work in the adult-entertainment industry.  In those cases, CET will log on to the PASS system and indicate that a patient is "available" if the patient has taken all of the required STI tests and the results are negative.  CET will indicate that a patient is "unavailable" if the patient has not taken all of the required tests or if any of the test results are positive.  CET does not submit any test results to PASS.  CET does not maintain electronic or paper screenshots of the "available" or "unavailable" information after it has been

submitted online.

In August 2015, Mr. Weinstein served a subpoena on CET for all documents relating to STI test results that CET provided to a variety of entities and systems, including the PASS system. Mr. Weinstein's counsel indicated that Mr. Weinstein sought two categories of documents: (1) information uploaded by CET to the PASS system, and (2) adult performers' test results. CET explained to Mr. Weinstein's counsel (first through CET's own staff due to its limited resources and then, when Mr. Weinstein became increasingly aggressive, through counsel) that CET submits "available"/"unavailable" information manually into the PASS system and does not keep such records. CET offered to make available a witness to testify under oath to this effect. Separately, CET objected to producing performers' test results for the past eight years. CET explained that: (1) it had no ready way of identifying which of its patients was an adult performer (though, given the clinic's position, a potentially high number of patients work in the adult industry), and (2) redacting personally identifiable information of numerous patients was time-consuming, costly and would effectively shut down CET's small operation for weeks, if not months. Moreover, CET was concerned that it could expose itself to liability if it accidentally disclosed personally identifiable health information. Furthermore, information regarding STI rates in Los Angeles County was obtainable from a party to the lawsuit: Los Angeles County and its Department of Public Health.

Mr. Weinstein's counsel dismissed these concerns and next insisted that CET appear for a deposition on thirteen topics. CET agreed to testify on almost every one of Mr. Weinstein's requested topics for which it had information (CET objected to testifying on treatments given to specific patients) but asked for a reasonable precaution: that Mr. Weinstein agree to the Court's Form Protective Order. CET considered this proper in light of the sensitivity of the information

being discussed:  sexually transmitted infections and CET's internal operations.
To the extent that any non-public information were disclosed during the
deposition, CET wanted the option of designating it as confidential.  Mr. Weinstein
could object to any such designation.  CET also requested a protective order
because, since Mr. Weinstein publicly issued his subpoena to CET, CET has
received hundreds of communications from patients demanding that CET not
disclose any health information to Mr. Weinstein and threatening legal liability if
such information is publicly disclosed.

CET asked for a protective order for another reason:  Mr. Weinstein and his
organization, AIDS Healthcare Foundation ("AHF"), have a history of targeting
health clinics that provide services to the adult industry.  In 2011, they organized a
lawsuit against another health clinic for violating patient privacy and publicly
boasted that "legal action by AHF ultimately toppled" that clinic.  CET sought to
ensure, via a protective order, that Mr. Weinstein did not misuse confidential
information.  In light of Mr. Weinstein's history, CET also asked that any
deposition video be watermarked with the name of the recipient (*e.g.,* "Weinstein"
or "Vivid") in order to ensure that the protective order was respected and no party
leaked online confidential deposition testimony.

Mr. Weinstein refused to enter into any protective order or watermarking
procedure, and he insisted that all information disclosed by CET would be public
and could be used by Mr. Weinstein for any purpose.

Contrary to Mr. Weinstein's argument in this motion, the Court should:
(1) not require CET to appear for a deposition without the benefit of a protective
order, (2) not require CET to appear for a deposition until Mr. Weinstein agrees to
a reasonable watermarking procedure that will prevent the leaking of confidential
deposition testimony, and (3) not require CET to produce documents that it does
not have (records of uploads to the PASS system).  Furthermore, the Court should

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

not require CET to produce redacted test results for adult performers because:

- CET lacks any ready way of identifying which of its patients is an adult performer;

- Given CET's location, a number of its patients are in the adult industry.  Redacting any such records would take weeks, if not months, and accidental revelations could expose CET to legal liability and allegations/lawsuits from Mr. Weinstein that CET has violated patient privacy;

- The information requested is available from a party to this lawsuit (Los Angele County and its Department of Public Health); and

- Anonymous test results of people who may not even have appeared in any films are irrelevant to the issue in this case:  whether alleged STI transmission during filming will be reduced via condoms as compared to screening without condoms.  Mr. Weinstein's requested information will not reveal that.  Mr. Weinstein concedes that performers' names should be redacted, and there is no way of determining from the requested documents whether a performer infected anyone else during filming—or even appeared in a film.

Because Mr. Weinstein has pursued this motion without substantial justification (including refusing to agree to a commonplace protective order that would not prejudice him), the Court should award costs and attorney's fees to CET.

## II.   DEPOSITION SUBPOENA OF CUTTING EDGE TESTING LLC

### A.   Deposition Subpoena

On October 23, 2012, Intervenor served a deposition subpoena on CET requiring it to testify on December 9 2015. See Azulay Declaration, ¶ 5, Exh .D.

The attachment contained the following topics for deposition:

1.   Tests offered by YOU and any testing protocols.

**8**

2.     The process of submitting tests to a laboratory and receiving test results back from the laboratory.

3.     The testing and/or health regulatory systems utilized by a number of people and entities involved in the making of ADULT FILMS, including Performer Availability Provider Services ("PASS"), the Adult Production Health & Safety Services ("APHSS"), and Adult Industry Medical Health Care Foundation ("AIM").

4.     The determination of which SEXUALLY TRANSMITTED INFECTIONS the performers of ADULT FILMS are required to test negative for in order to be considered "available to work" through the PASS system.

5.     The determination of which types of tests are used (e.g. blood, oral, urine) to test for SEXUALLY TRANSMITTED INFECTIONS that the performers of ADULT FILMS are required to test negative for in order to be considered "available to work" through the PASS system.

6.     Any relationship or agreements with the Free Speech Coalition.

7.     Any relationship or agreements with Vivid Entertainment, Califa Productions and/or other producers or distributors of ADULT FILM.

8.     Any subsidy fund to assist performers of ADULT FILM in the payment of testing for SEXUALLY TRANSMITTED INFECTIONS.

9.     The type of software and database(s) used by YOU to host or store YOUR test results and to transmit communications to the PASS website or database.

10.     The transmission, communication, upload, download, or submission of work status reports or "available to work" or "unavailable to work" reports to PASS, APHSS and/or AIM.

11.     Any treatment or care of any SEXUALLY TRANSMITTED INFECTIONS provided to any performer in the ADULT FILM industry from 2010

9

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

to the present.

CET has indicated that the it would not sit for deposition unless a protective order is in place that ensures that: (i) their testimony is not used for purposes unrelated to this litigation, and (ii) any confidential information that they discuss is not publicly disclosed and (iii) if the deposition is videotaped, then a watermark stating 'Weinstein' should appear across the image of the witness in order to avoid improper disclosure of the video." Azulay Decl. ¶ 10, Exhs. J-K (Gottfried letters to Azulay regarding depositions, 11-12-15 12-1-15.)

**B.     Intervenor's Contentions Regarding the Deposition Subpoena At Issue**

**1.     Discovery Into the Pass System, CET's Testing Protocols And Test Results/Data Are Relevant**

Fed.R.Civ.P. 26(b) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any matter, non-privileged, that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Id.*

The Supreme Court has reiterated this broad standard, stating that it "has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the

litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Thus, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635-36 (C.D. Cal. 2005).

Here, CET's deposition and the deposition topics are highly relevant information to the Plaintiffs' claim in this case that the adult film industry takes adequate steps to protect its performers such that Measure B is unnecessary. The information is relevant to, without limitation, the prevalence of STIs in the adult film industry, how the PASS system works, how effective the PASS system is in preventing STIs, CET's test results/data, how a testing facility interacts with FSC and PASS, and how CET maintains and transmits its data related to STI tests.

Thus, the deposition and its topics are designed to discover information at the heart of this matter.

### 2.     CET's Objections And Insistence On A Protective Order Before Agreeing To A Deposition Is Improper

The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990).

Here, there is simply no authority that allows a party to insist on a protective order before producing a witness for deposition.   As a non-party, CET could have moved the court for a protective order pursuant to FRCP Rule 26(c)(1) but failed to do so.  Instead, they have used the protective order concept as a means of obstructing and delaying Intervenor's right to seek discovery into crucial information.  CET's approach is to say "we will comply but only if" certain conditions are met.  This approach is not supported by the federal rules of

procedure.

Moreover, there is no good cause for a protective order. A protective order may be granted pursuant to Federal Rule of Civil Procedure 26(c) when the moving party establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. Proc. 26(c). The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements. *See Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005) (denying protective order finding no good cause shown) (citing *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D.Ca1.1995) and *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Ca1.1990)); *See also Murphy v. Cont'l Tire N. Am., Inc.*, No. CV 09-3004 GHK FMO, 2010 WL 3260183, at *1-2 (C.D. Cal. Aug. 9, 2010) (Court refused to enter protective order as stipulated by the parties).

Even where good cause is shown, the court must balance the interests in freely allowing discovery against the burdens to the party or non-party of disclosing such information. *Id.* Finally, "it is well-established that [under the Federal Rules of Civil Procedure,] the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 214 F.R.D. 583, 585-86 (C.D. Cal. 2003) (citing *San Jose Mercury News, Inc. v. United States District Court— Northern District*, 187 F.3d 1096, 1103 (9th Cir.1999)).

Here, there is no evidence to support its claim that the information it seeks to protect is proprietary, protected by HIPAA or for any other reason in need of protection. Further, even assuming such information may be construed as sensitive, that is not the standard, and CET cannot demonstrate good cause for issuing a protective order.

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

1   CETs' demand that Intervenor obtain or agree to a protective order is based

2   on speculative and conclusory arguments that confidential information may be

3   obtained and misused at and following the deposition.  As explained to CET during

4   the meet and confer process, AHF does not seek personal health information or any

5   patient-identifiable information.

6   Intervenor respectfully requests that the Court compel the deposition of CET

7   without further delay or conditions.

8   **C.    CET's Contentions Regarding the Deposition Subpoena At Issue**

9       **1.    BACKGROUND**

10          **a.    CET Agreed to Produce a Deponent in Response to
    Most of Mr. Weinstein's Designated Topics.**

11  Mr. Weinstein issued a deposition subpoena to CET on October 22, 2015.

12  (Azulay Decl. Ex. D)  The subpoena identified thirteen topics.  *Id*.  CET agreed to

13  produce a deponent for eight of those topics on December 9, 2015 (the date

14  identified in the subpoena).  (Declaration of Jonathan Gottfried ("Gottfried Decl.")

15  Ex. 1 at Response Nos. 1, 2, 4-6, 8-10)  For three topics, CET indicated that it

16  would not produce a deponent because it lacked information regarding the request.

17  For example, Topic No. 12 asked CET to testify on "[a]ny health studies your

18  participated in related to the rate of sexually transmitted infections in persons

19  tested by you."  *Id*. at 6:23-25.  CET responded that it "has not participated in any

20  health studies related to the rate of sexually transmitted infections in persons tested

21  by" CET.  *Id*. at 6:27-7:2.

22  CET objected to two of the requests.  Topic No. 11 asked for CET to testify

23  about the details of its treatment and care of each adult performer since 2010 for

24  any sexually transmitted infection.  (Gottfried Decl. Ex. 1 at 6:16-18)  CET

25  objected that this request for specific details into the doctor-patient relationship

26  violated medical privacy laws, was overly broad, and that such post-diagnosis

27  information was irrelevant to whether screening or condoms were more effective in

**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

preventing STIs.  *Id.* at 6:19-22.  Topic No. 3 asked CET to provide information on the testing systems used by "a number of people and entities involved in the making of adult films."  *Id.* at 3:22-26.  While CET offered to produce information on the tests that it used, CET explained that it was "not familiar with the testing and/or health regulatory systems of unnamed, other people or entities involved in the making of adult films."  *Id.* at 4:1-3.

After receiving CET's objections, Mr. Weinstein's counsel responded that he would "agree to limit its questioning in the manner described by CET, with the exception to CET's objections to Topic Nos. 3 and 11."  (Gottfried Decl. Ex. 2 at pp. 2-3)  With respect to Topic No. 3, Mr. Weinstein's counsel asked that CET produce someone knowledgeable about testing systems known as "APHSS" and "AIM."  (*Id.* at pp. 2-3)  In response, CET explained that it would produce someone knowledgeable about APHSS but had no relationship with AIM.  (Azulay Decl. Ex. K at p. 4).

With respect to Topic No. 11, Mr. Weinstein insisted that he was entitled to information from CET regarding its care for patients with sexually transmitted infections.  (Gottfried Decl. Ex. 2 at p. 3)  CET's counsel responded that how CET cares for "people once they have been diagnosed with illnesses is not relevant to this lawsuit….[T]he focus of this lawsuit is a measure designed 'as a precaution against the spread of sexually-transmitted diseases' and to 'prevent harm that can occur while filming motion pictures.'  (Intervenor Weinstein's Appellate Br. to the Ninth Circuit at pp. 1,2)  Treatment of individuals once they have been diagnosed with STIs is not at issue."  (Azulay Decl. Ex. K at p. 4)

> **2.     Mr. Weinstein Refused to Agree to a Protective Order or to Refrain from Using CET's Information for Purposes Unrelated to this Lawsuit.**

On October 30 and November 12, CET's counsel asked that Mr. Weinstein

agree to a protective order that ensured that any confidential deposition testimony would not be used for purposes unrelated to the underlying litigation and that any confidential information not be publicly disclosed.  (Azulay Decl. Ex. J)   One example of such an order is this Court's Form Protective Order.[2]  Mr. Weinstein refused on the ground that CET "has failed to substantiate any need for a protective order over the deposition."  (Gottfried Decl. Ex. 2 at p. 2)  In response, CET's counsel explained that a protective order was appropriate because:

- Mr. Weinstein and his organization "have a history of publicly campaigning against the adult industry and health clinics that service the adult-industry population,"
- "Mr. Weinstein is seeking discovery on the medical conditions of individuals with sexually transmitted infections," and "Cutting Edge Testing seeks to ensure that medical details are fully protected," and
- "Mr. Weinstein is seeking discovery on confidential matters, including the internal procedures of Cutting Edge Testing."

(Ex. K at pp. 1-2)

 CET's counsel further requested the following procedure:

In order to ensure that video testimony is not improperly disclosed, please confirm that Mr. Weinstein will agree that any videotaped testimony will include a watermark labeled WEINSTEIN above the images of the witness[] for any video copy provided to Mr. Weinstein.  A clean copy of the video will be maintained by the court reporter and can be made available subject to the consent of both Mr. Weinstein and Cutting Edge Testing.  Even with the benefit of a protective order, video testimony can find its way online and the sources can be difficult to trace.

---

[2] *See* http://court.cacd.uscourts.gov/CACD/JudgeReq.nsf/0/7b940ca760a87cd5882579f5006b 0827/$FILE/FINAL%20FORM%20STIPULATED%20PROTECTIVE%20ORDER%20%5BREVISED%20S EPT%2016%202014%5D.pdf

*Id.* at p. 2.

In lieu of a response, Mr. Weinstein filed this motion.

### 3.      ARGUMENT

**a.      A Protective Order Is Proper Because the Deposition Addresses Sensitive Medical Information of Third Parties.**

Mr. Weinstein seeks to depose CET on the testing of individuals for sexually transmitted infections.  For example, Topic No. 11 of Mr. Weinstein's subpoena seeks testimony on CET's "treatment or care of any sexually transmitted infections provided to any performer in the adult film industry from 2010 to the present."  (Gottfried Decl. Ex. 1 at p. 6)  While CET believes that Topic No. 11 is improper (for reasons described below), the topic—and others like it—demonstrate that Mr. Weinstein's proposed deposition will touch upon sensitive medical information.  Mr. Weinstein argues that none of this information is sensitive because he is not seeking personally identifying patient information.  But in the give-and-take of a deposition, there is a risk that personal information may be disclosed.  Given the sensitivity of the information at issue, the potential to designate specific testimony as confidential is a necessary precaution.  This is particularly true because CET has received communications from hundreds of patients who are concerned that Mr. Weinstein will receive their medial information.  (Declaration of Elliot Miao ("Miao Decl.") ¶ 14)

For example, one communication received by CET stated:

I understand that Michael Weinstein as a party to the Measure B Litigation and AIDS Healthcare Foundation (Case Number 13-CV-00190-ddP-AGR) have issued a Subpoena to Produce Documents which include the medical records of patients identified as adult film performers or those associated with adult films.

As a patient of your clinic, I strongly object to the sharing or disclosure of any of my records, medical information, medical records, and personal identifying information. I hereby revoke any prior HIPAA waivers or permission granted to your clinic with regard to the above referenced subpoena.

16

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

> Do not under any circumstances, even if redacted, provide any of the subpoenaed documents!  I am asserting the protections provided by HIPAA, the Federal Constitution, the California Constitution, the California Health and Safety Code, and all other applicable State and Federal Statutes. You will be subject to monetary damages, attorney's fees and costs if you do not comply with my request.

(Miao Decl. Ex. 1)   Another person objected that "[t]hey are my private medical records and no one else's business, especially an outside 3rd party who[se] stated goal is their own agenda designed to destroy a business they are not part of."  *Id*. Given such strong objections and the potential liability to CET should confidential information become public, CET should not be required to testify without the benefit of an order that would protect the confidentiality of any sensitive information.  To the extent that Mr. Weinstein believes that any designation is improper, he can challenge the designation.

It is telling that Mr. Weinstein insists that CET adopt a position that he refuses to adopt vis-à-vis his own organization.   In August 2015, AHF moved to seal documents containing "patient information relating to services rendered by AHF."  *United States of America v. AHF* (0:14-cv-61301-KMW) (S.D. Fl.) (Dkt. No. 50 ¶ 3).  AHF emphasized that it is best to err on the side of caution when dealing with sensitive medical information.  *Id*.  ("Although there is reason to believe that the AHF patient whose medical information is at issue has already publicly disclosed his health condition, AHF still believes that sealing is appropriate….").  No less protection should be afforded to any personal information in the possession of CET.[3]

---

[3] The cases relied upon by Mr. Weinstein in his arguments against a protective order are inapposite.  Most of the cases involve a different kind of protective order than the one at issue here:  an order that seeks to avoid producing discovery.  *See Sullivan v. Prudential Ins. Co. of Am*., 233 F.R.D. 573 (C.D. Cal. 2005) (seeking a protective order to prevent disclosure of several categories of discovery); *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal. 1995) (involving protective order to stay all discovery); *Gray v. First Winthrop Corp*., 133 F.R.D. 39 (N.D. Cal. 1990) (involving protective order to stay discovery).  In contrast, CET does

### b.    A Protective Order Is Proper Because the Deposition Addresses Non-Public, Internal Affairs of CET.

Mr. Weinstein seeks to depose CET on financial aspects of its operation. (Gottfried Decl. Ex. 1 at Topic No. 8 (seeking information on a "subsidy fund")). CET does not publicize its finances.  (Miao Decl. ¶ 15)  In its Form Protective Order, the Court acknowledges that confidential information can include "confidential business or financial information, information regarding confidential business practices" and "information otherwise generally unavailable to the public." *Id.* at p. 2.  Certain information that CET seeks during this deposition falls into these categories, and a protective order is therefore appropriate.

### c.    A Protective Order Is Necessary in Order to Ensure that Mr. Weinstein Does Not Use Confidential Discovery in This Case for Purposes Unrelated to this Litigation.

### (i)    Mr. Weinstein and His Organization Have a History of Targeting Health Care Clinics Associated with the Adult-Entertainment Industry.

AIM Medical Associates P.C. ("AIM") was a clinic that tested individuals, including adult performers, for sexually transmitted infections.  (Gottfried Decl. Ex. 3 ("AIM held a preeminent role as a clinic for the porn industry, where performers would get checked for sexually transmitted diseases and HIV every month."))  After a data breach at AIM disclosed patients' health information, Mr. Weinstein's AHF organized a lawsuit against AIM for unlawful public disclosure of private health information.  (*Id.* Ex. 4)  Mr. Weinstein subsequently bragged on his organization's website that "[l]egal action by AHF ultimately

---

not seek to avoid discovery.  It simply wants limits on how the discovery will be used.  The sole case cited by Mr. Weinstein that involves the kind of protective order at issue here—*Murphy v. Cont'l Tire N. Am., Inc.,* No. CV 09-3004 GHK FMO, 2010 WL 3260183 (C.D. Cal. Aug. 9, 2010)—concerned a protective order with provisions (*e.g.*, requiring the court to return or destroy confidential documents) that are not at issue.  CET seeks an order similar to the Court's Form Protective Order.

**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

toppled AIM….”  (*Id.* Ex. 5 at p. 8)  And Mr. Weinstein celebrated AIM's closure in a press release in 2011: “Now that AIM has closed—and the industry 'fig leaf' is gone—the responsible thing for the industry to do is put performer's health first….”  (*Id.* Ex. 6)

> **(ii)    A Protective Order Is Necessary to Ensure That Mr. Weinstein Does Not Use Confidential Discovery for Purposes Unrelated to this Litigation.**

Given Mr. Weinstein's animosity towards health clinics that provide testing to adult performers and his penchant for orchestrating lawsuits involving disclosure of medical information, a protective order is necessary in order to ensure that Mr. Weinstein does not use this deposition as a fishing expedition for information unrelated to the underlying litigation.

For example, Mr. Weinstein seeks discovery on Dr. Miao's treatment of patients.  (Gottfried Decl. Ex. 2 at Topic No. 11) Mr. Weinstein fails to explain how post-diagnosis treatment is relevant to whether Measure B's prophylactic measures are narrowly tailored to achieve the substantial government interest of reducing the rate of sexually transmitted infections.  The specific medication (including dosage and treatment duration) that Dr. Miao prescribed to a patient with chlamydia two years ago is not relevant to evaluating whether condoms are more effective than screening in order to prevent STIs during filming.  Mr. Weinstein's insistence on forcing CET to provide this information in a public format suggests that Mr. Weinstein is trying to build a case against CET that is independent of defending the constitutionality of Measure B.

> **d.    A Watermark in the Video of the Deposition Is Necessary to Ensure that the Confidential Testimony Is Not Leaked.**

Mr. Weinstein seeks to videotape the deposition of CET's representative. With the advent of the Internet, numerous videotaped depositions have been leaked

online to tabloids and made available to the public on video-sharing websites, like YouTube.  *See, e.g.,* https://www.youtube.com/watch?v=ZIxmrvbMeKc; https://www.youtube.com/watch?v=n_kbtKL3Z94. The use of watermarks in video depositions can be used to identify the source of any leaks and to prevent the improper distribution of video depositions outside of this action (*e.g.,* for public viewing on the Internet). *See, e.g., Fahmy v. Jay-Z*, 2:07-cv-05715 (Dkt. No. 644) (describing the use of a watermarking procedure).[4]

　　　In light of:  (1) the importance of maintaining the privacy of any sensitive medical information, (2) Mr. Weinstein's record of attacking health clinics associated with the adult-entertainment industry for privacy violations, (3) Mr. Weinstein's aggressive use of media, including the Internet, to attack those who disagree with him, and (4) Mr. Weinstein's refusal to agree to limit the use of protected material to purposes of this litigation, the Court should not require CET to testify without a procedure that protects against Mr. Weinstein's leaking of the deposition video.  CET's proposal is simple and will not result in prejudice to anyone who respects a protective order.  The videos of the depositions will be watermarked with the receiving party's name imposed over the deponent's image. For example, any copy of the video deposition received by Mr. Weinstein would have a watermark of "Weinstein" imposed over the deponent's image.  Any copy of the video deposition received by Vivid would have a watermark of "Vivid" imposed over the deponent's image.  The originals of the video would be maintained by the court reporter, and additional copies would not be made without the written permission of the deponent.  This process would ensure that any videos leaked online could be traced backed to the source.  This watermark would be

---

[4] The cited motion involved the removal of the watermark for purposes of trial—something which the Deponents here agree to.

**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

removed for any video played at trial.  Although Mr. Weinstein opposes this precaution, he offers no rationale and details no prejudice.  In fact, the only prejudice to Mr. Weinstein would be if he intended to leak these videos and sought to hide that he was the source.

***

Consequently, CET respectfully request that:  (1) it not be required to appear for a deposition without a protective order that ensures the protection of any confidential information and that any protected information disclosed be used only for this case, and (2) Mr. Weinstein be required to abide by a watermarking procedure that ensures that videos are not leaked.

## III.   THE DOCUMENT SUBPOENA ON CET

### A.      Requests for Production At Issue

**REQUEST FOR PRODUCTION NO. 1.**

All DOCUMENTS and RECORDS, including COMMUNICATIONS, REFERRING or RELATING to the results of all tests for any and all SEXUALLY TRANSMITTED INFECTIONS that were provided to, forwarded to, released to, accessed by, and/or utilized by the Free Speech Coalition, the Adult Industry Medical Foundation, the Performer Availability Provider Services (also known as PASS), the Adult Production Health & Safety Services (also known as APHSS), and/or any other person or entity associated with and/or involved in the making of an ADULT FILM, for all tests conducted during the period January 1, 2007 to the present. Information that would disclose the identity of the persons who received the tests may be redacted from the DOCUMENTS and/or RECORDS, including, but not limited to the following: name, date of birth, social security number, address, and/or phone number.

**OBJECTIONS**

1.     CUTTING EDGE TESTING objects to this Subpoena to the extent it

21

seeks information described as under Protected health information (45 C.F.R. §§ 164.501, 164.502(a)): The HIPAA privacy rule prohibits covered entities from disclosing "protected health information" (PHI) except as permitted or required by the privacy rule. Protected health information is defined as information held or disclosed by the covered entity in any form (electronic, paper records, oral communications) that identifies an individual and relates to: (i) the individual's past, present, or future physical or mental health or condition; (ii) the provision of health care to the individual; or (iii) the past, present, or future payment for the provision of health care to the individual.

2. CUTTING EDGE TESTING further objects to this Subpoena as to the extent that disclosing PHI in response to a subpoena (45 C.F.R. § 164.512(e)): would violate the privacy rule which allows for the disclosure of PHI in response to a subpoena in the following circumstances only: a. The information may be disclosed if the individual who is the subject of the information properly authorizes the disclosure.  b. The information may be disclosed without the individual's authorization if: i. The covered entity receives satisfactory assurance from the party requesting the PHI that it has made reasonable efforts to give notice of the request to the individual who is the subject of the PHI; or ii. The covered entity receives satisfactory assurance from the party requesting the PHI that it has made reasonable efforts to obtain a protective order.  Additionally, State law requirements may not be preempted by HIPAA.DHHS does not believe Congress intended to preempt each State law unless it specifically meets the preemption standard specified by the Rule. *[45 C.F.R. 160.200 et seq.]*

3. Cutting Edge Testing further objects based upon the California Constitution. The California Constitution, Article 1, Sections 1 and 3 provide for the broad privacy rights for Californians.

4. Cutting Edge Testing further objects based upon California statutes

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

protecting patient privacy for HIV testing.  The California Health and Safety Code Sections 120975, 120980 and 120985 provide privacy protections for those individuals seeking HIV testing.

5.    The subpoena is overbroad in that it seeks information not only disclosed to PASS but also disclosed directly to patients.

6.    The subpoena is vague and overbroad in that it seeks information "provided to, forwarded to, released to, .... A person or entity associated with and/or involved in the making of an ADULT FILM ..."  Cutting Edge Testing does not discern nor track those patients "associated with and/or involved in the making of an adult film."

7.    The subpoena seeks information and documents protected by physician-patient privilege.  No Cutting Edge Testing patients have indicated waiver of that privilege.

8.    The subpoena has no legitimate purpose related to the litigation cited nor the causes of action of the lawsuit.

9.    The subpoena does not seek probative evidence but instead seeks confidential patient information.

10.   The subpoena is overbroad in the number of years of information sought.

11.   The subpoena shows no indication that consumers or patients have been notified that the party is seeking this information.

Due to aforementioned objections, the Subpoena issued is in violation of HIPPA and other statutes as referenced above, and as a covered entity, CUTTING EDGE TESTING, LLC cannot provide the information requested.

## REVISED OBJECTIONS TO SUBPOENA

<u>OBJECTIONS</u>

1.      CUTTING EDGE TESTING objects to this Subpoena to the extent it seeks information so broad and undefined that it would exhaust the capabilities of its staff in order to comply.  Intervenors seek all information related to FSC or APHSS, a task that would take months if not years to complete as CUTTING EDGE TESTING is a small draw station with limited budgets and resources and has such limited staff by three employees that it would be impossible to properly and adequately comply with the above subpoena in its present form.  The mere time to execute a redaction of just one patient's entire medical history would be such, a consumption of time and manpower that CUTTING EDGE TESTING could not meet its patient obligations and stay operational to meet its patient's day to day needs nor stay viable as a business.

2.      CUTTING EDGE TESTING further objects to this Subpoena as to the extent that its request for information is vague and unclear as it doesn't adequately define the type of information necessary to accomplish the goals of the Intervenors nor does it serve to accomplish a feasible means of executing the release of such information. Release of CUTTING EDGE TESTING patient records would require manually going through hard copy files to research every instance as to when and how CUTTING EDGE TESTING made contact with PSC in relation to a patient. Since CUTTING EDGE TESTING does not have a sophisticated computer operational system to execute such a request for information, the laborious task of gathering and compiling all ESC or AHPSS related requested information would put CUTTING EDGE TESTING at such budgetary constraints as to the extent it would require CUTTING EDGE TESTING to shut down thereby causing financial harm to CUTTING EDGE TESTING.

3.      The subpoena is overbroad in that it seeks information not only

1    disclosed to PASS but also disclosed directly to patients.

2        4.    The subpoena is vague and overbroad in that it seeks information

3    "provided to, forwarded, to, released to, a person or entity associated with and/or

4    involved in the making of an ADULT FILM ..." Cutting Edge Testing does not

5    discern nor track those patients "associated with and/or involved in the making of

6    an adult film."

7        5.    The subpoena is overbroad in the number of years of information

8    sought.

9        6.    The subpoena shows no indication that consumers or patients have

10   been notified that the party is seeking this information.

11   Due to aforementioned objections and renewed objections, the Subpoena issued

12   puts CUTTING EDGE TESTING as a covered entity at financial risk and

13   detriment to the necessary medical services and requirements of its patients,

14   therefore, CUTTING EDGE TESTING, LLC cannot provide the information

15   requested n its current form or scope as such willing compliance would be nearly

16   impossible as well as impracticable

17        B.    **Intervenor's Contentions Regarding the Requests At Issue**

18             1.    **Requiring Intervenor To Obtain Or Agree To A Protective**

19                  **Order Prior to Producing Documents Is improper**

20   CET's demand that Intervenor obtain or agree to a protective order before

21   producing any documents fails for the same reasons stated above in Section II.B.2

22   with respect to CET's refusal to sit for deposition. There is no legal authority for

23   such a request.  CET failed to file a motion for a protective order to address its

24   alleged concerns over privacy, confidentiality and misuse of confidential

25   information.

26        Again, CET is attempting to appear that it is inclined to comply with some

27   of the discovery requests, but at the same time obstructing and delaying

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

Intervenor's ability to obtain the discovery by insisting on a protective order.  This approach is not permissible under the federal rules.

CET should be ordered to produce all responsive documents immediately.

## 2.   CET's Objections Lack Merit

CET generally objects to Intervenor's requests for documents related to sexually transmitted infections that were transmitted in the making of adult films based on its assertion that the request (a) violates right to privacy; (b) violates state and federal statutes such as HIPAA on Protected Health Information ("PHI") because agents and producers may participate in those websites because of the provision of healthcare; and (c) seeks confidential information,  is overly broad and requests irrelevant information.  Azulay Decl., ¶ 6, Exh. E.

As an initial matter, conclusory statements about the objectionable nature of discovery requests are not sufficient.  Rather, the burden is on the objecting party to show grounds for failing to provide the requested discovery.  Merely stating that the request seeks confidential or private health information, is overly broad and requests irrelevant information, is insufficient.  *Oakes*, 179 F.R.D at 283.  As discussed above, all of the requests are relevant to the Plaintiffs' claims that the adult film industry adult film industry takes adequate steps to protect its performers such that Measure B is unnecessary.

### a.   The Requests Do Not Seek Information That Would Violate HIPAA

CET relies on legal arguments related to privacy to refuse production of any documents.  CET's objections are misplaced as Intervenor's Subpoena for documents does not actually require personal health information or any patient-identifiable information that would violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Specifically, Intervenor is not seeking the names, addresses, birthdates, or social security numbers of any patients or

information protected by HIPAA or any other privacy law.  The subpoena expressly provides that such information is not being requested.  Azulay Decl. ¶ 4, Exh. C.

HIPAA allows disclosure of data where it has been scrubbed of any of the specific identifiers listed at 45 CFR § 164.514(b)(2).  Moreover, § 164.514(a) expressly states that "[h]ealth information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information." (Emphasis added).  Intervenor submits that it is merely seeking data regarding the prevalence of STDs, and is *not* seeking individually identifiable health information.

As individuals involved in serving the needs of people living with HIV/AIDS, Intervenor is extremely sensitive to the privacy concerns surrounding medical records.  Intervenor does not seek to identify individual patients, and is more than willing to ensure that even de-identified data is maintained in a format that will guarantee privacy and confidentiality.

**b.    Summary of Requests that CET Should Be Compelled To Provide Further Responses And Produce Documents**

As shown above, CET's objections to the subpoenaed documents lack merit.  CET should produce all documents responsive to the subpoena immediately without conditions.

Specifically, Intervenor seeks documents related to the performers' test results as well as the information uploaded to the PASS and/or APHSS and/or AIM databases to producers, agents or testing facilities that use PASS and/or APHSS and/or AIM.  During the meet and confer process, CET claims that that it does not maintain an electronic database of test results, but rather, when it receives the test results, it actually prints them out and places a physical copy in the patient's file.

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

CET accordingly reports that it would be too laborious to go through paper files to obtain test results. Yet, it appears that CET must initially receive the test results in an electronic transmission as it touts that it will convey test results within 24 hours, and states on its website that such results are emailed to the patient. Azulay Decl. ¶11, Exh. L (webpage from CET website). This means that the test results are digital and may be fairly easily downloaded into a spreadsheet.

Another type of document Intervenor seeks to obtain are all of the reports that are electronically uploaded to PASS and/or APHSS that indicate a performers "availability to work" status in the past 5 years. The amount of "available to work" reports vis a vis "unavailable to work" reports is relevant to Intervenor's effort in this case to show that the testing system does not work. CET claims that it does not maintain this data digitally but rather a person logs in to the PASS database and submits information manually into each performer's account page. CET has not provided any declarations attesting to this methodology. If the "availability to work" status reports are in fact electronically transmitted (as they are by the other approved testing facility), then these electronic transmissions should also not be a burden to download to a spreadsheet for production. CET should produce this information immediately.

To date, Intervenor and CET have yet to resolve their discovery disputes. As such, Intervenor respectfully requests that the Court enter an order compelling CET to provide further responses and to produce all responsive documents to Intervenor's subpoena.

## C.   CET's Contentions Regarding the Requests At Issue

### 1.   BACKGROUND
#### a.   CET's Testing of Patients for Sexually Transmitted Infections.

CET is led by Dr. Peter Miao, who graduated from the UCLA School of

Medicine and completed a fellowship in infection disease at the Tufts New

England Medical Center.  (Miao Decl. ¶ 3)  His medical appointments have

included Chairman of the Infection Control Committee, Chief of Medicine, and

Chief of Staff at Sherman Oaks Hospital.  *Id.*  Dr. Miao was part of the team of

physicians who first encountered HIV infections in 1981.  *Id.*

      CET offers testing for sexually transmitted infections.  (Miao Decl. ¶ 4)  Its

patients include, but are not limited to, performers in the adult-entertainment

industry.  *Id.*  CET has three full-time employees and operates out of a single

location in Sherman Oaks.  *Id.* ¶¶ 4-5.

      When requested by a patient, CET will submit certain information via an

online interface to the Performer Availability Screening Services ("PASS").  (Miao

Decl. ¶ 6)  CET has a log-in and password that it uses to submit information to

PASS.  *Id.*  After CET enters its credentials, it enters the patient's name.  Then

CET indicates whether a person is "available" or "unavailable."  *Id.*  CET will

indicate that a patient is "available" if the patient has taken all of the required tests

and the results are negative.  *Id.* CET will indicate that a patient is "unavailable" if

the patient has not taken all of the required tests or if any of the test results are

positive.  *Id.*

      CET does not submit specific test results into the PASS system.  Nor does

CET indicate the reason why someone is "unavailable."  (Miao Decl. ¶ 7) CET

simply communicates (when given permission by the patient) to PASS whether

someone is "available" or "unavailable."  *Id.*

      CET has no ready way of determining all patients over the years who have

requested that their information be submitted to PASS.  (Miao Decl. ¶ 8)  For

example, CET's computer system cannot generate a list of patients who have

requested that their information be submitted to the PASS system.  *Id.*  CET does

not otherwise maintain a list of such patients.  *Id.*

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

## 2.   ARGUMENT

In August 2015, Mr. Weinstein served a subpoena with a document request upon CET.  (Azulay Decl. Ex. C)  According to Mr. Weinstein's position described above (Section III(B)(2)(b)), he seeks to compel the production of two categories of documents:  (1) "the information uploaded to the PASS and/or APHSS and/or AIM databases to producers, agents or testing facilities that use PASS and/or APHSS and/or AIM," and (1) "documents related to the performers' test results."  The Court should not issue an order compelling CET to produce either category of documents.

### a.   CET Does Not Have the Information Uploaded to the PASS and/or APHSS and/or AIM Databases to Producers, Agents or Testing facilities that use PASS and/or APHSS and/or AIM.

As explained above, when requested by a patient, CET will indicate, via an online interface to the Performer Availability Screening Services, whether a performer is "available" or "unavailable."  (Miao Decl. ¶ 6)  CET does not take screenshots of the PASS/APHSS system as it submits whether a person is "available" or "unavailable."  *Id*. ¶ 12.   Nor does CET print out the interface with the PASS/APHSS system as it submits whether a person is "available" or "unavailable."  *Id*.  Nor does CET electronically save an image of the interface with the PASS/APHSS system as it submits whether a person is "available" or "unavailable."  *Id*.  CET does not have records of the "availables" and "unavailables" that it has entered into the PASS/APHSS system.  *Id*.  Furthermore, CET has not worked with the Adult Industry Medical Foundation ("AIM").  *Id*. ¶ 11.   CET's counsel explained all of this to Mr. Weinstein's counsel during the parties' meet-and-confer, and—as discussed above—CET offered to provide a witness to testify under oath regarding the PASS system (subject to a proper protective order).  Indeed, Mr. Weinstein's counsel acknowledged that "CET

claims that it does not maintain this data digitally but rather a person logs into the PASS database and submits information manually into each performer's account page." (Gottfried Decl. Ex. 2 at p. 1)  Nonetheless, CET brought this motion, apparently as part of its campaign to harass health clinics that work with the adult-performer population.  Because there is nothing that CET can produce in response to this request, the Court should not compel CET to do so.

**b.      The Court Should Not Compel CET to Produce "Documents Related to the Performers' Test Results."**

Non-party CET should not be compelled to produce documents related to adult performers' test results because:  (i) it is unduly burdensome, (ii) the information can be obtained from a party to this lawsuit, and (iii) the information is not reasonably related to lead to discoverable evidence.

**(i)      CET Does Not Have a Ready Way of Identifying Which of Its Patients Are Performers.**

Mr. Weinstein seeks test results relating to adult performers.  But CET's patient population is not limited to adult performers; and CET has no accurate, ready way of identifying which of its patients are performers.  (Miao Decl. ¶ 5) For example, CET does not record the occupation of its patients.  (*Id*. ¶ 5)  CET's computer system cannot identify all patients who are adult performers.  *Id*.

It is true that patients who ask that their information be submitted to the Performer Availability Provider Services must submit a request in writing to CET. (Miao Decl. ¶ 9)  But other than searching through each patient's file, there is no way of determining whether a patient has requested his or her information be submitted to PASS.  CET has files for over five thousand patients over the time period of this request.  *Id*. ¶ 9.  Reviewing each file to determine whether it contained a PASS request would take weeks and would severely disrupt CET's mission to provide medical services.  *Id.*

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

Even assuming that CET could compile a list of each patient in the past several years who had submitted a PASS request, that would only be the first step in producing the requested documents.  Given CET's location, a sizable number of CET's patients may work in the adult-entertainment industry.  These patients' test results would then need to be located and redacted of all personally identifiable information.  Again, this would be a formidable task.  CET cannot automatically generate patients' test results without personally identifiable information for the past eight years.  (Miao Decl. ¶ 13)  Manually redacting potentially thousands of test results would take CET's staff of three people weeks, if not months; and it would severely disrupt CET's provision of medical services.  *Id.*  Furthermore, in order to ensure that no personally identifiable information were produced, redactions would have to be double-checked.  *Id.*  In light of:  (1) warnings from patients to CET not to release any information to Mr. Weinstein, (2) Mr. Weinstein's insistence that all discovery be public; and (3) Mr. Weinstein's past success in shutting down a healthcare clinic for privacy violations, CET is concerned that any errors in redactions could expose CET to legal claims.

In light of the significant burdens, CET should not be required to produce any test results for adult performers.

> **(ii)  Mr. Weinstein Should Not Burden a Non-Party With Significant Discovery When the Same Items Can Be Obtained From a Party.**

There are "strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents."  *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (internal quotation marks omitted).  Consequently, courts in this Circuit and elsewhere have repeatedly required parties to seek discovery from other parties before pursuing information from non-parties.  *See, e.g., Nidec Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no

reason to burden nonparties when the documents sought as in the possession of the party defendant."); *Moon v. SCP Pool Corp*., 232 F.R.D. 633, 638 (C.D. Cal. 2005) ("[T]hese requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty KSA."); *Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming order requiring party to first attempt to obtain documents from opposing party rather than nonparty).

Mr. Weinstein seeks to learn about positive test results for sexually transmitted infections.  But parties to this case—defendants County of Los Angeles and its Department of Public Health—collect reports on sexually transmitted infections in Los Angeles County.  *See* 17 Cal. Code of Regulations § 2500 (requiring health care providers to report STIs to health officials).  And CET submits, via fax or mail, reports to Los Angeles County for any positive test results.[5]  (Miao Decl. ¶ 10)  Mr. Weinstein has failed to describe any effort that he has made to collect this information from the defendants before seeking to impose a significant burden on a non-party with three employees.

### (iii)   Mr. Weinstein's Request Seeks Information That Is Not Relevant to This Lawsuit.

The limits on discovery are more stringent vis-à-vis a non-party.  *See Dart Industries Company,* 649 F.2d at 649.  Mr. Weinstein has failed to explain how anonymous test results are relevant to this case and justify the considerable burden on CET.  As Mr. Weinstein's counsel explained to the Ninth Circuit: "The marquee feature of Measure B is the requirement that performers in … films wear condoms during the filming of vaginal and anal sexual intercourse….Measure B

---

[5] CET's efforts to locate, redact and produce these reports would raise the same problems noted above:  (1) identifying the patients associated with the adult industry, and (2) time-consuming, extensive redactions of personally identifiable information.

seeks to regulate and prevent harms that can occur when filming motion pictures."
*Vivid v. Fielding*, No. 13-56445, Intervenor Defendants-Appellees' Answering Brief at pp. 1-2 (Dkt. No. 40) (Oct. 18, 2013).  Whether an anonymous patient tested positive for an STI does not indicate whether that individual was infected while filming or in his/her private life.  Nor does it suggest that the PASS system was not working:  to the contrary, if someone obtains a positive test result and is listed as "unavailable" to work, then the PASS system would be effective.  But one could not even draw that conclusion from the data requested by Mr. Weinstein because the anonymous test results cannot be linked to information submitted in the PASS system.  Nor can the anonymous information be connected to any film.  There will be no indication that anyone for whom the test results are provided even appeared in any film.  Mr. Weinstein is attempting to prove that STIs are transmitted on adult film sets despite the current screening system (and would not be transmitted if condoms were used).  The anonymous information that Mr. Weinstein seeks does not help or hurt his argument:  it is irrelevant.

***

Consequently, the Court should not compel CET to produce adult performers' test results.

## IV.    THE COURT SHOULD IMPOSE MONETARY SANCTIONS ON CET

### A.    Intervenor's Contentions Regarding Sanctions

The court must impose sanctions and require the party whose conduct necessitated the motion, and/or the party's attorney, to pay the reasonable costs of the moving party, including attorneys' fees.  *See* Fed. R. Civ. P. 37(a)(5).  As shown above, CET and their counsel lacked any substantial justification for their responses and objections.   Their refusal to provide discovery necessitated this

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL

motion.  The Court should order CET, and their counsel to pay Intervenor's costs and attorneys' fees associated with this motion.

### B.    CET's Contentions Regarding Sanctions

The Court must require the party whose conduct necessitated the motion, and/or the party's attorney, to pay the reasonable costs of the moving party, including attorneys' fees if the opposing party's objections were substantially unjustified.  Fed. R. Civ. P. 37(a)(5).  The Court should deny Mr. Weinstein's request for attorney's fees because—as explained above—CET's positions are substantially justified.

In contrast, the position of Mr. Weinstein and his counsel are not substantially justified.  Mr. Weinstein's refusal to enter into the Court's Form Protective Order—despite the sensitivity of the topics addressed and despite his own organization's insistence upon protective orders when dealing with comparable information—was improper.  Furthermore, Mr. Weinstein's insistence on seeking to compel CET to produce documents (*e.g.,* uploads to the PASS system) that CET has explained do not exist—and offered to be deposed on this topic—was unreasonable. Because of Mr. Weinstein's misuse of discovery against a non-party health clinic with three employees, the Court should order Mr. Weinstein and his counsel to pay CET's costs and attorneys' fees associated with Mr. Weinstein's motion.

**NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL**

Respectfully submitted,

Dated:  January 5, 2016          AIDS HEALTHCARE FOUNDATION


By   /s/ Samantha R. Azulay
                                         TOM MYERS
                                         SAMANTHA R. AZULAY
                                         LIZA M. BRERETON
                                         *Attorneys for  Intervenor*
                                         *Michael Weinstein*

DATED:  January 5, 2016          BROWNE GEORGE ROSS LLP
                                         Jonathan L. Gottfried


By   /s/ Jonathan L. Gottfried
                                         Jonathan L. Gottfried
                                 Attorneys for Cutting Edge Testing LLC

NOTICE OF MOTION AND JOINT STIPULATION FOR INTERVENOR'S MOTION TO COMPEL